UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE PIDDE,
JAMES CICHANOFSKY, ROGER
MILLER, GEORGE NOWLIN, and
RONALD HITT, on behalf of themselves
and a similarly situated class,

      Plaintiffs,                             Case No. 04-70592

v.                                                Honorable Patrick J. Duggan

CNH GLOBAL N.V. and
CNH AMERICA LLC,

      Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT CNH AMERICA LLC'S MOTION FOR MODIFICATION OF THE CLASS DEFINITION TO EXCLUDE INDIVIDUALS WHO RETIRED ON JULY 1, 1994, AND DENYING WITHOUT PREJUDICE ITS MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF RONALD HITT**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 29, 2007.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Plaintiffs filed this lawsuit on February 18, 2004, pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs, on behalf of themselves and a Class of similarly situated

persons, seek a declaratory judgment that they and their surviving spouses have a vested right to lifetime health care benefits from Defendants CNH America LLC ("CNH") and CNH Global N.V. ("CNH Global"). Plaintiffs also seek damages and injunctive relief. Presently before the Court is CNH's motion for summary judgment on the claims of named Class representative Ronald Hitt and for modification of the Class definition to exclude individuals who retired on July 1, 1994. Although claiming that it is not a proper defendant to this action, CNH Global joins in the motion. The motion is fully briefed and, on June 13, 2007, the Court held a motion hearing.

## I. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*

2

*Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

## II. Factual and Procedural Background

Plaintiffs are retirees of a company formerly known as Case or the retirees' surviving spouses. The International Union, United Automobile, Aerospace and Agricultural Workers of America ("UAW") represented Case employees in collective bargaining over the years. From 1971 through 2005, the UAW and Case[1] negotiated and executed a number of labor agreements.

In 1970, Case became a wholly owned subsidiary of Tenneco, Inc. ("Tenneco"). *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 574 (6th Cir. 2006). In 1994, Tenneco underwent a reorganization and decided to sell its agriculture and construction business assets, which consisted of some of its assets and some of Case's assets. *Id*. Tenneco formed a new corporation, Case Equipment Corporation, ("Case Equipment") and transferred the assets to Case Equipment pursuant to two agreements. *Id*.

Tenneco, Case, and Case Equipment executed these agreements– a "Reorganization Agreement" and an "Employee Benefits and Compensation Allocation Agreement" ("Allocation Agreement")– on June 23, 1994. *Yolton*, 435 F.3d at 575. Pursuant to the Reorganization Agreement, Tenneco assumed "Retained Liabilities" and agreed to "pay, perform and discharge in due course all of the Retained Liabilities." *Id*.

---

[1]The Court uses the name Case for ease of reference. The name of the employer that negotiated and entered the relevant labor agreements with the UAW changed over the years.

The Reorganization Agreement defines the "Retained Liabilities" as follows:

> "[T]he Case Liabilities for postretirement health and life insurance benefits (to the extent that Case is obligated on the Reorganization Date [June 23, 1994] of retirees of the Case Business in the United States and current employees of the Case Business in the United States who retire *on or before July 1, 1994* and their dependents as more fully described in the benefits agreement."

*Yolton*, 435 F.3d at 576 (emphasis added). For employees retiring *after July 1, 1994*, the Reorganization Agreement and Allocation Agreement provide that Case Equipment "assumed" liability for their welfare benefit plans. (CNH's Mot. Ex. A-4 at § 7.2.); *Yolton*, Case No. 02-75164, 10/20/03 Mot. Summ. J. by Case LLC [Doc. 66], Ex. 1 at § 1.01 (defining Case Equipment's liabilities as "all Case Liabilities other than the Retained Liabilities").

