UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE PIDDE,
JAMES CICHANOFSKY, ROGER
MILLER, GEORGE NOWLIN, and
RONALD HITT, on behalf of themselves
and a similarly situated class,

    Plaintiffs,                                            Case No. 04-70592

v.                                                      Honorable Patrick J. Duggan

CNH GLOBAL N.V. and
CNH AMERICA LLC,

    Defendants.
_____/

## OPINION AND ORDER DENYING CNH GLOBAL N.V.'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 29, 2007.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Plaintiffs filed this lawsuit against Defendant CNH America LLC ("CNH") on February 18, 2004, pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs filed an amended complaint on May 6, 2006, adding CNH Global N.V. ("CNH Global") as a defendant. In their amended complaint, Plaintiffs, on behalf of themselves and a Class of

similarly situated persons, seek a declaratory judgment that they and their surviving spouses have a vested right to lifetime health care benefits from Defendants. Plaintiffs also seek damages and injunctive relief. Presently before the Court is CNH Global's motion for summary judgment in which CNH Global argues that it is not a proper defendant to Plaintiffs' action. The motion is fully briefed and, on June 13, 2007, this Court held a motion hearing.

**I.     Parties' Arguments**

CNH Global seeks summary judgment with respect to Plaintiffs' ERISA claim, contending that it does not administer or control the administration of Plaintiffs' retiree health care benefits. With respect to Plaintiffs' LMRA claim, CNH Global argues that it is entitled to summary judgment because it was not the employer signatory to any pertinent collective bargaining agreement. CNH Global contends that Plaintiffs improperly conflate it and its subsidiary, CNH.

Plaintiffs argue in response that there is substantial evidence establishing that CNH Global administers and/or controls the administration of their retiree health insurance benefits. Plaintiffs also argue that there is evidence demonstrating that CNH Global negotiated and executed labor agreements with the UAW from which members of the Class derive their retiree health insurance benefits. According to Plaintiffs, outside the context of this litigation, it is CNH Global that has blurred any distinction between itself and CNH.

**II.    Standard for Summary Judgment**

2

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

## III. Factual Background

Plaintiffs and the Class they represent are retirees of a company formerly known as Case or the retirees' surviving spouses.[1] On November 12, 1999, Case merged with Fiat

---

[1] Pursuant to an opinion and order entered on this date, granting CNH's motion for modification of the class, the Class is defined as:

> All former bargaining unit employees who retired under the Case Corporation Pension Plan for Hourly Paid Employees after July 1, 1994, and who retired or were eligible to retire on

3

Acquisition Corporation, a subsidiary of New Holland NV. *Yolton v. El Paso Tennessee Pipeline Co.*, No. 02-75164, Op. and Order Granting Motion of CNH America LLC to Correct Caption, at *3 (E.D. Mich. April 22, 2005). Thus New Holland N.V. did not directly merge with Case; rather New Holland N.V. acquired Case through its subsidiary's merger. *Id*. New Holland N.V. then changed its name to CNH Global to reflect its increased holdings. *Id*.

## IV.  Analysis

As the Sixth Circuit has held, a lawsuit pursuant to Section 501(a)(1)(B) of ERISA may proceed against only an employer or other entity that administers or controls the administration of the relevant ERISA plan. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988). ERISA defines a plan "administrator" as follows:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
>
> (ii) if an administrator is not so designated, the plan sponsor; or
>
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A)(i). Section 301(a) of the LMRA vests federal courts with

---

> or before November 1, 2004 (other than former employees eligible for or receiving retirement benefits under the deferred vested provisions of the Pension Plan and former employees hired after May 18, 1998), and all surviving spouses of those former bargaining unit employees.

jurisdiction to examine alleged violations of contracts between *employers* and labor organizations. 29 U.S.C. § 185(a). The Sixth Circuit has held that courts lack subject matter jurisdiction over Section 301 claims that are asserted against "a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract." *Serv. Union, Local No. 47 v. Commercial Prop. Servs., Inc.*, 755 F.2d 499, 506 (6th Cir. 1985).

This Court finds a genuine issue of material fact with regard to whether CNH Global was the employer of at least some of the named Plaintiffs and members of the Class and/or the administrator of their retiree health insurance benefits. The Court also finds a genuine issue of material fact with regard to whether CNH Global was a signatory to at least some of the relevant labor agreements. While Plaintiffs submit numerous documents to overcome CNH Global's motion for summary judgment, the Court will highlight only some of the evidence presented.

On January 12, 2002, the UAW and *CNH Global* entered into the East Moline Shutdown Agreement. (Pls.' Resp. Ex. 13.) The introductory paragraph of this agreement states:

> THIS AGREEMENT, concerning the permanent shutdown, relocation and/or outsourcing of manufacturing operations at the East Moline, Illinois, facility *of CNH Global N.V.* is entered into this 12th day of January, 2002, by *CNH Global N.V.* (hereinafter referred to as the "Company") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local Union Nos. 1304, 1306, 1356C and 1356T (hereinafter collectively referred to as the "Union").

