UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE PIDDE,
JAMES CICHANOFSKY, ROGER
MILLER, GEORGE NOWLIN, and
RONALD HITT, on behalf of themselves
and a similarly situated class,

      Plaintiffs,                                 Case No. 04-70592

v.                                               Honorable Patrick J. Duggan

CNH GLOBAL N.V. and
CNH AMERICA LLC,

      Defendants.
                                      /

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 20, 2008.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Plaintiffs filed this lawsuit on February 18, 2004, pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs, on behalf of themselves and a Class of similarly situated persons, sought a declaratory judgment that they and their surviving spouses have a vested right to lifetime health care benefits from Defendants CNH America LLC

("CNH") and CNH Global N.V. ("CNH Global"). The parties subsequently filed cross-motions for summary judgment as to liability, which the Court resolved in Plaintiffs' favor in opinions and orders issued on August 29, 2007.[1] In accordance with the Court's decisions, on February 15, 2008, Judgment was entered "declar[ing], adjudg[ing], and decree[ing] that the plaintiff class is hereby entitled to vested lifetime retiree health care benefits from CNH America LLC as provided for in the labor agreements in effect at the time of their or their deceased spouses' retirement . . ." (Doc. 227.) Presently before the Court is Plaintiffs' motion for attorneys' fees, filed initially on February 29, 2008 and revised and supplemented on March 28, 2008.

**Plaintiffs' Request and Defendants' Response**

In their motion, Plaintiffs seek attorneys' fees pursuant to ERISA, 29 U.S.C. § 1132(g)(1). Plaintiffs request an award consisting of $1,541,936.25 in attorneys, law clerks, and paralegal fees and $55,430.09 in costs incurred in this litigation.[2] With regard

---

[1]The parties' summary judgment motions left open the issue of whether CNH Global was liable for the costs of Plaintiffs' retiree health insurance benefits. The parties entered a stipulated order on January 14, 2008, resolving this remaining issue. (Doc. 226.) Pursuant to the parties' stipulation, CNH Global "agrees to unconditionally guarantee the performance of any contractual and legal obligations of CNH America LLC to members of the *Reese* class encompassed by the Court's liability ruling in this case in the event that CNH America defaults on such obligations." (*Id.* at ¶ 3.) The stipulation further provides that the judgment in this case will render CNH America primarily liable to members of the Class and CNH Global liable as a guarantor. (*Id.*)

[2]In their initial motion, Plaintiffs sought costs in the amount of $71,663.63; however, the Clerk of the Court subsequently taxed costs against Defendants in the amount of $12,781.12. (Doc. 235.)

2

to the former amount, Plaintiffs seek the following hourly rates for the attorneys, law clerks, and paralegals who worked on this matter:

|  |  |
|---|---|
| Roger J. McClow & Samuel C. McKnight | $400 |
| Other Partners | $300 |
| Associate William J. Karges | $225 |
| Law Clerks | $ 90 |
| Paralegals | $ 90 |

(Doc. 236 at 14.) Attached to an affidavit submitted by Mr. McClow are detailed records of the 5,436.50 hours expended by Plaintiffs' attorneys, law clerks, and paralegals during the course of this litigation. (*Id.*, Ex. 1.) These records also include limited hours billed for time expended on a declaratory judgment action that CNH America filed against the UAW in the Eastern District of Wisconsin ("Wisconsin action"), which was subsequently dismissed in light of the present matter. Also attached to Mr. McClow's affidavit is a detailed record of the expenses Plaintiffs incurred in this litigation. (*Id.*)

Defendants oppose Plaintiffs' request for attorneys' fees and costs, contending first that Plaintiffs litigated this case purely as a matter arising under the LMRA, which does not allow such an award. (Doc. 239, citing *Knollwood Cemetery Ass'n v. United Steelworkers of Am.*, 789 F.2d 367, 369 (6th Cir. 1986).) Defendants alternatively argue that the factors governing an award of attorneys' fees under ERISA, *see infra*, militate against Plaintiffs. Finally, Defendants argue that, if the Court concludes that an award of attorneys' fees is appropriate, Plaintiffs' claimed amount is excessive. Specifically, Defendants object to Plaintiffs' request for fees pertaining to the Wisconsin action. In a footnote, Defendants also object to any fees and costs incurred in the related case of

3

*Yolton v. El Paso Tennessee Pipeline*, No. 02-75164 (E.D. Mich.) and assert that Plaintiffs' billing records are too vague to determine whether the fees sought are appropriate. (Doc. 239 at 9 n.4.)

