UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE PIDDE,
JAMES CICHANOFSKY, ROGER MILLER,
GEORGE NOWLIN and RONALD HITT, on                      Hon. Patrick J. Duggan
behalf of themselves and
a similarly situated class,                            Case No. 04-70592

    Plaintiffs,

v.                                                     **Class Action**

CNH GLOBAL N.V., formerly
known as Case Corporation,
and CNH AMERICA LLC,

    Defendants.

_____/

| | |
|---|---|
| Roger J. McClow (P27170) | Norman C. Ankers (P30533) |
| KLIMIST, McKNIGHT, SALE, | HONIGMAN MILLER |
| McCLOW & CANZANO, P.C. | SCHWARTZ AND COHN LLP |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 400 Galleria Officentre, Suite 117 | 2290 First National Building |
| Southfield, MI  48034 | 660 Woodward Avenue |
| (248) 354-9650 | Detroit, MI 48226 |
| | (313) 465-7000 |
| | |
| | Bobby R. Burchfield, Esq. |
| | McDERMOTT WILL & EMERY |
| | Attorneys for Defendants |
| | 600 Thirteenth Street, N.W. |
| | Washington, D.C.  20005 |
| | (202) 756-8000 |

_____/

**PLAINTIFFS' REPLY IN SUPPORT OF
SECOND MOTION FOR ATTORNEY FEES**

I.      INTRODUCTION

Since June 20, 2008, when this Court entered an Order awarding Plaintiffs their attorney fees (R.242), Plaintiffs have defended an appeal on the merits, and on remand, obtained a judgment that *every* Class Member is entitled to vested, unalterable health care benefits for life. Plaintiffs are entitled to attorney fees for their efforts to protect, preserve and expand their initial victory. And, Plaintiffs are entitled to the current rate for attorney fees for all services performed to date.

II.     ARGUMENT

      A.      **THIS COURT HAS JURISDICTION TO ADDRESS PLAINTIFFS' MOTION**

CNH first asserts that its appeal of this Court's March 3, 2011 Opinion precludes consideration of Plaintiffs' motion for a higher hourly rate. In support, CNH cites *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 327 (6th Cir. 1993). (Response at 2). But, *Pittock* simply states the general rule; it does not address attorney fee awards. As the Supreme Court stated in *White v. New Hampshire Department of Employment Security*, 455 U.S. 450, 451, 102 S. Ct. 1162 (1982), an award of attorney fees "is uniquely separable from the cause of action to be proved at trial" and involves an inquiry that cannot even begin until one party has "prevailed."

Here the Sixth Circuit vacated the attorney fee award because of its decision on the merits and directed this Court to "decide in the first instance what award is appropriate in the context of its final decision." *Reese v. CNH America LLC*, 574 F.3d 315, 328 (6th Cir. 2009). The fact that this Court decided, *sua sponte*, to reinstate the attorney fee award in the same order in which it decided the merits does not change the fact that the attorney fee "inquiry" began with that decision.

Rule 54 of the Federal Rules requires that a claim for attorney fees must be made by motion and within 14 days after entry of judgment. Fed. R. Civ. Pro. 54(d)(2)(A) and (B)(i). In other words, Plaintiffs had 14 days after the entry of the judgment determining that they prevailed on the

merits to invoke the attorney fee inquiry. Plaintiffs complied with the Federal Rules in bringing the pending motion. They cannot be denied their right to do so regardless of when CNH filed its appeal.[1]

### B.  PLAINTIFFS ARE ENTITLED TO FEES FOR ALL SERVICES PERFORMED

CNH asserts that Plaintiffs are not entitled to attorney fees for services performed on appeal. CNH ignores the focus of the inquiry – Plaintiffs' *ultimate* success on their claims. In *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933 (1983), a case cited by CNH, the Court stated:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters. (citation and footnote omitted).

