# EXHIBIT 1

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Dusseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Bobby R. Burchfield
Attorney at Law
bburchfield@mwe.com
+1 202 756 8003

March 1, 2013

BY E-MAIL

Darcie R. Brault
McKnight, McClow, Canzano, Smith & Radtke, P.C.
400 Galleria Officentre, Suite 117
Southfield, Michigan 48034-8460

Dear Darcie:

This letter responds on behalf of CNH America LLC and CNH Global N.V. (collectively "CNH") to the questions set forth on behalf of Plaintiffs in your letter dated February 20, 2013.

**1.   What are the differences between the 2005 Group Benefit Plan (GBP) previously produced and the proposed plan as defined in footnote 1?**

It has been—and continues to be—CNH's intent to update Plaintiffs' medical and prescription drug benefits to match those enjoyed by more recent UAW-represented CNH retirees. The proposed plan was crafted in large part by updating the summary plan description for Plaintiffs' current benefits. There are, therefore, differences between CNH's proposed plan and the 2005 Group Benefit Plan. Most of the differences fall into three basic categories. *First*, the dental, hearing, vision, and life insurance benefits in the proposed plan should not differ from those Plaintiffs' currently receive, because CNH is not proposing changes to those benefits. *Second*, the proposed plan reflects changes required by legislation enacted since the 2005 GBP was agreed to by CNH America and the UAW. Even Plaintiffs' current benefits already reflect these legislative changes. *Finally*, as set forth in the proposed plan, Plaintiffs' monthly premiums will be less than those set forth in the 2005 GBP, because CNH is proposing that Plaintiffs begin paying premiums at a lower starting point than employees who retired under the 2005 GBP.

**2.   With respect to the differences between the 2005 GBP and the proposed plan that we have identified, please confirm the following:**

  **A.   *Durable Medical Equipment:* In the 2005 GBP, there was a $2,500 annual maximum for durable medical equipment which is missing from the proposed plan. B-7. Please confirm that the proposed plan correctly states the benefit.**

U.S. practice conducted through McDermott Will & Emery LLP.

500 North Capitol Street N.W.  Washington, D.C.  20001-1531   Telephone: +1 202 756 8000   Facsimile: +1 202 756 8087   www.mwe.com

Darcie R. Brault
March 1, 2013
Page 2

    **B.**    *External Prosthetic Devices:* **In the 2005 GBP, there was a $3,000 annual maximum for external prosthetic devices, which is missing from the proposed plan. B-8. Please confirm that the proposed plan correctly states the benefit.**

    **C.**    *Mental Health/Substance Abuse:* **In the 2005 GBP, there was a thirty visit annual maximum which is missing from the proposed plan. B-9. Please confirm that the proposed plan correctly states the benefit.**

    **D.**    *Maximum Lifetime Benefit:* **In the 2005 GBP, there was a lifetime limit on "Out of Network" benefits in the Network Medical Plan and for Non-Network Medical Plan benefits. In the proposed plan, there is "no limit" on Out of Network benefits and Non-Network benefits are "unlimited." B-7, B-14. Please confirm that the proposed plan correctly states the benefit.**

The proposed plan correctly states these benefits. The annual limits to which Plaintiffs refer—as well as analogous limits in Plaintiffs' current plan—were removed effective January 1, 2011, as a result of federal legislation. *See, e.g.*, Public Health Service Act § 2711, 42 U.S.C. § 300gg-11 (Supp. IV 2010) (restricting lifetime maxima and annual limits).

    **E.**    *Hearing Benefits:* **In the 2005 GBP, it appeared that hearing aids were only covered under Durable Medical Equipment benefits. The proposed plan restores a separate Hearing Aid Benefit. E-1 *et seq.* It also covers hearing aids under Durable Medical Equipment. B-3. Please confirm that the proposed plan correctly states the benefit.**

The proposed plan covers hearing aids as Durable Medical Equipment under participants' medical benefits. The proposed plan's hearing benefits inadvertently retained the Plaintiffs' current hearing-aid coverage. Further, the annual limits on hearing aids are no longer permissible. *See, e.g.,*, PHSA § 2711, 42 U.SC § 300gg-11. *Finally*, CNH intends for hearing aids to be covered only as medical benefits and not as hearing benefits and will make the appropriate correction to the proposed plan.

    **F.**    *Special Age 65 Benefit:* **In the 2005 GBP, there was a Special Age 65 benefit of $100 per month or the actual amount of Part B and D premiums, if less, beginning January 1,2007. Does the proposed plan include a Special Age 65 benefit and, if so, what is the benefit and how will the Part D premium be calculated?**

The "Special Age 65 Benefit" in the 2005 GBP is more properly considered a pension benefit and, accordingly, is not incorporated into CNH's proposed plan for Plaintiffs. CNH is proposing no change to the analogous benefit enjoyed by Plaintiffs, which amounts to $65 per month.

    **G.**    *Dental Plan:* **The 2005 GBP had an annual deductible; an annual maximum for combined services; a $5,000 lifetime benefit for periodontics benefit; and**

Darcie R. Brault
March 1, 2013
Page 3

> a 20% copay for coinsurance payment for Type B services. These items are
> not included in the proposed plan. Cf. C-I with pp. 55-63 of the 2005 GBP.
> Please confirm that the proposed plan correctly states the benefit.

As noted, CNH is proposing no changes to Plaintiffs' dental benefits, which is why the proposed
plan does not include the changes to the UAW dental plan negotiated in 2005.

