UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE PIDDE,
JAMES CICHANOFSKY, ROGER MILLER,
GEORGE NOWLIN and RONALD HITT, on
behalf of themselves and
a similarly situated class,
     Plaintiffs,

Hon. Patrick J. Duggan

Case No. 04-70592

v.

**Class Action**

CNH GLOBAL N.V., formerly
known as Case Corporation,
and CNH AMERICA LLC,
     Defendants.

_____/

David R. Radtke (P47016)
Darcie R. Brault (P43864)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

Norman C. Ankers (P30533)
HONIGMAN MILLER
SCHWARTZ AND COHN LLP
Attorneys for Defendants
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7000

Bobby R. Burchfield
Joshua David Rogaczewski
Laura J. Capotosto
McDERMOTT WILL & EMERY
Attorneys for Defendants
The McDermott Building
500 North Capital Street, Northwest
Washington, D.C. 20001
(202) 756-8000

## PLAINTIFFS' MOTION TO COMPEL ANSWERS TO FIRST INTERROGATORIES

Plaintiffs, by their attorneys, McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C., move to compel Defendants to answer Plaintiffs' First Interrogatories. In support of their motion, Plaintiffs state as follows:

1.      On March 14, 2013, Plaintiffs served their First Interrogatories on CNH.

2.      Defendants filed incomplete responses, refusing to answer all but twenty-five of the interrogatories.

3.      After considerable motion practice, and an order requiring same, on June 19, 2013, CNH served its "Supplemental Response to Plaintiffs' First Interrogatories."

4.      Defendants' responses are deficient in a variety of ways.

5.      Defendants' boilerplate responses and generic objections do not sufficiently inform the parties of how and if the responses were limited by Defendants. These objections and partial/non-answers do not constitute a response and should be treated as a failure to respond under Fed. R. Civ. Proc. 37.

6.      Defendants refused to answer Interrogatories 3-4 (identification of lay and expert witnesses), 48 (Identification of documents CNH intends to use in support of its motion for summary judgment or at trial). Defendants claim the requested information "duplicates" initial disclosures which have never been filed. To be clear: Defendants have not identified any witnesses (lay or expert) or documents they intend to use in support of their "reasonableness" argument.

2

7.     In response to Interrogatories 5-9, Defendants refused to respond, claiming that the Plaintiffs had access to the answers back in 2007 when a document review occurred. The objection does not fully address the interrogatories, but also fails to acknowledge that the information gleaned from documents provided years ago is now outdated and unreliable. In further answer, Defendants claim not to have access to a database showing pension amounts. This contention is belied by anecdotal documents obtained during the document review that clearly show that there is electronically stored data addressing the full pension benefits of those to whom CNH pays a portion.

8.     Defendants also asserted objections to Interrogatories 14-31 which sought information regarding cost projections under the Proposed Plan (14-23) and the Current Plan (24-31). Defendants failed to respond to the portion of the interrogatory requesting a description of how the projections were calculated.

9.     Defendants refused to answer questions related to "other factors" it intends to rely upon to support its defense, beyond those listed in the Sixth Circuit opinion at page 6 of 7 (Interrogatory 34), refused to identify and provide information regarding the comparator plans it intends to use for comparisons, particularly failing to identify documents upon which it will rely (Interrogatory 36), refused to describe "changes in health care" it intends to use to support their defense, including a refusal to describe the changes and to identify witnesses it intends to call regarding "changes in

3

health care" (Interrogatory 37), refused to answer an interrogatory requesting information regarding potential alternatives considered to achieve savings with lesser financial impact upon the Class Members (Interrogatory 38), and refused to answer questions related to the declaration of Scott Macey (Interrogatories 45-47).

10.    For the reasons stated more fully in the accompanying brief, and by application of Fed. R. Civ. Proc. 26, 33 and 37, Plaintiffs are entitled to a full and complete response to the Interrogatories, specifically, Interrogatories 3-9, 14-31, 34, 36-38 and 45-48.

11.    Plaintiffs' counsel requested concurrence in the relief sought, engaged in a discussion of the issues, reviewed the Defendants' correspondence on the issue and was unable to procure concurrence with respect to these Interrogatories. L.R. 7.1.

WHEREFORE Plaintiffs request an order compelling Defendants to provide full and complete response to the Interrogatories, specifically, Interrogatories 3-9, 14-31,

34, 36-38 and 45-48 within 14 days.

Respectfully submitted,
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
By: /s/ Darcie R. Brault
Darcie R. Brault (P43864)
David R. Radtke (P47016)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
(248) 354-9650
dbrault@michworklaw.com

Dated: July 19, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE PIDDE,
JAMES CICHANOFSKY, ROGER MILLER,
GEORGE NOWLIN and RONALD HITT, on             Hon. Patrick J. Duggan
behalf of themselves and
a similarly situated class,                   Case No. 04-70592
     Plaintiffs,

v.                                            **Class Action**

CNH GLOBAL N.V., formerly
known as Case Corporation,
and CNH AMERICA LLC,
     Defendants.

