UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE
PIDDE, JAMES CICHANOFSKY,
ROGER MILLER, and GEORGE
NOWLIN,

          Plaintiffs,

     v.

CNH GLOBAL N.V. and CNH
AMERICA LLC,

          Defendants.

Case 2:04-cv-70592-PJD-PJK

Hon. Patrick J. Duggan, U.S.D.J.

Hon. Paul J. Komives, U.S. Mag. J.

## CNH'S OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL
## FURTHER INTERROGATORY RESPONSES

Norman C. Ankers (P30533)
 (nankers@honigman.com)
Honigman Miller Schwartz and Cohn
 LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
313.465.7306
313.465.7307 fax

Bobby R. Burchfield
 (bburchfield@mwe.com)
Joshua David Rogaczewski
 (jrogaczewski@mwe.com)
Laura J. Capotosto
 (lcapotosto@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8000
202.756.8087 fax

*Attorneys for CNH Global N.V. and CNH America LLC*

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Do CNH's responses to Plaintiffs' interrogatories—as currently supplemented—satisfy its obligations under Federal Rules of Civil Procedure 26 and 33?

## CONTROLLING OR MOST
## APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 33

Federal Rule of Civil Procedure 37

# INTRODUCTION

Last year, when the Sixth Circuit remanded this case for the second time, it admonished: "This long-running dispute needs to come to an end, and it is particularly unfair to prolong the dispute when the status quo . . . not only favors just one party [Plaintiffs] but also risks mooting the economic stakes for the other party [Defendants]." *Reese v. CNH Am. LLC*, 694 F.3d 681, 685 (6th Cir. 2012) ("*Reese II*"). The Court recognized this mandate in its first scheduling order, but Plaintiffs' service of an excess number of interrogatories (51 versus the allowable 25) has led to additional motions practice not originally anticipated, and the original schedule has already been delayed. Now Plaintiffs have moved to compel further responses to those interrogatories. To avert further delays, CNH (that is, CNH Global N.V. and CNH America LLC), has gone the extra mile and provided further information that should address any remaining legitimate issues Plaintiffs might have.[1]

# BACKGROUND

On March 14, Plaintiffs served fifty-one interrogatories on CNH. They belatedly sought leave to exceed the interrogatory limit in Rule 33(a)(1) (R. 337). On April 18, while Plaintiffs' motion for leave was pending, CNH timely

---

[1]Plaintiffs may cite their current motion as a reason for even further delay. CNH strongly opposes any further delay.

responded to twenty-five of Plaintiffs' interrogatories (R. 345 Ex. 2), focusing on

interrogatories addressing who provided information contained in the responses

(Interrogatory 2), the historical and projected costs associated with Plaintiffs'

current plan and the plan CNH proposed for them (Interrogatories 10–31 and 51),

and the ability of participants to pay the premium associated with the proposed

plan (Interrogatory 39).

Magistrate Judge Komives—to whom the Court referred the request for

leave (R. 338)—granted Plaintiffs leave to serve most of the additional

interrogatories and ordered CNH to respond to them on or before June 19. (R. 346,

Order 11.) Judge Komives found specifically that four of Plaintiffs' excess

interrogatories did not meet the standard for leave under Rule 33(a)(1) because

they were objectionable under Rule 26(b)(2)(C)(i) as cumulative of other discovery

requests or disclosure requirements. (R. 346, Order 9.) He did not disturb his ruling

upon reconsideration. (R. 352, Order 6.) Plaintiffs appealed the matter to the Court

(R. 354).

In compliance with Judge Komives's order, CNH served supplemental

interrogatory responses on June 19 (R. 357 Ex. A). Not until on July 15—almost

three months after receiving the interrogatory responses and almost a month after

receiving the supplemental responses—Plaintiffs telephoned CNH regarding

alleged deficiencies. (*See* Ex. 1, July 16, 2013, Rogaczewski–Brault Ltr. 1.) CNH

promptly responded to Plaintiffs' concerns in writing. (*Id.* at 1–4.) With no further dialogue, Plaintiffs moved to compel. On July 26, after reviewing Plaintiffs' motion to compel, and in an effort to avert another extension of the schedule, CNH provided additional supplemental responses to the interrogatories (Ex. 2).

