UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE PIDDE, JAMES CICHANOFSKY, ROGER MILLER, and GEORGE NOWLIN on behalf of themselves and a similarly situated class,
Plaintiffs,

Hon. Patrick J. Duggan

Case No. 04-70592

v.

**Class Action**

CNH GLOBAL N.V., formerly known as Case Corporation, and THE COMPANY LLC,
Defendants.

_______________________________________/

Roger J. McClow (P27170)
David R. Radtke (P47016)
Darcie R. Brault (P43864)
McKNIGHT, McCLOW, CANZANO SMITH & RADTKE, P.C.
Attorneys for Plaintiffs Reese, et al.
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

Norman C. Ankers (P30533)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Defendants
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7000

Bobby R. Burchfield, Esq.
McDERMOTT WILL & EMERY
Attorneys for Defendants
The McDermott Building
500 North Capital Street, Northwest
Washington, D.C. 20001
(202) 756-8000

_______________________________________/

**REPLY TO CNH'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ANSWERS TO FIRST INTERROGATORIES**

## Continuation of Statement of the Record

14. After seeking concurrence which was not granted, Plaintiffs filed their Motion to Compel Answers to First Interrogatories on July 22, 2013. R. 356.

15. Defendant filed supplemental responses to Plaintiffs' interrogatories on July 26, 2013 (received July 29, 2013), "CNH's Second Supplemental response to Plaintiffs' First Interrogatories." Defendant purported to be supplementing the answer in "discharge" of their obligation under the Court's Order. R. 346 (Order Granting in Part Plaintiffs' Motion for Leave to Exceed Twenty-Five Interrogatories) and in an attempt to resolve this discovery dispute.

16. On July 30, 2013, this Court entered an Order requiring the Defendants to respond to Interrogatories No. 3 and 48, but not 4. R. 360. The Order requires CNH to comply within fourteen days, or, August 13, 2013.

17. On August 5, 2013, Defendants filed their "Opposition to Plaintiffs' Motion to Compel Further Interrogatory Responses."

## Argument

In their "Second Supplemental Response to Plaintiffs' First Interrogatories, Defendants stated that they were answering Interrogatories 1-10, 31, 34-50. Defendants left the general objections intact and did not respond to the deficiencies extolled in Plaintiffs' Motion to Compel Answers to First Interrogatories.

In response to Plaintiffs' Motion to Compel Answers to First Interrogatories, Defendants contend that their Second Supplemental Responses to Plaintiffs' First Interrogatories (served after this motion) "should address any remaining legitimate

issues Plaintiffs might have." The Second Supplemental Responses address some,[1] but not all of issues raised by Plaintiffs.[2]

**Boilerplate Answers and General Objections**

Defendants have had numerous opportunities to explain how their responses are limited by their general objections and have failed, despite two supplemental responses, to do so. Defendants rely upon their objections to provide incomplete responses. For example, Defendants object to Plaintiffs' definition of the word "describe," substitute their own definition, and then fail to fully answer the interrogatories in apparent reliance upon the objection.

**Pension Information (Interrogatories No. 5-9)**

Defendants provided, in their Second Supplemental answers an Exhibit D which contains, apparently, a portion of pension paid by CNH during an unspecified time period. Date of birth, telephone number, type of retirement and gross pension benefits are not provided. CNH reiterates its claim that is does not

---

[1] See **Exhibit A** for a chart of resolved and unresolved issues. The gray-filled rows are resolved, however, contain statements regarding reliance of which the Court should be aware.

[2] There is a clear and legitimate need for the discovery sought by the Plaintiffs so that they may apply the reasonableness standard as described and adopted in *Reese II*. Despite Defendants' accusations of dilatory motive by Plaintiffs, it is the Defendants who have consistently caused delays in this matter by obstinately refusing to provide discovery; e.g. requiring the entry of two discovery orders (so far).

have the gross pension numbers in electronic form and that Plaintiffs have "equal access" to the information through their 2007 document inspection.

To clarify, the CNH U.S. Pension Plan provides the method of calculating hourly UAW pensions. **Exhibit B**, see also **Exhibit C** (Tentative Agreement).

