UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE,
FRANCES ELAINE PIDDE,[1]
JAMES CICHANOPSKY,
ROGER MILLER,
GEORGE NOWLIN and
RONALD HITT,

        Plaintiffs,

                                CASE NO. 2:04-CV-70592
                                JUDGE PATRICK J. DUGGAN
                                MAGISTRATE JUDGE PAUL J. KOMIVES

    v.

CNH AMERICA, L.L.C. and
CNH GLOBAL N. V.,

        Defendants.
_____/

**ORDER DEEMING RESOLVED IN PART, GRANTING IN PART AND DENYING IN
PART PLAINTIFFS' JULY 19, 2013 MOTION TO COMPEL ANSWERS TO FIRST
INTERROGATORIES (Doc. Ent. 356)**

**A.**    **The Sixth Circuit's September 13, 2012 Decision**

**1.**    In this Court's May 10, 2011 final judgment, the Court "declares, adjudges, and decrees

that the plaintiff class is hereby entitled to vested lifetime retiree health care benefits from CNH

America LLC as provided for in the labor agreements in effect at the time of their or their

deceased spouses' retirement." Doc. Ent. 316 ¶ 2.

---

[1]On May 19, 2013, plaintiffs informed the Court of the death of plaintiff Frances Elaine
Pidde. Doc. Ent. 343.

2.      However, on September 13, 2012, the Sixth Circuit reversed this Court's judgment and remanded the case.  Doc. Ent. 330; *see also* Doc. Ent. 333 (6th Cir. Case No. 11-01359); *Reese v. CNH*, 694 F.3d at 685 (6th Cir. Sept. 13, 2012) (*Reese II*).

In *Reese II*, the Sixth Circuit directed that, in gauging whether CNH's proposed modifications to its health care benefits for retirees are reasonable, the Court should consider the aforementioned three factors.  In doing so, *Reese II* instructs the Court to take evidence on the following seven (7) questions ("and others it considers relevant to the reasonableness question"):

> • What is the average annual total out-of-pocket cost to retirees for their healthcare under the old plan (the 1998 Group Benefit Plan)? What is the equivalent figure for the new plan (the 2005 Group Benefit Plan)?
>
> • What is the average per-beneficiary cost to CNH under the old plan? What is the equivalent figure for the new plan?
>
> • What premiums, deductibles and copayments must retirees pay under the old plan? What about under the new plan?
>
> • How fast are the retirees' out-of-pocket costs likely to grow under the old plan? What about under the new plan? How fast are CNH's per-beneficiary costs likely to grow under each?
>
> • What difference (if any) is there between the quality of care available under the old and new plans?
>
> • What difference (if any) is there between the new plan and the plans CNH makes available to current employees and people retiring today?
>
> • How does the new plan compare to plans available to retirees and workers at companies similar to CNH and with demographically similar employees?

*Reese II*, 694 F.3d at 685-686.

**B.      Plaintiffs' March 14, 2013 Post-Appeal Interrogatories**

On March 14, 2013, plaintiffs served their first interrogatories (Nos. 1-51) to defendant. Doc. Ent. 337-1.  One week later, on March 21, 2013, plaintiffs filed a motion for leave to exceed twenty-five (25) interrogatories.  Doc. Ent. 337.  Then, on April 18, 2013, defendant CNH served responses to plaintiffs' first interrogatories.  Doc. Ent. 345-3.

On May 20, 2013, I entered an order (Doc. Ent. 346) granting in part plaintiffs' March 21, 2013 motion for leave to exceed twenty-five interrogatories (Doc. Ent. 337).  By this order, defendant was required to serve supplemental answers to Interrogatory Nos. 5-9, 34-38, 40-47 and 49-50 within thirty (30) days of the date of the order, but it was not required to serve supplemental answers to Interrogatory Nos. 32, 3, 4 & 48.  Doc. Ent. 346 at 11.

