UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE
PIDDE, JAMES CICHANOFSKY,
ROGER MILLER, and GEORGE
NOWLIN,

          Plaintiffs,

    v.

CNH GLOBAL N.V. and CNH
AMERICA LLC,

          Defendants.

Case 2:04-cv-70592-PJD-PJK

Hon. Patrick J. Duggan, U.S.D.J.

Hon. Paul J. Komives, U.S. Mag. J.

## CNH'S OPPOSITION TO
## PLAINTIFFS' THIRD MOTION
## TO EXTEND THE REMAND SCHEDULE

Norman C. Ankers (P30533)
(nankers@honigman.com)
Honigman Miller Schwartz and Cohn
LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
313.465.7306
313.465.7307 fax

Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
Laura J. Capotosto
(lcapotosto@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8000
202.756.8087 fax

*Attorneys for CNH Global N.V. and CNH America LLC*

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Especially in light of the Sixth Circuit's mandate that "this case must come to an end," the severe prejudice to CNH of further delay, and the extraordinary amount of discovery propounded by Plaintiffs already—52 interrogatories, 94 document requests, and 53 requests for admission—have Plaintiffs carried their burden of showing "good cause" for another extension of the discovery deadline?

# CONTROLLING OR MOST
# APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Federal Rule of Civil Procedure 16

*Reese v. CNH Am. LLC*, 694 F.3d 681 (6th Cir. 2012)

# INTRODUCTION

As the Sixth Circuit recognized, it is **CNH** that has the strong financial interest in expediting resolution of this "long-running dispute"; delay *harms* CNH but *benefits* Plaintiffs.[1] Understanding its own financial interest, CNH has made extraordinary efforts (which Plaintiffs' motion ignores) to accommodate Plaintiffs' discovery demands.

Yet, in this era, it is not difficult for a party to foment discovery disputes. This is especially true in this remand proceeding, where Plaintiffs have propounded an extraordinary **52 interrogatories**, **94 document requests**, and **53 requests for admission**. Lawyers know that magistrates and courts have neither the time nor inclination to sort through the minutiae of discovery disputes to determine definitively who is right and who is wrong. Too often, the Court is left with an impression that the party seeking discovery must be right, and that granting the discovery will not do great harm. Here, neither supposition is true.

If Plaintiffs achieve their objective of yet another delay, summary judgment motions will not be heard until *five years* after the Sixth Circuit first ruled that CNH is entitled to make changes to Plaintiffs' health plans; and this *second* remand

---

[1] *See Reese v. CNH Am. LLC*, 694 F.3d 681, 685–86 (6th Cir. 2012) (*Reese II*) (admonishing that "[t]his long-running dispute needs to come to an end" and observing that "it is particularly unfair to prolong the dispute when the status quo . . . not only favors just one party [Plaintiffs] but also risks mooting the economic stakes of the case for the other party [CNH]").

will take *more than two years*! The original discovery schedule required discovery to end on July 21, 2013. As each discovery deadline has approached, Plaintiffs have issued a new raft of discovery and then used disputes about the recent discovery as grounds for further delay. As the most recent example, Plaintiffs propounded extensive new discovery as recently as December 13, responses to which are not due until January 16, a day before the current deadline. As shown below, Plaintiffs have received the discovery they are due and then some. It is time to get to the merits.

## BACKGROUND

Filed in early 2004, this case has already been to the Sixth Circuit twice. Over four years ago, and again 16 months ago, the Sixth Circuit ruled that CNH is entitled to make reasonable changes to Plaintiffs' existing health benefits. *See Reese v. CNH Am. LLC*, 574 F.3d 315, 327 (6th Cir. 2009) (*Reese I*); *Reese II*, 694 F.3d at 685–86. Both times, the Sixth Circuit remanded for this Court to evaluate the reasonableness of CNH's proposed changes as measured by the standard set forth in *Reese I* and elaborated on in *Reese II*. The second remand was necessitated because Plaintiffs successfully advocated a "mis[reading of] the panel opinion," 694 F.3d at 685, prompting this Court into a second reversible error. Plaintiffs' responsibility for this protracted proceeding should not be ignored.

**Exemplary Errors in Plaintiffs' motion.** Plaintiffs advocate an extension of time based on a number of factual inaccuracies. For example, they contend (in italics).

