# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JACK REESE, FRANCES ELAINE PIDDE, JAMES CICHANOFSKY, ROGER MILLER, and GEORGE NOWLIN,<br><br>Plaintiffs,<br><br>v.<br><br>CNH GLOBAL N.V. and CNH AMERICA LLC,<br><br>Defendants. | Case 2:04-cv-70592-PJD-PJK<br><br>Hon. Patrick J. Duggan, U.S.D.J.<br><br>Hon. Paul J. Komives, U.S. Mag. J. |

## PLAINTIFFS' SUPPLEMENTAL SUBMISSION RE: PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY SUBPOENA RESPONSE
### (Docket No. 383)

2:04-cv-70592-PJD-PJK Doc # 398 Filed 01/23/14 Pg 3 of 16 Pg ID 13563

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND PROCEDURAL FACTS ................................................................. 4

ARGUMENT ................................................................................................................ 7

    I.    Information Regarding "ERIC" and Macey's Economic Relationship With ERIC is Clearly Relevant to Witness Bias and Discoverable ...... 7

    II.   As the CEO and President of "ERIC", Macey is an Agent for ERIC and as an Agent has Sufficient Access to Accomplish Production ....... 9

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

*Avery Dennison v. Four Pillars Enter. Co.*,
45 Fed. Appx. 479 (6th Cir. September 3, 2002)..................................................7

*Behler v. Hanlon*, 199 F.R.D. 553, 556 (D. Md. 2001) ...............................................8

*Burger v. Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 47929
(E.D. Mich. June 8, 2009).................................................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,
113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).......................................................7

*Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins. Co.*,
2011 U.S. Dist. LEXIS 111668, 13-14 (E.D. Mich. Sept. 29, 2011) ..................9

*Reese v. CNH America LLC*, 374 F.3d 315, 318 (6th Cir. 2009) ...............................1

*Reese v. CNH America LLC*, 583 F.3d at 956 ............................................................2

*Reese v. CNH Am. LLC,* 694 F.3d 681 (6th Cir. 2012)................................................3

*Robinson v. Mills*, 592 F.3d 730 (6th Cir. 2010) ........................................................8

*Schledwitz v. United States*, 169 F.3d 1003 (6th Cir. 1999) .....................................9

*United States v. Abel*, 469 U.S. 45, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984)...........8

## INTRODUCTION

This matter originated in 2004 when CNH filed a declaratory judgment action against the UAW seeking a declaration that it had the contractual right to modify health care benefits for certain retirees (whose benefits were part of the promises contained in the series of collective bargaining agreements negotiated between the UAW and CNH's predecessors).

On February 18, 2004, the Plaintiffs in this case filed this lawsuit on behalf of a class of those retirees for breach of contract and ERISA violations. (R. 1)

On August 29, 2007, this Court entered four separate decisions, including one that granted the Plaintiffs' motion for summary judgment (R. 214) and one denying CNH's motion for summary judgment. The Court found that the language tying eligibility of retiree health care benefits to a pension unambiguously demonstrated an intent to vest those benefits. The retiree health care benefits are vested life-time benefits. On February 15, 2009, this Court entered Judgment in favor of the Plaintiffs. (R. 227).

There was an appeal. In *Reese v. CNH America LLC*, 374 F.3d 315, 318 (6th Cir. 2009), the panel held that, although Plaintiffs' benefits had vested for life, "the application of the relevant CBA provisions suggests that the parties contemplated reasonable modifications" in those benefits. The panel then addressed the issue of "what does vesting mean" in the context of the 1998 negotiations where the UAW

and CNH agreed to a managed care plan. The panel postulated that, in the 1998 negotiations, the parties had "reset" the rules for existing retirees by *reducing* choices and coverage for existing retirees. From that premise, it concluded that the CBA should be construed to permit other future modifications to vested retiree benefits, if "reasonable." *Id.* at 323-326.

Plaintiffs filed a petition for rehearing, arguing that the panel had decided an issue that CNH had never raised and that, contrary to the panel's assessment of the facts, retiree benefits had been *improved* in 1998. The panel denied Plaintiffs' petition but Judge Sutton, in a concurrence to the denial (hereafter "concurrence"), informed Plaintiffs that their argument:

> overlooks the posture of this case - summary judgment - in which all inferences run in favor of the party that lost below - CNH. . . . On remand, the parties are free to develop evidence on this point. That evidence may show that plaintiffs should win as a matter of law because . . . the changes . . . did not diminish the nature of the benefit package that existed upon retirement."

*Reese v. CNH America LLC*, 583 F.3d at 956.

On the first remand, relying on the concurrence (written by Judge Sutton), and viewing the evidence presented on remand most favorably to CNH, this Court concluded that the UAW had *never* agreed to *any* reduction in the level of retiree benefits and that, as a consequence, CNH could not alter Plaintiffs' benefits.

2

(R.304 at 23-24). This Court entered judgment for Plaintiffs and never reached the question of whether any proposed modifications were reasonable.

