# EXHIBIT D

# REESE, ET AL v. CNH GLOBAL N.V., ET AL

## SCOTT MACEY

January 15, 2014

*Prepared for you by*



# BIENENSTOCK
## NATIONWIDE COURT REPORTING & VIDEO

Bingham Farms/Southfield • Grand Rapids
Ann Arbor • Detroit • Flint • Jackson • Lansing • Mt. Clemens • Saginaw

SCOTT MACEY
January 15, 2014

1  you want to talk to your counsel, that's fine.  I'd
2  ask that you wait -- if there's a question pending,
3  that you wait until you answer the question before
4  doing so.
5      A    (Nods head.)
6      Q    Mr. Macey, are you here pursuant to a
7  Subpoena?
8      A    I guess -- I actually -- I personally never
9  received a subpoena, and counsel indicated that you
10 wanted to take my deposition, and we offered certain
11 dates, and this was one of the dates.  And I was told
12 last week that you all had agreed to today, and that's
13 why I'm here.
14     Q    So you haven't seen any documentation asking
15 you to be here?
16     A    Not to my recollection.
17          (Exhibit 11 was marked for identification
18 and was attached to the transcript.)
19 BY MR. RADTKE:
20     Q    You've been handed a document that's been
21 marked Macey Deposition 11, the Re-Notice of
22 Deposition for Scott Macey and it's a Duces Tecum
23 Notice.
24          Have you seen this document previously?
25     A    Not to my recollection, no.



SCOTT MACEY
January 15, 2014

Page 240

```
 1        Q    In the Re-Notice of Deposition there is a
 2   request for documents.
 3             Have you brought any documents today?
 4        A    I have not.
 5             MR. RADTKE:  Joshua, are you going to
 6   provide any documents responsive to this?
 7             MR. ROGACZEWSKI:  I'll represent that there
 8   are no documents responsive.  We have not received an
 9   additional bill from Mr. Macey in addition to the ones
10   that have been produced, and as well as there are
11   no -- Mr. Macey has no additional documents responsive
12   to the Subpoena that he has not already produced.
13             MR. RADTKE:  Okay.
14             MR. ROGACZEWSKI:  I mean, that's --
15   there's -- that's why nothing is being produced.
16             MR. RADTKE:  All right.  Okay.  Thank you.
17             And just before we get started, I just want
18   to put something on the record, which is -- and I'm
19   not sure if you're aware of this.  But there are some
20   documents that were requested by the Plaintiffs in
21   this case that are the subject of a Motion to Compel
22   Production of Documents; that Motion is pending in the
23   United States District Court for the Eastern District
24   of Michigan.  And if the Motion to Compel is granted
25   and additional documents are required to be produced,
```



SCOTT MACEY
January 15, 2014

Page 241

```
 1    we would reserve the right to take your deposition as
 2    it relates to additional documents that are being
 3    produced.  Okay?
 4              MR. ROGACZEWSKI:  And that compels me to say
 5    that of course we reserve the right to oppose those
 6    attempts, and depending on what happens, we -- you
 7    know, we'll do what is within our power under the
 8    Rules as well.
 9    BY MR. RADTKE:
10       Q    Mr. Macey, what is your home address?
11       A    11 Sugar Mill Road, that's three words
12    counting "Road," Hillsborough,
13    H-I-L-L-S-B-O-R-O-U-G-H, New Jersey, 08844.
14       Q    And how long have you lived at that address?
15       A    Oh, 25 years or more.
16       Q    Are you currently employed?
17       A    I am.
18       Q    And by whom are you employed?
19       A    The ERISA Industry Committee, otherwise
20    known as ERIC.
21       Q    What is you job title at ERIC?
22       A    I'm President and Chief Executive Officer.
23       Q    How long have you held that position?
24       A    Approximately 18 months -- 19 months.
25    Approximately 19 months.
```



SCOTT MACEY
January 15, 2014

Page 339

1   possible. I don't think that's the -- just the normal
2   issue. I don't think there's an inherent tension.
3       Q    If there is a tension, ERIC is going to
4   advocate on behalf of its members over the interests
5   of anyone who isn't a member, correct?
6       A    Oh, that's true. There are times where we
7   stand down, where we say, well, let's -- you know,
8   let's stand by, let's not get involved in this issue.
9       Q    Well, what I'm asking is a little different
10  than that.
11           What I'm asking is, if there is an issue
12  that could negatively impact employees or retirees
13  that ERIC's members want to see happen, that ERIC will
14  advocate on behalf of what its members want?
15      A    Not --
16           MR. ROGACZEWSKI: Object to form.
17      A    Not automatically. If -- you know, we have
18  a -- an Executive Committee, we have a Board of
19  Directors, we have influential members, and, you know,
20  there could be situations where, you know, we don't
21  want to do something on behalf of some members that
22  might aggravate another set of members, either because
23  of sensitivity to the issues or, even though it might
24  benefit some companies, they don't think it's a good
25  position to take, or something like that. So

