UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE,
FRANCES ELAINE PIDDE,[1]
JAMES CICHANOPSKY,
ROGER MILLER,
GEORGE NOWLIN and
RONALD HITT,

      Plaintiffs,

                                  CASE NO. 2:04-CV-70592
                                  JUDGE PATRICK J. DUGGAN
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

CNH AMERICA, L.L.C. and
CNH GLOBAL N. V.,

      Defendants.
_____/

**ORDER DEEMING MOOT IN PART, GRANTING IN PART and DENYING IN PART PLAINTIFFS' NOVEMBER 19, 2013 MOTION TO COMPEL THIRD PARTY SUBPOENA RESPONSE (Doc. Ent. 373)**

**A.    Plaintiffs Withdrew Their November 19, 2013 Motion to Compel with Respect to the Towers Watson Subpoena.**

Currently before the Court is plaintiffs' November 19, 2013 motion to compel third party subpoena response. Doc. Ent. 373. Therein, plaintiffs argue that (I) the third party subpoena to Towers Watson, defendant's actuary, should be enforced, and (II) the third party subpoena to Scott Macey, defendant's expert witness, should be enforced. Doc. Ent. 373 at 14-17.

On December 2, 2013, plaintiffs filed a notice of withdrawal (Doc. Ent. 377) of their motion related to the Towers Watson subpoena, only. On December 6, 2013, CNH filed a

---

[1]On April 19, 2013, plaintiffs informed the Court of the death of plaintiff Frances Elaine Pidde. Doc. Ent. 343.

response. Doc. Ent. 383. On December 12, 2013, the parties filed a joint list of resolved and unresolved issues (Doc. Ent. 384 at 1-2), attached to which is a twelve (12) page chart (Doc. Ent. 384 at 3-14).

**B.     The Court Met with Counsel for the Parties on December 16, 2013 and Ordered Supplemental Briefing Regarding the Macey Subpoena.**

**1.**     Judge Duggan referred this motion to me for hearing and determination. Doc. Ent. 374. A hearing on this motion was noticed for December 16, 2013. *See* Doc. Ent. 380, Doc. Ent. 381.

On the date set for hearing, attorney Darcie R. Brault appeared on behalf of plaintiffs and attorney Joshua David Rogaczewski (Washington, D.C.) appeared on behalf of CNH. I spoke with counsel for the parties off the record, at which time counsel informed me that they anticipated reaching an agreement on all but Item No. 16 of the subpoena to Macey.[2]

**2.**     On December 19, 2013, plaintiffs filed a supplemental submission. Doc. Ent. 385; *see also* Doc. Ent. 398-3. Therein, plaintiffs set forth two arguments:

   I.    INFORMATION REGARDING ERIC AND MACEY'S ECONOMIC RELATIONSHIP WITH ERIC IS CLEARLY RELEVANT TO WITNESS BIAS AND DISCOVERABLE

   II.   AS THE CEO AND PRESIDENT OF ERIC, MACEY IS AN AGENT FOR ERIC AND AS AN AGENT HAS SUFFICIENT ACCESS TO ACCOMPLISH PRODUCTION

Doc. Ent. 385 at 10-13.

**3.**     On December 20, 2013, CNH filed a response. Doc. Ent. 386. Therein, CNH argues:

   I.    THE STRUCTURE, MEMBERSHIP, FUNDING, AND WORK OF ERIC HAS NO RELEVANCE TO MR. MACEY'S "BIAS."

---

[2]On December 17, 2013, plaintiffs' counsel submitted plaintiffs' proposed order re: plaintiffs' motion to compel third party subpoena response. On December 20, 2013, defense counsel submitted a proposed order denying plaintiffs' motion to compel further production from Scott Macey.

      II.      MR. MACEY'S POSITION AS ERIC'S PRESIDENT DOES NOT AUTHORIZE HIM TO PRODUCE ERIC DOCUMENTS IN RESPONSE TO A SUBPOENA TO HIM INDIVIDUALLY.

Doc. Ent. 386 at 5-8.

