UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, JAMES
CICHANOFSKY, ROGER MILLER,
and GEORGE NOWLIN on                                Hon. Patrick J. Duggan
behalf of themselves and
a similarly situated class,                         Case No. 04-70592
    Plaintiffs,
v.                                                  **Class Action**

CNH INDUSTRIAL N.V. and
CNH INDUSTRIAL AMERICA LLC,

    Defendants.
_____/

# EXHIBIT L

## To

## PLAINTIFFS' RESPONSE
## TO CNH'S MOTION FOR SUMMARY JUDGMENT

Letters – Atwood to Graham

June 10, 2004
December 22, 2004

*Solidarity House*

8000 EAST JEFFERSON AVE.
DETROIT, MICHIGAN 48214
PHONE (313) 926-5000
FAX (313) 823-6016



**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA – UAW**

RON GETTELFINGER, *PRESIDENT*       ELIZABETH BUNN, *SECRETARY-TREASURER*

VICE-PRESIDENTS:  GERALD D. BANTOM  •  NATE GOODEN  •  BOB KING  •  CAL RAPSON  •  RICHARD SHOEMAKER

June 10, 2004

Thomas H. Graham, Senior Director
Human Resources
CNH America, LLC
700 State Street
Racine, WI 53404

Dear Mr. Graham:

I write to respond to your letters to Jim Hecker received May 2, 2004, and May 24, 2004 regarding retiree benefits and other statements made in those letters. In the May 2nd letter you note that the UAW has refused to negotiate reductions in the health care benefits to which current retirees are entitled.

You state in the May 2nd letter that "...it appears that the Union wants the Company to address the issues unilaterally." To the contrary, as the UAW has consistently and repeatedly noted, the retiree health care rights of current employees are vested lifetime rights and cannot be unilaterally altered by the Company.

You also assert in the May 2nd letter that "...current retiree health care benefits are not vested. The Union proved this fact when it agreed to 'caps' in the 1993 negotiations, and other changes in the 1998 negotiations." To the contrary, as the evidence introduced in the Detroit lawsuit before Judge Duggan demonstrates, the 1993 FASB letter and related negotiations were never intended – by the Company or Union negotiators – to alter the Company's obligation to provide lifetime benefits to retirees. The UAW never agreed to "cap" the Company's retiree health care obligation.

opeiu494
PRINTED IN U.S.A.

UAWR122144

You state in your letter received May 24th that "the UAW has refused to discuss any benefit proposals with respect to current retirees," that is incorrect. The UAW declined to discuss reductions in the vested health care rights of current retirees. The UAW is willing and eager to discuss other current retiree issues, such as the proposal for lump sum payments to retirees and surviving spouses.

Finally, your statement that "the Company would prefer to jointly resolve this issue" rings hollow in light of the fact that the first the Union heard from the Company on this matter was a phone call to me informing us that the Company had filed a declaratory judgment lawsuit against the UAW.

Please call if you have any questions or comments.

Sincerely,

James R. Atwood
Administrative Assistant
Agricultural Implement Department

RA:clo
opeiu494
cc:     Jim Hecker
        Cal Rapson
        Richard Ruppert
        Dennis Williams



*Solidarity House*

8000 EAST JEFFERSON AVE.
DETROIT, MICHIGAN 48214
PHONE (313) 926-5000
FAX (313) 823-6016

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA – UAW**

RON GETTELFINGER, *PRESIDENT*   ELIZABETH BUNN, *SECRETARY-TREASURER*

VICE-PRESIDENTS: GERALD D. BANTOM • NATE GOODEN • BOB KING • CAL RAPSON • RICHARD SHOEMAKER

December 22, 2004

Tom Graham, Sr. Director
Human Resources
CNH America LLC
700 State Street
Racine, WI 53404

Dear Mr. Graham:

I am writing to follow up on the letter that I sent to you on November 23rd. The purpose of this letter is to explain in more detail our position on the status of bargaining, as well as to respond to a number of the inaccurate statements contained in the correspondence we've received from you in the last few weeks.

Initially, I want to emphasize that we are committed to exploring all reasonable alternatives that might result in a mutually agreeable settlement on the so called "key" issues, and in all other open areas. Our position continues to be flexible. The fact that the Company and the Union have met a number of times over the last eight months, and that you have supplied some of the information we have requested, does not provide you with a legal basis for declaring an impasse. Nor does the fact that the Company finds its current cost structure "unacceptable." Instead, only when the parties' positions have become fixed, and a stalemate has been reached, is the bargaining obligation suspended. Because that is not the case here, we demand that you withdraw the terms you've imposed, and resume bargaining immediately.

Contrary to what you've suggested, the Union has demonstrated a genuine willingness to move in your direction, represented by the significant movement we made in two of the three major areas you've cited as critical.[1] At no point have we stated that the October 27th counter was the last proposal that we would make on these issues. Indeed, we remain willing to consider moving further in your direction on these items, provided that you supply us with the information we need to bargain intelligently.

