UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, JAMES
CICHANOFSKY, ROGER MILLER,
and GEORGE NOWLIN on                          Hon. Patrick J. Duggan
behalf of themselves and
a similarly situated class,                    Case No. 04-70592
     Plaintiffs,
v.                                             **Class Action**

CNH INDUSTRIAL N.V. and
CNH INDUSTRIAL AMERICA LLC,

    Defendants.

_____/

## PLAINTIFFS' MOTION TO STRIKE CNH'S EXPERT DECLARATIONS

The Plaintiffs hereby move to Strike CNH's Expert Declarations, filed with CNH's Motion for Summary Judgment, R. 423, Exhibits B (Stahl) and C (Macey).

1.    This Court's Scheduling Order required Defendants (referred to collectively as "CNH") to submit its expert reports no later than October 17, 2013.

2.    On October 17, 2013, CNH transmitted to Plaintiffs two expert reports, one for John F. Stahl and one for Scott Macey.

3.    Plaintiffs deposed Stahl on January 14, 2014 and Macey on January 15, 2014 and April 2, 2014.

4.    On April 14, 2014, CNH submitted its Motion for Summary Judgment, R. 423, to which it attached "Declarations" of Stahl (Exhibit B) and

Macey (Exhibit C).

   5.    Plaintiffs move to strike the Expert Declarations for the following

reasons:

   a. The Declarations exceed in scope the expert reports filed pursuant
      to the Scheduling Order in October of 2013 and thereby violate
      Fed. R. Civ. Proc. 16 (failure to request modification of schedule;
      no showing of good cause, no judicial consent);

   b. Each of the experts indicated that he did not intend to supplement
      his opinions at the time of his deposition. The declarations exceed
      the scope of the testimony elicited at that time. Declarations that
      exceed and are inconsistent with deposition testimony cannot be
      used in support or in avoidance of summary judgment, *Reid v.
      Sears, Roebuck & Co.,* 790 F.3d 453 (6th Cir. 1986), *Briggs v.
      Potter*, 463 F.3d 507 (6th Cir. 2006);

   c. Statements in the Declarations are not based upon personal
      knowledge;

   d. Both Declarations fail to qualify under Federal Rules of Evidence
      702.

   6.    These reasons constitute good cause to strike the Declarations.

   WHEREFORE Plaintiffs request that this Honorable Court strike R. 423,

Exhibits B and C.                    Respectfully submitted,

                                     McKNIGHT, McCLOW, CANZANO,
                                     SMITH & RADTKE, P.C.
                                     By:  */s/Darcie R. Brault*
                                     Darcie R. Brault (P43864)
                                     Attorneys for Plaintiffs
                                     400 Galleria Officentre, Suite 117
                                     Southfield, MI  48034
                                     (248) 354-9650
Dated: May 21, 2014                  dbrault@michworklaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, JAMES
CICHANOFSKY, ROGER MILLER,
and GEORGE NOWLIN on                          Hon. Patrick J. Duggan
behalf of themselves and
a similarly situated class,                   Case No. 04-70592
     Plaintiffs,
v.                                            **Class Action**

CNH INDUSTRIAL N.V. and
CNH INDUSTRIAL AMERICA LLC,

    Defendants.

                                                   /

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE CNH'S EXPERT DECLARATIONS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

MOST COMPELLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    I.    The Declarations exceed in scope the expert reports filed in
        October of 2013 under the Scheduling Order in violation of Fed.
        R. Civ. Proc. 16 and 56(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    II.   Declarations that exceed and are inconsistent with deposition
        testimony cannot be used in support or in avoidance of
        summary judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    III.  The Declarations are based, in large part, upon subjects that
        are not within the declarant's personal knowledge . . . . . . . . . . . . .  8

        A.    Macey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

        B.    Stahl . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

    IV.  Both Declarations also fail to qualify under Federal Rules of
        Evidence 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

        A.    Macey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

        B.    Stahl . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

# TABLE OF AUTHORITIES

## CASES

*Alexander v. CareSource*, 576 F.3d 551(6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 8

*Auto Indus. Supplier ESOP v. Ford Motor Co.,* 435 Fed. Appx.
430 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 18

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . 12, 16

*Block v. City of Los Angeles,* 253 F.3d 410 (9th Cir. 2001) . . . . . . . . . . . . . . . . . 8

*Briggs v. Potter*, 463 F.3d 507 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Broaddus v. Shields*, 665 F.3d 846 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . : . 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,
n.10 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Daugherty v. Graves*, 2013 U.S. Dist. LEXIS 17614 (E.D. Tenn. 2013) . . . . . . . 17

*Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273
(S.D. Ala. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Flanagan v. Altria Grp., Inc.*, 423 F. Supp. 2d 697 (E.D. Mich. 2005) . . . . . . . . 15

*General Electric v. Joiner*, 522 U.S. 136 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins. Co.*,
2011 U.S. Dist. LEXIS 111668, 13-14 (E.D. Mich. Sept. 29, 2011) . . . . . . . . . . 15

