UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JACK REESE, FRANCES ELAINE PIDDE, JAMES CICHANOFSKY, ROGER MILLER, and GEORGE NOWLIN, <br><br> Plaintiffs, <br><br> v. <br><br> CNH INDUSTRIAL N.V. and CNH INDUSTRIAL AMERICA LLC, <br><br> Defendants. | Case 2:04-cv-70592-PJD-PJK <br><br> Hon. Patrick J. Duggan, U.S.D.J. <br><br> Hon. Paul J. Komives, U.S. Mag. J. |

**CNH'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Norman C. Ankers (P30533)
(nankers@honigman.com)
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
313.465.7306
313.465.7307 fax

Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
Laura J. Capotosto
(lcapotosto@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8000
202.756.8087 fax

*Attorneys for CNH Industrial N.V. and CNH Industrial America LLC*

# INTRODUCTION

Three things are clear on the undisputed record before the Court. *First*, CNH's proposed health benefit plan for Plaintiffs satisfies the three-factor standard set forth in *Reese v. CNH America LLC*, 574 F.3d 315 (6th Cir. 2009) (*Reese I*), and confirmed in *Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012) (*Reese II*). *Second*, Plaintiffs' overlarge response brief makes few new points and consists in large part of disagreement with *Reese I* and *II* coupled with rehashing arguments made in their summary judgment motion.[1] *Third*, CNH is entitled to summary judgment and approval of the proposed plan.[2]

## I.  CNH'S PROPOSED PLAN IS REASONABLY COMMENSURATE WITH PLAINTIFFS' CURRENT PLAN.

CNH's proposed plan retains the current plan's network-based model but requires participants to take advantage of subsidized government-benefit plans, such as Medicare Part D, and shifts reasonable costs to participants (and the

---

[1] Accordingly, CNH has focused its reply brief on Plaintiffs' points that are material, documented, and relevant.

[2] Although criticizing CNH's use of experts, Plaintiffs also rely on experts in their summary judgment briefing. *See, e.g.*, 10A Charles Alan Wright et al., *Federal Practice and Procedure Civil* § 2722, at 378–79 (3d ed. 1998). Like CNH's experts, Plaintiffs' experts relied on hearsay. Fed. R. Evid. 703. CNH will further respond to Plaintiffs' arguments when opposing their motion to strike.

government) (R. 423, CNH's Mot. 16–17, 18–19.)[3] Reasonable cost shifting is appropriate under *Reese I*, *Reese II*, and *Tackett v. M&G Polymers USA, LLC*, 733 F.3d 589, 600–01 (6th Cir. 2013); (*see also* R. 426, CNH's Opp'n 6–8.)[4] Even Plaintiffs' experts agree the proposed plan does not reduce the quality of Plaintiffs' care. (R. 423, CNH's Mot. 17–18.)[5]

Plaintiffs complain about paying more for their health benefits than they do currently. (R. 425, Pls.' Opp'n 22–28.) Plaintiffs' concern over the proposed plan's cost increases is overblown. (R. 426, CNH's Opp'n 9–13.) Indeed, the total average out-of-pocket monthly cost (including premiums) for the plaintiff class in 2014 would be $195 for Medicare-eligible participants and $201 for participants not yet eligible for Medicare. (*Id.* at 9.) Eighteen years later, in 2032, the projections are $584.75 and $1,801.25, respectively, but virtually no one will be

---

[3] Plaintiffs complain about the proposed plan's movement of Medicare-eligible participants into a non-network plan (R. 425, Pls.' Opp'n 11), but the increased choices of providers is a *benefit* to those participants under *Reese*, 574 F.3d at 325. Further, John Stahl incorporated the costs (if any) associated with this change into cost projections, which are reasonable. (R. 426, CNH's Opp'n 9–10.)

[4] Contrary to Plaintiffs' claim (R. 425, Pls.' Opp'n 26–27 & n.16), *Reese I* and *II* and *Tackett* are binding on this Court until overruled by the Sixth Circuit en banc. *See Salmi v. Sec'y of HHS*, 774 F.2d 685, 689 (6th Cir. 1985).

[5] Contrary to their argument (R. 425, Pls.' Opp'n 25), Plaintiffs and their expert concede that the quality of care under the current and proposed plans is *identical*, and multiple studies and data from the post-April 2005 CNH retirees demonstrate that patient outcomes are not likely to be materially affected by CNH's proposal. (R. 423, CNH's Mot. 17; R. 426, CNH's Opp'n 13–14.)

ineligible for Medicare then. (*Id.* at 9–10.)[6] These costs are akin to those approved in *Tackett*, 733 F.3d at 600–01, and were foreshadowed in this case: "Retirees, quite understandably, do not want lifetime eligibility for the medical-insurance plan in place on the day of retirement, even if that means they would pay no premiums for it," *Reese II*, 694 F.3d at 683–84.