Section 7.2.3 of the Allocation Agreement more fully addresses the parties' respective liabilities for the welfare benefits of individuals who were active after the Closing Date [June 23, 1994]– and who therefore become Case Equipment employees pursuant to the Reorganization Agreement– but who subsequently retire:

> [Case Equipment] employees who are eligible to retire and receive retiree health and life insurance benefits under the Tenneco retiree health and life insurance plan on or before July 1, 1994, may retire and receive such retiree health and life insurance benefits to the extent that Case is obligated on the Closing Date at Tenneco's expense subject to Section 7.4[2] *if* they retire *on or before July 1, 1994*, notwithstanding the fact that they are [Case Equipment] employees at the time

---

[2]Section 7.4 is not relevant for purposes of the present motion.

>of retirement. [Case Equipment] employees who separate
>from service with [Case Equipment] *after July 1, 1994*, shall
>not qualify for postretirement health and life insurance
>benefits from Tenneco; . . .

(CNH's Mot. Ex. A-4 (emphasis added).) The Allocation Agreement further provides in Section 7.3 that Case Equipment "shall continue to administer the hourly postretirement health and life insurance benefits through December 31, 1994 at its expense." (CNH's Mot. Ex. A-4.)

On July 1, 1994, Case Equipment was spun off in an initial public offering of its shares and was renamed Case Corporation. *Yolton v. El Paso Tennessee Pipeline Corp.*, 318 F. Supp. 2d 455, 459-60 (E.D. Mich. 2003). On November 12, 1999, Case Corporation merged with Fiat Acquisition Corporation, a subsidiary of New Holland N.V. *Yolton*, No. 02-75164, Op. and Order Granting Mot. of CNH America LLC to Correct Caption, at *3 (E.D. Mich. April 22, 2005)(unpublished op.). New Holland N.V. thereafter changed its name to CNH Global. *Id*. In 2002, Case Corporation changed its named to Case, LLC and eventually was renamed CNH. *Yolton*, 318 F. Supp. 2d at 460.

In 1996, Tenneco merged with a subsidiary of El Paso Natural Gas Company and was renamed El Paso Tennessee Pipeline Company ("El Paso").[3] *Id*.

From the Reorganization Date [June 23, 1994] through December 31, 1994, Case Corporation administered the health insurance benefit plan and paid the costs for

---

[3]For ease of reference, although referring to events prior to 1996, the Court hereafter will refer to the entity only as El Paso.

coverage under that plan for its current employees and for individuals who retired after the Reorganization Date. (*See* Pls.' Resp. Br. at 13.) However on January 1, 1995, pursuant to Section 7.3 of the Allocation Agreement, El Paso assumed the administration of the health insurance benefit plan for individuals who retired on or before July 1, 1994, or their surviving spouses, and began paying the full contribution costs for coverage under that plan. (*See id*.) Pursuant to the Reorganization Agreement and Allocation Agreement, Case Corporation (eventually CNH) continued to administer the health insurance benefit plan and to pay the full costs for coverage under that plan for individuals who retired after July 1, 1994, or their surviving spouses.

In late 2002, El Paso sent letters to the individuals who retired on or before July 1, 1994, or their surviving spouses, informing them that they would be required to contribute substantially to the cost of their health insurance coverage beginning in January 2003. *Yolton*, 435 F.3d at 577. A group of retirees and surviving spouses thereafter filed the *Yolton* lawsuit, claiming that they are entitled to fully funded, lifetime retiree health care benefits. This Court subsequently certified a Class in *Yolton* ("*Yolton* Class") comprised of the following individuals:

> All former bargaining unit employees who retired under the Case Corporation (formerly J.I. Case) Pension Plan for Hourly Paid Employees on or before July 1, 1994 (other than former employees eligible for or receiving retirement benefits under the deferred vested provisions of the Pension Plan) and all surviving spouses of those former bargaining unit employees.