5

(*Id*. at CNHA030576 (emphasis added).) The agreement further provides that "[u]pon acceptance of this Shutdown Agreement, this Shutdown Agreement shall become an addendum to the current Central Agreement (including the applicable Local Agreement between the Company and the Union (the stated term of which is May 14, 1998 through May 2, 2004) . . . Upon acceptance of this Shutdown Agreement, the parties shall be bound by this Shutdown Agreement *and* the current Central Agreement . . .."[2] (*Id*. at CNHA030593 (emphasis added).) The agreement also provides that if the "Company should resume manufacturing/production operations within five (5) years . . . within a fifty (5) mile radius of the East Moline plant, the Company will recognize the Union as the exclusive bargaining agent of those *employees of CNH Global N.V.* who are performing work in a job classification prior to the shutdown." (*Id*. at CNHA030594 (emphasis added).) Finally, Article VI of the agreement states: "The Company warrants that its representatives who negotiated this agreement were duly authorized to do so." (*Id*. at CNHA030600.) On January 12, 2002, Paul Crist and Robert Hamrick signed the East Moline Shutdown Agreement on behalf of CNH Global.[3] (*Id*. at CNHA030573 &

---

[2]This provision undermines CNH Global's argument in its motion that the East Moline Shutdown Agreement contains no substantive provisions regarding retiree health care benefits but merely directs shutdown retirees to the 1998 Central Agreement between Case and the UAW. (CNH Global's Br. in Supp. of Mot. at 7.) First, the provision binds the parties to the Shutdown Agreement to the Central Agreement. Second, it expressly states that the Central Agreement is between the Union and "the Company"– as previously defined, CNH Global.

[3]Mr. Crist's and Mr. Hamrick's signatures on behalf of CNH Global on this document, as well as Mr. Crist's signature on other documents, *see supra* at 9, raise a

CNHA030602.)

While none of the named Plaintiffs retired under the East Moline Shutdown Agreement, members of the Class did. (Pls.' Resp. Exs. 14 & 15); *see also Reese v. CNH America, LLC*, 227 F.R.D. 483, 488-89 (E.D. Mich. 2005)(certifying the Class in the present matter to include East Moline retirees and concluding that there are common issues between the named Plaintiffs and those retirees). According to Plaintiffs, eight individuals retired from the East Moline facility pursuant to the Shutdown Agreement on February 2, 2002 (*Id*. Ex. 14); forty-five individuals retired pursuant to the agreement between March 1, 2002 and April 1, 2003. (*Id*. Ex. 15.) These Class members signed Waiver and Release forms in which they released "CNH Global, N.V." from all claims "arising out of the employment relationship; the manner, means, or circumstances of the termination of my employment," in exchange for the benefits provided under the Shutdown Agreement– including retiree health insurance coverage per the governing Central Agreement (*Id*. Exs. 14 & 15.)

CNH Global contends that it was listed as the purported signatory to the East Moline Shutdown Agreement "through a mere scrivener's error." (CNH Global's Br. in Supp. of Mot. at ¶ 25.) While such a contention may be plausible if CNH Global's name

---

question of fact as to whether these individuals were previously acting on behalf of CNH Global, rather than CNH, when they signed other labor agreements.

only appeared on the Shutdown Agreement, it also appears on the waivers.[4] The veracity of CNH Global's contention is further brought into question by the fact that its name appears on subsequent labor agreements and documents related to retiree health insurance benefits.

Previously, on September 20, 2000, the UAW and the "Company" executed a "Letter of Understanding" modifying certain aspects of the Letter of Understanding on the Cost of Health Care Coverage that was incorporated into the 1998 Central Agreement. (Pls.' Resp. Ex. 7.) The 2000 Letter of Understanding indicates that during the 1998 contract negotiations "the Company and the union reached agreement on certain principles governing the retention and replacement of HMOs and PPOs" which was incorporated in the previous Letter of Understanding. Paul Crist signed the 2000 Letter of Understanding on behalf of "CNH Global." (*Id*.)

On February 13, 2003, "CNH" issued a press release announcing its tentative plans to close its facility in Racine, Wisconsin. (Pls.' Resp. Ex. 17.) Paul Crist subsequently sent several letters on behalf of "CNH" to Richard Atwood at the UAW, discussing "CNH's" decision to close the Racine Foundry.[5] (*Id*. Exs. 18-20.) On July 20, 2003,

---

[4]Moreover, the Court believes that the trier of fact must evaluate the plausibility of this argument.

[5]Notably, these letters, like all letters and public announcements emanating from CNH or CNH Global appear on letterhead bearing the names of both entities, a single address in Racine, Wisconsin, and (where included) a single Internet website address: "http://www.cnh.com." (*See, e.g.,* Pls.' Resp. Exs. 17-20, 23.)