## Applicable Law

Section 502(g) of ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and cost of action to either party." 29 U.S.C. § 1132(g)(1). The Sixth Circuit has interpreted this section as conferring "broad discretion on a district court in making the award of attorney's fees." *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). In *King*, the Sixth Circuit set forth the following factors for courts to consider when deciding whether to award attorney's fees under ERISA:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* at 669 (citations omitted). No single factor is determinative. *Wells v. U.S. Steel*, 76 F.3d 731, 736 (6th Cir. 1996) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991)).

## Analysis

### Whether Plaintiffs are entitled to an Award Under § 1132(g)(1)

4

As an initial matter, the Court believes that if an analysis of the *King* factors warrants an award of attorneys' fees in this case, Plaintiffs are entitled to an award. In other words, the Court does not agree with Defendants that this case was litigated purely as a matter arising under the LMRA. In Count II of their complaint, brought pursuant to § 502(a)(1)(B) of ERISA, Plaintiffs sought to clarify their rights to benefits under an employee welfare benefit plan as participants or beneficiaries of that plan. (Doc. 1 at ¶ 3.) There can be no serious dispute that this claim was litigated and decided in Plaintiffs' favor and the Court fails to understand Defendants' assertion that Plaintiffs' claim to vested benefits would have failed under an ERISA analysis.[3]

In fact, in cases similar to this one– where the plaintiffs brought ERISA and LMRA claims based on the defendants' failure to provide welfare benefits and the courts analyzed the claims in the same manner as this Court did (i.e., by applying the principles set forth in *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983)– attorney's fees were awarded pursuant to ERISA. *See, e.g., UAW v. Loral Corp.*, 873 F. Supp. 66 (N.D. Ohio 1995), *aff'd* 1997 WL 49077 (6th Cir. Feb. 3, 1997). Even in cases where the courts held that the plaintiffs were not entitled to an attorney's fee award, it was not because the

---

[3]While Plaintiffs conceded that "ERISA does not mandate the vesting of welfare benefits, as Defendants point out, Plaintiffs maintained that the parties to a collective bargaining agreement nevertheless can agree that such benefits vest. The inquiry relative to that determination (i.e. the intent of the parties to the relevant labor agreement) is identical under ERISA and the LMRA and depends upon the application of traditional rules of contract interpretation to the extent those rules are consistent with federal labor policies.

courts concluded that the plaintiffs' lawsuit was litigated purely as a matter arising under the LMRA. *See, e.g., Maurer v. Joy Technologies, Inc.*, 212 F.3d 907 (6th Cir. 2000) (applying *King* factors but deciding that factors did not favor an award of attorney's fees under ERISA); *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991) (same).

Turning to the *King* factors, Plaintiffs do not contend that Defendants engaged in bad faith. (Doc. 236 at 2.) Nevertheless, the Sixth Circuit has held that a finding of bad faith is not a necessary prerequisite to an award of attorney's fees under § 1132(g), particularly in a case between an employer and retired workers. *Armistead*, 944 F.2d at 1304; *Loral*, 1997 WL 49077, at *4. As the court reasoned in *Loral*:

> [W]e stress the peculiar vulnerability of retired employees. No longer a direct participant in the collective bargaining process that protects the interests of active employees, a retired worker has only one recourse against an ex-employer who breaches its promise to provide benefits: litigation. This litigation takes money and time– and retirees may have little of either. A self-interested employer may discover that a good deal of money can be saved by illegally withholding an amount of benefits just below the amount that would prompt its retirees, either out of outrage or fiscal interest, to sue. Since the applicable laws are complex, proving the bad faith of such employers may be difficult. But our law of attorney's fees should recognize the imbalance of power peculiar to the relationship between an employer and retired workers, and shift costs accordingly.

1997 WL 49077, at *4; *see also Armistead*, 944 F.2d at 1304 (citing *Ford v. New York Cent. Teamsters Pension Fund*, 506 F. Supp. 180, 182 (W.D.N.Y. 1980) ("purpose of fee-shifting under ERISA is to "enable pension claimants to obtain competent counsel and to distribute the economic burden of litigation in a fair manner.")