*Accord Imwalle v. Reliance Medical Prodcuts, Inc.*, 515 F.3d 531, 551-52 (6th Cir. 2008); *DiLaura v. Township of Ann Arbor*, 471 F.3d 666, 673 (6th Cir. 2006)(abuse of discretion to reduce fee when plaintiff obtained complete relief).

In *Deja Vu v. Nashville and Davidson County*, 421 F.3d 417 (6th Cir. 2005), the plaintiff filed four separate fee applications with the district court, two for work before the trial court, one for "fees associated with the appeal" to the Sixth Circuit and one after the Supreme Court denied certiorari. 421 F.3d at 421. The district court granted all four motions and the defendant appealed. The Sixth Circuit affirmed, citing *Hensley* for the proposition that prevailing parties who obtain "excellent results," as plaintiffs did, are entitled to a "fully compensatory fee" even if they were

---

[1] CNH's premature appeal is treated as filed "on the date of and after the entry" of the Judgment, that is May 11, 2011. Fed. R. App. Pro. 4(a)(2). On April 9, 2011, more than a month before the Judgment was entered, Plaintiffs did informed this Court notice of its intent to "seek a higher hourly rate that they sought three years ago . . . ." (R.312 at 1).

unsuccessful on some issues.

As *Deja Vu* makes clear, for purposes of attorney fees, no litigation is over until there is a final result. The final result is what "matters" because the final result determines who ultimately prevails. 421 F.3d at 423. Up to this point, Plaintiffs here have obtained an "excellent result" and *that* "result is what matters." To obtain that result, Plaintiffs had to defend against CNH's appeal and litigate this case on remand. Under *Hensley*, it does not matter that Plaintiffs lost their jury trial argument or that the Sixth Circuit remanded the case for further proceedings. Plaintiffs have been entirely successful on their basic claims -- this Court's May 11, 2011 Judgment provides all Class Members with vested, unalterable benefits. All of the time Plaintiffs "reasonably expended on the litigation" must be included in a "fully compensatory fee." *Hensley*, 461 U.S. at 424.

In *Gierlinger v. Gleason*, 160 F.3d 858, 881-82 (2d Cir. 1998), the court held that it was an abuse of discretion for the district court to deny plaintiff's request for attorney fees for work performed on an appeal that was only partly successful. The court stated that plaintiff's eligibility for attorney fees "does not depend on success at interim stages of the litigation, but rather depends on the ultimate outcome of the litigation." *Accord Marisol v. Giuliani*, 111 F. Supp.2d 381, 392-93 (S.D.N.Y. 2000)(attorney time spent on unsuccessful motion to dismiss interlocutory appeal compensable). Here, of course, Plaintiffs' work on appeal was critical to their ultimate outcome. The Sixth Circuit *affirmed* this Court's judgment that Plaintiffs had vested, lifetime benefits.

Because CNH has appeared again, the May 11, 2011 Judgment is not final. By definition, until there is an *ultimate* outcome, there can be no final decision on what constitutes a "fully compensatory fee." For now, however, this Court must determine what is a "fully compensatory fee" for the interim results that Plaintiffs have obtained as of the entry of the May 11, 2011

3

Judgment, *including* work done on appeal.[2]

### C. PLAINTIFFS ARE ENTITLED TO THE CURRENT HOURLY RATE FOR ALL WORK PERFORMED

Because Plaintiffs' current motion for attorney fees is one based on the "results" obtained through the May 11 Judgment, the "lodestar" would be the number of hours reasonably expended to date times the market hourly rate. *Hensley*, 461 U.S. at 433. For some time, the current market rate for experienced lawyers representing retirees in class actions to secure collectively bargained health care benefits has been $475.00 an hour. (R.317, Ex. 3-6). Although CNH disparages these awards, they were approved as the relevant *market rate* for plaintiff class action lawyers, with similar experience, in litigation that was less complex than this litigation has been. These awards follow earlier awards in the same litigation where the approved market rate progressed from $390.00 to $450.00 to the current rate of $475.00 per hour, awards that this Court reviewed in determining that Plaintiffs' prior request was reasonable. (R.242 at 8).