> **H.**   *Family Medical Plan Enrollment:* **In the 2005 GBP if one spouse was
> Medicare eligible and the other spouse was not, then the non-Medicare
> eligible spouse was enrolled in the Network Plan and the Medicare eligible
> participant was enrolled in the Non-Network Plan. Under the proposed plan,
> if either spouse is Medicare-eligible, both are enrolled in the Non-Network
> Plan. Please confirm that the proposed plan correctly states the benefit.**

The proposed plan is correct.

**3.**   **What is the durational term of the proposed plan? Does CNH propose any fixed
period of time during which it will not modify the proposed plan?**

CNH continues to believe that Plaintiffs have no contractual right to company-provided health
benefits. Nevertheless, CNH recognizes that the current law of this case is that Plaintiffs'
eligibility for CNH-provided health benefits is vested. *Reese v. CNH Am. LLC*, 694 F.3d 681, 683
(6th Cir. 2012). The Sixth Circuit has also held, however, that CNH can alter Plaintiffs' benefits
unilaterally, so long as the alterations satisfy the criteria set forth by the Sixth Circuit. *Id.* at 685–
86. Accordingly, these is no fixed period of time during which CNH is precluded from further
modifying Plaintiffs' benefits. Nevertheless, CNH does not anticipate further changes to
Plaintiffs' benefits through December 31, 2015.

**4.**   **Are there any Class Members who were hired after May 18, 1998? p. A-1?**

No class member was hired by CNH America after May 18, 1998. Indeed, such an individual
would fall outside the class as defined by the Court. (R. 316, Final J. 2.)

**5.**   **Under what circumstances can the proposed plan be terminated? A-5**

As noted, the current law of the case would not permit CNH to eliminate the proposed plan
altogether. *Reese*, 694 F.3d at 683. As discussed above in answer to Question 3, however, CNH is
entitled to modify Plaintiffs' benefits, and the 1998 Group Benefit Plan allows certain benefits to
be eliminated if duplicated by government-provided benefits. (R. 273 Ex. A Ex. 50, 1998
GBP 78.)

Darcie R. Brault
March 1, 2013
Page 4

6. **Can Class Member contributions decrease, and if yes, under what circumstances? B-1**

Plaintiffs' premium contributions can decrease from year to year if the "Premium Equivalent Rates" upon which contributions are based decrease.

7. **How are premium contribution increases calculated? More specifically: Are there separate calculations for pre- and post- Medicare class members? What population is used as a basis for the calculation in the first and succeeding years? Are administrative costs included in the calculations, and if so what administrative costs are considered?**

Retiree total premium equivalents, representing the projected total incurred claims and the associated administrative expenses (i.e., the actual fees paid to CNH's service providers for the processing of Plaintiffs' claims) for each retiree coverage tier in the upcoming year, will be calculated as follows:

- Premium Equivalent Rates will be developed based on actual historical experience and incurred medical and prescription drug claims for the covered group of retirees. This experience will then be projected forward to the rating period and adjusted for any differences in plan design between the experience period and the rating period. Projected costs of administration will then be added to the claims to develop the total rate.

- The benefit adjustment factor will be necessary only in the initial years and will not be used when a sufficient period of actual experience under the new plan design is available for the retiree group. Since rates for the upcoming year must be developed before actual experience is fully known for the current year, we anticipate that we will begin partially reflecting experience under the new plan in the second year, with only partial reflection of adjusted experience in the third year and rates fully based on the new plan experience for the fourth year.

- Rates will be developed separately for Medicare and non-Medicare groups and for the following coverage tiers:

  - Non-Medicare-Eligible Retirees

    - Retiree only

    - Retiree and non-Medicare-eligible spouse

    - Retiree and children

Darcie R. Brault
March 1, 2013
Page 5

- Retiree, non-Medicare-eligible spouse, and children

- Retiree and Medicare-eligible spouse

- Medicare-Eligible Retirees

  - Retiree only

  - Retiree and Medicare-eligible spouse

  - Retiree and children

  - Retiree, Medicare-eligible spouse, and children

  - Retiree and non-Medicare-eligible spouse

  - Retiree, non-Medicare-eligible spouse, and children

8.    **How many monthly premiums payments can be missed before coverage is terminated? Is there any grace period during which coverage can be reinstated upon payment of back premiums? B-1.**

The proposed plan's premiums are due the first day of the month for that month's coverage. There is a thirty-one day grace period beyond the due date. If payments are not made by the end of the grace period, then coverage can be terminated. As the proposed plan states, "Failure to make timely payments will result in termination of coverage."

9.    **Are Class Members entitled to any contributions to Flexible Spending Accounts? 2005 GBP, p. 66.**

Plaintiffs are not eligible under the proposed plan for Flexible Spending Accounts.

10.   **Will the Prescription Drug Plan for those over 65 be eliminated immediately upon implementation of the proposed plan? B-28.**

Medicare-eligible participants will not be eligible for CNH-provided prescription drug benefits under the proposed plan. CNH expects that administrative matters may require a period of time between approval of the proposed plan and the plan's implementation, when the proposed plan's terms would become effective.

Darcie R. Brault
March 1, 2013
Page 6

**11.    Does CNH propose any changes to the Life Insurance benefits currently afforded retiree Class Members? If so, please describe any and all proposed changes.**

CNH has not proposed any changes to Plaintiffs' life insurance benefits.

Best personal regards.

Sincerely,

Bobby R. Burchfield