_____/

| | |
|---|---|
| David R. Radtke (P47016) | Norman C. Ankers (P30533) |
| Darcie R. Brault (P43864) | HONIGMAN MILLER |
| McKNIGHT, McCLOW, CANZANO, | SCHWARTZ AND COHN LLP |
| SMITH & RADTKE, P.C. | Attorneys for Defendants |
| Attorneys for Plaintiffs | 2290 First National Building |
| 400 Galleria Officentre, Suite 117 | 660 Woodward Avenue |
| Southfield, MI  48034 | Detroit, MI 48226 |
| (248) 354-9650 | (313) 465-7000 |
| | |
| | Bobby R. Burchfield |
| | Joshua David Rogaczewski |
| | Laura J. Capotosto |
| | McDERMOTT WILL & EMERY |
| | Attorneys for Defendants |
| | The McDermott Building |
| | 500 North Capital Street, Northwest |
| | Washington, D.C.  20001 |
| | (202) 756-8000 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ANSWERS
TO FIRST INTERROGATORIES**

## <u>TABLE OF CONTENTS</u>

I.   STATEMENT OF THE RECORD ..................................................................... 1

II.  ARGUMENT .................................................................................................... 2

    A.   Defendants' Boilerplate Objections ..................................................... 2

    B.   Interrogatories 3 and 4 -- Identification of Lay and
         Expert Witnesses ................................................................................... 4

    C.   Interrogatories 5-9 -- Pension Amounts of Class Members ................. 5

         1.   Gross Pension Benefits ............................................................. 6

         2.   Past and Future Changes to Pension and Special
              Age 65 Benefits ........................................................................ 9

    D.   Interrogatories 14-31 -- Cost Projections............................................ 10

    E.   Interrogatory 34 -- Factors Other Than Those Identified
         in *Reese II*........................................................................................... 11

    F.   Interrogatory 36 -- Comparison Plans.................................................. 12

    G.   Interrogatory 37 -- Changes in Health Care........................................ 13

    H.   Interrogatory 38 -- Potential Alternatives to Achieve Savings ........... 15

    I.   Interrogatories 45-47 -- Scott Macey's June 30, 2010
       Declaration .......................................................................................... 16

    J.   Interrogatory 48 -- Identification of Documents for Litigation .......... 21

III.  CONCLUSION................................................................................................ 23

i

# <u>TABLE OF AUTHORITIES</u>

*Akins v. State Farm Mutual Automobile Insurance Co.,*
2011 U.S. Dist. LEXIS 82801 *10-11 (E.D. Mich. 2011) (Goldsmith, J.) ......... 5, 22

*Carrfagno v. Jackson National Life Insurance Corp.,*
2001 U.S. Dist. LEXIS 1768 (W.D. Mich. 2001) .................................................... 3

*Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.,*
2013 U.S. Dist. LEXIS 10130 *17 (E.D. Mich. 2013) (Battani, J.) ......................... 3

*Lowe v. Vadlamundi,* 2012 U.S. Dist. LEXIS 122112 *7
(E.D. Mich. 2012)(Lawson, J.) ................................................................................ 3

*Powerhouse Licensing, LLC v. Check Free Services Corp.,*
2013 U.S. Dist. LEXIS 41150 *9 (E.D. Mich. 2013) (Drain, J.) ............................. 3

*Reese I,* 574 F.3d 315 (6th Cir. 2009)...................................................... 4, 7, 11, 13

*Sungjin Fo-Ma, Inc. v. Chainworks, Inc.,* 2009 U.S. Dist. LEXIS 58059
(E.D. Mich. 2009) (Majzoub, M.J.)...................................................................... 3,8

## I.   STATEMENT OF THE RECORD

1. On March 14, 2013, Plaintiffs filed their First Interrogatories on Defendants (hereinafter referred to collectively as "CNH") consisting of 51 Interrogatories.

2. On March 21, 2013, Plaintiffs filed a motion for leave to exceed twenty-five interrogatories. (Dkt. 342). This Court referred the motion to the Magistrate Judge. (Dkt. 338).

3. On April 18, 2013, CNH filed responses to Plaintiffs' First Interrogatories. CNH filed no answers to 26 of the 51 interrogatories, Nos. 1, 3-9, 32-38 and 40-50.

4. On May 20, 2013, the Magistrate Judge issued his Order, granting Plaintiffs' motion in part, ordering CNH to answer Interrogatory Nos. 5-9, 34-38, 40-47 and 49-50. The Magistrate Judge stated that, "at this time, defendant need not serve supplemental answers to Interrogatory Nos. 32, 3, 4 & 48" having accepted CNH's assertion that they sought duplicative information. (Dkt. 346 at ID 12317, ID 12319). The Magistrate Judge noted that, at the April 23, 2013 hearing before the Magistrate Judge, Plaintiffs had withdrawn Interrogatories 1 and 33.

5. On May 29, 2013, based on the Magistrate Judge's invitation (Dkt. 346; ID 12317) Plaintiffs filed a motion for reconsideration with the Magistrate Judge asking it to compel CNH to answer Interrogatories 3, 4, 32 and 48. (Dkt. 348).

6. On June 11, 2013, the Magistrate Judge entered its Order denying Plaintiffs' motion for reconsideration of its Order relating to Interrogatories 3, 4, 32 and 46. (Dkt. 352).

12. On June 25, 2013, Plaintiffs filed objections to the Magistrate's June 11, 2013 Order denying reconsideration to this Court. (Dkt. 354). Those objections are still pending.