On July 30, the Court granted Plaintiffs' appeal of Judge Komives's orders in part and amended the scheduling order *sua sponte*. (R. 360, Order 8–9.) Importantly, in its July 26 supplemental response, CNH has already provided the information required by the Court's July 30 order.

## ARGUMENT

Plaintiffs' motion should be denied for at least two reasons. *First*, through its original and supplemental responses, CNH has already provided Plaintiffs with most of the information sought by Plaintiffs' motion. *Second*, Plaintiffs are not entitled to additional detail in the remaining interrogatory responses, either because the information sought is protected by the attorney–client privilege or attorney work product doctrine or because the information is contained in business records already produced to Plaintiffs.

## I.   CNH'S "GENERAL OBJECTIONS" ARE PROPER BECAUSE THEY ARE INCORPORATED ONLY WHERE THEY APPLY.

Plaintiffs first contest CNH's practice of making general objections at the front of its responses and incorporating them into the responses to specific interrogatories. (R. 356, Pls.' Mot. Compel 2–4.) But there is nothing improper in

CNH's method, which avoids repeating the bases for its objections each time they are made.

Relying on a handful of opinions—relegated to a footnote—Plaintiffs contend that CNH's practice is "condemned." (*Id.* at 3 & n.2.) Plaintiffs misread those cases, which stand for the proposition that it is improper to assert *all* general objections to *each* discovery request. *See, e.g.*, *Powerhouse Licensing, LLC v. CheckFree Servs. Corp.*, No. 12-cv-13534, 2013 WL 1209971, at *3 (E.D. Mich. Mar. 25, 2013) (criticizing practice of "asserting boilerplate objections to *every* discovery request" (emphasis added)). CNH has not done that: for *each* interrogatory, CNH incorporated *only* the objections it was asserting to *that* interrogatory. Plaintiffs catalog the number of instances that CNH made particular objections (R. 356, Pls.' Mot. Compel 2–3), and recite the objections specified to each interrogatory, demonstrating their understanding of which objections are asserted to each interrogatory. Even if Plaintiffs *were* confused regarding the scope of CNH's answers, they could have simply asked CNH to explain its responses. Arguably, Federal Rule of Civil Procedure 37 required them to do so.

## II.   CNH'S INTERROGATORY RESPONSES ARE SUFFICIENT.

As for CNH's responses to Plaintiffs' interrogatories, they represent fair and full answers to the questions propounded by Plaintiffs. Indeed, the supplemental

4

responses that CNH served in the hopes of terminating this discovery dispute

provide much of the additional information Plaintiffs demand.

> **A.   CNH Has Provided Most of the Information Plaintiffs Demand in Their Motion To Compel.**

Plaintiffs' motion to compel asserts that CNH did not provide sufficient

information regarding the cost projections about which Plaintiffs asked

(Interrogatories 14–31), several contention interrogatories (Interrogatories 34, 36,

and 37), information related to CNH's expert (Interrogatories 45–47), and witness

and document identification (Interrogatories 3, 4, and 48). As discussed below, the

responses in CNH's supplemental interrogatory responses were sufficient under the

rules. Regardless, however, CNH has since provided *additional* information that

should satisfy Plaintiffs.

> **1.   CNH's Description of Towers Watson's Cost Projection Methodology Contained Sufficient Detail.**

Interrogatories 14 through 31 asked CNH to project the costs associated with

Plaintiffs' current health plan and the one CNH is proposing in this case for them.

CNH asked Towers Watson & Co. to perform these projections, and the results are

provided on a plan and per capita basis. (R. 357 Ex. A Ex. B, Cost Projections 1–

2.) Plaintiffs also asked for the methodology used to make the projections, which

CNH provided. (*Id.*) Plaintiffs, however, want *more* detail regarding the

methodology in the interrogatory response, even though they could get it directly

from Towers Watson. Rather than fight further about this issue, CNH has provided

Plaintiffs with additional information regarding how Towers Watson makes its cost

projections. (Ex. 2 Ex. C, Towers Watson Assumptions 1–9.) That should end the

matter. If Plaintiffs truly need further information, they should depose Towers

Watson.