For employees retiring prior to age 62 on a normal or early benefit, there was a supplement paid to age 62 which was a defined amount, e.g., $2,180 after 4/1/1999; $2,230 after 4/1/2000; $2,280 after 4/1/2001; $2,330 after 4/1/2002; and $2,380 after 4/1/2003. This supplement was reduced in certain circumstances (if the employee did not meet certain age or service requirements). After age 62 and one month, the supplement dropped off and the retiree received a basic benefit which was calculated on the basis of credited service times the basic pension rate. The rate also increased annually, e.g., $38.20 beginning 4/1/2000; $39.45 after 4/1/2001; $40.70 after 4/1/2002; and $42.00 after 4/1/2003. For example, if an employee retired on May 1, 2000 with 31.5 years of credited service, his base benefit would be $1,242.68 (31.5 x $39.45). If he retired before age 62, his monthly benefit would begin at $2,330 until age 62. See **Exhibits B, C, and D p. 12, 14, 46-47, 73, 76, 82-84, 88, 95** (excerpts from deposition of Sharon Schaeffer with relevant exhibits).

While ascertaining the benefit at retirement is possible, the analysis becomes more complicated. The first complication is that, although the CNH Pension Plan

defines how the gross pension benefit is calculated and sets forth the base benefit rate, a Case hourly retiree actually receives two pension checks, one from CNH and one from Pactiv. Pactiv is a former Tenneco subsidiary which assumed Tenneco's obligation for pre-July 1, 1994 Case hourly pension benefits. (Case was a wholly owned Tenneco subsidiary until the July 1, 1994 IPO; Another subsidiary, Tennessee Pipeline Co. merged with a subsidiary of El Paso Corp. to become El Paso Tennessee Pipeline Co. which assumed the obligation for Case hourly medical and life insurance benefits). **Exhibit D, pp. 82-84**

The Pactiv portion of the pension benefit is frozen as of July 1, 1994. El Paso's basic benefit portion of the total pension is based on credited service as of July 1, 1994 times the rate in effect at that time, $31.15.

In order to calculate the CNH share of a retiree's pension, CNH's benefit department calculates the gross pension benefit (based on date of retirement, total credited service and pension rate); it then calculates Pactiv's frozen share (credited service as of 7/1/94 times $31.15) and subtracts Pactiv's share from the gross to determine CNH's share. **Exhibit D, p. 147-148 (calculating Reese pension).**

The information that CNH provided in its Supplemental Interrogatory Answers shows only CNH's portion of the gross pension benefit at one moment in time. The chart provided does not contain credited service amounts or the basic

rates that are used to calculate the current gross pension amount. Therefore, Plaintiffs cannot calculate the gross pension from the information CNH provided.

The second complicating factor is that both the 1995 and 1998 CBAs provided for "walk throughs" for employees retiring with more than 30 years of credited service. **Exhibit C**, pp. 3-5). That means that, for instance, an employee who retired on 5/1/1999 with 30 plus years of service and before age 62, would receive $2,180 a month until 4/1/2000 at which time he would receive $2,230/mo. until 4/1/2001 at which time he would receive $2,280/mo. until 4/1/2002, at which time he would receive $2,330/mo., etc. When he reached age 62 and one month on 5/1/2002, for example, his basic benefit would be 30 times $40.70 or $1221.00/mo. (based on the rate in effect beginning 4/1/2002. On 4/1/2003, the rate increased to $42.00 so his basic benefit would be increased to $1,260.00 where it would stay (because the increase to $42.00 was the last increase in the 1998 CBA).

In 2006, counsel for Plaintiffs reviewed CNH benefit files which should have included copies pension calculation sheets and pension applications. However, CNH did not produce all of the files (approximately 100 files were not produced at all). Not all of the files included pension calculation sheets.

The pension calculation sheets that were produced and were copied do show the pension amounts calculated at the time of retirement only. They do not[3] show which retirees are eligible for the "walk throughs," the future "walk through" amounts or what the pensions would be after the "walk through" increases ended.

Defendant CNH or its agents clearly has access to the information regarding how to pay its pension obligation and that access is superior to Plaintiffs' access, which consisted of reviewing an incomplete set of paper files seven years ago.

Sharon Schaeffer is employed in the CNH benefits department and was previously identified as a person most knowledgeable on pension matters by CNH. Sharon Schaeffer is still employed by CNH and CNH offers a "declaration" from attached to their opposition to this motion.

In her declaration, Ms. Schaeffer states that "CNH America does not have in an electronically accessible format the amount a class member receives for his or her pre-July 1, 1994 work or the total of his or her pre- and post- July 1, 1994 pensions." She further claims that if CNH America wanted to ascertain the amount received from Pactiv, it would have to review the benefits files.