On June 11, 2013, I entered an order (Doc. Ent. 352) denying plaintiffs' May 28, 2013 motion (Doc. Ent. 348) for reconsideration of the May 20, 2013 order (Doc. Ent. 346) granting in part plaintiffs' March 21, 2013 motion for leave to exceed twenty-five interrogatories (Doc. Ent. 337).  The order specifically provided that defendant need not serve supplemental answers to Interrogatory Nos. 32, 3, 4 & 48.  Doc. Ent. 352 at 6.

On June 19, 2013, CNH served a supplemental response to plaintiffs' first interrogatories.  Doc. Ent. 357 (SEALED).

## C.    Plaintiffs' July 19, 2013 Motion to Compel

Currently before the Court is plaintiffs' July 19, 2013 motion to compel answers to first interrogatories.  Doc. Ent. 356.  By this motion, plaintiffs seek an order compelling defendants to provide full and complete responses to the Interrogatories, specifically Interrogatory Nos. 3-9, 14-31, 34, 36-38 and 45-48 within fourteen (14) days.  Doc. Ent. 356 at 4-5.

One week later, on July 26, 2013, CNH served its second supplemental response to plaintiffs' first interrogatories.  Doc. Ent. 361-3.  Then, on July 30, 2013, Judge Duggan entered an opinion and order (Doc. Ent. 360) granting in part and denying in part plaintiffs' appeal (Doc. Ent. 354) of my orders and sua sponte amending the scheduling order.  Among other things, this order set the discovery deadline for November 18, 2013 and the dispositive motion deadline for December 3, 2013.

On August 5, 2013, CNH filed a response (Doc. Ent. 361) to plaintiffs' motion (Doc. Ent. 356).  On August 19, 2013, plaintiffs filed a reply.  Doc. Ent. 362; *see also* Doc. Ent. 363-367 (Exhibits A-E).

Judge Duggan has referred this motion to me for hearing and determination.  Doc .Ent. 359.  On September 4, 2013, the motion was noticed for a September 19, 2013 hearing.  Doc. Ent. 368.  On the date set for hearing, attorney Darcie R. Brault appeared on behalf of plaintiffs and attorney David Rogaczewski (Washington, D.C.) appeared on behalf of defendant CNH.

**D.     Discussion**

**1.**     Along with their August 19, 2013 reply (Doc. Ent. 362), plaintiffs filed a chart of issues (Doc. Ent. 363), which indicates that the motion has been resolved to the extent it sought further answers to Interrogatory Nos. 3 and 4 (Identification of Lay and Expert Witnesses), 14-31 (Cost Projections), 34 (Factors Other Than Those Identified in *Reese II*) and 45-47 (Scott Macey's June 30, 2010 Declaration).  *See also* Doc. Ent. 356 at 12-29.

**2.**     Thus, the chart indicates that the unresolved matters include defendant's responses to Interrogatory Nos. 5-9 (each of which concern pension information), Interrogatory No. 36 (which concerns comparator plans), Interrogatory No. 37 (which concerns changes in health

4

care), Interrogatory No. 38 (which concerns potential alternatives) and Interrogatory No. 48 (which concerns identification of exhibits). Doc. Ent. 363.

During the September 19, 2013 motion hearing, the Court heard oral argument from counsel for the parties with regard to each of the outstanding items and issued rulings with respect to most items.

**3.     Interrogatory Nos. 5-9:** Plaintiffs describe these interrogatories as concerning pension amounts of class members, such as the gross pension benefit and the past and future changes to pension and special age 65 benefits. *See* Doc. Ent. 356 at 13-18; Doc. Ent. 362 at 3-10.