- "*The parties agreed that the deposition of Macey could not take place until after the remaining issues were resolved and that that would not likely take place until after the current discovery deadline of January 17, 2014*" (R. 389, Pls.' Mot. vi), and "*Meanwhile, Defendants refused to set dates for [the expert depositions of Macey and Stahl], forcing Plaintiffs to unilaterally schedule those depositions*" (*id.* at vii), and "*Plaintiffs have been advised that the Defendants' expert, Macey, will not be produced for deposition until after the cut-off*" (*id.* at x). These assertions are materially and demonstrably false. CNH has *never* agreed that the purported discovery disputes raised by Plaintiffs should delay Mr. Macey's deposition. After timely providing both expert reports on October 17, 2013, CNH provided all materials requested by Plaintiffs that were in Mr. Macey's possession by November 8 and provided or offered all responsive materials in Mr. Stahl's possession by November 12.[2]

---

[2] As explained below (note 17 and accompanying text), one document required increased protective order restrictions and was provided immediately

(continued . . .)

CNH promptly offered *five (5)* deposition dates for Mr. Macey (November 13, 18, 19, and 20, and December 4), and *five (5)* for Mr. Stahl (November 12, 13, 14, 21, and 22, and December 6).[3] Plaintiffs' counsel rejected all ten (10) dates. More recently, the parties have agreed to January 14 for Mr. Stahl's deposition, and CNH has offered January 15 for Mr. Macey's deposition.[4]

- "*CNH failed to provide 92 [pension] files missing from the original production.*" (R. 389, Pls.' Mot. iii.) In fact, back in 2005, CNH produced to Plaintiffs' counsel Roger McClow (of Ms. Brault's law firm), the personnel and benefits files for all class members that CNH could locate. CNH copied and delivered to Plaintiffs *all documents* designated for copying by Mr. McClow. The 92 "missing" files were not withheld by CNH; they were not located at the time of the 2005 review. Nevertheless, Plaintiffs did not complain about the matter until this year. Within a month of Plaintiffs' identification of the files,

---

upon entry of those protections; all other documents for Mr. Stahl were provided on November 12.

[3] Ex. 1, Oct. 17, 2013, 18:19, Capotosto–Brault Email 1; Ex. 2, Oct. 28, 2013, 11:23, Rogaczewski–Brault Email 1; Ex. 3, Nov. 6, 2013, 9:11, Capotosto–Brault Email 1.

[4] Ex. 24, Jan. 6, 2014, Rogaczewski–Brault Ltr. 1–2.

CNH located the files, pulled the pension-calculation worksheets from them, and produced them to Plaintiffs.[5]

- "*CNH provided misinformation regarding over 500 members of the class.*" (R. 389, Pls.' Mot. iii–iv.) This is false. Beginning no later than July 26, 2013, CNH has repeatedly told Plaintiffs' counsel that CNH is responsible for, and thus has knowledge of, only the pensions payable based on service after July 1, 1994.[6] CNH has provided the information about CNH's own pension payments to the class members and is confident that information is accurate.[7] Any pension payable for service prior to July 1, 1994, is the responsibility of Pactiv.[8] If Plaintiffs really wanted this information, they could have subpoenaed it from Pactiv, as the same plaintiffs' counsel did in the *Yolton* companion case.[9] Although a subpoena issued to Pactiv at this late date would be transparently dilatory, a timely subpoena to Pactiv

---

[5] Ex. 4, Oct. 31, 2013, Capotosto–Brault Ltr. 1.

[6] R. 361 Ex. 2, CNH's 2d Supp'l Resp. Pls.' 1st Interrs. 6. To make a very long story short, ownership of the manufacturing facilities where Plaintiffs worked was transferred to CNH America from its predecessor with an effective date of July 1, 1994, when CNH America did an initial public offering of stock.

[7] *Id.* Ex. D at 1–41.

[8] *See* R. 361 Ex. 3, Schaeffer Decl. ¶ 2.

[9] Ex. 5, Feb. 2, 2007, McClow–Doyle Ltr. 1–2.

would have saved Plaintiffs' counsel the purported "hundreds of hours calculating the pension benefits." (R. 389, Pls.' Mot. iv.)

**Plaintiffs' Massive Discovery Effort on the Second Remand**. Putting aside extensive discovery early in the case,[10] during the second remand, Plaintiffs have (so far) served on CNH: *52 interrogatories* (compared to the Rule 33 limit of 25), *55 document requests*, and *53 requests for admission*. In addition, they have issued subpoenas to experts Scott Macey (with *17 document requests*) and John Stahl (*with 21 document requests*), and to Mr. Stahl's employer Towers Watson (with *1 document request*). They have taken or noticed four depositions.