It was not until the 2012 Sixth Circuit opinion and consequent remand that the parties began a course of discovery relative to the "reasonableness" of the proposed changes. The Sixth Circuit Court remanded this matter to the District Court with direction to consider various questions on remand, including: How much did retirees pay for their health care under the old plan? How much did CNH pay? How much will the retirees and CNH each pay under the new plan, and how quickly are each side's costs likely to grow? How does the quality of care provided under the old plan compare to the quality of care under the new plan? Do the retirees' benefits differ in material respects from those offered to current employees and people retiring today? How do the benefits compare to benefits offered by other companies in similar industries? *Reese v. CNH Am. LLC,* 694 F.3d 681, 685 (6th Cir. 2012).

Elsewhere in the opinion, the Sixth Circuit posed these questions: What is the average annual total out-of-pocket cost to retirees for their healthcare under the old plan (the 1998 Group Benefit Plan)? What is the equivalent figure for the new[1] plan (the 2005 Group Benefit Plan)? What is the average per-beneficiary cost to

---

[1] CNH has since indicated that its proposed plan is not the 2005 Group Plan, therefore requiring a modification of this inquiry, though some of the information regarding the 2005 Group Plan remains relevant in the consideration of, for example, the other plans which apply to CNH retirees.

3

CNH under the old plan? What is the equivalent figure for the new plan? What premiums, deductibles and copayments must retirees pay under the old plan? What about under the new plan? How fast are the retirees' out-of-pocket costs likely to grow under the old plan? What about under the new plan? How fast are CNH's per-beneficiary costs likely to grow under each? What difference (if any) is there between the quality of care available under the old and new plans? What difference (if any) is there between the new plan and the plans CNH makes available to current employees and people retiring today? How does the new plan compare to plans available to retirees and workers at companies similar to CNH and with demographically similar employees? *Reese* at 685-686.

Along with these factors, the Sixth Circuit invited the District Court to consider "others it considers relevant to the reasonableness question." *Reese* at 685. Since the Defendants revealed their "proposed plan" in March of 2013, the parties have been conducting discovery relative to the "reasonableness" of the proposed plan.

## BACKGROUND PROCEDURAL FACTS

Scott Macey is the Defendants' retained expert witness. He submitted his expert report dated October 17, 2013. In his report, he opines that the changes that CNH proposes (increased costs to the retirees) are "reasonable."

Macey is the President and CEO of this organization: the ERISA Industry Committee (or "ERIC"). He lists ERIC in the "qualifications" section of his report. ERIC is involved in direct lobbying of Congressional staffers or members of Congress exclusively on behalf of large employers. Macey testified that ERIC's general purpose is to represent the views of major employers in the public policy arena regarding employee benefits and compensation.

In preparation for the expert witness deposition of Mr. Macey, Plaintiffs served him with a subpoena which requested, in part:

> All documents relating to the purpose or mission of the ERISA Industry Committee, to the Committee's charter, by-laws or other organizational documents, to your position and contractual employment arrangement with that Committee, to your compensation with that Committee and to corporate, association or individual funding of the Committee for the last five years; as well as all copies of all briefs, proposed legislation, press releases and other formal communications, blog posts and other written or electronic communications related to retiree benefit issues.

Defendants objected to the subpoena on Mr. Macey's behalf. Plaintiffs filed a Motion to Compel Third Party Subpoena Response (Docket No. 383). Magistrate Judge Komives requested that the parties present supplemental authority regarding the portion of the subpoena requesting information regarding ERIC.

Plaintiffs concede that a great deal of information exists on ERIC's website, www.eric.org, including some copies of briefs, proposed legislation, press releases, other formal communications, other written or electronic communications related to retiree benefit issues, as well as ERIC's stated mission:

5

The ERISA Industry Committee (ERIC) is a non-profit association committed to representing the advancement of the employee retirement, health, and compensation plans of America's largest employers. ERIC's members provide benchmark retirement, health care coverage, compensation, and other economic security benefits directly to tens of millions of active and retired workers and their families. ERIC has a strong interest in proposals affecting its members' ability to deliver those benefits, their cost and their effectiveness, as well as the role of those benefits in the American economy.

ERIC posts some information on its website using members-only access. That information includes a list of ERIC's members and "Executive Reports." Plaintiffs are not able to access that information.

The balance of the information requested by Plaintiffs cannot be found on the website, protected or otherwise. ERIC does not post its charter, by-laws or other organizational documents. Macey reportedly has been associated with ERIC for over 35 years, serving on the Board for approximately 30 of those years. Macey also served as Chairman in the mid-1990s. He became President and CEO of ERIC in June of 2012. Given the long term relationship between Macey and ERIC, Plaintiffs believe that Macey may have been involved in the formation of ERIC.

ERIC also does not post its contracts with Macey or information regarding the compensation paid to Macey.

ERIC also does not post information regarding its corporate, association or individual funding.

Plaintiffs seek an order compelling Macey to comply with the subpoena.