**C.**    **Plaintiffs' January 15, 2014 Deposition of Macey Has Further Narrowed the Issues at Bar.**

**1.**    On January 8, 2014, plaintiffs renoticed the deposition of Macey. Doc. Ent. 398-4. On January 15, 2014, Macey was deposed. Doc. Ent. 398-5.[3]

By a letter dated January 17, 2014, counsel for CNH informed the Court that plaintiffs had completed their depositions of CNH experts John Stahl and Scott Macey. According to defense counsel, production of the requested ERIC documents from Mr. Macey "would be largely if not completely duplicative of the deposition testimony."

Plaintiffs' January 21, 2014 letter response indicates that they have not withdrawn their November 20, 2013 motion (Doc. Ent. 373), do not intend to do so and "await further action from the Court[.]"

**2.**    On January 22, 2014, I entered an order (Doc. Ent. 397) providing that, no later than January 29, 2014, plaintiffs should file a response to CNH's January 17, 2014 letter which clearly indicates whether there are any remaining issues set forth in plaintiffs' November 19, 2013 motion to compel (Doc. Ent. 373) upon which the Court must rule.

---

[3]Until recently, discovery in this case was due by January 18, 2014 and the dispositive motion cutoff was set for February 3, 2014. *See* Doc. Ent. 372. My January 23, 3014 order (Doc. Ent. 399) extends those dates; however, CNH has filed an appeal (Doc. Ent. 400) of my order (Doc. Ent. 399).

**3.**     On January 23, 2014, plaintiffs filed a response. Doc. Ent. 398. Therein, they claim that the remaining issues are (1) the request that Macey match the documents produced to one of the several conclusions he made in his report (*see* Doc. Ent. 398 at 2 n.2); (2) several items with respect to Macey subpoena document request numbers 6, 8, 15 & 16 (*see* Doc. Ent. 398 at 3-4); and (3) the items described in Paragraph 4 of their December 17, 2013 proposed order (*see* Doc. Ent. 398 at 4; Doc. Ent. 398-2 at 3-4).

**D.     The Remainder of Plaintiffs' November 19, 2013 Motion is Granted in Part and Denied in Part.**

**1.     Macey shall supplement his production of documents by identifying the production numbers of those documents responsive to the subpoena's Request Nos. 9-15.**

Many of the items plaintiffs sought from Macey by the October 28, 2013 subpoena (Doc. Ent. 373-8) refer to Macey's June 30, 2010 declaration (*see* Doc. Ent. 271-2) and/or Macey's October 17, 2013 expert report (*see* Doc. Ent. 383-2). For example, Request Nos. 9-15 make reference to specific pages of the expert report or declaration. *See* Doc. Ent. 383-3 at 6-8.

Macey produced documents to plaintiffs on November 8, 2013. *See* Doc. Ent. 373-10; Doc. Ent. 383 at 12. By way of a November 13, 2013 letter, plaintiffs requested that CNH "identify by Bates numbers, which documents relate to which subpoena request so we can determine to which requests Mr. Macey has responded." Doc. Ent. 373-11 at 2.

In CNH's December 6, 2013 response, it stated:

> Mr. Macey produced documents as he kept them, as allowed by the rules. Fed. R. Civ. P. 45(d)(1)(A), 28 U.S.C. app. (Supp. V 2011). A catalog of withheld documents is required only for documents withheld on the basis of attorney–client privilege or work product protection; Mr. Macey withheld no such documents. *Id.* R. 45(d)(2)(A).

Doc. Ent. 383 at 9 n.4.

By way of the December 12, 2013 statement of resolved and unresolved issues, plaintiffs take issue with the form of Macey's response, requesting that "CNH identify those documents by bates stamp and indicate which numbered request to which the documents correspond." Doc. Ent. 384 at 4. Plaintiffs take a similar position with respect to Macey's response to Request Nos. 1, 9-14. Doc. Ent. 384 at 5-6, 10-13. On the other hand, it was CNH's position as to Request Nos. 2, 4, 5, 7, 9-14 that "[t]hese documents have been produced in response to Request 1, which subsumes this request." *See* Doc. Ent. 384 at 10-13.

In their December 17, 2013 proposed order, plaintiffs request that, "[i]n further response to [Request Nos. 9-15], Defendants and/or Macey will identify, by request number, the responsive documents." Doc. Ent. 398-2 at 5 ¶ 6. Similarly, plaintiffs' January 23, 2014 response asserts that part of their motion "was a request that Macey identify which of the hundreds of documents that were produced in discovery were documents that he relied upon and to so identify per conclusion in his report. In other words, match the documents to one of his several conclusions." Doc. Ent. 398 at 2 n.2.