---

[1] Your November 22nd letter claims that the Union's counter "includes cost increases the Company is not prepared to accept." I'm not sure what this statement means, since I don't have any data comparing the total costs of the expired contract with the Company's current proposal or the Union's counter. We've certainly never had discussions on this point. I do acknowledge that the Union's counter would cost more than the Company's current proposal, but, as is discussed below, we've not yet made our best offer.

opeiu494
PRINTED IN U.S.A.

On the third key issue you've identified, "caps" on the Company paid cost of future retiree health care benefits, let me restate our position once again. Your earlier proposals to the Union proposed to cap current as well as future retiree health care costs. Prior to putting this on the bargaining table, you sought to litigate the issue of whether current retiree health care benefits were vested. We have flatly refused to consider any caps on your obligation with respect to these benefits, and have informed you that our position is that the issue will be settled as a result of the ongoing litigation. I would note that it wasn't until later that the Company amended its offer and withdrew the proposed caps for current retirees. While we have resolutely refused to negotiate on this subject, we are willing to consider whether caps on future retiree benefits would be appropriate. In order to explore this issue further, we will, of course, need information to appropriately assess the impact of your proposal on future retirees. A request on this matter will be submitted to you in due course.

Given the fluidity of our position on the key issues, we were somewhat taken aback by your accusation that the Union's failure to compromise has undermined the bargaining process, particularly since it is Company's unwillingness to negotiate in good faith that has been the chief problem here. Although we have accepted a number of proposals on the issues most important to you, your position has remained unchanged since bargaining opened in April. Other than a few adjustments to your April 28th offer, you have not moved toward us at all. Your November 22nd letter acknowledges as much. This sort of "take-it-or-leave-it" approach is both unlawful and making this dispute more difficult to settle.

Your motive for instituting the lockout illustrates this point well. As a sign of good faith, and our desire to work toward an agreement, we ended our strike on November 22nd. Instead of accepting this olive branch, you immediately initiated a lockout. Worse still, you continue to use replacement workers in violation of our Letter of Agreement on this subject. These are not the actions of an employer interested in resolving matters through good faith bargaining.

Moreover, you have taken the position that the lockout will continue until the Union accepts the Company's current proposal. You made it a point to inform me of this during our telephone call on November 22nd, and Michael Jack later made a similar statement in a phone call initiated by Vice President Cal Rapson. You also made a similar statement to Region 4 Director Dennis Williams when you were asked if there was any way to get back to bargaining. Thus, at least three different times the Company has verbally echoed the message contained in your November 22nd letter that "until the Union [is] prepared to accept the Company proposal on the three key issues (i.e., new hire package, health care package for current employees and future retirees and caps on future retiree health care) there is no reason to meet."

Although your November 30th correspondence suggests that your position on this point may have changed (which we hope is the case), I must advise you that, if you continue to follow the strategy you've adopted thus far, we will take legal action to challenge it. That said, we would prefer to take constructive steps to move forward. Accordingly, we are in the process of developing another comprehensive proposal in a further effort to resolve our differences. Once this offer has been prepared, we will contact you to arrange a main table meeting, or if you'd prefer, we would also be willing to discuss the offer with you in a more informal "small group" setting.

3

In the meantime, we expect you to comply with your obligation to supply us with the information more appropriately tailored to our November 2nd request. The inadequacy of your November 8th response is apparent on its face. I explained when I made the request that before we can agree to the various health care changes proposed by the Company (e.g., premiums, deductibles, co-pays, co-insurance and maximum out-of-pocket costs), we need to know the real impact those modifications will have on employees. The best way to determine this is to make projections based on past experience, using claims data for the affected group of workers. We've had no difficulty obtaining this type of information from other employers in similar circumstances. The projections you provided us were, however, by your own admission, based on the claims experience of non-unit workers. This is not what I requested, and is obviously not precise enough to meet our needs, given the substantial differences in the two populations. I again ask that you provide me with projected impact and costs based upon unit employees' past claims experience.

One other item contained in your November 8th letter also merits comment. You claim that the November 2nd request was "untimely", and contend that there was no "legitimate reason" to submit it at that time. I remind you that we are entitled any information relevant to the proposals being discussed. Clearly, your health care proposals were in play at the time we made the request. Regarding the timing of the request, I would note that it was not until November 2nd, when you formally rejected our counter, that a further review of our position necessitated the additional request for information. In light of our changed bargaining position, it was wholly reasonable for us to make a request at that time. That you would have liked for us to have made this request earlier does not provide you with a basis for refusing to supply the information now.

As is noted above, we are in the process of preparing another comprehensive proposal based on the information that we have at this time. Once you comply with our November 2nd request, provide us with the relevant information related to the proposed caps on future retiree health care costs and supply any follow-up data that we may need, we may be able to make additional proposals to resolve any remaining issues. Not until we have reviewed the data needed to verify your claims, and to understand fully the basis and impact of your proposals, will we be able to determine how far we might be willing to move in your direction.

When we have completed formulation of our next proposal, I will contact you to arrange a meeting time and place. If you have any questions regarding the information sought by my November 2nd request, please contact me. We look forward to working with you on reaching an agreement as soon as possible.

Fraternally,

James R. Atwood
Administrative Assistant
Agricultural Implement Department

JRA:clo
opeiu494
cc:     Cal Rapson          Dennis Williams

UAWR125382