*Hot Wax, Inc. v. Warsaw Chem. Co.*, 45 F. Supp. 2d 635 (D.C. Ill 1999) . . . . . . 8

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir. 1997) . . . . . . . . . . . . 6

*Kuhmo Tire*, 526 U.S. at 148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ii

Mitroff v. Xomox Corp. 797 F.3d 271 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . 17

*Moisenko v. Volkswagenwerk Aktiengesellschaft*, 198 F.3d 246
(6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001) . . . . . . . . .  13

*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521
(6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273
(6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567 (6th Cir. 2009) . . . . . . . . . . . . . . 7

*Penny v. United Parcel Serv.*, 128 F.3d 408 (6th Cir. 1997) . . . . . . . . . . . . . . . . 7

*Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011) . . . . . . . . . . . . . . .  6

*Pride v. BIC Corp.*, 218 F.3d 566 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . .  6, 12

*Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012) . . . . . . . . . . . . . . . . .  11

*Reid v. Sears, Roebuck & Co.*, 790 F.3d 453 (6th Cir. 1986) . . . . . . . . . . . . . . . . 7

*Robinson v. Mills*, 592 F.3d 730 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . .  15

*Sam's Riverside, Inc., v. Intercon Solutions, Inc.*, 790 F. Supp. 2d 965
(S.D. Iowa 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Trilogy Communications v. Times Fiber Communications*, 109 F.3d 739
(3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Abel*, 469 U.S. 45, 105 S. Ct. 465,
83 L. Ed. 2d 450 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. LeBlanc*, 45 Fed. App'x 393 (6th Cir. 2002) . . . . . . . . . . . . . . 12

iii

*United States ex rel. Howard v. Lockheed Martin Corp.*, 2014 U.S. Dist.
 LEXIS 39408 (S.D. Ohio Mar. 25, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 16

*Yancey v. Carson*, 2007 U.S. Dist. LEXIS 78289
 (E.D. Tenn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Zuzula v. ABB Power T & D Co., Inc.*, 267 F. Supp. 2d 703
 (E.D. Mich. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

## **STATUTES**

Fed. R. Civ. Pr. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 23

Fed. R. Civ. Pr. 56(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6, 8, 23

Fed. R. Civ. Proc. 56 (h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. Pr. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 23

Fed. R. Evid. 104(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

FRE 602 and 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 23

## MOST COMPELLING AUTHORITY

*Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579, n.10 (1993)

# INTRODUCTION

Defendant CNH proffered two expert witness declarations along with its Motion for Summary Judgment in this matter, R. 423, Exhibits B and C. The Declarations do not merely incorporate expert reports filed in October of 2013 in accordance with this Court's Scheduling Order, R. 360, but rather, the Declarations expand into new, untimely, opinions developed after the experts' depositions in violation of Fed. R. Civ. Pr. 16.

Each of the experts indicated that he did not intend to supplement his opinions. The Declarations exceed and are inconsistent with deposition testimony and for that, independent reason, cannot be used in support or in avoidance of summary judgment.

Statements in the Declarations are not based upon personal knowledge, and do not meet the standards for admission of FRE 602 and 702, and thereby violate Fed. R. Civ. Pr. 56(c)(4). The opinions in the Declarations do not relate to scientific, technical or other specialized knowledge that will assist a trier of fact to understand the evidence in this case. The testimony is not based upon sufficient facts or data, is not the product of reliable principles and methods under FRE 702, and is not relevant under Fed. FRE 401, again violating Fed. R. Civ. Pr. 56 (c)(4).

The Declarations should be struck. This Court should not rely upon them deciding CNH's Motion for Summary Judgment.

1

## FACTS

1.      At the status conference in this matter and after discussing the case with counsel, the Court entered a Scheduling Order. See Minute Entry dated February 4, 2013.

2.      At the initial conference on remand, Defendant was required to identify its precise proposed benefits plan so that the parties could begin discovery of whether that proposed plan was reasonably commensurate with the vested lifetime benefits that the retirees have received since their retirements, the "Current Plan." Defendant finally identified its precise "Proposed Plan" on March 1, 2013.

3.      The parties engaged in discovery beginning March 14, 2013.

4.      CNH failed to cooperate in discovery, resulting in several orders compelling requested information and extending the Scheduling Order. See R. 352, R. 360, R. 353, R. 369.

5.      On July 30, 2013, in conjunction with the Court's ruling regarding the Motion for Leave to Exceed 25 Interrogatories, the Court, *sua sponte*, extended the Scheduling Order as follows:

| | |
|---|---|
| 8/13/13 | Defendants to respond to Plaintiffs' discovery requests |
| 9/27/13 | Reports due from Plaintiffs' experts |
| 10/17/13 | Reports due from Defendants' experts |
| 11/18/13 | Discovery closes |
| 12/3/13 | Dispositive motion cut-off |
| 1/3/14 | Dispositive motion(s) response(s) due |
| 1/10/14 | Dispositive motion(s) reply brief(s) due |

2

R. 360.

6.     On September 23, 2013, R. 369, Magistrate Judge Komives ordered that Defendants could wait until the date expert reports were due to provide answers responsive to Interrogatories 36 (requesting information about whether CNH intends to compare its proposed plan with plans available to retirees and workers at similar companies and, if so, the details of those companies/plans) and 37 (requesting information regarding whether the Company contends that there are any "changes in health care" that are relevant on remand). The CNH expert reports were not due until October 17, 2013.