Plaintiffs' complaints about Medicare Part D also fail. (R. 426, CNH's Opp'n 7–8 & n.4.) Their current plan expressly contemplated the utilization of a program such as Part D if enacted. (R. 273 Ex. A Ex. 50, 1998 GBP 78.)[7] Indeed,

---

[6] Plaintiffs claim the proposed plan is unaffordable by focusing on the percentage rate of premium increase but ignoring the actual dollars. (R. 425, Pls.' Opp'n 10, 18, 32.) In 2022, the monthly premiums are projected to be $47.67 for over 90 percent of the class eligible for Medicare and $559.50 for the remaining 10 percent. (R. 423 Ex. B Ex. 6, Towers Projs. 1.) In 2032, virtually the entire class will be Medicare-eligible and have monthly premiums of $131.50. (*Id.* at 2.) CNH's experts did *not* testify otherwise, as Plaintiffs contend (R. 425, Pls.' Opp'n 10, 32). Mr. Macey testified that the benefits "*could*" become unaffordable for Plaintiffs (Ex. F, Macey Dep. 390:8–22 (emphasis added)), but he also said that they could become unaffordable for CNH (*id.* at 391:14–20). Mr. Macey also stated that each individual participant had a point beyond which the plan becomes unaffordable, but that he did know what that was. (*Id.* at 395:24–396:8.)

If the proposed plan proves unaffordable for a participant, the exchanges provided by the Affordable Care Act provide high-quality options. (R. 423, CNH's Mot. Stmt. Undisputed Material Facts (SUMF) ¶ 13.) That is not the situation discussed in the *Daily Beast* by Amy Gordon (R. 425, Pls.' Opp'n 32 n.19), which is the dumping of high-risk participants into the exchanges.

[7] Relying on precedent disallowing new arguments in reply briefs, Plaintiffs claim that CNH waived its right to integrate Part D into the plan. (R. 425, Pls.' Opp'n 8 n.6.) Contractual rights are not waived when not used immediately. *See Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 253

(continued . . .)

3

the Sixth Circuit approved the integration of Part D into the 1998 plan, which will occur next year. *See* 694 F.3d at 684. By authorizing further changes, *Reese* permits CNH to go further and replace company coverage with Part D.

## II. CNH'S PROPOSED BENEFITS ARE REASONABLE IN LIGHT OF CHANGES TO HEALTHCARE.

The proposed plan's cost shifting is a reasonable response to the improvements Plaintiffs have received for *free* in the ten years since the current plan expired in 2004, as well as the improvements they will receive in the future. (R. 423, CNH's Mot. 18–21.) Plaintiffs argue that the proposed plan does not improve their benefits and that CNH assumed the risk of medical inflation. (R. 425, Pls.' Opp'n 29–31.)[8]

The essence of *Reese I* and *II*, however, is not whether Plaintiffs should pay for new benefits; it is the degree to which Plaintiffs should share in the costs of a

---

(Mich. 2003) (silence is not waiver). If anything has been waived in this case, it is Plaintiffs' opportunity to submit argument and expert reports against the proposed plan, since they "misread[]" the ruling in *Reese I*.

[8] CNH used the costs for medical codes and prescription drugs introduced since 1998 to buttress the Sixth Circuit's observation that health benefits are constantly improving and increasing in cost. *Reese I*, 574 F.3d at 326; (R. 423, CNH's Mot. SUMF ¶ 11(C)). Plaintiffs provide no evidence to dispute CNH's evidence about the class's use of prescription drugs. (R. 425, Pls.' Opp'n 13–14.) Their effort to rebut CNH's reliance on medical codes (*id.* at 14–15) does not refute the substantial literature showing that medical developments drive medical costs upward. (R. 423 Ex. C, Macy Decl. ¶¶ 30–33.)

4

plan that naturally evolves and "includ[es] access to new medical procedures and prescriptions." *Reese II*, 649 F.3d at 685. The proposed plan shifts some (but not all) costs of the improving benefits to Plaintiffs and the federal government. Under *Tackett* 733 F.3d at 600–01, this shifting is reasonable.

When the parties eliminated the "cap letter" in 1998, they replaced it with the "Cost of Healthcare Coverage" letter, which the Sixth Circuit held allowed cost sharing when the 1998 CBA expired in 2004. *Reese I*, 574 F.3d at 325.[9]

### III. CNH'S PROPOSED BENEFITS ARE ROUGHLY CONSISTENT WITH OTHERS IN THE MARKETPLACE.

Most fundamentally, the proposed plan provides the *same* health benefits that CNH and the UAW agreed were reasonable in 2005. It also provides Plaintiffs with health benefits that are competitive with (if not better than) those available in the marketplace. (R. 423, CNH's Mot. 21–25.) Plaintiffs do not claim that CNH's comparisons rely on inaccurate data.