*Yolton*, No. 02-75164, Op. and Order Granting Plaintiffs' Mot. for Class Certification

(E.D. Mich. Sept. 3, 2004)(unpublished op.). The plaintiffs in *Yolton* thereafter filed a motion for preliminary injunction, which this Court granted with respect to individuals who retired before October 3, 1993, only. *Yolton*, 318 F. Supp. 2d at 473, *aff'd* 435 F.3d 571 (6th Cir. 2006). The Court subsequently held that Case/CNH, as the signatory to the relevant labor agreements, retained liability for the plaintiffs' health care costs even though El Paso assumed the obligation to pay those costs in the Reorganization Agreement and Allocation Agreement. *Yolton*, No. 02-75164, 2004 WL 3661450 (E.D. Mich. Mar. 9, 2004)(unpublished op.), *aff'd* 435 F.3d 571 (6th Cir. 2006).

In the meantime, on February 11, 2004, CNH filed a complaint against the UAW and several of its local unions in the United States District Court for the Eastern District of Wisconsin. (Pls.' Am. Compl. ¶ 34.) In that action, CNH sought a declaratory judgment that individuals within a proposed Class are not entitled to premium-free lifetime, vested health care benefits and that CNH therefore has the right under ERISA and the LMRA to modify or terminate those health care benefits upon the expiration of the then current collective bargaining agreement. (Pls.' Resp. Ex. 14 ¶¶ 82-83.) CNH defined the proposed Class as "[a]ll employees represented by the UAW who retired . . . on or after July 1, 1994." (*Id.* ¶ 68.)

Plaintiffs filed the pending lawsuit in response to the Wisconsin action. Pursuant to a Stipulated Order entered on May 29, 2007, the Class in this action ("*Reese* Class") is defined as follows:

> All former bargaining unit employees who retired under the

> Case Corporation Pension Plan for Hourly Paid Employees on or after July 1, 1994, and who retired or were eligible to retire on or before November 1, 2004 (other than former employees eligible for or receiving retirement benefits under the deferred vested provisions of the Pension Plan and former employees hired after May 18, 1998), and all surviving spouses of those former bargaining unit employees.

(Doc. 204.)

### III. Parties' Arguments

CNH argues that individuals who retired *on* July 1, 1994 ("July 1 retirees"), like named Class representative Ronald Hitt, belong in the *Yolton* Class. According to CNH, the July 1 retirees are not similarly situated to the members of the *Reese* Class and, therefore, they cannot satisfy the commonality and typicality requirements for membership in that Class. CNH maintains that the July 1 retirees instead are similarly situated to the members of the *Yolton* Class. First CNH points out that, like the *Yolton* Class members, the July 1 retirees are trying to restore the fully-funded benefits cut by El Paso in 2002. In comparison, in the pending complaint, Plaintiffs' allegations relate to CNH's February 2004 "*threat* to modify or terminate retiree health insurance benefits." (Pls.' Am. Compl. ¶ 35.) Second CNH points out that since January 1, 1995, El Paso administers the health insurance benefit plan of the July 1 retirees and pays the contribution costs for coverage under that plan, as it does for the *Yolton* Class members. CNH also argues that the July 1 retirees are included in the definition of the *Yolton* Class and that, therefore, their claim to fully-funded, lifetime retiree health insurance benefits cannot be relitigated in the present action.

8

Alternatively, CNH seeks summary judgment with respect to Mr. Hitt's LMRA and ERISA claims, arguing that he cannot establish the material elements of those claims against CNH. As CNH indicates, a court lacks subject matter jurisdiction over an LMRA claim where the defendant is not a signatory to the labor agreement and no rights or duties of the non-signatory party are stated in the terms and conditions of the contract. *Serv. Union, Local 47 v. Commercial Prop. Servs., Inc.*, 755 F.2d 499, 506 (6th Cir. 1985). Further, a suit under Section 502(a)(1)(B) of ERISA may proceed against only the entity that administers or controls the administration of the relevant ERISA plan. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988). CNH argues that it does not currently administer Mr. Hitt's retiree health care benefits and that it neither signed nor assumed the labor agreements pursuant to which he receives those benefits.