8

*CNH Global* and the UAW initialed a tentative Racine Foundry Shutdown Agreement. (*Id*. Exs. 21A & B.) CNH Global argues that this agreement is insignificant because it was neither ratified nor implemented. (CNH Global's Reply Br. at 5.) The fact that this agreement was neither ratified nor implemented, notably only because the membership rejected it, does not diminish the significance of its indication that CNH Global was the owner of the Racine Foundry and the employer of the individuals working there. At least one Class representative, James Cichanofsky subsequently retired from this facility. (Pls.' Am. Compl. ¶ 9.)

In another context, CNH Global regarded itself as the signatory to the 1998 Central Agreement. In a post-hearing brief submitted in an administrative grievance the UAW filed regarding a Letter of Understanding in the 1998 Central Agreement, CNH Global referred to itself as a signatory to the agreement. (Pls.' Resp. Ex. 22 at UAWR091754.) On May 22, 2002, following the arbitrator's issuance of his opinion and award in the administrative proceedings, Paul Crist wrote a letter to Richard Atwood. (*Id*. at 23.) As CNH Global, not CNH, was the party named in the administrative grievance, it is apparent that Mr. Crist was speaking on behalf of CNH Global in this letter when he wrote:

> In light of the Arbitrator's rulings, the Company is hereby notifying the UAW that pursuant to the Arbitrator's Opinion and Award granting "the right to choose" to the Company, the Company has decided that it will only accept a "secret ballot election" and not a "card check" . . .
>
> The date of the Opinion and Award was April 12th, which

> means the election must occur on or before July 11, 2002.
> Due to the previously scheduled summer shutdown and the
> July 4th holiday period, the Company proposes Wednesday,
> July 3, 2002, for the date of the election.

(*Id.*)  This letter raises a question about the veracity of CNH Global's assertion that it only has three employees, all of whom are located in the Netherlands, as it would appear that the employees who CNH Global has decided will engage in a secret ballot election are union-represented employees of CNH Global who are employed at one or more of its facilities.  (CNH Global's Br. in Supp. Mot. at ¶ 23 & Ex. D at 64.)

CNH Global's assertion that it only has three employees, all located in the Netherlands, also appears at odds with a company document dated December 2002, entitled "Summary Annual Report for CNH EMPLOYEE GROUP INSURANCE PLAN."  (Pls.' Resp. Ex. 26.)  The document reads, in part:

> This is a summary of the annual report of the CNH Employee
> Group Insurance Plan . . . for the period January 1, 2001
> through December 31, 2001. . . .
> . . .
> **Plan Benefit Information**
>
> The plan is a welfare benefit plan that provides certain health,
> life insurance, disability income and long-term benefits to
> substantially all active and retired hourly employees of *CNH
> Global*. . . .
> . . .
> **Your Rights to Additional Information**
>
> You have the right to receive a copy of the full annual report,
> or any part thereof, on request. . . .
> To obtain a copy of the full annual report or any part thereof,
> write to *CNH Global, 700 State Street, Racine, WI 53404*. . . .
> . . .

>You also have the legally protected right to examine the
>annual report at the main office *of the plan (CNH Global*, 700
>State Street, Racine, WI 53404) . . .

(Pls.' Mot. Ex. 26 (emphasis added).) A Summary Annual Report in December 2003 also directs individuals interested in receiving a copy or examining the annual report for the plan to write to or visit "the Corporate Benefits Office, CNH Global, 700 State Street, Racine, WI 53404." (*Id*.) In the administration of retiree health insurance benefits, corporate benefits representatives sent letters from the same Racine, Wisconsin address.[6] (*See, e.g.,* Pls.' Resp. Ex. 27.)

Finally, an attorney representing CNH Global from a law firm in Chicago, Illinois, referred to the company as the entity in control of the East Moline facility. (*Id*. Ex. 12.) In another set of letters, Gail Olsen, an attorney from a different law firm located in Milwaukee, Wisconsin, identifies herself as representing "*CNH Global N.V. (formerly Case Corporation/J.I. Case Company*) . . ." (*Id*. Ex. 28 (emphasis added).) In these letters, Ms. Olsen also indicates that CNH Global is the "Plan Administrator" for the pension plan formerly known as the Case Corporation Hourly Employees' Pension Plan. (*Id*.) A rational trier of fact could conclude that CNH Global also administers the plan providing retiree health insurance benefits.

---

[6]Some of these letters were sent by Sharon Schaeffer. In an internal e-mail concerning an employee's disability retirement benefits, Ms. Schaeffer is identified as working for CNH Global. (Pls.' Mot. Ex. 27 at CNHA008472-CNHA008473.) In at least one letter sent to a retiree, Ms. Schaeffer also is identified as working for "CNH Global - Benefits." (*Id*. at CNHA021806.)

Plaintiffs offer substantial additional evidence to negate CNH Global's arguments in its motion for summary judgment. Based only on the evidence discussed herein– which represents only a portion of the evidence submitted by Plaintiffs– the Court finds a genuine issue of material fact with regard to whether CNH Global is a proper defendant in this litigation.

Accordingly,

**IT IS ORDERED**, that CNH Global's motion for summary judgment is **DENIED**.

                                      s/PATRICK J. DUGGAN
                                      UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record