The Court finds that the remaining *King* factors favors an award of attorneys' fees in this case. As to the second factor – i.e. the opposing party's ability to satisfy an award of attorney's fees award– Plaintiffs assert that "Defendants have never claimed that they are in financial difficulty or cannot satisfy an attorney fee award." (Doc. 236 at 5.) Plaintiffs further note that CNH Global is a multibillion dollar corporation. Defendants do not dispute Plaintiffs' assertions. With regard to the third factor, as the Sixth Circuit noted in *Wells v. United States Steel Corp.*, 76 F.3d 733736-37 (1996), the failure to award Plaintiffs their attorneys' fees may deter other retirees from pursuing their rights under ERISA, due to the expense of such litigation, and may encourage employers to engage in conduct to prolong litigation. Fourth, regardless of whether Plaintiffs sought to resolve significant legal questions regarding ERISA, Plaintiffs undoubtedly sought to confer a common benefit on a large class of participants and beneficiaries of an ERISA plan. Finally, Plaintiffs prevailed on the dispositive issue in this case as well as most of the other issues which the parties vigorously litigated (e.g., Defendants' motion to transfer venue and Plaintiffs' motion for class certification).

Thus the Court concludes that Plaintiffs' are entitled to an award of attorneys' fees and costs pursuant to § 1132(g)(1).

**The Amount of the Award**

The Court must apply the "lodestar" approach in determining the amount of attorneys' fees and costs that should be awarded to Plaintiffs, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his [or her] court-

ascertained reasonable hourly rate. Defendants do not challenge the reasonableness of the hourly rates charged by Plaintiffs' attorneys, law clerks, and paralegals, and the Court finds those rates reasonable based on the supporting documents submitted by Plaintiffs. (Doc. 236 at 12 (cases cited therein); Exs. 6, 7-14.) The only objection to the number of hours expended on the case by Plaintiffs' attorneys, paralegals, and law clerks that Defendants raise in the text of their response brief is that those hours include time spent on the Wisconsin action. Plaintiffs fail to convince the Court that fees incurred in a different civil action are recoverable in the pending matter under § 1132(g)(1) and thus the Court will reduce the fee award accordingly.

Defendants contend that the fees attributable to the Wisconsin action total at least $114,987.50. (Doc. 239 at 9.) Plaintiffs respond that the amount actually is approximately $88,000. (Doc. 240 at 6 n.4.) The Court is not able to determine which amount is correct based on the billing records submitted. Although the Court is able to identify some billing entries that relate specifically to the Wisconsin action, it appears that there are additional hours which the Court is unable to identify based on the descriptions provided by Plaintiffs' attorneys, paralegals, and law clerks. It is incumbent upon the party requesting a fee award to justify the size of its award and document the appropriate hours expended and hourly rates. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835 (2001). The Court therefore will accept Defendants' figure ($114,987.50) as the amount to reduce

8

Plaintiffs' award.

In Defendant's brief in opposition to Plaintiffs' revised and supplemental motion to attorneys' fees, Defendants include a number of footnotes – all of which violate the Local Rules for the Eastern District of Michigan. L.R. 5.1 provides that the format of papers presented for filing, specifically subsection (a) states that:

> Type size of all text and <u>footnotes</u> must be no smaller than 10 characters per inch (non-proportional) or 12 point (proportional) (*emphasis added*).

The arguments made in the footnotes will therefore not be considered by the Court. The Court does not believe that a party should present arguments in their briefs that blatantly violate the Court rules and then expect the Court to consider those arguments.

Furthermore, to the extent that the Court can decipher the arguments, it <u>appears</u> that Defendants are expecting the Court to search Plaintiffs' billing entries to determine the specific billing entries that Defendants find insufficient.

As one district court noted in responding to a party's general objection that the billing entries of the movant's attorney were "vague":

> It is, in general, inappropriate for [the party objecting to a fee request] to merely cite 'examples,' and effectively delegate to the Court the work of analyzing all billing entries line-by-line in an effort to identify other entries that [the party] might find similarly objectionable. . . . It is particularly inappropriate here, because – quite apart from the trespass on the Court's time – the Court cannot know what the [party] considers to be unduly "vague." Federal judges are not required to be telepathic.

*Former Employees of BMC Software, Inc. v. U.S. Secretary of Labor*, 519 F. Supp. 2d 1291, 1326 n.51 (Ct. Int'l Trade 2007). Another district court judge has expressed it this way:

"Defendants still have largely left the Court to 'hunt for truffles' by omitting any detailed, line-by-line objection to specific items in Plaintiff's detailed fee petition." *APC Filtration, Inc. v. Becker*, No. 07-1462, 2008 WL 548765, at *2 (N.D. Ill. Feb. 25, 2008) (quoting *Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record").

Therefore,

**IT IS ORDERED**, that Plaintiffs are **AWARDED** attorneys' fees in the amount of $1,426,948.75 ($1,541,936.25 less $114,987.50) plus $55,430.09 in costs.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:

Roger J. McClow, Esq.  
Norman C. Ankers, Esq.  
Bobby R. Burchfield, Esq.