CNH has not shown that the current market rate is anything less than $475.00, the rate that these district courts, *in this district*, have long approved for experienced lawyers in the same kind of class action litigation. CNH argues that Plaintiffs' only sought for $400.00 three years ago, even though other courts had awarded $450.00 per hour at the time. But, CNH *refused* to pay Plaintiffs the attorney fees awarded three years ago. It appealed both the merits and the award and, as a result, the Sixth Circuit vacated the fee award and remanded for this Court to decide what award is appropriate. Plaintiffs are not bound to accept the hourly rate they would have accepted three years ago. They are simply requesting that the current market rate apply to *all* attorney services expended to date to obtain the May 11, 2011 Judgment.

---

[2]Plaintiffs have not requested compensation for work done on the pending appeal, only the time spend obtaining the May 11, 2011 Judgment (and work on this motion).

4

### D. AS IN THE INITIAL AWARD, THE *WELLS* FACTORS FAVOR PLAINTIFFS

In its initial decision, this Court held that Plaintiffs were entitled to attorney fees under *Wells v. United States Steel Corp.*, 76 F.3d 733, 736-37 (6th 1996). (R. 242 at 6-7). Since then, Plaintiffs have secured their initial victory and are entitled to a fee award for those efforts.

In any case, nothing has changed. Three of the five *Wells* factors are not in dispute. First, CNH agrees that it has the ability to satisfy an attorney fee award. Second, Plaintiffs have indisputably conferred a significant common benefit on *every* Class Member through the May 11, 2011 Judgment. Third, as to the relative merits of the parties' positions, Plaintiffs prevailed on each of the dispositive issues identified by the Sixth Circuit on remand as well as for employees whose retirement is covered by the East Moline Shutdown Agreement. This Court expressly found that CNH had provided "no evidence" that the UAW had ever agreed to a reduction in benefits for Class Members, a prerequisite for a finding that benefits could be altered. (R.304 at 23).

As to the deterrence factor, this Court cited *Wells* in its initial award for the proposition that the failure to award Plaintiffs attorney fees might deter other retirees from pursuing their rights and may encourage other employers to prolong litigation. (R.242 at 7). That same holds true today.

CNH protested this Court's conclusion on the deterrence factor (and other factors) on appeal. (CNH's 12/8/08 Principal Brief, COA No. 08-1912 at 22-23). The Sixth Circuit disregarded CNH's protest and rejected CNH's principal point on appeal, its Section 301/ERISA argument. 574 F.3d at 328. The Court then emphasized that "the decision to award attorney fees is placed in the sound discretion of the trial court." Since Plaintiffs' cost of this litigation has increased dramatically since this Court's initial fee decision, the *Wells* "deterrence" analysis is even more pertinent now than it was three years ago. The only way to make attorney fees a "deterrence" is to award them. The

5

failure to award fees will send yet another message to employers that they have nothing to lose.

As to the bad faith or culpability factor, this Court has already concluded that bad faith is not a requirement for an award of attorney fees, "particularly in a case between an employer and retired workers." (R.242 at 6). If bad faith were required, ERISA's fee shifting provision would be redundant because courts have the inherent authority to sanction attorneys for bad faith litigation. *Red Carpet Studios v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006); *Sullivan v. William A. Randolph, Inc.*, 505 F.3d 665, 671 (7th Cir. 2007) (bad faith factor "owes nothing to fee-shifting provision of ERISA").

Plaintiffs nevertheless pointed to certain of CNH's actions as indicative of culpability. CNH replied with a vengeance, in the process simply validating Plaintiffs' points. Perhaps the most egregious example is CNH's continuing refusal to acknowledge the culpability of its conduct with respect to the Motion for Approval. In that Motion, CNH stated unequivocally "Both plans provide prescription drug coverage" and that "Plaintiffs . . . will receive substantially the same (if not identical) health care benefits under the 2005 Group Benefit Plan." (R.271, Brief at 12). CNH failed to inform the Court that, under the 2005 GBP, prescription drug benefits for *Medicare-eligible* retirees had been eliminated three years earlier.