13. On June 19, 2013, CNH served its Supplemental Response to Plaintiffs' First Interrogatories. (copy attached as **Exhibit A**).

## II.   ARGUMENT

### A.   DEFENDANTS' BOILERPLATE OBJECTIONS

At the beginning of their "Supplemental Response to Plaintiffs' First Interrogatories, CNH asserts eight "general objections" which they then cites by number throughout their "answers," most often without further explanation of why the Interrogatory is objectionable. CNH asserts these eight objections a total of 244 times for the 51 Interrogatories.

CNH asserts General Objection No. 1 (that the interrogatories exceed the limit of 25) 26 times despite the fact that 1) Magistrate Komives ordered CNH to answer 20 of the extra 26 Interrogatories; and 2) that CNH did not file objections to Magistrate Komives' Order. Further, it should be noted that CNH's complete response to 23 Interrogatories, Nos. 10 through 31 and 51, was a reference to Exhibits A and B which together total 5 pages.

CNH asserts General Objection No. 2 (relevancy) 36 times; General Objection No. 3 (seeks cumulative/duplicative information; should obtain information from other sources) 22 times; General Objection No. 4 ("ample opportunity to obtain the requested information" earlier) 41 times; General Objection No. 5 (burden/expense) 47 times; General Objection No. 7 (to Plaintiffs' definition of "describe") 31 times, that is

2

whenever CNH is asked to describe something;[1] and General Objection No. 8 (to Plaintiffs' definition of "Company") 39 times -- wherever the word "Company" appears. In response to the individual Interrogatories, CNH does not explain why the Interrogatory is objectionable -- it simple incorporates by reference multiple "General Objections."

This practice -- of asserting boilerplate objections to interrogatories -- has been universally condemned.[2] Neither Plaintiffs nor the Court can determine whether CNH's answers, such as they otherwise are, have been influenced or limited by the general objections. Plaintiffs and the Court can only determine whether CNH has complied with their obligation to provide full and complete discovery responses if CNH is compelled to do so without reliance on their "general objections." CNH's boilerplate objections must be stricken as "tantamount to no objections" and CNH ordered to fully

---

[1]Contrary to CNH's contention, Plaintiff's definition of "describe" is not objectionable in the least. It simply requires CNH to describe fully and in detail underlying facts; state the date, time, place and manner where applicable; identify all persons with knowledge of the facts and what information he/she has; and identify documents relating to those facts set forth. (Interrogatories at 3).

[2] *Powerhouse Licensing, LLC v. Check Free Services Corp.*, 2013 U.S. Dist. LEXIS 41150 *9 (E.D. Mich. 2013)(Drain, J.); *Carrfagno v. Jackson National Life Insurance Co.*, 2001 U.S. Dist. LEXIS 1768 (W.D. Mich. 2001). Courts in this district have repeatedly held that such general objections are "tantamount to no objection at all." *Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.*, 2013 U.S. Dist. LEXIS 10130 *17 (E.D. Mich. 2013) (Battani, J.); *Lowe v. Vadlamundi*, 2012 U.S. Dist. LEXIS 122112 *7 (E.D. Mich. 2012)(Lawson, J.); *Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, 2009 U.S. Dist. LEXIS 58059 (E.D. Mich. 2009) (Majzoub, M.J.).

3

answer each contested Interrogatory.

**B.  INTERROGATORIES 3 AND 4 -- IDENTIFICATION OF LAY AND EXPERT WITNESSES**

Plaintiffs sought the identity of all lay and expert witnesses in Interrogatories 3 and 4 respectively. CNH's only response was to cite General Objections 1, 3, 5 and 8. (Response at 3).[3] The simple fact is that *CNH has never identified any lay or expert witnesses pursuant to Rule 26 or otherwise.*  In order for a discovery request to be duplicative, CNH must have already provided the information elsewhere. There have been no Rule 26 (or other disclosures) disclosures in this case and none are scheduled.[4] But, even if there had been, there certainly have been no Rule 26 disclosures relating to the issues of the second remand proceedings. **Plaintiffs seek *current* information about whom CNH will use as expert and lay witnesses to address the issues identified in *Reese I* and *Reese II.***

---

[3] As noted above, the Magistrate Judge refused to require CNH to answer these Interrogatories based on CNH's assertion that the information sought was duplicative of the mandatory disclosures required by the Federal Rules. Plaintiffs' objection to the Magistrate Judge's denial of their motion for reconsideration (Dkt. 354) is still pending.

[4] CNH elsewhere asserts that Plaintiffs refused to engage in Rule 26 disclosure. What happened is that, in 2005, CNH objected to Plaintiffs' initial discovery requests because Rule 26 disclosures had not been exchanged.  Of course, this Court did not require compliance with Rule 26 disclosure rules and CNH's refusal to engage in discovery on that basis was absurd.  CNH thereafter never made any Rule 26 disclosures of lay and expert witnesses and the parties nevertheless engaged in discovery.