### 2.    CNH's Responses to Plaintiffs' Contention Interrogatories Were Sufficient.

Interrogatories 34, 36, and 37 asked CNH about its contentions regarding

what is relevant to the *Reese* inquiry, plans with which CNH plans to compare the

proposed plan, and the changes in health care CNH plans to bring to the Court's

attention. CNH answered each of these contention interrogatories sufficiently.

Plaintiffs' dissatisfaction with CNH's contentions is not a basis for a motion to

compel. Nevertheless, in each instance, CNH has voluntarily provided additional

detail that should obviate the motion to compel.

Confusing "factors" with "questions," Plaintiffs asked CNH in

Interrogatory 34 what additional "factors" it would ask the Court to consider. CNH

answered correctly that the *Reese* test has three *factors* and that it would be error

for the Court to look to other factors. (R. 357 Ex. A, CNH's Supp'l Resp. Pls.'

Interrs. 10.) The Sixth Circuit's 2012 decision in *Reese II* suggested several

*questions* that bear on the three *Reese factors*, and it appears from Plaintiffs'

motion that they are asking about these *Reese II* "questions." CNH's second

6

supplemental interrogatory responses make clear CNH's view that those questions are exhaustive. (Ex. 2, CNH's 2d Supp'l Resp. Pls.' Interrs. 18–19.)

Next, Plaintiffs asked CNH in Interrogatory 36 about the plans to which it intends to compare the proposed plan. CNH informed Plaintiffs that it intends to compare the proposed plan to those offered by CNH and its competitors Deere and Caterpillar (all of which were negotiated and agreed to by the UAW) and to plan data aggregated and summarized by Towers Watson and the federal government. (R. 357 Ex. A, CNH's Supp'l Resp. Pls.' Interrs. 11.) Incredibly, Plaintiffs complain that this answer is insufficient and contend that they do not know which CNH plan will be compared to the proposed plan. CNH's current interrogatory response makes even clearer what Plaintiffs should have already known: CNH will compare the proposed plan to the plan offered to post-2004 UAW retirees at CNH and the plans offered by Caterpillar and Deere to their UAW retirees. (Ex. 2, CNH's 2d Supp'l Resp. Pls.' Interrs. 19–20.) CNH also directs Plaintiffs to documents that have already been produced and informs them that other documents will be identified in expert disclosures, due on October 17 pursuant to this Court's revised scheduling order. (*Id.*)

Finally, Interrogatory 37 asked CNH about "changes in health care." CNH provided a list of the types of systemic changes that it believes impact the Court's analysis. (R. 357 Ex. A, CNH's Supp'l Resp. Pls.' Interrs. 11.) Plaintiffs appear to

complain that the information provided is too general. The details will be fleshed

out in CNH's expert reports. In any event, CNH has now provided Plaintiffs with

additional information and details regarding this issue, including changes in law

such as Medicaid Part D and the Affordable Care Act, and the fact that a substantial

portion of their plan's costs are attributable to the consumption of services and

prescription drugs that did not exist in 1998, when their plan commenced. (Ex. 2,

CNH's 2d Supp'l Resp. Pls.' Interrs. 20–21.)

      In each of the situations described above, even if Plaintiffs' complaints about

CNH's original answers had merit (and they did not), CNH's recent supplemental

responses cure them.

### 3.    CNH's Answers Regarding Scott Macey's 2010 Declaration Were Truthful and Complete.

      Three of Plaintiffs' interrogatories asked about data Scott Macey referred to

in a declaration submitted in 2010. CNH provided all the information Mr. Macey

could remember about his former colleagues at Aon Corporation that assisted him

(Interrogatory 45), the information he knows about the plans forming the basis of

the 2010 analysis (Interrogatory 46), and what he remembers about the relative

value calculations in the 2010 declaration (Interrogatory 47). (R. 357 Ex. A,

CNH's Supp'l Resp. Pls.' Interrs. 14–16.) Plaintiffs spend several pages in their

motion to compel disputing the accuracy of the interrogatory responses. If

Plaintiffs want to probe Mr. Macey's memory on the subjects at a deposition, they

can, but all of this is academic. As explained in CNH's current interrogatory responses, the information about which Plaintiffs complain (paragraphs 27 through 29 of the 2010 declaration) will not be in Mr. Macey's forthcoming expert disclosure. (Ex. 2, CNH's 2d Supp'l Resp. Pls.' Interrs. 25–27.) CNH will instead use the Towers Watson data—which is more current and draws from a greater number of companies—as one of its benchmarks.