Notably, Defendants do not contest that the information requested is relevant and that they have access to it, they are claiming that it is an equally burdensome

[3] Only three of the files contained any information regarding changes in pension amounts over time and this was because the retiree was not associated with a plant at the time of retirement. **Exhibit D**.

task for them to make the calculation compared to the Plaintiffs making the calculation. Plaintiffs disagree.

Ms. Schaeffer's declaration is carefully worded to rely upon only that information which CNH America possesses and does not expand its answer to the agents of CNH America.

At her deposition in October of 2005, counsel for the Plaintiffs asked her about the June 14, 1999 letter she wrote to Jack Reese (as well as two other letters) and a little about her calculation of both the CNH and Pactiv amounts and about the future increases. Relevant excerpts of Ms. Schaeffer's deposition and the related Exhibits are attached. **Exhibit D**. Schaeffer's responsive letters showed the employee's pension amounts based on credited service and the then current basic rate (although rate or years of credited service are not disclosed). Some of these letters referred to the annual increases and showed what the future supplement and basic rate amounts were.

At her deposition, Ms. Schaeffer testified that the physical benefits files were maintained at CNH, **Exhibit D, p. 10**. Her job was to "manage to the process of retirement." pp. 14-15. She collected the information from the plants, set up the payments and checked the local plants calculation of the benefit and calculated benefits for surviving spouses when retirees died. There was a computer software system called "BeneSoft" used to store benefits and insurance information. Ms

Schaeffer had access to the retirement data on that system as well as information stored on her own computer. **Exhibit D, pp. 30-31, 36, 46-48, 63-64, 73, 76.**

In January of 2002, CNH outsourced the pension administration to a pension center: CNH U.S. Pension Center. **Exhibit D, pp. 64-65.** When the pension administration was outsourced, retirees were notified that their checks would be mailed from Bankers Trust in Hartford, Connecticut rather than from CHN in Racine, Wisconsin. At that time the "whole pension process" was outsourced, **Exhibit D, p. 145**. Subsequently, retirees began receiving both checks from Bankers Trust. At a later date, State Street Retiree Services began sending the checks. **Exhibit E**.

In light of these facts and looking back at the recently proffered Declaration of Ms. Schaeffer, it appears that CNH is taking the position that "CNH America" does not have access to the requested information because it outsourced the pension process. CNH objected to Plaintiffs' definition of "Company" (which included: J. I. Case, Case Corporation, Case LLC, CNH America LLC, CNH Global N.V., CaseNewHolland, Inc., Case New Holland, Inc., Fiatallis North America, Inc., Fiat SPA, Fiat Acquisition Company, their predecessors, parents, subsidiaries and divisions and the employees, **representatives and agents** of these entities). The Federal Rules of Civil Procedure require a party to respond to discovery requests with the information within their control, even if it means that

they must go through their agent to obtain that information. Fed. R. Civil Proc. 26, 33. If a party can obtain the information from sources under its control, it may not avoid answering by alleging ignorance, *Wycoff v. Nichols*, 32 F.R.D. 369 (W.D. Mo. 1962), *Costa v. Kerszner Int'l Resorts, Inc.* 277 FRD 468 (S. D. Fla., 2012).

For most of the retirees, Plaintiffs may be able to find the years of credited service from the benefit summaries in their files. Plaintiffs' counsel could then try to determine the current pension by applying what we determine to be the proper rate, given the dates of retirement and walk through increases since each person's retirement, and multiplying that rate by the years of credited service. Such a process would take dozens, if not hundreds of hours to try to duplicate the gross pension amounts CNH has at its fingertips, undoubtedly in electronic format, though its pension process administrator. Of course, even if counsel spent this time, Plaintiffs could not be certain they were correct. On the other hand, CNH and its agent know what the gross pension benefit currently is because they had to calculate it and recalculate it annually for walk through increases in order to determine its share – the amount above Pactiv's frozen amount.

**Comparator Plans (Interrogatory No. 36)**

CNH did not meaningfully change its response to Interrogatory No. 36 in their Second Supplemental responses. CNH fails to describe the comparators it intends to use (other than Caterpillar and Deere). If they do not intend to use any

other comparators, they should be required to make an affirmative statement to that effect. Otherwise, if there are new comparators proffered by their expert, there will not be sufficient time to conduct discovery prior to the cutoff.