For example, in support of their argument that CNH should be compelled to fully answer Interrogatory No. 5, plaintiffs cite "anecdotal documents obtained during the document review that clearly show that there is electronically stored data addressing the full pension benefits of those to whom CNH pays a portion." Doc. Ent. 356 at 17; Doc. Ent. 358 (SEALED). Also, as plaintiffs point out, defendant CNH's July 26, 2013 second supplemental response to Interrogatory No. 5 (Doc. Ent. 361-3 at 6-7) referred to certain worksheets (Doc. Ent. 361-3 at 51-93), which plaintiff describes as apparently containing "a portion of pension paid by CNH during an unspecified time period." *See* Doc. Ent. 363 at 2.

On the other hand, defendant's July 26, 2013 second supplemental answers to Interrogatory Nos. 5-9 each assert, among other things, that "the burden of ascertaining the information in them is substantially the same for Plaintiffs and CNH." Doc. Ent. 361-3 at 7-9 (referencing Fed. R. Civ. P. 33(d) ("Option to Produce Business Records.")). In its August 5, 2013 response, defendant maintains that "CNH's Direction of Plaintiffs to Business Records for Information About Class Members' 'Gross Pensions' and How Pensions Change Over Time Is

Completely Proper." Doc. Ent. 361 at 14-17. Within this argument, defendant states, "CNH assures the Court: the company does *not* have a database with electronically accessible information showing class members' gross pensions and it cannot produce the information Plaintiffs want without going through each individual file for each individual class member." Doc. Ent. 361 at 15 n.3 (emphasis in original) (citing Doc. Ent. 361-4 (Schaeffer Decl.) ¶¶ 3-4).

In their August 19, 2013 reply, plaintiffs contend that "[w]hile ascertaining the benefit at retirement is possible, the analysis becomes more complicated." Doc. Ent. 362 at 4-6. First, plaintiffs explain that "although the CNH Pension Plan defines how the gross pension benefit is calculated and sets forth the base benefit rate, a Case hourly retiree actually receives two pension checks, one from CNH and one from Pactiv." Doc. Ent. 362 at 4-5; *see also* Doc. Ent. 367 (Pension Payment Stubs) (SEALED). Second, plaintiffs explain that "both the 1995 and 1998 CBAs provided for 'walk throughs' for employees retiring with more than 30 years of credited service."[2]

During the September 19, 2013 hearing, I deferred ruling on plaintiffs' motion with respect to Interrogatories 5-9. Even so, I note that defense counsel provided the Court with copies of screenshots from CNH's current pension calculation database and, with respect to Interrogatory No. 5, agreed to provide the date of birth, telephone number and type of retirement for every Class Member. Finally, counsel for the parties may request a conference call with the Court in the event that issues associated with the information sought by Interrogatories 5 through 9 continue.

---

[2]Here, plaintiffs refer to the Case Corporation/UAW Tentative Agreement dated April 23, 1998. Doc. Ent. 365 (SEALED).

4.      **Interrogatory No. 36:** Plaintiffs describe this interrogatory as concerning comparison plans.  *See* Doc. Ent. 356 at 20-21; Doc. Ent. 362 at 10-11.  Specifically, this March 14, 2013 interrogatory asked, "Does the Company intend to compare the Proposed Plan with the plans available to retirees and workers at companies similar to the Company?  If so, identify all companies that the Company intends to assert are similar to the Company and, as to each, describe how the Proposed Plan compares to plans available to those companies.  As to each such company, identify all documents that the Company intends to use to support that position."  Doc. Ent. 337-1 at 11-12.

       Subject to certain objections, defendant's July 26, 2013 second supplemental response stated:

> . . . CNH states that it intends, through expert testimony, to compare the plan it proposes for Plaintiffs to plans provided to UAW-represented retirees and employees at CNH; plans provided to UAW-represented retirees and employees at companies similar to CNH, such as Caterpillar and Deere; surveys of health-plan data collected by the federal government or Towers Watson; and anecdotal information about health plan changes reported by the media. Where possible, CNH will compare the terms of the proposed plan with analogous terms of comparison plans as found in the plan documents, which in the case of CNH were produced by CNH and in the case of Caterpillar and Deere were produced by the UAW. Data collected by the federal government is summarized and described in several government-issued and publicly available reports, which will be identified in expert disclosures and many of which have already been produced to Plaintiffs. Data collected by Towers Watson is summarized in a chart created by Towers Watson, which will be produced with CNH's expert disclosures (when it is finalized). The media references to other health benefit changes will all be identified in CNH's expert disclosures and many of them have already been produced to Plaintiffs.