*Plaintiffs' discovery before the first deadline (July 21, 2013).* Following a status conference with Judge Duggan, the Court set a discovery deadline of July 21, 2013. As allowed by the Court, Plaintiffs asked CNH questions about its proposed modified benefit plan on February 20, and CNH fully responded on March 1.[11]

---

[10] Prior to the first appeal in this case, Plaintiffs propounded 62 document requests on CNH. (R. 339 Ex. 6, Pls.' 1st RFPs 3–7; Ex. 6, Pls.' 2d RFPs 3–7; R. 107 Ex. 2, Pls.' 3d RFPs 5–6.)

[11] R. 339 Ex. 2, Feb. 20, 2013, Brault–Burchfield Fax 1–3; R. 339 Ex. 1, Mar. 1, 2013, Burchfield–Brault Ltr. 1–6.

6

On March 14, Plaintiffs served CNH with **51 interrogatories**; **41 document requests**; and **7 requests for admission**.[12] On April 18, CNH answered 25 interrogatories as allowed by Fed. R. Civ. P. 33(a)(1), produced documents, and responded to the requests for admission.[13] CNH has now answered all 51 interrogatories, including the four interrogatories Magistrate Judge Komives ruled CNH did not have to answer.[14]

*Plaintiffs' discovery before the second deadline (September 25, 2013).* Claiming ongoing discovery and citing the disputes about their first round of discovery, Plaintiffs obtained an extension of the discovery deadline to September 25. (R. 353, Op. & Order 4–5.)

*Plaintiffs' discovery before the third deadline (November 18, 2013).* Again claiming issues with discovery, Plaintiffs obtained an extension of the discovery deadline to November 18. (R. 372, Op. & Order 2.) In accordance with this third revised schedule, on October 17, CNH served its expert disclosures for Scott

---

[12] Ex. 7, Pls.' 1st Interrs. 6–14, 16; Ex. 8, Pls.' 4th RFPs 5–10, 14; Ex. 9, Pls.' 1st RFAs 3, 6.

[13] R. 345 Ex. 2, CNH's Resp. Pls.' 1st Interrs. 3–13, 14; Ex. 10, CNH's Resp. Pls.' 4th RFPs 3–12, 13; R. 345 Ex. 3, CNH's Resp. Pls.' 1st RFAs 2–4, 5; Ex. 11, Apr. 18, 2013, Capotosto–Brault Ltr. 1.

[14] R. 357 Ex. A, CNH's Supp'l Resp. Pls.' 1st Interrs. 3–18; R. 361 Ex. 2, CNH's 2d Supp'l Resp. Pls.' 1st Interrs. 4–29; Ex. 12, CNH's 3d Supp'l Resp. Pls.' 1st Interrs. 1–5.

Macey and John Stahl.[15] Plaintiffs issued subpoenas to both experts; promptly on
November 8, CNH provided Plaintiffs with all responsive documents in Mr.
Macey's legal possession, custody, or control.[16] On November 12, CNH provided
Plaintiffs with all responsive documents (except one) in Mr. Stahl's legal
possession, custody, or control: the only exception was a document that required an
addendum to the protective order, which has since been produced.[17] Plaintiffs have
moved to compel further production by Mr. Macey of documents outside his
control (R. 373), and that motion is fully briefed before the Magistrate Judge.

   *Plaintiffs' discovery before the fourth deadline (January 17, 2014).* Again
claiming problems with discovery, including the subpoenas it had just issued on
October 28 to CNH's experts, Plaintiffs obtained a fourth discovery deadline—the
current one—of January 17, 2014. On November 5—less than a week after that
extension—Plaintiffs served on CNH **12 additional requests for admission** and **13
additional document requests**.[18] CNH responded to the November 5 discovery on

---

   [15] Ex. 13, CNH's R. 26(a)(2) Disc. 1, 3.

   [16] R. 373 Ex. I, Nov. 8, 2013, Rogaczewski–Brault Ltr. 1–2.

   [17] Ex. 14, Nov. 12, 2013, Capotosto–Brault Ltr. 1. The Court entered the
protective order addendum on December 23. (R. 387, Prot. Order Addendum 4.)
CNH produced the document that morning. (Ex. 15, Dec. 23, 2013, 9:32,
Rogaczewski-Brault Email 1.)

   [18] Ex. 16, Pls.' 2d RFAs 3–4, 6; Ex. 17, Pls.' 5th RFPs 2–4, 6.

December 9 and produced documents on December 12.[19] Plaintiffs have moved to compel regarding the November 5 discovery (R. 388). CNH is responding to that motion simultaneously with this response.