6

## ARGUMENT

### I. INFORMATION REGARDING ERIC AND MACEY'S ECONOMIC RELATIONSHIP WITH ERIC IS CLEARLY RELEVANT TO WITNESS BIAS AND DISCOVERABLE

Federal Rule of Evidence 702 permits opinion testimony from "a witness qualified as an expert by knowledge, skill, experience, training, or education" if such testimony will assist the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court assigned to trial courts the responsibility of determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Id.* at 589. See also, *Avery Dennison v. Four Pillars Enter. Co.*, 45 Fed. Appx. 479 (6th Cir. September 3, 2002).

A finder of fact should be permitted to assess possible bias, including financial interest, on the part of an expert witness by hearing evidence regarding the expert's gross income derived from activities in furtherance of the interests of the hiring party. Concerns over financial interest and potential bias have led courts to open the door to the opposing party to obtain information from experts beyond that provided in Rule 26(a)(2)(B), including financial information that would indicate their lack of impartiality and their bias in favor of the hiring party. It

7

appears that Rule 26(a)(2)(B) itself, which requires disclosure of compensation to be paid to the expert in the case, is grounded in such a concern.

"The term 'bias' describes 'the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party.'" *Robinson v. Mills*, 592 F.3d 730, 737 (6th Cir. 2010) (quoting *United States v. Abel*, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984)).

In *Burger v. Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 47929 (E.D. Mich. June 8, 2009), Magistrate Judge Hluchaniuk found persuasive the view that financial information is discoverable on the issue of bias:

> In *Behler v. Hanlon*, 199 F.R.D. 553, 556 (D. Md. 2001), Magistrate Judge Grimm commented on the significance of bias as it may relate to the credibility of an expert witness and said the "importance of credibility of witnesses in the trial of cases cannot be overstated and this is especially true with respect to expert witnesses." Judge Grimm went on to find that "the fact that an expert witness may have a 20-year history of earning significant income testifying primarily as a witness for defendants, and an ongoing economic relationship with certain insurance companies, certainly fits within recognized examples of bias/prejudice impeachment, making such facts relevant both to the subject matter of the litigation, and the claims and defenses raised, and placing it squarely within the scope of discovery authorized by Rule 26(b)(1)... ." Id. at 557.

At 5-6.

As the Sixth Circuit has explained: Bias is "not limited to personal animosity against a defendant or pecuniary gain." Instead, it includes mere "employment or business relationships" with a party and "is always relevant in assessing a witness's

8

credibility." *Ibid.* (quoting *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999)); *Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins. Co.*, 2011 U.S. Dist. LEXIS 111668, 13-14 (E.D. Mich. Sept. 29, 2011). Lobbyists are analogous to the "consultants" in *Great Lakes Anesthesia, PLLC,*, in that expert witnesses in the business of direct lobbying, may have a motive to slant their testimony in favor of their customers and to promote the continuation of their business. Plaintiffs should have the opportunity to discovery information that informs these potential influences.

In *Great Lakes Anesthesia, PLLC,* the Court ordered a financial look-back of four years, subject to a protective order. Likewise, in this case, information regarding ERIC's lobbying efforts on behalf of employers, and Macey's relationship with ERIC, including his earnings from ERIC and the constituent members of ERIC (which may well include Defendants) should be compelled.

## II. AS THE CEO AND PRESIDENT OF ERIC, MACEY IS AN AGENT FOR ERIC AND AS AN AGENT HAS SUFFICIENT ACCESS TO ACCOMPLISH PRODUCTION

Fed. R. Civ. P. 45 compels production of documents in the subpoenaed person's "possession custody or control." It is preposterous to think that the CEO and President of an organization does not have sufficient control over documents to access and produce them pursuant to a subpoena.

9

The sole case relied upon by Defendant is a New York District Court matter in which a judgment creditor attempted to subpoena an American who was an Egyptian resident to testify and produce documents for an Egyptian corporation, over which the Court did not have personal jurisdiction. This case is easily distinguishable on the facts.

## CONCLUSION

Plaintiffs request that this Court grant Plaintiff's Motion to Compel Third Party Subpoena and require Macey to produce within 14 days: 1) ERIC charter, by-laws or other organizational documents, 2) copies of briefs, proposed legislation, press releases, Executive Summaries, other formal communications, and other written or electronic communications by ERIC related to retiree benefit issues (to the extent they are not publicly available on the ERIC website), 3) a list of ERIC's members who pay dues or otherwise fund ERIC, 4) ERIC's contracts with Macey or information regarding the compensation paid to Macey.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: /s/Darcie R. Brault
David R. Radtke (P47016)
Darcie R. Brault (P43864)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

10

Dated: December 19, 2013

dbrault@michworklaw.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2013 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will serve it on all parties.

>Respectfully submitted,
>
>McKNIGHT, McCLOW, CANZANO,
>SMITH & RADTKE, P.C.
>
>By: */s/Darcie R. Brault*
>Darcie R. Brault (P43864)
>Attorneys for Plaintiffs
>400 Galleria Officentre, Suite 117
>Southfield, MI 48034
>(248) 354-9650
>dbrault@michworklaw.com

Dated: December 19, 2013