*Upon consideration, I am persuaded that this Court has the authority to order Macey to supplement his production of documents by identifying the production numbers of those documents responsive to the subpoena's Request Nos. 9-15.* To be sure, Fed. R. Civ. P. 45 provides, in part, "[a] person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." Fed. R. Civ. P. 45(d)(1)(A). Similarly, Fed. R. Civ. P. 34(b)(2)(E) ("Producing the Documents or Electronically Stored Information") provides in part that "[a] party must produce documents as they are kept in the usual course of business or must

5

organize and label them to correspond to the categories in the request[.]" Fed. R. Civ. P. 34(b)(2)(E)(i).[4]

However, cases interpreting Fed. R. Civ. P. 34(b)(2)(E) have permitted such supplemental responses. *See In re Plascencia*, Bankruptcy No. 08–56305–ASW, 2012 WL 2161412, 6 (Bkrtcy. N.D. Cal. June 12, 2012) ("Therefore, to the extent that Defendants have asserted that Defendants have already provided the requested discovery—and this holds true for all of the requests for production—the Court directs Defendants to make a particularized list showing which Bates-numbered pages are responsive to which specific discovery requests, as required by Rule 34(b)(2)(E)(i)."); *United States v. Clay*, Civil Action No. 05–382–JMH, 2009 WL 365820, 4, 5, 13 (E.D. Ky. Feb. 9, 2009) ("plaintiff is directed to supplement its responses to Document Request Nos. 4, 5, and 6 as follows: concerning documents that have already been produced, plaintiff is directed to identify the Bates stamped numbered documents that are responsive to each of these document requests, or in the alternative, plaintiff has the option to "organize and label them to correspond to the categories in the request" in compliance with Fed.R.Civ.P. 34(b)(2)(E)(i).").

*Thus, it appearing that the documents at issue have already been produced (either by Macey or CNH or plaintiffs), Macey shall supplement his production of documents by serving a supplemental response to subpoena Request Nos. 9-15 which identifies the production numbers of those documents responsive to the subpoena's Request Nos. 9-15.*

**2.    Macey subpoena document request Nos. 1, 2, 3, 4 and 6 (Doc. Ent. 383-3) and items described in Paragraph 4 of plaintiffs' December 17, 2013 proposed order (Doc. Ent. 398–2 at 3-4)**

---

[4]In fact, the Macey subpoena cited Fed. R. Civ. P. 34(b)(2)(E). Doc. Ent. 383-3 at 3.

**a.**     The October 28, 2013 subpoena to Macey (*see* Doc. Ent. 373-8, Doc. Ent. 373-9, Doc. Ent. 383-3, Doc. Ent. 388-4) sought, among other things, "[a]ll documents that you considered or reviewed in forming your opinions in this case, including all documents listed or cited in your March 13, 2006 Expert Report (to the extent not previously produced), in preparation for your deposition in June of 2006, in your June 20, 2010 Declaration, and the 'Expert Report of Scott J. Macey' dated October 17, 2013 report and all notes written about or on the documents listed or cited in your report," including but not limited to copies of certain items listed in Attachments C, D, E and F to the October 17, 2013 expert report.  Doc. Ent. 383-3 at 4.

**b.**     In its December 6, 2013 brief, CNH asserts that "[p]laintiffs have identified no document relied upon by Mr. Macey that has not been produced in this case[,]" Doc. Ent. 383 at 9; and "Mr. Macey produced documents as he kept them, as allowed by the rules. Fed. R. Civ. P. 45(d)(1)(A), 28 U.S.C. app. (Supp. V 2011)[,]" Doc. Ent. 383 at 9 n.4.