7.     CNH provided expert reports, electronically, on the afternoon of the due date. **Exhibit A**. CNH Expert Disclosures.

8.     Plaintiffs sought and received an extension of the Scheduling Order in order to obtain discovery of the bases of the Defendants' experts' opinions. See R. 370 and Order R. 372. The Court modified the schedule on October 31, 2013 as follows:

| | |
|---|---|
| 1/17/13 | Discovery closes & Plaintiffs' rebuttal expert report(s) due |
| 2/1/14 | Dispositive motion cut-off |
| 3/4/14 | Dispositive motion(s) response(s) due |
| 3/11/14 | Dispositive motion(s) reply brief(s) due |

9.     Plaintiffs sought to depose Defendants' experts, whose opinions were in large part unknown to Plaintiffs prior to October 17, 2013.

10.    Plaintiffs sought discovery related to the expert witnesses ahead of

3

their depositions, resulting in orders compelling responses and further extensions of the Scheduling Order. See R. 399, R. 404, R. 410 and R. 416.

11.     Plaintiffs deposed John F. Stahl on January 14, 2014. **Exhibit B**.

12.     Plaintiffs deposed Scott Macey on January 15, 2014 and April 2, 2014. **Exhibit C** and **D**, respectively.

13.     CNH filed its Motion for Summary Judgment on April 14, 2014 under Fed. R. Civ. Pr. 56, R. 423.

14.     The Declaration of John F. Stahl is attached to R. 423 as Exhibit B.

15.     The Declaration of Scott Macey is attached to R. 423 as Exhibit C.

16.     The Stahl Declaration added new opinions not found in CNH's Expert Disclosures, including that the Proposed Plan is "reasonable" in light of continuing changes in the cost and delivery of healthcare and that "[i]ncreased cost-sharing leads to more cost-effective plan usage." Stahl also revised his opinions to reflect flaws disclosed during his deposition: He admitted he had no personal knowledge regarding much of the data compilation and analysis contained in his report and attempted to explain why he failed to make certain comparisons. Stahl added new comparisons of increases in costs, new references to the implementation of the Affordable Care Act and "upcoming changes" it will cause, and he supplemented his discussion of Medicare Part D. Cf., **Exhibit A**.

17.     The Macey Declaration added a new opinion: that "The cost-sharing

4

model of the [Current] Plan ... is not a reasonable reflection of today's economic climate and healthcare marketplace" and added a number of references to the National and State Health Insurance Initiatives Letter of Understanding, something not mentioned in his expert disclosures, **Exhibit A**.

18.     Plaintiffs have had no opportunity for discovery regarding the new opinions of Stahl and Macey, which were not provided until after the close of discovery.

19.     CNH has not supplemented its previous discovery responses to reflect the new information and opinions.

## ARGUMENT

I.      **The Declarations exceed in scope the expert reports filed in October of 2013 under the Scheduling Order in violation of Fed. R. Civ. Proc. 16 and 56(h).**

CNH submitted new expert reports *over six months after the deadline for providing its Expert Disclosures* under Fed. R. Civ. Proc. 16, without requesting modification of the Scheduling Order, without good cause, without judicial consent and without providing the Plaintiffs an opportunity to conduct discovery with respect to the Declarations submitted with its Motion for Summary Judgment. District courts have broad discretion to exclude untimely disclosed expert-witness testimony. See, e.g., *Trilogy Communications v. Times Fiber Communications*, 109 F.3d 739 (3d Cir. 1997) (upholding the exclusion of untimely expert-witness

reports and affidavits that violated the court's Scheduling Order); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir. 1997) (upholding the exclusion of an expert's testimony as a sanction for the non-moving party's decision to violate pretrial discovery orders in an attempt to "gain a tactical advantage by delaying notification"); *Pride v. BIC Corp.*, 218 F.3d 566, 578-579 (6th Cir. 2000) and *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 681 (6th Cir. 2011) (untimely supplemental declaration struck).

Fed. R. Civ. Proc. 56 (h) also allows this Court to strike declarations submitted in bad faith.

Plaintiffs request that the Declarations be struck.