Instead, Plaintiffs attempt to focus on other evidence that is irrelevant to the comparison between the proposed plan and other health plans. (R. 425, Pls.' Opp'n 15, 31–39).[10]

---

[9] Plaintiffs obtained a ruling from this Court that the cap letters were *not* substantive limits on their benefits. (R. 419, Pls.' Mot. 4 n.3.) They are judicially estopped from claiming otherwise now. *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217–18 (6th Cir. 1990) (describing judicial estoppel).

Next, Plaintiffs attempt to undermine Scott Macey's credibility. They neglect that their own experts admitted several times that Mr. Macey got *no facts wrong*. (Ex. G, Lynne Dep. 152:14–153:1, 156:21–157:3, 158:21–159:10, 165:20–166:1, 176:5–177:13.) Plaintiffs submit inadmissible evidence that Mr. Macey did not consider,[11] but this evidence does not refute Mr. Macey's conclusion: companies are enacting changes identical to or more aggressive than those proposed here.[12]

Plaintiffs' arguments on CNH's statistical comparisons miss their mark. Plaintiffs cannot deny that the government data on which Mr. Macey relied contained unionized plans and retiree coverage. (R. 423, CNH's Mot. SUMF ¶¶ 8,

---

[10] For example, Plaintiffs' assertion that the *Yolton* settlement is a good comparator disregards all the ways the Sixth Circuit distinguished *Yolton*. *Reese I*, 574 F.3d at 323–24, 327.

[11] Plaintiffs rely on testimony that should be excluded because the declarants—James Hecker, Wes Hogsett, and Daniel Sherrick—were not identified during discovery. (Ex. H, Pls.' Resp. 3d Set Interrs. 2; *see also* R. 426, CNH's Opp'n 15.) Mr. Hogsett's testimony on the 1991 and 1998 Caterpillar negotiations is also inadmissible hearsay because he states no personal knowledge of them.

[12] For example, Plaintiffs propose a comparison to Caterpillar's plan for pre-1991 retirees. (R. 426, Pls.' Opp'n 33–34.) The Sixth Circuit asked what companies are doing *now*, not what they did years ago.

Plaintiffs contend that "the auto companies were in dire financial straits and eventually, Chrysler and General Motors sought bankruptcy protection." (R. 425, Pls.' Opp'n 35.) But the cost-shifting measures adopted by GM and Ford were agreed to prior to any bankruptcy filing or transfer of funds to a VEBA. (R. 423 Ex. C, Macey Decl. ¶ 21; Ex. G, Lynne Dep. 178:3–181:12.) Likewise, although Plaintiffs assert otherwise, the changes at Goodyear and U.S. Steel were agreed to by the union. (R. 423 Ex. C, Macey Decl. ¶¶ 18–19.)

6

12(D).) Mr. Stahl explained that he used a 900-employer database of plans for active and salaried employees because it was a larger dataset and the variation in retiree coverage would have made comparisons difficult. (Ex. I, Stahl Dep. 148:4–22, 211:6–212:25.) Finally, Plaintiffs do not dispute that the proposed plan provides better benefits than the plans of federal employees and Medicare. (*Id.* ¶ 12(E).) In short, the proposed plan provides better coverage for Plaintiffs than the overwhelming majority of retired Americans receive. Their protests of financial burden are highly exaggerated.

## CONCLUSION

For the foregoing reasons, as well as those in CNH's previous summary judgment papers, CNH urges the Court to enter summary judgment in its favor.

Dated: May 23, 2014

Respectfully submitted,

s/Joshua David Rogaczewski

| | |
|---|---|
| Norman C. Ankers (P30533) | Bobby R. Burchfield |
| (nankers@honigman.com) | (bburchfield@mwe.com) |
| Honigman Miller Schwartz and Cohn LLP | Joshua David Rogaczewski |
| | (jrogaczewski@mwe.com) |
| 2290 First National Building | Laura J. Capotosto |
| 660 Woodward Avenue | (lcapotosto@mwe.com) |
| Detroit, Michigan 48226 | McDermott Will & Emery LLP |
| 313.465.7306 | The McDermott Building |
| 313.465.7307 fax | 500 North Capitol Street, Northwest |
| | Washington, D.C. 20001 |
| | 202.756.8000 |
| | 202.756.8087 fax |

*Attorneys for CNH Industrial N.V. and CNH Industrial America LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2014, I electronically filed the foregoing **CNH's Reply Brief in Support of Its Motion for Summary Judgment** with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

                                              s/Joshua David Rogaczewski
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8195
202.591.2757 fax