Plaintiffs argue that the individuals who retired on July 1, 1994, are similarly situated to other retirees who retired after that date under the same labor agreements– specifically 1993 Plant Shutdown Agreements. According to Plaintiffs, regardless of when those individuals retired, Case was the signatory employer to the relevant labor agreements and was the company, at least through December 1, 1994, that administered their retiree health insurance benefit plan and paid the costs to cover them under that plan. Plaintiffs argue that Case/CNH therefore is a proper defendant with respect to the July 1 retirees' LMRA and ERISA claims.

**IV.  Analysis**

The Court agrees with CNH that the claims of the July 1 retirees are more properly

litigated in *Yolton*.[4] Pursuant to the Allocation Agreement, the cost of retiree health insurance benefits for those Case employees who were eligible to retire and receive such benefits and who did retire *on or before* July 1, 1994, fell upon El Paso as of January 1, 1995.[5] El Paso, however, is *not* liable under the Allocation Agreement for the retiree health care benefits of individuals who retired *after* July 1, 1994.[6] Instead, Case Equipment (Case/CNH) is obligated to administer the post-July 1 retiree health insurance benefit plan and to pay the costs to cover those individuals under that plan. Accordingly, although Case initially paid the health insurance benefits costs of all post-Closing Date retirees, El Paso assumed that obligation on January 1, 1995, for individuals who retired on or before July 1, 1994; whereas Case/CNH continued to administer the health insurance benefit plan and pay the costs for coverage under that plan for individuals who retired after July 1, 1994.

In many respects, as Plaintiffs argue, the claims of the *Yolton* Class and the *Reese* Class overlap. Many of the same labor agreements are relevant to the Court's

---

[4]The Court therefore will not decide in this case whether CNH is entitled to summary judgment with respect to Mr. Hitt's LMRA and/or ERISA claims.

[5]As this Court held in *Yolton*, because Case likely is the disguised continuation or alter ego of the company that signed the relevant labor agreements, it is liable for the retiree health insurance benefits of the *Yolton* Class (and therefore the July 1 retirees) in the event that El Paso fails to comply with its obligations under the Reorganization Agreement and Allocation Agreement. *Yolton*, No. 02-75164, 2004 WL 3661450 (E.D. Mich. Mar. 9, 2004)(unpublished op.), *aff'd*, 435 F.3d at 585-86.

[6]Perhaps not surprisingly then, Plaintiffs have not named El Paso as a defendant in this action.

determination of whether the members of both classes are entitled to fully funded, lifetime retiree health insurance benefits. Eventually, the Court may reach the same conclusion regarding the *Yolton* Class and *Reese* Class members' claims to fully-funded lifetime, vested health care benefits. Nevertheless, for the reasons CNH identifies in its motion, there are significant differences between the claims of the *Reese* Class and the July 1 retirees– most notably the entity currently responsible for administering their welfare benefit plans and paying the costs to cover them under those plans and the entity who modified or threatened to modify or terminate their retiree health insurance coverage. Yet the claims of the July 1 retirees and the *Yolton* Class are identical.

Accordingly,

**IT IS ORDERED**, that CNH's Motion for Modification of the Class Definition to Exclude Individuals Who Retired on July 1, 1994, is **GRANTED**;

**IT IS FURTHER ORDERED**, that the Class in this matter is modified as follows:

> All former bargaining unit employees who retired under the Case Corporation Pension Plan for Hourly Paid Employees after July 1, 1994, and who retired or were eligible to retire on or before November 1, 2004 (other than former employees eligible for or receiving retirement benefits under the deferred vested provisions of the Pension Plan and former employees hired after May 18, 1998), and all surviving spouses of those former bargaining unit employees.

**IT IS FURTHER ORDERED**, that CNH's Motion for Summary Judgment on the Claims of Ronald Hitt are **DENIED WITHOUT PREJUDICE**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record