When Plaintiffs took CNH to task for its lack of candor, CNH was unrepentant. In its Reply, CNH informed the Court that there was no reason to disclose CNH intended to eliminate prescription drug benefits because Medicare-eligible retirees had access to Medicare Part D benefits, making prescription drug benefits under the 1998 Group Benefit Plan "superfluous." (R.287 at 1).

Of course, CNH's assertion was nonsense. Medicare Part D plans do not "duplicate" prescription drug benefits under the 1998 PPO Plan or make the negotiated benefits "superfluous." The existence of Medicare Part D certainly did not relieve CNH of its obligation to be candid with

6

the Court about a matter as significant as its proposed elimination of prescription drug benefits.

The Center for Medicare and Medicaid Services ("CMS") states in Medicare & You 2011: "To get Medicare prescription drug coverage, you must join a plan run by an insurance company or other private company approved by Medicare. Each plan can vary in costs and drugs covered" (Ex. 1 at 72). According to CMS, a standard Part D Plan 1) requires a premium (the base average is $32.34); 2) has a $310.00 deductible; 2) has co pays; and 4) has a coverage gap that ends when an insured has spent $4,550.00 in out of pocket costs – not including the premium. After the coverage gap ends, an insured pays a small co payment for each drug until the end of the year. (*Id*. at 75-79).    Retirees who purchase a Part D Plan can pay nearly $5,000.00 a person and nearly $10,000.00 for a couple in out of pocket costs every year.  This Court has held that a monthly premium of $501 would threaten irreparable harm. *Yolton v. El Paso Tennessee Pipeline Co.*, 318 F. Supp.2d 455, 471 (E.D. Mich. 2003).  A plan of benefits that threatens irreparable harm cannot render the prescription drug plan that CNH is contractually obligated to provide "superfluous."

In its Response here, CNH remains unrepentant.  This time, it accuses Plaintiffs of "ignoring" a Letter of Understanding to the 1998 Group Benefit Plan, which, according to CNH, justifies its failure to inform the Court of its intention to *eliminate* prescription drug benefits.  There are two good reasons why Plaintiffs "ignored" this Letter of Understanding.  The Letter does not apply and CNH never before argued that it did.

This letter provides that, if a federal or state health security act is enacted to provide, *inter alia*, prescription drug benefits, "which duplicate of may be integrated with the benefits of the Group Benefit Plan," then "the benefits under the Group Benefit Plan will be modified so as to integrate or eliminate the duplication of such benefits with the benefits provided by such Federal or State law." (R.273, Ex. Reese Decl., Ex. 50 at 78).

7

The Letter of Understanding does not even arguably apply to Part D prescription drug benefits. A Medicare Part D plan does not "duplicate" the benefits under the 1998 Group Benefit Plan (at least not until an insured has spent nearly $5,000.00 a year in out of pocket expenses). Under the 1998 Group Benefit Plan, unlike Part D, there is no monthly premium; there is no deductible; there is no variance in drugs covered or the cost of drugs; there is no coverage gap.

In yet another candor lapse, CNH omits the following sentence from the Letter of Understanding:

> This understanding is conditioned on the Company obtaining and maintaining such governmental approvals as may be required to permit the integration of the benefits under the Group Benefits Plan with the benefits provided by any such law. (*Id*.)

In other words, the Letter explicitly contemplates that CNH will take affirmative steps to *integrate* any statutory benefits with the 1998 Group Benefit Plan and *maintain* the Group Benefit Plan thereafter. The Letter explicitly *precludes* CNH from abandoning its obligations to provide prescription drug benefits under the 1998 Group Benefit Plan.