Moreover, the fact that a party might be required to disclose witnesses under the Federal Rules does not excuse it from responding to discovery on the same subject.[5]

## C.    INTERROGATORIES 5-9 -- PENSION AMOUNTS OF CLASS MEMBERS

In Interrogatory 5, Plaintiffs sought information about the Class Members (name, address, birth dates, retirement dates, type of retirement) and for each surviving spouse (name of the deceased retiree, date of birth and social security number). Plaintiffs also asked for "gross pension benefit" for each Class Member. In Interrogatories 6 through 9, Plaintiffs asked whether the gross pension and/or the "Special Age 65" benefit had increased since retirement or was scheduled to increase in the future.

CNH asserted its General Objections 1, 2, 3, and 5" to Interrogatories 5 through 9. (Response at 4-5). As to Interrogatory No. 5, CNH states that "much of the information sought by Plaintiffs is found in the worksheet located in Exhibit C." As to the remainder of the information sought, CNH referred Plaintiffs to the personnel and

---

[5] In *Akins v. State Farm Mutual Automobile Insurance Co.*, 2011 U.S. Dist. LEXIS 82801 (E.D. Mich. 2011) (Goldsmith, J.), the defendant objected to the identification of expert and lay witnesses on the basis that it would disclose its "expert and lay witnesses in accordance with Federal Rules and the Court's scheduling Order." The court overruled the objection: "The scheduling order does not excuse Defendants from responding to interrogatories." *10-11. The court held that the defendant's repeated invalid objections "evidence bad faith" and granted sanctions in the form of attorney fees. The court warned the defendant that "any further gamesmanship regarding Plaintiff's discovery requests will result in more severe sanctions, including potentially a default judgment." *21-22.

5

benefit files of the members of the plaintiff class -- which have already been produced -- and the burden of ascertaining the information is substantially the same for Plaintiffs and CNH." As to Interrogatories 6 through 9, CNH also referred to the "results of the collective bargaining process between CNH (or its predecessor, Case Corporation) and the UAW -- which have already been produced to Plaintiffs . . ."

### 1. Gross Pension Benefit

Although CNH asserts a boilerplate relevance objection of relevance,[6] its principle objection is that Plaintiffs can ascertain that information "by examining their personnel and benefit files -- which have already been produced to Plaintiffs -- and the burden of ascertaining that information is substantially the same for Plaintiffs and CNH." (Response at 4). The short response to this is that the Magistrate Judge has already ordered CNH to respond to this Interrogatory and CNH did not file objections. The longer response is that *CNH*, not Plaintiffs, has current possession of the personnel and benefit files. CNH produced most of these files (except appr. 100 of them) in the spring of 2006, **more than seven years ago**. While there were pension summaries in

---

[6] The relevance of how much Class Members receive in pensions in relation to the additional costs associated with CNH's proposed health care plan is self-evident. The Magistrate concluded that it was relevant, in part because CNH asked the named Plaintiffs about their income. (Dkt. 346 at ID12317-18). Vested health care benefits mean nothing if a Class Member, living on a fixed income, cannot afford the additional costs associated with CNH's proposed plan modifications.

6

most of the files that were produced, these calculations were estimates made at the time of retirement[7] and are not necessarily the current gross pension benefit.[8] Also, the issues before the court at that time were entirely different. When Plaintiffs reviewed[9] the files in 2006 they could not have foreseen that, three years later, the Sixth Circuit would enunciate a "reasonableness" standard in *Reese I* or, six years later, articulate a series of questions set forth in *Reese II*.

CNH not only has possession of the benefit files, but *CNH is the sponsor of the CNH U.S. Pension Plan* which provides pension benefits to Class Members. CNH has an experienced "Corporate Benefits Office" staff with vast experience in pension matters. *Each month*, the CNH U.S. Pension Plan issues a check to each Class

---

[7] The "CNH U.S. Pension Plan Benefit Summary" that Plaintiffs copied from many of the files has the following disclaimer: "This is only an estimate which is based on the retirement date, personal information and other assumptions you provided to process this estimate. . . ."

[8] For example, under the terms of the 1995 and 1998 CBAs, pension benefits were increased annually after retirement during the terms of the CBAs under which the employee retired. An employee who retired early in the term of a CBA could see his or her pension increased one or more times where an employee who retired in the last year of a CBA would not receive any increase after retirement. Information as to the increases is not contained in the vast majority the personnel and benefit files (or, if it is, it is not in the documents Plaintiffs had copied). Plaintiffs have checked the current base pension benefit of two retirees and the pension benefit amount shown on the summaries from the files CNH produced are different.

[9] Understandably, Plaintiffs did not designate all of the documents in the files for copying seven years ago. Instead, Plaintiffs examined the files and designated a few documents from each file for copying.

7

Member based on their current gross pension benefit.[10]  In light of this, it is absurd for CNH to claim that the burden of ascertaining the requested information is the same for Plaintiffs.  CNH has direct access to the current, correct amounts of the gross pension benefit and Plaintiffs do not.

A major role of discovery is to define and limit the issues for trial.  Plaintiffs want the current gross pension benefit for each Class Member for analysis by their expert witnesses and for admission at trial.  Requiring Plaintiffs to search all of the documents they copied from CNH's files to locate pension data would undermine that aspect of discovery.  CNH is certainly not vouching for the accuracy of what Plaintiffs find in the records.  CNH should be required to provide the information in a form not subject to an authenticity objection from CNH.