### 4. CNH Has Satisfied Its Obligation To Provide Information Regarding Witnesses and Documents.

Plaintiffs also move to compel responses to three interrogatories (3, 4, and 48) that are the subject of their appeal of Judge Komives's orders recently decided by the Court. The Court overruled Judge Komives' decision that CNH does not have to answer Interrogatories 3 and 48, and affirmed that CNH does not have to answer Interrogatory 4. (R. 360, Order 8.) Before the Court decided Plaintiffs' appeal, in an effort to move the case forward, CNH supplemented its interrogatory responses to include the fact and expert witnesses on which it currently expects to rely and information regarding the documents CNH currently plans to use on the merits. (Ex. 2, CNH's 2d Supp'l Resp. Pls.' Interrs. 5, 27.) This supplemental response renders moot this portion of the motion to compel.

**B.     The Remaining Information Sought by the Motion To Compel Is Either Privileged or in Business Records Available to Plaintiffs.**

CNH's second supplemental interrogatory responses should resolve most of Plaintiffs' motion to compel, but two topics remain for discussion: information about alternatives CNH considered to the proposed plan (Interrogatory 38) and information about the plaintiff class's pensions (Interrogatories 5–9). In both cases, CNH's interrogatory responses discharge the company's obligations under the rules.

**1.     Any Consideration of Alternatives to the Plan Proposed by CNH Is Privileged.**

Plaintiffs ask by interrogatory whether CNH considered alternatives to the plan proposed in this case and, if so, what those options were. The plan proposed by CNH during the first remand proceeding, and still advocated by CNH in this second remand proceeding, parallels the plan CNH negotiated and executed with the UAW in 2005 for post-2004 retirees. In response to the Sixth Circuit's 2009 opinion, CNH proposed that 2005 plan for this class during the first remand proceeding. CNH made this proposal in consultation with inside and outside counsel. Even if relevant,[2] CNH's internal discussions regarding the proposed plan,

---

[2] Plaintiffs attempt to erect an argument that this information is relevant (R. 356, Pls.' Mot. Compel 15–16), but their position lacks any logical foundation. If CNH's plan is reasonable under the *Reese* standard, then it simply does not matter if CNH considered other options.

including any alternatives considered, are obviously protected by the attorney–client privilege *and* attorney work product doctrine. CNH objected timely and properly on this ground, and Plaintiffs have no cogent argument as to why they should have access to this information.

      **2.**     **CNH's Direction of Plaintiffs to Business Records for Information About Class Members' "Gross Pensions" and How Pensions Change Over Time Is Completely Proper.**

Plaintiffs also want CNH to provide them with the amount that each class member receives as a *gross* pension and how that pension will change over time. Consistent with the principles of Rule 33, CNH has provided Plaintiffs with most of the information in response to the interrogatories and then directed them to business records for the remainder. (Ex. 2, CNH's 2d Supp'l Resp. Pls.' Interrs. 6–8.)

To begin, CNH notes that Plaintiffs themselves refuse to answer any interrogatories about unnamed class members. (Ex. 5, Pl. Reese's Resp. Defs.' 2d Set Interrs. 6.) They obtained class certification on the ground that *the named plaintiffs are typical and representative of the whole class*. With these interrogatories about *absent* class members, Plaintiffs are seeking to have it both ways.

Notwithstanding the marginal relevance, Plaintiffs asked for biographical information about the class members. CNH provided it. (Ex. 2 Ex. D, Class List 1–

42.) Plaintiffs also asked for each class member's "gross pension," which refers to the total pension a class member earned for his or her work *both* for Case Corporation (prior to July 1, 1994) *and* for CNH America (after July 1, 1994). As CNH has explained (many times) to Plaintiffs, another company and not CNH pays the portion of Plaintiffs' pensions related to their pre-July 1, 1994 work. (*See* Ex. 3, Schaeffer Decl. ¶ 2.) Accordingly, CNH does not have in an electronically accessible format the class members' gross pensions. (Ex. 2, CNH's 2d Supp'l Resp. Pls.' Interrs. 6.)[3] CNH does have readily available the amount of class members' pensions that *it* pays, and has provided that post-1994 pension information to Plaintiffs. (Ex. 2 Ex. D, Class List 1–42.)