**Changes in Health Care (Interrogatory No. 37)**

Defendants response does not address Plaintiffs' legitimate request, contending that "[t]he details will be fleshed out in CNH's expert reports." The time for discovery of the details is now, while discovery remains open.

**Potential Alternatives (Interrogatory No. 38)**

The Magistrate Judge ruled, at R. 346, Pg ID 12318 that if CNH considered and rejected plans which provided better benefits than the proposed plan, then that should inform the question of reasonableness of the proposed plan. CNH never made any attempt at reconsideration or appeal of this decision. CNH did not supplement this response and has asserted only objections (and never any substance) regarding the alternatives that it considered to achieve savings with less financial impact on Class Members.

Despite making seven categories of objections to the request, it appears that CNH has settled on privilege as its basis for withholding the information. They claim that "[i]n response to the Sixth Circuit's 2009 opinion, CNH proposed that 2005 plan for this class during the first remand proceeding." It claims it made this proposal "in consultation with inside and outside counsel." At Pg ID 12550.

Defendant has not produced any privilege log or in any other way elucidated its objection.

Claims of attorney-client privilege are "narrowly construed because the privilege reduces the amount of information discoverable during the course of a lawsuit." The privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 1577, 48 L. Ed. 2d 39 (1975)). The privilege can be waived by voluntary disclosure, which may have occurred here, but it is impossible to determine without more information.

A corporate client should not be allowed to conceal a fact by disclosing it to the corporate attorney. *SEC v. Gulf & Western Indus.*, 518 F. Supp. 675, 681-82 (D.D.C. 1981). Indeed, the mere fact that in-house counsel is present at a meeting does not shield otherwise unprivileged communications from disclosure. See *Great Plains Mutual Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993) and *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289, 292-293 (D.D.C. 2000).

Further, communications that have a business purpose but do not constitute legal advice are not privileged. The attorney-client privilege "applies only to communications made to an attorney in his capacity as legal advisor." *Marten v.*

*Yellow Freight System, Inc.*, 1998 U.S. Dist. LEXIS 268, 1998 WL 13244, (D. Kan. Jan. 6, 1998). Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected. *Coleman v. ABC*, 106 F.R.D. 201, 206 (D.D.C. 1985); see also *Abb Kent-Taylor v. Stallings and Co., Inc.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996) ("often intertwined with legal advice as to substantive issues is counsel's strategic assessment of alternative choices of action available to the client."). Relatedly, "communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, would not be privileged." See *Great Plains*, 150 F.R.D. 193, 197. In other words, "when the legal advice is merely incidental to business advice, the privilege does not apply." *Id*.

The work product doctrine "is distinct from and broader than the attorney-client privilege." *In re Antitrust Grand Jury*, 805 F.2d at 163 (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S. Ct. 2160, 2170 n. 11, 45 L. Ed. 2d 141 (1975)). The doctrine is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S. Ct. 385, 393, 91 L. Ed. 451, 34 Ohio Op. 395 (1947). So-called "fact" work product, the "written or oral information transmitted

to the attorney and recorded as conveyed by the client," *In re Antitrust Grand Jury*, 805 F.2d at 163, may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. See *Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988). *Tenn. Laborers Health & Welfare Fund v. Columbia/Hca Healthcare Corp. (in Re Columbia/Hca Healthcare Corp. Billing Practices Litig.)*, 293 F.3d 289 (6th Cir. Tenn. 2002). Of course, the work product protection can also be waived.

Here, there is insufficient information to determine whether protection has been waived, but perhaps more compelling, there is clearly no ability to obtain the information about what alternatives were considered other than from the Defendants. Defendants should be ordered to provide a substantive answer.

**Identification of Exhibits (Interrogatory No. 48)**

Defendants seek to evade the Court's order to respond to this Interrogatory by again asserting multiple general objections and describing, in vague terms, documents that they will produce and/or identify documents only in conjunction with their expert witness reports. This evasive answer should be considered a non-answer under Fed. R. Civ. Proc. 37.

                                            Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: *_/s/ Darcie R. Brault_*
Darcie R. Brault (P43864)
David R. Radtke (P47016)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650
dbrault@michworklaw.com

Dated: August 19, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2013 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will serve it on all parties.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: */s/Darcie R. Brault*
David R. Radtke (P47016)
Darcie R. Brault (P43864)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650
dbrault@michworklaw.com

Dated: August 19, 2013