Doc. Ent. 361-3 at 20-21.  In its August 5, 2013 response, defendant maintains that its "description of Towers Watson's cost projection methodology contained sufficient detail."  Doc. Ent. 361 at 8-9.

Here, I note that Judge Duggan's July 30, 2013 scheduling order sets a deadline of September 27, 2013 for reports due from Plaintiffs' experts, a deadline of October 17, 2013 for reports due from Defendants' experts and a November 18, 2013 deadline for discovery. *See* Doc. Ent. 360 at 9.

Upon consideration, I conclude that defendants' expert report(s) will provide plaintiffs with the data sought by Interrogatory No. 36. However, plaintiffs' shall have thirty (30) days from receipt of defendants' expert report(s) within which to file a rebuttal expert report. If plaintiffs require an extension of this deadline, they may file an appropriate motion under Fed. R. Civ. P. 6(b) ("Extending Time.").

**5.      Interrogatory No. 37:** Plaintiffs describe this interrogatory as concerning changes in health care. *See* Doc. Ent. 356 at 21-22; Doc. Ent. 362 at 11. Specifically, this March 14, 2013 interrogatory asked, "[d]oes the Company contend that there are any 'changes in health care' that are relevant to the issue before the District Court on remand? If the answer is yes, please describe these changes and identify each witness the Company intends to call at trial to support its contention." Doc. Ent. 337-1 at 12.

Subject to certain objections, defendant CNH's July 26, 2013 second supplemental response stated:

> . . . there have been changes in health care since Plaintiffs retired (and since their plan lapsed in 2004) that justify changes to their current plan. At a minimum, these changes include the introduction of new prescription drugs, new medical procedures, new economics of care, advances in medical technology, the establishment of the Medicare Part D program, and the passage of the Affordable Care Act, but CNH has not yet determined if it will bring other changes to the Court's attention. Although CNH will not be pointing to specific drugs or medical procedures, it intends to point out that a substantial percentage of the costs of Plaintiffs' current plan are associated with the usage of drugs or procedures that

> were not available in 1998. CNH anticipates using expert testimony at trial
> regarding changes in health care.

Doc. Ent. 361-3 at 21-22.

Upon consideration, defendant's response is satisfactory.  However, plaintiffs' shall have

thirty (30) days from receipt of defendants' expert report(s) within which to file a rebuttal expert

report.  If plaintiffs require an extension of this deadline, they may file an appropriate motion

under Fed. R. Civ. P. 6(b) ("Extending Time.").

**6.**     **Interrogatory No. 38:** Plaintiffs describe this interrogatory as concerning potential

alternatives to achieve savings.  *See* Doc. Ent. 356 at 23-24; Doc. Ent. 362 at 11-14.

Specifically, this March 14, 2013 interrogatory asked, "Other than the Proposed Plan, did the

Company explore any other potential changes to the Current Plan that would generate savings to

the Company with a lesser financial impact on Class Members such as an Employer Group

Waiver Plan or mandatory mail order prescription drug or mandatory generic prescription drug?

If the answer is yes, please describe each proposed change and why the Company rejected it."

Doc. Ent. 337-1 at 12.

My May 20, 2013 order required defendant to serve a supplemental answer to

Interrogatory No. 38.  *See* Doc. Ent. 346 at 11.  CNH's April 18, 2013 answer registered General

Objections 1, 2, 4, 5, 6, 7 and 8 (Doc. Ent. 345-3 at 9-10); CNH's June 19, 2013 supplemental

response registered General Objections 1, 2, 4, 5, 6, 7 and 8 (Doc. Ent. 357 at 13) (SEALED);

and CNH's July 26, 2013 second supplemental response registered General Objections 1, 2, 4, 5,

6, 7 and 8 (Doc. Ent. 361-3 at 22).