On December 13, just two weeks before filing their third motion for extension, Plaintiffs served *34 additional requests for admission*, *1 additional interrogatory*, and *1 additional document request*.[20] As Plaintiffs knew when they served their latest round of discovery, responses to the December 13 discovery are due January 16, 2014—the day before the current January 17, 2014 deadline.

*Status of expert discovery*. After CNH offered, and Plaintiffs rejected, **six dates** apiece for its two experts, the parties have only this week agreed to dates for Mr. Stahl (on January 14); CNH has offered January 15 for Mr. Macey's deposition. In contrast, Plaintiffs offered no dates for the depositions of their three experts until this week.[21] As of this writing, two of Plaintiffs' three experts are scheduled for deposition, and the third is subject to a subpoena to appear on the last date of discovery, unless a prior date can be mutually agreed.

---

[19] Ex. 18, CNH's Resp. Pls.' 2d RFAs 2–6, 7; Ex. 19, CNH's Resp. Pls.' 5th RFPs 2–7, 8; R. 388 Ex. F, Dec. 12, 2013, Capotosto–Brault Ltr. 1.

[20] Ex. 20, Pls.' 3d RFAs 3–8, 11; Ex. 21, Pls.' Interr. & RFP re 3d RFAs 2, 5.

[21] *See, e.g.*, Ex. 2, Oct. 28, 2013, 11:23, Rogaczewski–Brault Email 1; Ex. 3, Nov. 6, 2013, 9:11, Capotosto–Brault Email 1.

## ARGUMENT

This remand proceeding has already been extended three times. As shown below, the "good cause" required by Federal Rule of Civil Procedure 16 does not exist to extend it further for three basic reasons.

## I.  PLAINTIFFS' REQUEST FOR FURTHER DELAY FLOUTS THE SIXTH CIRCUIT'S MANDATE THAT "THIS LONG-RUNNING CASE NEEDS TO COME TO AN END."

The Court should not forget that this second remand is necessary because Plaintiffs "misread" the Sixth Circuit's decision in *Reese I* and lured the district court into reversible error. Years have been added due to that error. The Sixth Circuit summed it up in *Reese II*: "This long-running dispute needs to come to an end, and it is particularly unfair to prolong the dispute when the status quo . . . not only favors just one party [Plaintiffs] but also risks mooting the economic stakes for the other party [CNH]." 694 F.3d at 685.

Under Rule 16(b)(4), a scheduling order may be modified only upon a showing of "good cause," which as demonstrated in Parts II and III below is absent here. Moreover, the Sixth Circuit has instructed that "[a]nother important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003). Weighing Plaintiffs' desire for more discovery (in addition to the voluminous discovery

10

already obtained) against the daily (and unrecoverable) cost to CNH of paying for an antiquated health care plan, the balance surely weighs in favor of proceeding at long last to the merits.

## II.   THE CURRENT DISCOVERY RECORD IS SUFFICIENT TO ADDRESS THE SIXTH CIRCUIT'S QUESTIONS.

In an effort to streamline the remand, the Sixth Circuit specified the precise factual issues on which this Court must focus in evaluating CNH's proposed changes against the standard articulated in *Reese I*. *Reese II*, 694 F.3d at 685–86. The discovery record fully addresses those issues:

| Questions from *Reese II*, 694 F.3d at 685–86 | Location of CNH's Answers and When Provided |
|---|---|
| What is the average annual total out-of-pocket cost to retirees for their healthcare under the old plan (the 1998 Group Benefit Plan)? What is the equivalent figure for the new plan (the 2005 Group Benefit Plan)? | CNH's Response to Plaintiffs' First Interrogatories 6–8 (Interrs. 18–31); *id.* Ex. A at 1–4, *id.* Ex. B at 1–2 (served Apr. 18, 2013) (R. 345 Ex. 2) |
| What is the average per-beneficiary cost to CNH under the old plan? What is the equivalent figure for the new plan? | CNH's Response to Plaintiffs' First Interrogatories 4–6 (Interrs. 10–17); *id.* Ex. A at 1–4, *id.* Ex. B at 1–2 (served Apr. 18, 2013) (R. 345 Ex. 2) |
| What premiums, deductibles and copayments must retirees pay under the old plan? What about under the new plan? | 1998 Group Benefit Plan (produced in early stages of case) (R. 129 Ex. 40) CNH's draft SPD of the proposed plan (provided Jan. 23, 2013) |