More specifically, CNH asserts that "[o]n November 8, Mr. Macey produced to Plaintiffs only those materials that had not already been produced to Plaintiffs (either by him in 2006 or by CNH in April 2013) or by Plaintiffs[,]" and "the previously produced material is easy to locate[,]" Doc. Ent. 383 at 12-13.  As to the second point, CNH refers to (A) a November 13, 2013 letter to defense counsel - wherein plaintiffs' counsel acknowledges that production of documents relating to Macey's 2006 expert report and 2010 declaration was "without Bates numbers and in binders with exhibit tabs[,]" (Doc. Ent. 373-11); (B) a November 8, 2013 letter to plaintiffs' counsel - wherein defense counsel identified information related to Macey's 2006 expert report and Macey's June 2010 declaration (Doc. Ent. 373-10); and (C) Macey's October

17, 2013 report's reliance upon plaintiffs' discovery responses and plaintiffs' tax returns (Doc. Ent. 383-2 at 68-69). Doc. Ent. 383 at 13.

In the December 12, 2013 list of resolved and unresolved issues, CNH represents Macey or CNH has produced to plaintiffs every item listed in Macey's 2006 and 2013 expert reports and his 2010 declaration "that is in his possession, custody, or control[;] [but], [h]e has not produced those that came from Plaintiffs themselves or were already produced to Plaintiffs." Doc. Ent. 384 at 5.

Conversely, plaintiffs request that "CNH identify, by bates number, the responsive documents and if that cannot be accomplished for the documents that Mr. Macey had in his binder during his deposition in 2006, they should be bates stamped and reproduced." Doc. Ent. 384 at 5.

**c.** In Paragraph 4 of their December 17, 2013 proposed order (Doc. Ent. 398-2 at 3-4), plaintiffs identify seventeen (17) items which should be produced in response to Macey subpoena Request Nos. 1, 2, 3, 4 and 6 (Doc. Ent. 373-8). Sixteen (16) of these items are listed in Attachment C: Articles (Doc. Ent. 383-2 at 54-57), Attachment D: Testimonies (Doc. Ent. 383-2 at 58) or Attachment E: Documents Reviewed or Relied Upon to Develop Opinions (Doc. Ent. 383-2 at 59-72) to Macey's October 17, 2013 expert report (Doc. Ent. 383-2).[5]

---

[5]Macey's October 17, 2013 expert report consists of opinions (Doc. Ent. 383-2 at 5-7), bases for the opinions (Doc. Ent. 383-2 at 7-49). Along with his report, Macey provided several exhibits: Attachment A: Compensation (Doc. Ent. 383-2 at 50), Attachment B: Qualifications (Doc. Ent. 383-2 at 51-53), Attachment C: Articles (Doc. Ent. 383-2 at 54-57), Attachment D: Testimonies (Doc. Ent. 383-2 at 58), Attachment E: Documents Reviewed or Relied Upon to Develop Opinions (Doc. Ent. 383-2 at 59-72) and Attachment F: Other Expert Testimony (Doc. Ent. 383-2 at 73).

The basis for the remaining item - "Reorganization Agreement Among Tenneco, Case Corporation and Case Equipment Corporation June 23, 1994, including Exhibit[,]" Doc. Ent. 398-2 at 4, is unclear;[6] however, it appears to be referenced in Judge Duggan's August 29, 2007 order in this case. *See* Doc. Ent. 211 at 3.[7] More importantly, it appears to be attached to CNH's January 5, 2007 motion (Doc. Ent. 128). *See* Doc. Ent. 128-7 (Exhibit A Tab 4).

**d.** CNH's December 20, 2013 brief represents that "Macey has already complied with Plaintiffs' subpoena, and Plaintiffs have all materials cited or listed in Mr. Macey's expert report that are in his or CNH's legal possession, custody, or control." Doc. Ent. 386 at 8-9. Likewise, CNH's December 20, 2013 proposed order takes the position that "all requested documents in [CNH and Macey's] possession, custody, or control have been produced to Plaintiffs[.]"

**e.** *Plaintiff has cited a specific list of documents allegedly missing from Macey's production. See Doc. Ent. 398 at 4, Doc. Ent. 398-2 ¶ 4. Upon consideration, all but Item (k) of the seventeen (17) items listed in Paragraph 4 of plaintiffs' December 17, 2013 proposed order (see Doc. Ent. 398-2 at 3-4) are discoverable. This is so, because the sixteen (16) items ordered to be produced are each mentioned in Macey's October 17, 2013 report. Doc. Ent. 383-2.*

*To be sure, the Court agrees with CNH that "Macey need not engage in duplicative production." Doc. Ent. 383 at 12-13. Therefore, Macey shall provide a supplemental response to Request No. 1 which addresses each of these sixteen (16) items as follows: (a) it shall be produced if it has not yet been produced; (b) if it has already been produced, then the supplemental response shall provide the corresponding production number(s); or (c) the*

---

[6]The only June 23, 1994 exhibit to Macey's October 17, 2013 expert report is "*Why Health Care Costs Too Much*, CATO Institute[.]" *See* Doc. Ent. 383-2 at 68.