## II.   Declarations that exceed and are inconsistent with deposition testimony cannot be used in support or in avoidance of summary judgment

The untimely declarations of both CNH experts modify and supplement the reports that were filed on the date ordered by this Court: October 17, 2013. **Exhibit A**. CNH added general themes from its Brief to the Declarations and then cited the additions to the Declarations as support for its Brief. See ¶¶16 and 17, above. The Declarations came after their depositions, during which neither expert claimed an intention to modify their opinions or reports. **Exhibit B**, Stahl Dep., p. 139; **Exhibit D**, Macey Dep., p. 378. Because the Declarations include newly added opinions and information, they are improper submissions and cannot be used to

6

create or determine factual issues on summary judgment, *Reid v. Sears, Roebuck & Co.*, 790 F.3d 453 (6th Cir. 1986); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997); *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 588 (6th Cir. 2009).

Macey's Declaration includes a new opinion about the reasonableness of the cost-sharing and new facts offered in support of new arguments in CNH's Brief. The Stahl Declaration adds several[1] new opinions, including "reasons why CNH's proposed plan is reasonable in light of continuing changes in the cost and delivery of healthcare," "[i]ncreased cost-sharing leads to more cost-effective plan usage," and his entire paragraph 8. *Cf.*, **Exhibit B**, Stahl Dep., pp. 125-139 and **Exhibit A**, Expert Disclosures. Stahl also revised his declaration to acknowledge weaknesses uncovered in deposition; to wit: that by and large he did not perform any of the data compilations or analyses upon which he relies.

The Declarations should be struck as inconsistent with the deposition

---

[1] Some of the other newly added opinions/statements include: "Participants' and the company's costs increase annually at approximately the same rate under the current and proposed plans." "In developing the projections, we assumed no premiums in 2013 and projected 2014 premiums of $57.25 per month for pre-Medicare eligible participants and $5 per month for Medicare-eligible participants." "Although such projections are actuarially sound, it is difficult to predict the cost of health benefits beyond the next several years given the volatile nature of health benefits generally and all of the variables and upcoming changes that will be caused by the implementation of the Affordable Care Act." "We did not compare the proposed plan for Medicare-eligible participants because many employers in the BDS database do not provide retiree medical coverage, much less coverage for Medicare-eligible retirees." "We did not attempt to ascertain whether a code that did not exist in 1998 reflected a new procedure."

7

testimony of the declarant.

### III.    The Declarations are based, in large part, upon subjects that are not within the declarant's personal knowledge

Fed. R. Civ. Proc. 56 limits the admission of affidavits in support of summary judgment to those which are made on personal knowledge, setting forth facts that would be admissible by a competent affiant.

Under Fed. R. Civ. Pr. 56 (c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Where the Declarations are not based upon personal knowledge, they cannot be considered under Fed. R. Civ. Pr. 56, *Broaddus v. Shields*, 665 F.3d 846 (7th Cir. 2011), *Block v. City of Los Angeles,* 253 F.3d 410 (9th Cir. 2001), *Sam's Riverside, Inc., v. Intercon Solutions, Inc.* 790 F. Supp. 2d 965 (S.D. Iowa 2011), *Hot Wax, Inc. v. Warsaw Chem. Co.,* 45 F. Supp. 2d 635 (D.C. Ill 1999).

Also, hearsay cannot form the basis for an admissible declaration:

> "'[h]earsay evidence . . . must be disregarded.'" *Ibid.*; see also *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) ("[T]he testimony of Chaffee is inadmissible hearsay and therefore cannot defeat a motion for summary judgment.").

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

  *A. Macey*

8

Almost all of the Macey Declaration is based upon "facts" about which Macey has no personal knowledge. Macey's extreme generalizations about trends and changes are grossly speculative, not based in fact and not reliable ¶¶42-43, 45 ("recent events and trends in the health benefit space"), 59. See **Exhibit E**, Lynne Rebuttal Report, ¶¶11-12. In paragraphs 5 through 8, Macey makes broad observations about "many companies," "unions," the UAW's bargaining behavior, what "employers" are doing and how "unions" are reacting to what employers are doing, and then conclude that these broadly generalized activities "have caused a dramatic decline in the prevalence of retiree health benefits." Macey engages in a similar, unsupported speculation of how "health benefits change over time" in paragraphs 29 through 31, 35. There is *no* factual basis offered in support of the generalizations.

Macey's Declaration purports to provide information about "companies and unions in many industries," citing to several examples, see paragraphs 9 through 21, 36, 56-58. A cursory review of the "facts" advocated by Macey demonstrates that he **has no personal knowledge** regarding the great majority of these statements and **he gets them wrong**, see **Exhibit E**, Lynne Rebuttal Report, ¶ 3. Macey, as he goes from generalization to detail, becomes even less accurate, making seemingly **intentional grotesque mistakes in fact**: Compare Macey ¶48 to **Exhibit F**, Hecker Declaration¶17, Macey ¶¶49-51 to **Exhibit G**, Sherrick

9

Declaration, Macey ¶¶52-55 to **Exhibit H**, Hogsett Declaration and **Exhibit F**, Hecker Declaration ("Mr. Macey clearly does not have any idea what medical benefits John Deere hourly retirees like me currently enjoy"), and Macey ¶64 to **Exhibit E**, Lynne Rebuttal Report, ¶23.