CNH makes the most amazing argument based on the Letter of Understanding – "Thus, even before *Reese*, the change to the prescription drug benefits to conform to Medicare Part D was mandated by the controlling contract." (R.318 at 8-9). If that were so, why did CNH wait more than five years *after* Medicare Part D became effective to first make the argument? How does elimination of the contractual prescription drug plan "conform" to Medicare Part D? How was *elimination* of prescription drug benefits mandated by the controlling contract that requires CNH to provide them? CNH is in an admittedly difficult position. It does not want to admit any misconduct, so it invents seriatim justifications that simply compound its misconduct. In an attempt to ward off further criticism, CNH accuses *Plaintiffs*' counsel (by name) of being "unprofessional." Plaintiffs will not be deterred. CNH certainly should be – by an attorney fee award if nothing else.

8

Plaintiffs' second major example of CNH's culpability is Mr. Macey's "expert testimony" which Plaintiffs described at length in their Response to CNH's Motion for Approval of Changes. (*See* R.278 at 15-20). To illustrate their point, Plaintiffs focused on Mr. Macey's " testimony" that, on the one hand, the 1998 PPO Plan resulted in "a significant loss of value" to Plaintiffs (as purported "proof" that benefits had been "diminished" in 1998) and, eighteen paragraphs later, his "testimony" that, under the same 1998 PPO Plan, CNH paid 100% of the premium costs and 98% of the plan usage costs (as purported "proof" that the 1998 PPO Plan was vastly superior to other current employer plans). (R.271, Motion for Approval, Ex. 1, Macey Decl. ¶¶ 9, 27.c).

Plaintiffs' point was that the 1998 Plan, which pays 100% of the premium costs and 98% of the usage costs, cannot be a "significant reduction in value" to participants compared to the Indemnity Plan, a plan with serious limitations. The further point is that Mr. Macey was willing to "testify" to anything to support CNH (in exchange for a fee of hundreds of dollars an hour), even if his "testimony" contradicted itself.

Nothing can rehabilitate Mr. Macey and CNH hardly tries. In its Response, CNH pretends not to understand the relevant points. Instead, CNH contends that "Plaintiffs cannot deny, however, that the move to manage care *reduced* the cost of the benefits to CNH America." (Response at 7). Plaintiffs never contended otherwise, but that is clearly *not* the point.[3]

The significance of this discussion is that, through tactics such as these, CNH tried to convince this Court that the massive benefit cuts CNH sought were "reasonably commensurate" with the benefits in place when Plaintiffs retired. Plaintiffs believe that this kind of continuing culpable conduct requires deterrence.

---

[3] The parties were able to agree to the 1998 PPO Plan *because* it improved benefits for retirees *and* saved CNH money.

9

**III.     CONCLUSION**

For the reasons stated, Plaintiffs' counsel respectfully requests that this Honorable Court award them attorney fees and costs in the total amount they sought in their Motion, **$2,223,893.60**, plus additional fees of **$7,362.50** for the 15.5 hours of work (at $475.00/hr.) expended on this Reply.

                                      Respectfully submitted,

                                      KLIMIST, McKNIGHT, SALE,
                                      McCLOW & CANZANO, P.C.

                                      By:  /s/ Roger J. McClow
                                      Roger J. McClow (P27170)
                                      Attorneys for Plaintiffs
                                      400 Galleria Officentre, Suite 117
                                      Southfield, MI 48034
                                      (248) 354-9650     Fax: (248) 354-9650
Dated:  June 24, 2011                  Email: rmcclow@kmsmc.com

## CERTIFICATE OF SERVICE

      I hereby certify that on June 24, 2011, I electronically filed Plaintiffs' Motion for Attorney Fees with the Clerk of the Court using the ECF system.

                          KLIMIST, McKNIGHT, SALE,
                          McCLOW & CANZANO, P.C.

                          By: /s/ Roger J. McClow
                          Roger J. McClow (P27170)
                          Attorneys for Plaintiffs
                          400 Galleria Officentre, Suite 117
                          Southfield, MI 48034
                          (248) 354-9650    Fax: (248) 354-9650
                          Email: rmcclow@kmsmc.com

Dated: June 24, 2011

P:\RHC Cases\Case Corp\Case - Reese litigation\Pleadings\reply in support of motion for attorney fees after remand 110622.wpd