Finally, courts uniformly reject an objection, like CNH makes here, that the burden of obtaining information from documents is the same for both parties *when, as here, the information is contained in the documents of the objecting party. Sungjin Fo-Ma, supra* *13. CNH can easily produce the gross pension benefit for each Class Member without consulting individual files. While it claims there is no database

---

[10]CNH contends that it does not have a database showing the class members' gross pensions. CNH is responsible only for a part of Class Members' pension benefit -- that earned after the July 1, 1994 IPO. The other portion of their benefit is paid by various iterations of CNH predecessors. However, the total pension benefit is calculated according to the provisions of the CNH pension plan. CNH must know the total gross pension benefit in order to calculate its share of that benefit.

containing the full amount of the pension benefit, this contention is belied by anecdotal documents obtained during the document review that clearly show that there is electronically stored data addressing the full pension benefits of those to whom CNH pays a portion. **Exhibit B**. CNH must be compelled to fully answer Interrogatory 5.

### 2.   Past and Future Changes to Pension and Special Age 65 Benefits

Plaintiffs requested information on whether the gross pension benefit or the Special Age 65 benefit (intended to reimburse Class Members for all or part of the Medicare Part B premium) had been increased since retirement or is scheduled to be increased in the future.   (Interrogatories 6-9). If the answer was "no," no further information was requested.  If the answer was "yes," as to Interrogatories 6 and 7 (relating to increases in pension and Special Age 65 benefit respectively), CNH was asked to identify who received the increase and state the amount of the benefit before and after the increase. If the answer to Interrogatories 8 and 9 (about schedule increases to the same benefits) was "yes," CNH was asked to state the date and amount of the scheduled increases and, if they were pursuant to a CBA, the date of the CBA.

CNH did not answer the four Interrogatories.  Instead, it incorporated boilerplate objections 1, 2, 3, and 5 and referred Plaintiffs to the personnel and benefit files of the members of the Plaintiff Class and the results of collective bargaining between the UAW and CNH. (Response at 4-5).

9

The relevance of the requested information is again obvious. If CNH intends to increase Plaintiffs' pension and Special Age 65 benefit to keep pace with the rising Medicare Part B premium and to compensate Class Members for the added medical costs arising from its proposed modifications to the health care plan, those facts would bear on the "reasonableness" of the proposed changes. If, as is more likely, CNH has not agreed to any increases in pension benefits and Special Age 65 payments, and does not intend to do so gratuitously in the future, the hardship to Class Members from the draconian benefit reductions proposed by CNH would illustrate how unreasonable the modifications are even under the Sixth Circuit's formulation in *Reese II*.

### D.   INTERROGATORIES 14 - 31 -- COST PROJECTIONS

Plaintiffs sought CNH's projections for costs incurred by CNH and participants under the Proposed Plan (Interrogatories 14-23) and under the Current Plan (Interrogatories 24-31) and, in each case asked CNH to "describe how these projections were calculated."

CNH interposed five General Objections and then stated that"[s]ubject to these objections, . . .the answer to the interrogatory is found in Exhibit B." CNH provided a two page spreadsheet as Exhibit B." Exhibit B is a two page spreadsheet. (Response at 6-10).

CNH did not "describe how these projections were calculated." Although there is a box on Exhibit B titled "Methodology" describing the task and referring but not

10

describing the most important assumptions used in the projections. For example, the "Methodology" box refers to "using December 31, 2012 retiree medical actuarial valuation assumptions and methodologies," but those assumptions and methodologies are not defined or described. Plaintiffs are entitled to a full and complete description of the process on how Towers Watson (CNH's actuaries and agent for purposes of discovery) developed the projections and what assumptions they used.

### E.   INTERROGATORY 34 -- FACTORS OTHER THAN THOSE IDENTIFIED IN *REESE II*

In Interrogatory 34, Plaintiffs asked whether CNH intended to ask this Court to consider any "factors" other than those identified on pages 6 and 7 of the Sixth Circuit's September 13, 2012 Opinion and, if so, to "identify and describe any other factors the Company will ask the District Court to consider."

CNH response is that Plaintiffs' interrogatory is "incomprehensible" because, CNH state, the *Reese II* majority articulated a series of "questions," not "factors," that the district court should consider on remand. (Response at 10). CNH then responded that it did not intend to ask this Court to consider "*factors* other than those articulated in [*Reese I*] and confirmed in [*Reese II*]." (emphasis added).

Plaintiffs cannot tell from CNH's response whether CNH is using the word "factor" to avoid answering whether it intends to ask the Court to consider any question or factor other than those posed by the *Reese II* panel on page 6-7 of its

11

Opinion. Indeed, CNH asserts that it "indeed cannot" ask the Court to consider other "factors." But, the *Reese II* panel expressly permitted this Court to take evidence on questions "it considers relevant to the reasonableness question" other than those listed on pages 6 and 7 of the Opinion. Plaintiffs were obviously asking CNH if it intended to ask this Court to consider any other factors/questions other than those listed. By parsing the words "factors" and "questions," CNH leaves the distinct impression that CNH is avoiding a candid response to a relevant inquiry through the use of semantics. CNH must be compelled to provide a candid response to Interrogatory 34.