CNH does have hard copy documents from which Plaintiffs might ascertain class members' *gross* (pre-1994 and post-1994) pensions *as of when they retired*. These documents are the pension-calculation worksheets and similar documents

---

[3] With no evidence whatsoever, Plaintiffs assert that "CNH can easily produce the gross pension benefit for each Class Member without consulting individual files." (*E.g.*, R. 356, Pls.' Mot. Compel 7–8.) They claim "anecdotal evidence" exists that CNH has a database with the information, but their evidence is a pension-calculation worksheet that was printed out in 2001. (R. 358 Ex. B, Pens.-Calc.Worksheet 1–2.) CNH assures the Court: the company does *not* have a database with electronically accessible information showing class members' gross pensions and it cannot produce the information Plaintiffs want without going through each individual file for each individual class member. (Ex. 3, Schaeffer Decl. ¶¶ 3–4.) If Plaintiffs believe that information is relevant, Rule 33(d) requires them to do the work.

from the class members' personnel and benefit files produced to Plaintiffs earlier in this case. (Ex. 2, CNH's 2d Supp'l Resp. Pls.' Interrs. 6.) Plaintiffs could and did select documents, including the worksheets, from those files for copying. Plaintiffs contend in their motion that they could not have foreseen the need for these documents (R. 356, Pls.' Mot. Compel 7) and suggest that they did not select them for copying (*id.* at 7 n.9). To the contrary, Plaintiffs *did, in fact, select for copying the documents containing the gross pension amounts*. (*See* Ex. 4, Pers. & Ben. File Docs.)[4] Importantly, CNH cannot certify that any documents in its possession accurately state the current pensions payable for Plaintiffs' pre-1994 work.

Plaintiffs may not want to go through the documents to collect this information, but CNH would have to do *the same thing*, which is why the rules permit CNH to direct Plaintiffs—as it did here—to the business records. *See* Fed. R. Civ. P. 33(d).[5] The same is true for the future changes—if any—to class members' pensions. Those changes would be governed by collective bargaining agreements between CNH America and the UAW (for the post-1994 pensions), and

---

[4] Exhibit 4 is a collection of documents from the first twenty-five benefit files produced to Plaintiffs. In *each* case, Plaintiffs selected the class member's pension-calculation worksheet or similar disclosure form.

[5] Plaintiffs also complain that CNH's use of Rule 33(d) will leave them with a summary open to an authenticity challenge by CNH. (R. 356, Pls.' Mot. Compel 8.) The rules of evidence allow such a summary but require the proponent of a summary chart to give her adversary an opportunity to audit the summary. *See* Fed. R. Evid. 1006.

13

CBAs between Case Corporation and the UAW (for the pre-1994 pensions). CNH

properly directed Plaintiffs to those agreements. (Ex. 2, CNH's 2d Supp'l Resp.

Pls.' Interrs. 7–8.)

## CONCLUSION

For the reasons set forth above, CNH urges the Court to deny Plaintiffs'

motion to compel.

Dated: August 5, 2013                     Respectfully submitted,

                                          s/Joshua David Rogaczewski

Norman C. Ankers (P30533)                 Bobby R. Burchfield
 (nankers@honigman.com)                    (bburchfield@mwe.com)
Honigman Miller Schwartz and Cohn         Joshua David Rogaczewski
 LLP                                       (jrogaczewski@mwe.com)
2290 First National Building              Laura J. Capotosto
660 Woodward Avenue                        (lcapotosto@mwe.com)
Detroit, Michigan 48226                   McDermott Will & Emery LLP
313.465.7306                              The McDermott Building
313.465.7307 fax                          500 North Capitol Street, Northwest
                                          Washington, D.C. 20001
                                          202.756.8000
                                          202.756.8087 fax

*Attorneys for CNH Global N.V. and CNH America LLC*

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2013, I electronically filed the foregoing

**CNH's Opposition to Plaintiffs' Motion To Compel Further Interrogatory**

**Responses** with the Clerk of the Court using the ECF system which will send

notification of such filing to all ECF participants.

<div style="margin-left: 40%">

<u>s/Joshua David Rogaczewski</u>
Joshua David Rogaczewski
 (jrogaczewski@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8195
202.591.2757 fax

</div>