Thus, it appears that defendant did not comply with my May 20, 2013 order as it relates

to Interrogatory No. 38.  However, in its August 5, 2013 response, defendant maintains that

"[a]ny consideration of alternatives to the plan proposed by CNH is privileged."  Doc. Ent. 361 at 13-14.  Then, during the September 19, 2013 hearing, I determined that defendant's response appropriately asserted the attorney-client privilege.  Still, having further considered the issue, defendant should be required to respond "yes" or "no" to Interrogatory No. 5.  If the answer is "yes," then defendant should describe each proposed change but need not state why the Company rejected it.

7. **Interrogatory No. 48:** Plaintiffs describe this interrogatory as concerning identification of documents for litigation.  *See* Doc. Ent. 356 at 29-31; Doc. Ent. 362 at 14.  Specifically, this March 14, 2013 interrogatory asked, "Identify all documents the Company intends to use, either in summary judgment proceedings or at trial, to support its position that the benefits in the Proposed Plan are reasonable."  Doc. Ent. 337-1 at 13.

Subject to certain objections, defendant CNH's July 26, 2013 second supplemental response stated:

> . . . CNH states it currently expects to use in this matter documentation of its proposed plan for Plaintiffs, documentation of the plan Plaintiffs have currently, the documentation of UAW-negotiated plans for Caterpillar and Deere, and the documents that will be catalogued in CNH's expert disclosures. CNH states further that this is a tentative list of documents it intends to use, and a final list will be provided in any mandatory pretrial disclosures.

Doc. Ent. 361-3 at 28.  Shortly thereafter, in his July 30, 2013 order, Judge Duggan stated that "CNH must answer interrogatories 3 and 48 within fourteen (14) days of the date of this Order." Doc. Ent. 360 at 8.  Then, in its August 5, 2013 response, defendant contends that it "has satisfied its obligation to provide information regarding witnesses and documents."  Doc. Ent. 361 at 12.

10

During the September 19, 2013 hearing, defense counsel agreed to put together a preliminary document list within ten (10) days. This list shall be based upon defense counsel's good faith belief regarding those items of which defense counsel is currently aware; however, the list will be subject to supplementation.

**8.**     It is defendant's position that "CNH'S 'general objections' are proper because they are incorporated only where they apply." Doc. Ent. 361 at 6-7. However, I note plaintiffs' reply that, as to all of the interrogatories, defendants' "objections and partial/non-answers do not constitute a response and should be treated as a failure to respond under Fed. R. Civ. Proc. 37." *See* Doc. Ent. 363 at 2.

I decline to make a ruling on this argument, as phrased. However, as stated during the September 19, 2013 hearing, within ten (10) days of the date of this order, plaintiffs may submit a motion to compel specifying any further interrogatory answers, other than those directly addressed above, which plaintiffs contend should be considered by this Court.

**E.     Order**

Accordingly, plaintiffs' July 19, 2013 motion to compel answers to first interrogatories (Doc. Ent. 356) IS DEEMED RESOLVED to the extent it sought further answers to Interrogatory Nos. 3, 4, 14-31, 34 and 45-47. Otherwise, it is GRANTED IN PART and DENIED IN PART as discussed above.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections

for consideration by the district judge under 28 U.S.C. § 636(b)(1).

                                    s/Paul J. Komives
                                    PAUL J. KOMIVES
Dated: September 23, 2013           UNITED STATES MAGISTRATE JUDGE


                        CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or
parties of record by electronic means or U.S. Mail on September 23, 2013.


                                    s/Jane Johnson_____
                                    Deputy Clerk