| Questions from *Reese II*, 694 F.3d at 685–86 | Location of CNH's Answers and When Provided |
|---|---|
| How fast are the retirees' out-of-pocket costs likely to grow under the old plan? What about under the new plan? How fast are CNH's per-beneficiary costs likely to grow under each? | CNH's Response to Plaintiffs' First Interrogatories 13 (Interr. 51) (served Apr. 18, 2013) (R. 345 Ex. 2) |
| What difference (if any) is there between the quality of care available under the old and new plans? | CNH's Supplemental Response to Plaintiffs' First Interrogatories 11 (Interr. 35) (served June 19, 2013) (R. 357 Ex. A) |
| What difference (if any) is there between the new plan and the plans CNH makes available to current employees and people retiring today? | CNH's answers to Plaintiffs' pre-discovery questions about the proposed plan (sent Mar. 1, 2013) (R. 339 Ex. 1) |
| How does the new plan compare to plans available to retirees and workers at companies similar to CNH and with demographically similar employees? | CNH's Second Supplemental Response to Plaintiffs' First Interrogatories 19–20 (Interr. 36) (served July 26, 2013) (R. 361 Ex. 2) Expert Report of Scott J. Macey 32–45 (served Oct. 17, 2013) (Ex. 14 Ex. 1) |

Virtually ignoring these questions, Plaintiffs have expended enormous effort on an issue not even mentioned or alluded to by the Sixth Circuit in *Reese I* or *Reese II*: the precise pension benefits payable to each and every member of the

class.[22] CNH contends that this issue is irrelevant. Although Plaintiffs refused to provide any financial information for unnamed class members, CNH long ago provided complete information for the pension payments it makes to each and every class member, named and unnamed. The current class is defined as those persons who retired from CNH America after July 1, 1994, and before May 1, 2005. CNH has no obligation to the class members for pension benefits earned before July 1, 1994. Importantly, all, or virtually all, of Plaintiffs' complaints about pension data relate to the period *before* July 1, 1994—information they could have sought from Pactiv.

## III.   PLAINTIFFS HAVE NOT SHOWN "GOOD CAUSE" FOR A FURTHER EXTENSION.

Lacking a single good and sufficient reason for further delay, Plaintiffs assert nine, none of which justifies delaying a decision on the merits. Five of the "reasons" do not relate to Plaintiffs' present request and, therefore, cannot provide the good cause demanded by Rule 16. Their remaining four arguments are simply inaccurate.

---

[22] Plaintiffs' recent requests seek personal information about compensation and benefits—not limited to health benefits upon retirement—of CNH's most senior executives. The relevance of that information is unexplained. The contentiousness of the request is obvious.

13

A.    **Most of Plaintiffs' Bases for Delay Are Not Related to Their Current Motion.**

To establish good cause for the delay they seek, Plaintiffs need to explain why delay—at this point in time—is justified. Several of their arguments are simply not germane to their motion.

*First*, Plaintiffs contend that the standard the Court must apply on remand justifies further delay. (R. 389, Pls.' Mot. ix.) But the standard has been the same since first announced by the Sixth Circuit over four years ago in *Reese I*. It was the standard facing the Court when it set the original schedule in February 2013. And, it was the standard the Sixth Circuit discussed in *Reese II* when it simultaneously admonished that "[t]his long-running needs to come to an end." 694 F.3d at 685.

*Second*, Plaintiffs rely on their various discovery motions. (R. 389, Pls.' Mot. ix.) Tellingly, Plaintiffs do not—and cannot—contend that CNH has failed to comply with any order of the Court. Accordingly, whatever happened months ago has no bearing on Plaintiffs' current request for delay.

*Third*, Plaintiffs complain that CNH requested discovery from them and their experts. (R. 389, Pls.' Mot. ix.) Plaintiffs cannot use deficiencies in *their own* discovery responses to justify further delay. If *CNH* is dissatisfied with Plaintiffs' responses, it understands its remedies.