[7]*See also Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 575 (6th Cir. Jan. 17, 2006)

9

*supplemental response shall explain that it was not produced on the basis that it was produced by plaintiffs themselves.*

**3.       Items concerning Macey subpoena document request Nos. 6 & 12, 8, 15 & 16**

**a.**       Macey's October 17, 2013 expert report relied upon the "Expert Report of John Stahl[.]" Doc. Ent. 383-2 at 70. **Request No. 6** sought "[a]ny and all communications with CNH or other person representing himself or herself as associated with CNH, including but not limited to John F. Stahl or any of his associates, related to the request for, production of, or information contained in your March 13, 2006 Expert Report (to the extent not previously produced), in preparation for your deposition in June of 2006, in your June 20, 2010 Declaration, and the 'Expert Report of Scott J. Macey' dated October 17, 2013 report, including but not limited to notes, recordings and electronic mail." Doc. Ent. 383-3 at 5-6. **Request No. 12** sought "[f]or the Comparison table that appears at page 28 of the 'Expert Report of Scott J. Macey' dated October 17, 2013 [*see* Doc. Ent. 383-2 at 32], provide all of the underlying data, including the claims data used to determine the per capita claim values, including but not limited to claims history and demographic information, e.g. age, race, gender, etc." Doc. Ent. 383-3 at 7.

In its December 6, 2013 response, CNH represents that "Mr. Macey has no documents responsive to the request for communications with CNH's other expert John Stahl (Req. No. 6) [or] supporting data for the comparison chart in Mr. Macey's report, which is based on information in Mr. Stahl's expert report (Req. No. 12)," and Macey "has never communicated with CNH or Mr. Stahl. (No. 6)." Doc. Ent. 383 at 7, 12. Furthermore, in the December 12, 2013 statement of resolved and unresolved issues, CNH takes the position that "[t]he portions of

John Stahl's report that Mr. Macey used (the exhibits) were finalized before Mr. Stahl's report was finalized." Doc. Ent. 384 at 8, 12.

In their January 23, 2014 response, plaintiffs contend that the compilation in Macey's October 17, 2013 report (*see* Doc. Ent. 383-2 at 32) "predates the date of the Stahl report provided to Plaintiff, meaning that some earlier version of Stahl's report was provided to Macey." Plaintiffs maintain that "[w]hat Macey had in his possession from Stahl when he compiled his report should be produced." Doc. Ent. 398 at 3.

*Upon consideration, I conclude that plaintiffs are entitled to what Macey had in his possession from Stahl when he compiled his October 17, 2013 report. Therefore, Macey shall provide a supplemental response to Request Nos. 6 and 12 which does so. If there is an earlier version of Stahl's report which was provided to Macey, then Macey shall produce it. If it is Macey's position that only one version of Stahl's report exists and that Macey used only Stahl's exhibits, which had already been finalized, then Macey shall clearly identify which items from Stahl were in Macey's possession when he compiled his report.*

**b.     Request No. 8** sought "[a]ny and all billing records, including but not limited to any records which reflect the amounts billed or paid, and for what services it was billed or paid, related to the *Reese* litigation, the CNH current benefit plan for the *Reese* class, and the CNH proposed plan for the *Reese* class." Doc. Ent. 383-3 at 6.

By way of the December 12, 2013 statement of resolved and unresolved issues, CNH stated that "Mr. Macey has no such documents in his possession, custody, or control[,]" and that "CNH timely responded to Plaintiffs' request for production of documents and is producing

11

responsive documents[.]"[8] At the same time, it was plaintiffs' position that CNH had not yet produced Macey's billing. Doc. Ent. 384 at 9.

In their December 17, 2013 proposed order regarding Request No. 8, plaintiffs ask that CNH "produce all of the billing records in this matter relating to work performed by Macey since retention." Doc. Ent. 398-2 at 5. More recently, by way of their January 23, 2014 response, plaintiffs contend that "it should be clear how much Mr. Macey has been paid since the onset of the litigation, not just since the remand.[[9]] If he is not in possession of the information, he should identify the entity that is." Doc. Ent. 398 at 3.