To the extent that Macey purports to pepper his recitation of the "terms" of the Proposed Plan with history, **he gets it wrong**. In paragraph 24, footnote 2, and paragraph 26, he not only gets the facts wrong, but then opines that there was a "loss of free choice" that was a "significant detriment" to the retirees who went from the indemnity plan to the managed care plan in 1998. Macey's dissertation is not based upon any personal knowledge and directly contradicts the finding of this Court based on a voluminous record. See also **Exhibit E**, Lynne Rebuttal report, ¶5-6. Macey gets the facts wrong when he states, "CNH has always asked retirees to participate in Medicare programs" at paragraphs 28. This is not true and Macey cites no facts in support of it. The facts speak for themselves. Macey's editorializing is not just unhelpful, it is wrong.

Macey also relies upon hearsay for – and gets wrong – his comparison of the Proposed Plan to "those provided to other employees and retirees." Macey does not account for any of the tradeoffs received in bargaining by the more recent retirees, ¶ 46-47. See **Exhibit E**, Lynne Rebuttal Report, ¶13. Macey's statements regarding how the Proposed Plan is reasonably commensurate with the Current Plan is based

entirely on hearsay, as is his generalization that it is not "unusual" for companies to eliminate prescription drug benefits for Medicare-eligible retirees, citing anecdotal hearsay regarding EMBARQ, at paragraph 27. He further relies upon the hearsay of CNH's other expert, Stahl, who himself relied upon hearsay. See paragraphs 32 and 33. See, *Auto Indus. Supplier ESOP v. Ford Motor Co.,* 435 Fed. Appx. 430 (6th Cir. 2011). Cf., **Exhibit E**, ¶3-4.

Unauthenticated hearsay evidence misled the Sixth Circuit in *Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012) when it found that there was "a reduction in the effective choices of coverage" upon change to managed care in 1998, and that "[n]o one batted an eye when the healthcare plans for which retirees were eligible were modified to account for the creation of Medicare Part D," at 684. Of course, this Court found no reduction and with respect to the benefits post-Medicare Part D, they ***never were modified***. To safeguard against further erroneous appellate fact findings, this Court must vigilantly close the gate on these inadmissible declarations.

### B. Stahl

Stahl's declaration is replete with hearsay. He admits that he relied upon staff and third parties (some of whom he could not even identify) to compile data, to analyze it, and to form the basis of ***his*** opinions. **Exhibit B**, Stahl Dep., pp. 9-10, 22, 32-33, 35, 38, 40, 42, 44, 51-52, 55, 57-60, 64, 66-67, etc. Plaintiffs request

11

that the Court strike the Declarations because they are saturated with statements outside of the declarant's personal knowledge, are based in large part on hearsay and contain argument. See e.g. *Auto Indus. Supplier ESOP, infra.*

## IV.  Both Declarations also fail to qualify under Federal Rules of Evidence 702

Federal Rule of Evidence 702 provides that expert testimony relating to "scientific, technical, or other specialized knowledge" is admissible only if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579, 592 n.10 (1993)) (explaining that an expert must "testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case"). A witness qualified as an expert may only offer testimony if "the testimony is based upon sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Federal Rule of Evidence 702(b)-(d).

An expert's testimony must be based on "scientific, technical, or other specialized knowledge [that] will help the trier of fact." Fed . R. Evid. 702(a). A witness may not testify as an expert unless he or she testifies about matters that are beyond the ability and experience of the average layperson. *See, e.g., Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994) ("If everyone knows [the

12

knowledge in question], then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue' . . . ." (quoting Fed. R. Evid. 702)).

Additionally, expert testimony is subject to general evidentiary rules, such as Federal Rules of Evidence 401 and 403. *See United States v. LeBlanc*, 45 Fed. App'x 393, 400 (6th Cir. 2002) ("Obviously, expert testimony is subject to the same relevancy constraints as all other kinds of evidence."); *Moisenko v. Volkswagenwerk Aktiengesellschaft*, 198 F.3d 246 (6th Cir. 1999) (applying Fed. R. Evid. 403 balancing test to expert testimony).

Under Federal Rule of Evidence 702, the trial judge is charged with the task of ensuring an expert's testimony is relevant to the task at hand and rests on a reliable foundation. *Daubert*, 509 U.S. at 591-92; *Zuzula v. ABB Power T & D Co., Inc.*, 267 F. Supp. 2d 703, 711 (E.D. Mich. 2003) ("[T]estimony is unhelpful when it is unreliable or irrelevant."). Accordingly, Defendants bear the burden of establishing by a preponderance of the evidence that their expert's declarations are relevant and reliable. *See* Fed. R. Evid. 104(a); *Daubert*, 509 U.S. at 589-93; *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) ("It is the proponent of the testimony that must establish its admissibility by a preponderance of proof.").