## F.   INTERROGATORY 36 -- COMPARISON PLANS

In Interrogatory 36, Plaintiffs asked CNH to identify all health care plans provided by other companies that CNH intends to use for comparison purposes and, as to each company, to identify all documents that CNH intends to use to support that position. In its response, CNH imposed six General Objections. It identified only itself, Caterpillar and Deere as companies it will use as comparisons as well as "surveys of health-plan data collected by the federal government or Towers Watson." (Response at 11). CNH did not identify any documents that it intends to rely on to support its comparisons.

Obviously, Plaintiffs are entitled to have all documents that CNH intends to rely on in support of its comparisons. CNH has several other health care plans for its hourly and salaried employees and retirees. It has labor contracts with other unions

12

that provide health care benefits. The same is undoubtedly true for Caterpillar and Deere. Plaintiffs are entitled to know which of these plans CNH intends to use, how those plans compare to the Proposed Plan and what documents CNH intends to use to support its position with respect to these plans. As to "surveys of health-plan data," Plaintiffs are entitled to precisely what surveys CNH is referring to and any documents CNH intends to use in connection with those surveys.

CNH must be compelled to provide Plaintiffs with the specific, detailed information they requested so that they can effectively challenge CNH's proof on the issue of comparable plans.

## G.   INTERROGATORY 37 -- CHANGES IN HEALTH CARE

In Interrogatory 37, Plaintiffs asked whether CNH contended that there are any "changes in health care" that are relevant to the issue before the Court on remand and, if so, to describe these changes and identify witnesses CNH intended to call at trial to support its contention. "Changes in health care" is one of the three prongs of the "reasonableness" standard enunciated in *Reese I*, 574 F.3d 315, 326 (6th Cir. 2009).

CNH responded with six of its General Objections followed by a statement that the "changes" are "the introduction of new prescription drugs, new medical procedures, new economics of care, and advances in medical technology." (Response at 11). CNH then stated that it "has not yet determined if it will bring other changes to the Court's attention or the witnesses CNH will use at trial regarding changes in health

13

care."

The kinds of "changes in health care" contemplated in the "reasonableness" standard of *Reese I* can only mean systemic changes in health care, not the introduction of new drugs, medical procedures or medical technologies -- things that have been constant since the beginning of modern medicine. Otherwise, the fact that brand name prescription drugs go off patent, that new medical technology reduces the cost of health care, or that new economics of care leads to fewer medical procedures, etc., would be grist for the "reasonableness" mill.

In any event, at the very least, Plaintiffs are entitled to know what "new prescription drugs," what "new medical procedures," what "new economics of care" and what "new medical technology" CNH believes would justify a reduction to the level of Plaintiffs' benefits. Plaintiffs are entitled to know precisely what are the "changes in health care" -- not a list of general topics -- that CNH intends to rely on to argue that it should be able to implement its Proposed Plan.

At the December 2012 status conference, CNH stated that it wanted this matter finally submitted to the Court by the end of January 2013. It informed the Court that it had presented the Court with all of the information the Court needed to make a decision. Now, more than six months later, CNH asserts that "it has not yet determined" what it intends to bring before the Court and what witnesses it will use at trial. CNH must be compelled to provide detailed answers to Plaintiffs' interrogatories.

14

**H.    INTERROGATORY 38 -- POTENTIAL ALTERNATIVES TO ACHIEVE SAVINGS**

In Interrogatory 38, Plaintiffs asked CNH whether it had explored any potential changes other than the Proposed Plan that would generate cost savings with a lesser financial impact on Class Members and, if so, to describe each proposed change and why CNH rejected it. CNH did not provide any response other than to "incorporate by reference its General Objections 1, 2, 4, 5, 6, 7, and 8." (Response at 12). One of those general objections, No 6, is that the information sought "is protected by the attorney-client, attorney-work-product doctrine, or any other applicable statutory or common-law privilege or bar on disclosure." (No privilege log was provided).

The Interrogatory seeks relevant information.  The first four bullet points of the series of questions articulated in *Reese II* address the transfer of costs to the retirees under the Proposed Plan.  If there are alternatives that could save CNH money with lesser impact on the retirees, that information would obviously have a bearing whether CNH's proposed changes are "reasonable." Plaintiffs have no place to obtain this information other than from CNH. Plaintiffs are not seeking attorney client communications or work product. They are asking what alternatives, if any, CNH explored as alternatives to the provisions of the Proposed Plan.

If CNH did not consider any alternatives to the terms of the Proposed Plan, it must say so. If CNH did consider alternatives to the Proposed Plan, it must fully

15

describe each such alternative and describe why it decided to reject it.

## I.   INTERROGATORIES 45–47 -- SCOTT MACEY'S JUNE 30, 2010 DECLARATION

Interrogatories 45 through 47 address statements CNH's "expert" Scott Macey made in paragraphs 27 through 30 of his June 30, 2010 Declaration.  CNH submitted Mr. Macey's Declaration in support of its June 30, 2010 motion for "approval of reasonable changes" to Plaintiffs' health care plan.  (Dkt. 271).  At the December 12, 2012 status conference, CNH's counsel notified the Court that CNH intended to again rely on this Declaration in support of its position that the Proposed Plan was "reasonable" under the standards articulated by the Sixth Circuit.