*Fourth*, Plaintiffs suggest adding a new party, CNH Industrial N.V. (R. 389, Pls.' Mot. x.) To begin, defendant CNH America remains the provider of Plaintiffs'

14

benefits, and is a solvent, successful company. (Ex. 18, CNH's Resp. Pls.' 2d RFAs 4.) Its ultimate parent, formerly CNH Global N.V. and now CNH Industrial N.V., is neither a proper nor necessary party. Further, CNH Global's merger into CNH Industrial was disclosed and widely covered by the press months ago, and cannot now be used to justify delay. CNH Industrial N.V., Current Rep. (Form 6-K) Ex. 99.1 at 1 (Sept. 30, 2013) (Ex. 22). Last, four years ago, Plaintiffs executed a stipulation resolving whatever claims they might have against CNH Global in exchange for CNH Global's guarantee of all health benefits for which CNH America might ultimately be held liable. (R. 226, Stip. Order ¶ 3.) Indeed, the Court's records list CNH Global as a "terminated" party. By the merger, CNH Industrial succeded to that guarantee as a matter of law, and—solely to avoid controversy—CNH Industrial has offered a similar guaranty to Plaintiffs. (Ex. 23, Dec. 19, 2013, 16:41, Rogaczewski–Brault Email 1.) For unstated reasons, they have declined the guaranty.

*Finally*, Plaintiffs ask to delay the deadline for filing dispositive motions. (R. 389, Pls.' Mot. x.) Every schedule entered during the second remand has required the parties to prepare and file dispositive motions shortly after the discovery deadline. Plaintiffs identify nothing that has changed to alter this aspect of the schedule. They mention the need to obtain transcripts, but those can be ordered on an expedited basis.

**B.     Plaintiffs' Other Reasons for Delay Are Unfounded.**

Plaintiffs' four other reasons for delay are literally incredible and do not justify further delay in this matter.

*First*, Plaintiffs complain that CNH "ha[s] not provided sufficient or reliable data to ascertain the pension benefits of the Class Members which Plaintiffs have diligently sought since March of 2013." (R. 389, Pls.' Mot. ix.) But CNH has provided Plaintiffs with the best records CNH has on the subject: the amount of pension benefits it provides class members and the (admittedly old) pension-calculation worksheets CNH has in class members' benefit files. (Ex. 12, CNH's 3d Supp'l Resp. Pls.' 1st Interrs. 2.) As shown above (pp. 5–6), CNH simply does not have records showing current pension payments made to Plaintiffs based on their service before July 1, 1994. Tellingly, Plaintiffs have never bothered to subpoena Pactiv for this information, leading one to wonder how truly relevant the information could be.

*Second*, Plaintiffs complain about the status of expert discovery. As shown above (pp. 3–4, 7–8, 9), their claims are unfounded.

*Finally*, Plaintiffs rely on their pending motions to compel. (R. 389, Pls.' Mot. x.) One motion is fully briefed and CNH will timely respond to the other. Suffice to say, in light of the extraordinary quantity of discovery—94 document

16

requests, 52 interrogatories, and 53 requests for admission—CNH and its experts have done a heroic job of trying to placate Plaintiffs.

More importantly, however, the Court should not miss the bigger point: Plaintiffs have repeatedly issued voluminous discovery just days or weeks before a pending deadline, then fomented disputes about that discovery in motions to compel, and then predictably demanded more time for discovery. As shown, CNH has the financial incentive to go, and has in fact gone, the extra mile to accommodate Plaintiffs. Sadly, Plaintiffs have the incentive *not* to be accommodated.

## CONCLUSION

As explained above, no good cause exists to further extend the schedule and prejudice CNH further in this matter. Plaintiffs' motion must be denied. It is time to answer the question posed by the Sixth Circuit in 2009, CNH in 2010, and the Sixth Circuit again in 2012: Is it reasonable to give Plaintiffs the same health benefits provided to other UAW-represented employees that retired from CNH?

Dated: January 6, 2014                    Respectfully submitted,

                                          s/Joshua David Rogaczewski
                                          Bobby R. Burchfield
Norman C. Ankers (P30533)                 (bburchfield@mwe.com)
(nankers@honigman.com)                    Joshua David Rogaczewski
Honigman Miller Schwartz and Cohn         (jrogaczewski@mwe.com)
LLP                                       Laura J. Capotosto
2290 First National Building              (lcapotosto@mwe.com)
660 Woodward Avenue                       McDermott Will & Emery LLP
Detroit, Michigan 48226                   The McDermott Building
313.465.7306                              500 North Capitol Street, Northwest
313.465.7307 fax                          Washington, D.C. 20001
                                          202.756.8000
                                          202.756.8087 fax

*Attorneys for CNH Global N.V. and CNH America LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2014, I electronically filed the foregoing

**CNH'S Opposition to Plaintiffs' Third Motion To Extend the Remand**

**Schedule** with the Clerk of the Court using the ECF system which will send

notification of such filing to all ECF participants.

<u>s/Joshua David Rogaczewski</u>
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8195
202.591.2757 fax