*Upon consideration, Macey shall serve a supplemental response to subpoena Request No. 8. If the documents responsive to Request No. 8 are not in Macey's possession, then Macey should indicate the entity that possesses them.*

**c.     Request No. 15** sought "[a]ll documents containing or relating to the 'relative value' calculations, including but not limited to all underlying plan documents, plan design information, the 'methodology standard in the industry,' and the Aon database and the programs, on which your statements in paragraphs 27 through 30 of your June 30, 2010 Declaration [Doc. Ent. 271-2] are, in any way, based." Doc. Ent. 383-3 at 8. This portion of Macey's June 30, 2010

---

[8]Here, the Court assumes that CNH is referring to plaintiffs' November 5, 2013 fifth request for production of documents (Doc. Ent. 388-5). These requests are the subject of plaintiffs' December 27, 2013 motion to compel (Doc. Ent. 388), regarding which a response (Doc. Ent. 392) and reply (Doc. Ent. 394) have been filed.

According to plaintiffs' January 8, 2014 reply, "The billing records provided, do not reflect the bills for the associates and assistants that are listed as having worked on the file in previous CNH filings and do not clearly reflect the work done in 2006 and 2010 in this case by Mr. Macey[.]" Doc. Ent. 394 at 4.

This motion is scheduled to be heard on February 25, 2014. Doc. Ent. 402.

[9]The Sixth Circuit has twice remanded this case, once on July 27, 2009 (Doc. Ent. 247) and again on September 13, 2012 (Doc. Ent. 330).

declaration concerns the statement that "other unions have agreed to significant plan changes for existing retirees and these changes reflect the reasonableness of the proposed changes to the CNH America plan[.]" *See* Doc. Ent. 271-2 at 14-16 ¶¶ 26-31.

On December 12, 2013, it was CNH's position that "Mr. Macey has no such documents in his possession, custody, or control." Furthermore, CNH maintained, "Mr. Macey will not provide testimony equivalent to what was provided in paragraphs 27 through 30 of his 2010 declaration." Plaintiffs countered as follows:

> The information is relevant to the witness' qualifications, opinions and potential bias and should be produced.
>
> Defendants' claim that this opinion of Macey's is now 'superceded' cannot erase the fact that Macey did a relative valuation of the plans. Plaintiffs intend to ask him about his relative value calculations when he is deposed.

Doc. Ent. 384 at 13.

As noted above, Macey was deposed on January 15, 2014. On January 23, 2014, plaintiffs asserted that they "have not been given any documents pertaining to Macey's relative value comparison of the Current Plan from his June 30, 2010 Declaration [Doc. Ent. 271-2]. If those documents are no longer in his possession, he should be ordered to indicate who possesses them." Doc. Ent. 398 at 3-4.

*Upon consideration, Macey shall serve a supplemental response to subpoena Request No. 15. If the documents responsive to Request No. 15 are not in Macey's possession, then Macey should indicate who possesses them.*

**d.** The final issue to be resolved by the Court concerns the relevance of Macey's relationship with his current employer - the ERISA Industry Committee.[10] It appears that Macey became the President and Chief Executive Officer of ERIC (The ERISA Industry Committee) during Summer 2012. Doc. Ent. 398-5 at 5. The Sixth Circuit remanded this case for the second time on September 13, 2012 (Doc. Ent. 330).

At the time of Macey's October 17, 2013 expert report (Doc. Ent. 383-2), Macey was the President and CEO of ERIC. Doc. Ent. 383-2 at 50; Doc. Ent. 398-5. Fed. R. Civ. P. 26(a)(2) ("Disclosure of Expert Testimony.") provides, in part, that an expert's written report must contain "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(vi). Macey's October 17, 2013 expert report contains such a statement. Doc. Ent. 383-2 at 50. Therein, Macey represents that "[s]ince June 1, 2012, any work [he] ha[s] performed on this matter has been under [his] own auspices and is totally independent of [his] work and responsibilities for the ERISA Industry Committee[,]" Doc. Ent. 383-2 at 50.