To be relevant, the proffered expert testimony must be sufficiently tied to the

13

facts of the case such that it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (citing Fed. R. Evid. 702). A "fit" or valid connection must exist between the expert's reasoning or methodology and the facts at issue before the Court. *Id.* at 591-93. The necessary connection between the expert's methodology and ultimate conclusion may not be established on speculation alone. *General Electric v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Reliability of an expert's conclusions is based on the expert's knowledge or experience in his or her discipline, rather than on subjective belief or unsupported speculation. *See, e.g., Kuhmo Tire*, 526 U.S. at 148; *Daubert,* 509 U.S. at 589-90. The Court must ensure that the expert employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (internal quotation marks omitted).

*Daubert* suggested four non-exclusive criteria "against which to measure the validity of the underlying principles and methods which undergird an expert's opinion: [1] whether the technique or theory is capable of being tested; [2] whether it has been published and reviewed by peers in the relevant technical community;

14

[3] the potential or known rate of error yielded by the methodology; and [4] whether the principle or theory has been generally accepted or shunned by the community of experts in the field." *Zuzula*, 267 F. Supp. 2d at 712. The Sixth Circuit has identified several "red flags" that "caution against certifying an expert," including (1) reliance on anecdotal evidence, (2) improper extrapolation, (3) failure to consider other possible causes, (4) lack of testing, and (5) subjectivity. *Newell Rubbermaid, Inc.*, 676 F.3d at 527.

Finally, as with all evidence, the Court may exclude expert testimony if its probative value is substantially outweighed by unfair prejudice, confusion of the issues, waste of time, undue delay, or needless presentation of cumulative evidence. *See* Fed. R. Evid. 403; *Moisenko*, 198 F.3d 246 (6th Cir. 1999) (applying Fed. R. Evid. 403 balancing test to expert testimony); *Flanagan v. Altria Grp., Inc.*, 423 F. Supp. 2d 697, 699 (E.D. Mich. 2005) ("Even if the Court finds the evidence reliable and relevant, it must also determine whether its probative value is outweighed by its prejudicial effect.").

### A. Macey

Macey is biased[2] and does not qualify as an expert. He has never been

---

[2] "The term 'bias' describes 'the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party.'" *Robinson v. Mills*, 592 F.3d 730, 737 (6th Cir. 2010) (quoting *United States v. Abel*, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984)). Macey is the President and CEO of the ERISA Industry Committee (or

qualified as an expert by any court, including this one. [3] There is no explication for what scientific, technical or other specialized knowledge CNH claims that Macey possesses or what reliable methods or principles he has applied to reach his conclusions.

Macey's opinions about the ultimate question of law here, i.e., what is and is not reasonable, are inappropriate and inadmissible. These opinions usurp the Court's role in determining as a matter of law what is reasonable. Expert opinion on a question of law is inadmissible, *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994). In *Berry,* an expert's testimony on what constitutes "deliberate indifference" was struck. Similarly, CNH's experts' testimony regarding what is "reasonably commensurate" or not, should be struck. See also, *Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997). See also, *United States ex rel. Howard v. Lockheed*

---

"ERIC"). He lists ERIC in the "qualifications" section of his report. ERIC is involved in direct lobbying of Congressional staffers or members of Congress exclusively on behalf of large employers. Macey testified that ERIC's general purpose is to represent the views of major employers in the public policy arena regarding employee benefits and compensation. **Exhibit C**, pp. 244-246. Lobbyists are analogous to the "consultants" in *Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins. Co.*, 2011 U.S. Dist. LEXIS 111668, 13-14 (E.D. Mich. Sept. 29, 2011), in that expert witnesses in the business of direct lobbying, may have a motive to slant their testimony in favor of their customers and to promote the continuation of their business. See **Exhibit C**, pp. 336-341.

[3] Macey's declaration was submitted by CNH *in 2006* in support of the now rejected proposition that the retiree healthcare benefits were not vested, lifetime benefits, pp. 58, 60, 258-260. He was never qualified as an expert by the Court. Plaintiffs objected to his 2006 Declaration as inadmissible and unreliable. See, R. 278, pp. 19-24.

*Martin Corp.*, 2014 U.S. Dist. LEXIS 39408 (S.D. Ohio Mar. 25, 2014).

Macey's declaration reads like a legal brief and is sprinkled with argument that is not properly the subject of expert opinion. He frequently references temporal limitations on the Current Plan that are at odds with this Court and the Sixth Circuit's determination that the benefits are vested for life. He also adopts CNH's argument regarding the "Cost of Healthcare Coverage" letter. He obviously does not understand that the latter, in fact, does not support his argument that the UAW accepts that its retirees would someday pay premiums. Cf. p. 16, paragraph 8 and **Exhibits K**, Atwood Declaration, ¶¶51-52.

Macey also newly introduces an argument regarding the "National and State Health Insurance Initiatives" Letter of Understanding which did not previously appear in his report. Macey's statements contradict CNH's responses to discovery, which admit that Part D Medicare benefits are not "integrated" by the Proposed Plan, which is a requirement under the Letter of Understanding. **Exhibit L**. See also R. 425, pp. 13-16.