**Interrogatory 45** seeks the identity of each of Mr. Macey's "former colleague at Aon Consulting" to whom he was referring in paragraph 27 of his Declaration and to describe each such person's participation in the review and evaluation referenced in the Declaration. CNH responded by incorporating five "General objections," including, incredibly, General Objection 3 -- that the information sought is duplicative/cumulative and can be obtained from more convenient source.  In the next sentence, CNH asserts that "Mr. Macey does not recall the team members' identities." (Response at 14).[11]

_____

[11]CNH does identify a "Les Richmond" as a person who reviewed a draft of Mr. Macey's Declaration.  CNH does not state who Mr. Richmond is, his residential address, his telephone number his current or last known employer and title, his current or last known business address, his employer and title at the time in question or his dates of employment, all of which are required by the definition of "Identify" in Plaintiffs' First Interrogatories.

16

This one example shows the extent of CNH's refusal to engage in good faith discovery. Information that CNH has never disclosed, that is not in Mr. Macey's Declaration and that Mr. Macey does not now recall cannot be, by definition, be duplicative of other information or duplicative. What source of the requested information could be more convenient than CNH, the party who hired Mr. Macey as its "expert" and the party who submitted his Declaration in support of its attempt to cut Plaintiffs' benefits.

In its Response to Interrogatory 45, CNH also "describes" what Mr. Macey apparently understood these unidentified Aon colleagues did in providing him with information. According to CNH's Response, the unidentified Aon colleagues "assembled plan-design information for various health plans administered by Aon clients and provided that information to Mr. Macey in a manner that protected the Aon clients' anonymity." (Response at 14). But, the only persons who can provide the non hearsay evidence Plaintiffs seek *are the unidentified Aon colleagues*.

At bottom, CNH's response is simply unbelievable.[12] CNH submitted Mr. Macey's Declaration in 2010 as the principal support for its motion for approval for drastic cuts in Plaintiffs' benefits. CNH has asserted that Mr. Macey's Declaration is relevant to the issue of whether the changes it now proposes are "reasonable" in the second remand. CNH and Mr. Macey are apparently attempting either to avoid further

---

[12] Mr. Macey is paid $1,000.00 per hour to act as CNH's "expert." The notion that Mr. Macey did not record, cannot remember, and cannot now find out -- which "former Aon Consulting colleagues" provided him with the calculations on relative value

disclosure that would be embarrassing or to protect Aon Consulting from having to disclose relevant information on the identity of the health care plans reviewed for the relative value calculations Mr. Macey put in his Declaration.

**Interrogatory 46** seeks the identity of each retiree health care plan that was reviewed or evaluated as discussed in paragraphs 27-30 of Macey's Declaration and the identity of each documents related to the review of evaluation.

As to paragraphs 27-29, CNH interposes three General Objections and also objects, because Plaintiffs asked CNH to produce each document identified, to "Plaintiffs improper attempt to use an interrogatory to request production of documents." Subject to these objections, CNH states (as it did in its Response to Interrogatory 45) that "Mr. Macey was provided the plan information . . . in a manner that did not identify the companies that sponsored the plans." (Response at 15).

If this is true, the "information" on which Mr. Macey based his Declaration statements was provided in such a way that Plaintiffs have no means of challenging it. CNH asserts that Mr. Macey specified (to Aon apparently) "that the plans should be sponsored by large employers and ideally have union participants." And, Mr. Macey and CNH (and Plaintiffs) will never know if Aon complied with the request *because Aon intentionally kept the identity of the plans it evaluated secret.* As CNH did not identify a single document with respect to the plans (or the evaluation of the plans) that

---

figures that he inserted in a sworn Declaration is simply not credible.

18

were the subject of paragraphs 27-29 of his Declaration, Macey apparently did not obtain or review a single document from his "former Aon colleagues" relating to their evaluation on his behalf. If this is true, CNH must be compelled to state that fact candidly.

CNH's objections, including that Plaintiffs were seeking cumulative evidence or that Plaintiffs can obtain it elsewhere more conveniently (General Objection 3), are baffling. If CNH cannot provide information about information and documents its "expert" solicited and relied upon, how can the information Plaintiffs request be duplicative or cumulative?

If, contrary to its counsel's assertion at the December 2012 status conference, CNH no longer intends to rely on some or all of the information in Macey's Declaration, then CNH must state that fact openly on the record so Plaintiffs can focus on information CNH does intend to present to the Court. Otherwise, CNH must be ordered to answer the Interrogatories fully so Plaintiffs have an adequate opportunity to assess its validity through further discovery.

**Interrogatory No. 47** asks CNH to describe the methodology used in determining the "relative value" of the plans reviewed by Aon Consultants and identify all documents reviewed in making those determinations. CNH interposes five "General Objections" and objects to what "Plaintiffs' improper attempt to use an interrogatory to request production of documents." (Response at 15). Given CNH's failure to identify

19

any documents, much less produce any documents, Plaintiffs can only attribute this objection to CNH's resort to black humor or to an attempt to divert attention from CNH's abject failure to provide a responsive answer.

CNH then states that "Mr. Macey's former Aon colleagues determined the relative values of several health plans using methodology standard in the industry. Using the plans design elements (premiums, deductibles, co-insurance, etc.) and assumptions regarding the plans' cost and usage, they determined the amount of a plan's costs that would be covered -- on average -- by the plan's sponsor and by the participants." (*Id.* at 15-16). As CNH and Mr. Macey will not or cannot identify any "former Aon colleague" ostensibly made the relative value determinations relating to unidentified benefit plans, CNH's "answer" is either rank hearsay or an assumption upon assumption as to what might have happened in connection with Aon's review and evaluation.