> **Request No. 16** of the October 28, 2013 subpoena to Macey seeks:
>
> All documents relating to the purpose or mission of the ERISA Industry Committee, to the Committee's charter, by-laws or other organizational documents, to your position and *contractual employment arrangement* with that Committee, to your compensation with that Committee and to corporate, association or individual funding of the Committee for the last five years; as well as all copies of all briefs, proposed legislation, press releases and other formal

---

[10]By way of background, at the time of Macey's first expert report in 2006, Macey was employed at Aon. Doc. Ent. 386 at 3. As noted above, the Sixth Circuit first remanded this case on July 27, 2009 (Doc. Ent. 247). Thereafter, on June 30, 2010, Macey executed a declaration (*see* Doc. Ent. 271-2). At that point, Macey "was employed as Of Counsel at the law firm of Covington & Burling." Doc. Ent. 386 at 3.

> communications, blog posts and other written or electronic communications
> related to retiree benefit issues.

*See* 373-8 at 7 ¶ 16, Doc. Ent. 384 at 13-14 (emphasis added).

At the time of the December 12, 2013 statement of resolved and unresolved issues, it was CNH's position that "[n]one of these materials are relevant to Mr. Macey's work for CNH in this case. Mr. Macey wasn't even with ERIC when he began working on this case, nearly seven years ago. Mr. Macey has not used ERIC resources on this case and he is not appearing in this case as ERIC's president." Doc. Ent. 384 at 13-14.

Macey's relationship with ERIC was also the subject of the parties' December 2013 supplemental briefs. For example, plaintiffs contend that "ERIC also does not post its contracts with Macey or information regarding the compensation paid to Macey[,]" and seek "ERIC's contracts with Macey or information regarding the compensation paid to Macey." Doc. Ent. 385 at 9, 13.

However, according to CNH, "the relevant question for bias is Mr. Macey's relationship *with CNH*, not Mr. Macey's relationship *with ERIC*[.]" Doc. Ent. 386 at 5 (emphasis in original). CNH represents that "Mr. Macey is *not* a professional expert witness; he has been an expert exactly *twice*, including this case, and Plaintiffs have his prior expert reports." Doc. Ent. 386 at 6 (emphasis in original). Furthermore, CNH maintains:

> Plaintiffs' request for Mr. Macey's compensation from ERIC is irrelevant; Rule 26(b)(4)(C)(i)[11] expressly allows discovery of "compensation for the expert's study or testimony"—which CNH provided to Plaintiffs—not the compensation an expert receives from his "day job." What Mr. Macey makes for his work

---

[11]Communications which "relate to compensation for the expert's study or testimony[,]" Fed. R. Civ. P. 26(b)(4)(C)(i), are not protected.

15

>  unrelated to the testimony is self-evidently irrelevant and the personal intrusion outweighs any benefit.

Doc. Ent. 386 at 6-7.

By way of their January 23, 2014 response, plaintiffs note that they continue "to seek the contract between ERIC and Macey which Macey admitted in his deposition, exists, but was not produced." Doc. Ent. 398 at 4.

*Upon consideration, I conclude that the contract between ERIC and Macey is not discoverable as defined by Fed. R. Civ. P. 26(b)(1).* "Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984).

"Bias is always relevant in assessing a witness's credibility." *Schledwitz v. U.S.*, 169 F.3d 1003, 1015 (6th Cir. 1999) (citations omitted). "Bias is not limited to personal animosity against a defendant or pecuniary gain. Courts have found bias in a wide variety of situations, including familial or sexual relationships, *employment or business relationships*, friendships, common organizational memberships, and situations in which the witness has a litigation claim against another party or witness." *Schledwitz*, 169 F.3d at 1015 (emphasis added).

In *Behler v. Hanlon*, 199 F.R.D. 553, 556-557 (D. Md. 2001), the Court discussed methods of impeachment, noting that "[t]he importance of credibility of witnesses to the trial of

cases cannot be overstated, and this is especially true with respect to expert witnesses." *Behler*, 199 F.R.D. at 556. Then, with regard to impeachment by bias, the Court stated:

> . . . the fact that an expert witness may have a 20 year history of earning significant income testifying primarily as a witness for defendants, and an ongoing economic relationship with certain insurance companies, certainly fits within recognized examples of bias/prejudice impeachment, making such facts relevant both to the subject matter of the litigation, and the claims and defenses raised, and placing it squarely within the scope of discovery authorized by Rule 26(b)(1), in either its present, or immediately preceding version.