CNH improperly uses Macey as an *uber* Lawyer, providing additional advocacy under the guise of an "expert" witness. *Mitroff v. Xomox Corp.* 797 F.3d 271 (6th Cir. 1986) (testimony that tells the fact-finder what result to reach is not appropriate and not helpful to the Court). Expert opinion is not to be used to provide a slant on the facts in the record. In *Fisher v. Ciba Specialty Chemicals*

17

*Corp.,* 238 F.R.D. 273 (S.D. Ala. 2006) (cited with approval in *Yancey v. Carson,* 2007 U.S. Dist. LEXIS 78289 (E.D. Tenn. 2007), the Court observed "that the expert's report 'reads like the fact section of a brief, not the report of any expert witness,' and that 'the vast majority of [the] report simply summarizes and states [the expert's] advocacy based interpretation' of the record." See also *Daugherty v. Graves,* 2013 U.S. Dist. LEXIS 17614 (E.D. Tenn. 2013) (finding portions of expert report inadmissible). Declarations which are not a reflection of fact but rather an argumentative interpretation of facts should be struck. *Briggs v. Potter,* 463 F.3d 507, 512 (6th Cir. 2006).

Under FRE 702, CNH must demonstrate that its expert's opinions are based upon "sufficient facts and data." Macey was unable to identify the sources of his opinions beyond his own "experience talking to people" and the selective review of a few studies. In short, there are no facts or data that Macey relied upon, which is woefully insufficient under FRE 702(b). See also *Auto Indus. Supplier ESOP* at 456.

Additionally, Macey's opinions are not based upon any scientific, technical or other specialized knowledge, are not the product of reliable principles and methods, and he has not reliably applied principle or method to actual facts. Macey references GAO studies, a Kaiser Family Foundation study, a 2005 presentation by the American Academy of Actuaries, and his own "experience and personal

18

knowledge" about the intentions of companies, ¶2. The breadth of his conclusions[4] based on this limited foundation is staggering, particularly in light of his frequent errors and reliance upon hearsay.[5] Macey deduces from his review of two studies and Towers Watson data (hearsay) that cost-sharing will not reduce the Plaintiffs' quality of care or plan usage, ¶¶37-40. His analysis is suspect, because he cites selectively, avoiding the contradictory support in those same studies. **Exhibit I**, Daniels Rebuttal Report.

Macey's reliance upon statistical studies is selective and unreliable on the issue of comparisons to other companies as well. Cf. Macey, ¶¶59-62 to **Exhibit E**, Lynne Rebuttal Report, ¶1, 19. The Towers Watson benchmarking study is particularly troubling in that Stahl, and therefore Macey who relied upon Stahl's hearsay, **limited the study to avoid benchmarking against companies that are**

---

[4] For example, Macey postulates that "technological advances in health care generally increase rather than decrease costs." This oversimplification is not supported by any evidence and does not account for the fact that many advances in medicine reduce costs: prescription drugs, for example, replace surgical treatment options. **Exhibit E**, Lynne Rebuttal Report, ¶7.

[5] Macey relies upon Towers Watson for all information regarding projected premium amounts, p. 15, footnote 3, all the information regarding his claims about "advances in medical care" (particularly the claim that the prescription drug and procedure codes inform the question of whether advances in medicine have been a plan cost-driver), p. 19, ¶¶32, 33, 40. None of this information is based upon his personal knowledge. Macey also relies upon hearsay for the "usage" data, which ultimately does not even support his conclusion. **Exhibit E**, Lynne Rebuttal Report, ¶10. Macey significantly modified this portion of his report, presumably in response to obvious flaws addressed in his deposition and the rebuttal reports.

19

***unionized* and whose benefits stem from a *collective bargaining agreement*, and to avoid *retiree* benefits**. **Exhibit B**, Stahl Dep., pp. 211-212, 223-224.

Macey's statements cannot meet the rigors of *Daubert* and should be excluded. Macey's "opinions" are also irrelevant to whether or how vested, lifetime benefits can be changed in the context of a collectively bargained vested benefits and should be excluded under FRE 702 and FRE 401.

*B. Stahl*

Stahl likewise has never been qualified as an expert by any Court, **Exhibit B**, Stahl Dep., pp. 75-76. One of his primary clients is CNH in his job as an actuary. **Exhibit B**, Stahl Dep., pp. 14, 80-86 (customer satisfaction of large client a substantial factor in Stahl's variable pay). See discussion of bias, above.

Stahl does not base his opinions upon reliable principles or methods.

As stated above, Stahl relied upon the work of others, incorporating it into a report. Stahl has done insufficient intellectual analysis or review of the underlying source documents to qualify him as an expert under FRE702. See *Auto Indus. Supplier ESOP* at 71-72.

Stahl's comparison to the 2005 GBP avoided analysis of any of the mitigating tradeoffs that that group received, e.g. RMSAs, increased pension, supplemental payments. Stahl Dep., pp. 139-141. See **Exhibit E**, Lynne Rebuttal Report, ¶19.