Plaintiffs are entitled to know, as indicated above, who the "former Aon colleagues" are and the names of the "several health plans" reviewed. But, more important for this Interrogatory, a reference to "methodology standard to the industry" and a one sentence general description of what the unidentified Aon colleagues might have done in reviewing the unidentified health care plans does not provide any kind of a responsive answer to a discovery request directed at one of the principal topics of Macey's Declaration.

Plaintiffs do not know what "methodology [is] standard in the industry." Plaintiffs do not know if this "standard methodology" is contained in a single, universal document or whether there are different variations and, if so, which one the unidentified Aon colleagues used. Plaintiffs do not even know what "industry" CNH is talking about. Plaintiffs do not know, and it is increasingly apparent that neither CNH nor Macey know, what "assumptions regarding the plans' costs and usage" were made by the unidentified "former Aon colleagues."[13] If, as is apparent, from CNH's answers, CNH and Mr. Macey do not know 1) the identity of the persons who conducted the "relative value" review; 2) what plans were reviewed; 3) what methodology was employed; 4) what assumptions were used relating to costs and usage; and 5) what documents were reviewed or generated, CNH must be compelled to candidly say so.

### J.    INTERROGATORY 48 -- IDENTIFICATION OF DOCUMENTS FOR LITIGATION

---

[13] Judging from CNH's interrogatory response, Macey had a phone call (or a series of phone calls) with "former Aon colleagues" whose name(s) he cannot remember and simply wrote what they told him directly into his Declaration. Otherwise, there would be documents "related to the review or evaluation" (Int. 46) and/or "documents reviewed in making those determinations." (Int. 47). Since this is seemingly incredible, CNH must be required to respond at a minimum about what Mr. Macey himself did in preparation for making the statements in paragraphs 27-30 of his Declaration: how he obtained the information for his Declaration statements; what documents he provided to and received from Aon; and any other facts showing how Mr. Macey arrived at the "relative values" of the "plans" he referenced in his Declaration. If Mr. Macey simply put what he was told into his Declaration, without any independent review or critical analysis, Plaintiffs are entitled to know that.

21

In Interrogatory 48, Plaintiffs asked CNH to identify all documents it intends to use in summary judgment proceedings or at trial. In response, CNH simply incorporates five General Objections (1, 3, 4, 5, and 8). (Response at 16). Because this is one of the Interrogatories that the Magistrate Judge did not require CNH to answer, CNH identified no documents. Plaintiffs are entitled to know each document that Plaintiffs intend to use to support its position in summary judgment or at trial. In light of this history,[14] CNH's objections that the information sought is cumulative or can be obtained this information elsewhere (General Objection 3) does not make sense.

CNH has never identified the documents *CNH* intends to use in summary judgment or at trial relating to the "reasonableness" inquiry in any pleading or Rule 26 disclosure. Even if it had, that would not justify refusal to provide a responsive answer. *Akins v. State Farm Mutual Automobile Insurance Co.*, 2011 U.S. Dist. LEXIS 82801 *10-11 (E.D. Mich. 2011) (Goldsmith, J.). In any case, the various questions relevant to the second remand were not articulated until the *Reese II* decision.

For the same reason, CNH's objection that Plaintiffs have had ample opportunity

---

[14] At the December 2012 status conference, CNH informed the Court that CNH was ready to proceed and wanted the case submitted for a final decision by the end of January 2013. In December 2012, having recently received the panel decision articulating the questions for this Court to consider and the Sixth Circuit's denial of their petition for an en banc hearing, Plaintiffs were *not* ready to proceed and requested time for extensive discovery on CNH proposed benefit cuts and on the issues identified in the *Reese* decisions Plaintiffs need time to prepare for their case. These Interrogatories, filed in accordance with this Court's scheduling Order, are the first round of that discovery.

to obtain this discovery previously (General Objection 4) is also meritless. Plaintiffs'
Interrogatories were served in the first round of discovery after *Reese II* was decided
and relevant questions were articulated.

Finally, with respect to General Objection 5, the importance of the information
Plaintiffs seek -- the identity of documents on which CNH will use to present its case --
is obvious.  The burden or expense on CNH to identify the documents it intends to use
to prove that the Proposed Plan is "reasonable" under the standards articulated by the
Sixth Circuit -- cannot possibly justify withholding their identity.

## III.   CONCLUSION

For all of the reasons stated, CNH must be compelled to provide full and
complete Answers to Interrogatories 3-9, 14-32, 34, 36-38, 41-43, 45-48 and 50 within
14 days.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: */s/ Darcie R. Brault*
Darcie R. Brault (P43864)
David R. Radtke (P47016)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
(248) 354-9650
dbrault@michworklaw.com

Dated: July 19, 2013

23

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2013 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will serve it on all parties.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C.

By:  */s/Darcie R. Brault*
David R. Radtke (P47016)
Darcie R. Brault (P43864)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
(248) 354-9650
dbrault@michworklaw.com

Dated:        July 19, 2013