*Behler*, 199 F.R.D. at 557 (internal footnote omitted).

*However, plaintiffs have not shown the relevance of the terms of the contract between ERIC and Macey.* "Although an expert witness would not necessarily succumb to business pressures, and most experts endeavor to remain faithful to the facts as viewed through the lens of their specialized knowledge, when formulating their opinion, a jury nonetheless is entitled to know of the potential influences that are brought to bear on the witness when called upon to assess credibility." *Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins. Co.*, Nos. 11–10658, 11–11003, 11–11855, 2011 WL 4507417, 5 (E.D. Mich. Sept. 29, 2011) (Lawson, J.); *see also Burger v. Allstate Ins. Co.*, No. 07–11870, 2009 WL 1587396, 2 (E.D. Mich. June 8, 2009) (Hluchaniuk, M.J.) ("Plaintiff should be entitled to obtain information relating to the volume of work these expert witnesses perform for defendants in personal injury cases or insurance companies defending personal injury claims. This type of information bears directly on the bias of the witness and, therefore, it is relevant within the meaning of Rule 26(b)(1). Compiling the information should not be inordinately difficult for the witnesses and it does not disclose any private financial information that is not directly related to the issue of bias.") (internal footnote omitted).

*Plaintiffs' seem to have explored Macey's motive at the January 15, 2014 deposition.* It is plaintiffs' position that ERIC "is involved in direct lobbying of Congressional staffers or members of Congress exclusively on behalf of large employers." Doc. Ent. 385 at 8. As such, plaintiff notes that "expert witnesses in the business of direct lobbying[] may have a motive to slant their testimony in favor of their customers and to promote the continuation of their business." Doc. Ent. 385 at 12. On January 23, 2014, plaintiffs represented that "Macey answered a number of questions about ERIC at his [January 15, 2014] deposition." Plaintiffs also represented that Macey admitted at the January 15, 2014 deposition that a contract between ERIC and him exists. Doc. Ent. 398 at 4. Thus, it is clear that plaintiffs used the opportunity of Macey's January 15, 2014 deposition to explore Macey's relationship with ERIC.

*Perhaps plaintiffs even asked Macey about the percentage of his gross income attributable to ERIC.* As at least one Court has noted, "[t]he income that an expert derives from litigation-related activities and whether that income is predominantly earned from plaintiffs or defendants relates to the motives that a witness may have for testifying a certain way. As the Supreme Court of Kentucky has stated, 'the jury should be able to assess possible bias on the part of an expert witness if it is made aware of the amount and percentage of gross income attributable to providing expert witness services.' *Primm v. Isaac*, 127 S.W.3d 630, 637 (Ky.2004). Jones is entitled to inquire of Dr. Radetsky regarding the extent of the income that he earns in litigation-related matters." *Jones v. Young*, No. 3:04CV00257 JLH, 2007 WL 2695621, 2 (E.D. Ark. Sept. 10, 2007).

*Thus, while Macey's economic relationship with ERIC is relevant to witness bias, I conclude that plaintiffs have not shown the relevance of the terms of the contract between ERIC*

18


*and Macey. Macey's currently employment is not a secret, and plaintiffs were able to explore this topic at the January 15, 2014 deposition. Therefore, CNH need not provide the contract by way of a supplemental response to Request No. 16.*

**E.     Order**

In accordance with the foregoing discussion, plaintiffs' November 19, 2013 motion to compel third party subpoena response (Doc. Ent. 373) is DEEMED MOOT IN PART, GRANTED IN PART and DENIED IN PART. Macey SHALL produce the supplemental responses outlined above no later than fourteen (14) days from the date of this order, unless objections thereto are filed.

Furthermore, defendant CNH's December 6, 2013 and December 20, 2013 requests for an award of fees and costs (*see* Doc. Ent. 383 at 14, Doc. Ent. 386 at 9) are DENIED.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

Date: January 31, 2014                                    s/Paul J. Komives
                                                          PAUL J. KOMIVES
                                                          UNITED STATES MAGISTRATE JUDGE

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 31, 2014.

                                                          s/ Kay Doaks
                                                          Case Manager