20

Stahl's benchmarking study is flawed beyond redemption. First, CNH consciously *avoided reviewing unionized employers with collectively bargained plans*. Despite the existence of a *separate database* available to Stahl that compiled the same data points for bargained plans, Stahl *actively avoided* looking at it. **Exhibit B**, pp. 211-212, 224.   Second, the database contained only plans provided to active employees of large employers and only for 2011, 2012 and 2013. Stahl deliberately excluded the *retiree database. Id.,* p. 223-224. Stahl also deliberately *excluded comparisons to plans that provide retiree medical benefits*,[6] excluded out-of-network and non-network plan elements comparisons, excluded any comparison of prescription drug benefits and limited his analysis to the portions of the plan that applied to pre-Medicare participants who will not be forced into the non-network plan.   *Id.,* pp. 133-134, 148, 205, 207-208, 217. CNH's comparison was selectively limited to *four benefit provisions*. CNH did not compare the largest cost shifters of its Proposed Plan: premium sharing and the elimination of prescription drug benefits, *Id.,* pp. 208- 209. **Exhibit E**, Lynne Rebuttal Report, ¶22-24. The grotesquely selective "study" is devoid of meaning relevant to this case and should be rejected in its entirety.

---

[6] Stahl testified that so many employers do not provide benefits that the comparison to other retiree benefits would not be the "best" to use. He ignores that CNH does and must provide the benefits, and therefore, it would be important to compare the benefits to an employer that was similarly obligated. **Exhibit B**, Stahl Dep., p. 148, 217.

CNH belatedly relies upon Stahl in support of its argument that Plaintiffs' use of benefits demonstrates that "medical developments are cost drivers," and in turn the Proposed Plan is "reasonable in light of continuing changes in the cost and delivery of healthcare."

Stahl, whose declaration CNH relies upon for its conclusion, see ¶6, testified that he did not do any studies to determine what drugs existed in 1998 in brand name form as opposed to generic form. He did not do any of the analysis underlying his opinion and essentially relied, blindly, upon information provided to him. Stahl did not know if any of the listed drugs were on the market before 2005 when the contract expired. He did not know how long a drug patent lasts, and no knowledge of generic versions of previously brand name drugs, etc. **Exhibit B**, Stahl Dep., pp. 231-234. See also **Exhibit C**, Macey Dep., pp. 363-364.

CNH also relied upon a "similar analysis for medical procedure codes" – a fully debunked theory previously relied upon by CNH. Again, Stahl relied upon hearsay and the analysis of an unnamed person to conclude that certain medical codes did not exist in 1998. Stahl conceded that the sole basis for his determination that a medical procedure did not exist was whether a code existed for it. **Exhibit B**, Stahl Dep., pp. 58-62, 226. He did not know where the code information could be found in the raw data, did not try to match a particular code with a particular procedure, does not know what the codes are used for, does not know how new

codes are generated, who develops and publishes them, how they are changed, etc. **Exhibit B**, p. 227-230.

Plaintiffs' rebuttal expert witness, Wilsetta McClain, Ph.D., RMA, NCPT concluded that the comparison of procedure codes does not support or substantiate a conclusion regarding whether certain medical procedures were used or existed in 2008. She surveyed a number of examples, including the code for chemotherapy, which has been revised to "unbundle" the administration, the intravenous infusion, and the first fifteen minutes and up to the first hour of infusion. A new code was adopted for the initial process and then additional codes for each additional hour of chemotherapy. This unbundling created two new codes for a procedure that existed in 1998. **Exhibit J**, Expert Report of Wilsetta L. McClain and **Exhibit E**, Lynne Rebuttal Report, ¶7, 20. After Plaintiffs provided the McClain report to CNH, its "code argument" virtually disappeared.

Stahl's Declaration is so flawed as to be unhelpful and inadmissible under Fed. R. Civ. Pr. 702 and irrelevant under Fed. R. Civ. Pr. 401.

## CONCLUSION

The declarations expand into new, untimely, opinions developed after their depositions in violation of Fed. R. Civ. Pr. 16. They are inconsistent with deposition testimony, are not based upon personal knowledge, and do not meet the standards for admission of FRE 602 and 702, thereby violating Fed. R. Civ. Pr.

56(c)(4). They do not relate to scientific, technical or other specialized knowledge that will assist a trier of fact to understand the evidence in this case. The testimony is not based upon sufficient facts or data, is not the product of reliable principles and methods under FRE 702 and is not relevant under Fed. FRE 401, again violating Fed. R. Civ. Pr. 56 (c)(4). Plaintiffs respectfully request that this Court strike CNH's Expert Declarations based upon the flaws that permeate them.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By:  /s/Darcie R. Brault
Darcie R. Brault (P43864)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
(248) 354-9650
dbrault@michworklaw.com

Dated: May 21, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2014 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system.

Respectfully Submitted,

McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C.

By: /s/Darcie R. Brault
Darcie R. Brault (P43864)
Attorneys for Class Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
(248) 354-9650
dbrault@michworklaw.com