# EXHIBIT I

JOHN F. STAHL
January 14, 2014

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF MICHIGAN
 3                   SOUTHERN DIVISION
 4    JACK REESE, JAMES              )
 5    CICHANOFSKY, ROGER             )
 6    MILLER and GEORGE NOWLIN       )
 7    on behalf of themselves        )
 8    and a similarly situated       )
 9    class,                         )
10              Plaintiffs,          )
11        vs.                        ) Case No. 04-70592
12    CNH GLOBAL N.V.,               )
13    formerly known as Case         )
14    Corporation and CNH            )
15    AMERICA LLC,                   )
16              Defendants.          )
17
18         The discovery deposition of JOHN F. STAHL,
19    taken in the above-entitled cause, before
20    Deanna Amore, a notary public of DuPage County,
21    Illinois, on January 14, 2014, commencing at the
22    time of 9:04 a.m. at 227 West Monroe Street,
23    Chicago, Illinois, pursuant to notice.
24    Reported by:  Deanna Amore, CSR, RPR
25    License No. 084-003999
```



JOHN F. STAHL
January 14, 2014

Page 147

1   Q.   And so one of the things that you said in
2   your opinions was that the medical plan provisions
3   of the proposed pre-65 plan compare favorably to
4   plan designs reflected in survey data, and it goes
5   on.
6        Did you compare the proposed plan to plans
7   with EGWPs for post-65 prescription drug coverage?
8   A.   I did not.
9   Q.   Why not?
10  A.   We don't have -- the databases that we
11  have for retiree medical plans do not, I don't
12  believe, indicate whether they have EGWP or not as
13  part of the design.
14  Q.   So several hundred or so employers, you
15  can't tell, but you don't think any of them have
16  EGWP?
17  A.   I don't know how many may or may not have
18  EGWPs.  It's not possible to determine from the
19  data.
20  Q.   So the data is somewhat limited in terms
21  of making comparisons?
22       MS. CAPOTOSTO:  Object to form.
23       THE WITNESS:  It is limited for retiree plans.
24  The data -- you notice when you look at the data,
25  many plans have no plan whatsoever listed.  So it's



JOHN F. STAHL
January 14, 2014

Page 148

1   much more difficult to draw conclusions from the
2   data that's there for the retirees.
3   BY MS. BRAULT:
4       Q.   So that, indeed, limits your opinion in
5   two.  Your comparison is to mostly active
6   employees, right?
7       A.   The comparison of benefits?
8       Q.   Yes.
9       A.   Entirely active employees.
10      Q.   So it's not to retirees on any level?
11      A.   That's correct.
12      Q.   Okay.  Did you try to do any kind of
13  comparison to retiree plans?
14      A.   It would have been, A, difficult to do
15  because of the way the data is, but also the
16  comparison, the database would show a significant
17  proportion of employers don't provide any retiree
18  medical benefits.  So that would, right off the
19  bat, make the plan, any comparison of any plan that
20  provides benefits look better right off the bat.
21  So it didn't seem to be necessarily the best
22  comparison to use.
23      Q.   Do you know of any benefit that the
24  retirees would receive from -- that switched from
25  the current plan to the proposed plan?



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

JOHN F. STAHL
January 14, 2014

Page 149

```
 1         MS. CAPOTOSTO:  Object to form.
 2         THE WITNESS:  When you say benefit --
 3    BY MS. BRAULT:
 4         Q.   Is there anything about the plan that
 5    would be a benefit for them?
 6         A.   An improvement in benefits?
 7         Q.   An improvement in their benefits or
 8    financial situation or in any way benefit them.
 9         MS. CAPOTOSTO:  Object to form.
10         THE WITNESS:  I'm not aware of any.
11    BY MS. BRAULT:
12         Q.   It's true that there is no good thing
13    that's in the proposed plan --
14         MS. CAPOTOSTO:  Object to form.
15    BY MS. BRAULT:
16         Q.   -- that's not in the current plan?
17         MS. CAPOTOSTO:  Object to form.
18         THE WITNESS:  When you say "there is no good
19    thing" that -- it's a subjective determination
20    whether it's a good thing.  That would be -- the
21    way I interpret that is there is nothing good about
22    the new plan.  I don't know that I believe that is
23    the case.
24    BY MS. BRAULT:
25         Q.   Well, they are already covered by the
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

JOHN F. STAHL
January 14, 2014

Page 210

```
 1      Q.   And there wasn't any particular logic to
 2   the years 2011 to 2013?
 3      A.   That's just what happens to be populating
 4   the database right now.  It wasn't a conscious
 5   decision to exclude any data.  The totality of the
 6   data that's in there is from those years.
 7      Q.   What is this database typically used for
 8   in non-litigation practice?
 9      A.   Many times when an employer looks at their
10   cost from year to year, they look at their plan
11   provisions to see if they are in line with what
12   other companies are doing.
13      Q.   So this is really designed to assist
14   employers in making plan design choices
15   prospectively?
16      A.   Correct.
17      Q.   You only need the last few years because
18   you are looking at what's in line with what's going
19   to be done in the future, not necessarily what's in
20   line with what's been done in the past?
21      A.   Right.
22           The idea is to have something that helps
23   project -- make a reasonable anticipation of what
24   will happen next year is what they are mostly used
25   for.
```



JOHN F. STAHL
January 14, 2014

Page 211

```
 1        Q.   Now, did you exclude any part of the
 2   employer groups by industry?  In other words, did
 3   you make any attempt to select employers that were
 4   within the same type of industry as CNH?
 5        A.   No, we didn't.
 6        Q.   Did you make any attempt to distinguish
 7   between plans that covered salaried versus hourly
 8   employees?
 9        A.   Virtually, all the data -- virtually, all
10   the companies would be covering salaried employees.
11   We have a limited number of data as it would apply
12   to bargained plans.
13        Q.   Limited data -- so you didn't then --
14   obviously, you didn't go through because there is a
15   difference between hourly and bargained hourly,
16   correct?
17        A.   That's correct.  I don't know, to the
18   extent -- to what extent these plans might be
19   covering non-bargained hourly employees or
20   salaried.
21        Q.   What about bargaining hourly?
22        A.   Generally speaking, these plans would not
23   be covering bargained hourly plans in the
24   comparison set.
25        Q.   And you are saying that because of your
```



JOHN F. STAHL
January 14, 2014

Page 212

```
 1    familiarity with the group or because there is
 2    actually a data point that you can look at and say
 3    this number percentage is bargaining and this
 4    number isn't?
 5         A.    There is no data element on there that
 6    says bargain versus non-bargain that I can see.
 7    I believe we have a separate database that has
 8    not -- has bargained plans in it.  It's would be a
 9    much smaller and less well-populated database.
10         Q.    Do you know how many employers are in that
11    separate database?
12         A.    I don't know off the top of my head.
13         Q.    What would you guess?  Is it half the size
14    of this one?
15         A.    I guess it's even much less than that.
16         Q.    25 percent?
17         A.    If I had to guess, probably that amount or
18    lower.
19         Q.    So if it's like 900 in this one, 700, I
20    think I saw, 900, it says nearly 900 companies.  So
21    25 percent of that is?
22         A.    225.
23         Q.    Thank you.
24         A.    I don't know the exact number.  I just
25    know it's not as big of a data set.
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

JOHN F. STAHL
January 14, 2014

Page 213

```
1      Q.   Would it be fair to say that the benefits,
2   particularly health care benefits, that are
3   bargained for by a collective bargaining process
4   are generally richer benefits than those that are
5   not bargained for by a collective bargaining
6   process?
7        MS. CAPOTOSTO:  Object to form.
8        THE WITNESS:  I don't know that that's true.
9   Sometimes -- it just depends on the industry.  I've
10  seen some industries where the bargained benefits
11  are exactly the same as salaried or not as good.
12  It depends on the bargaining position of the union
13  and the industry.
14  BY MS. BRAULT:
15     Q.   And a lot of what happens in bargaining is
16  that they bargain over provisions, right?
17       MS. CAPOTOSTO:  Object to form.
18  BY MS. BRAULT:
19     Q.   Including health care provisions?
20     A.   Yes.
21     Q.   Have you been called upon to assist
22  clients while they are in bargaining to talk about
23  cost of the plans -- I'm sorry, not cost of plans
24  but cost of plan design elements or even plans,
25  I guess, altogether?
```



JOHN F. STAHL
January 14, 2014

Page 253

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF MICHIGAN
 3                    SOUTHERN DIVISION
 4   JACK REESE, JAMES            )
     CICHANOFSKY, ROGER           )
 5   MILLER and GEORGE NOWLIN     )
     on behalf of themselves      )
 6   and a similarly situated     )
     class,                       )
 7              Plaintiffs,       )
          vs.                     )  Case No. 04-70592
 8   CNH GLOBAL N.V.,             )
     formerly known as Case       )
 9   Corporation and CNH          )
     AMERICA LLC,                 )
10              Defendants.       )
11      This is to certify that I have read the
12   transcript of my deposition taken in the
13   above-entitled cause by Deanna Amore, Certified
14   Shorthand Reporter, on January 14, 2014, and that
15   the foregoing transcript accurately states the
16   questions asked and the answers given by me as they
17   now appear.
18                              JOHN F. STAHL
19   SUBSCRIBED AND SWORN TO
20   before me this  21st  day
21   of   February      2014.
22   
23       Notary Public
24
25
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

JOHN F. STAHL
January 14, 2014

JOHN F. STAHL
January 14, 2014

Page 254

```
 1    STATE OF ILLINOIS    )
 2                         ) SS:
 3    COUNTY OF DU PAGE    )
 4         I, Deanna Amore, a notary public within and for
 5    the County of DuPage County and State of Illinois,
 6    do hereby certify that heretofore, to-wit, on
 7    January 14, 2014, personally appeared before me, at
 8    227 West Monroe Street, Chicago, Illinois, JOHN F.
 9    STAHL, in a cause now pending and undetermined in
10    the United States District Court, Eastern District
11    of Michigan, Southern Division, wherein JACK REESE,
12    JAMES CICHANOFSKY, ROGER MILLER and GEORGE NOWLIN
13    on behalf of themselves and a similarly situated
14    class are the Plaintiffs, and CNH Global N.V.,
15    formerly known as Case Corporation and CNH AMERICA
16    LLC are the Defendants.
17         I further certify that the said witness was
18    first duly sworn to testify the truth, the whole
19    truth and nothing but the truth in the cause
20    aforesaid; that the testimony then given by said
21    witness was reported stenographically by me in the
22    presence of the said witness, and afterwards
23    reduced to typewriting by Computer-Aided
24    Transcription, and the foregoing is a true and
25    correct transcript of the testimony so given by
```


BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

```
 1   said witness as aforesaid.
 2       I further certify that the signature to the
 3   foregoing deposition was reserved by counsel for
 4   the respective parties.
 5       I further certify that the taking of this
 6   deposition was pursuant to Notice, and that there
 7   were present at the deposition the attorneys
 8   hereinbefore mentioned.
 9       I further certify that I am not counsel for nor
10   in any way related to the parties to this suit, nor
11   am I in any way interested in the outcome thereof.
12       IN TESTIMONY WHEREOF:  I have hereunto set my
13   hand and affixed my notarial seal this 19th day of
14   January, 2014.
15
16
17
18
19              Denna Amore
                _____
20              NOTARY PUBLIC, DUPAGE COUNTY, ILLINOIS
21
22
23
24
25
                                                     255
```



**TOWERS WATSON**

Ms. Melissa Farah
February 21, 2014

| Page | Line | Correction |
|------|------|------------|
| 44 | 10 | Delete "locally" |
| 45 | 15 | "per" should be "for" |
| 45 | 20 | "to a" should be "down" |
| 45 | 20 | Delete "dot" |
| 45 | 25 | "assumed — not even quite" should be "assumed to have died – not even quite" |
| 48 | 25 | "— referred to as a contract" should be "two-party contract" |
| 49 | 1 | "means a" should be "a two-party" |
| 49 | 1 | "this" should be "that" |
| 50 | 5 | "and" should be "since" |
| 50 | 10 | "is" should be "are" |
| 50 | 20 | "a number of, hundred" should be "a number of one hundred" |
| 50 | 20 | Delete "by me" |
| 60 | 24 | "is" should be "are" |
| 63 | 16 | "continuous" should be "continuance" |
| 63 | 20 | "there" should be "it" |
| 64 | 12 | "individual" should be "individual did" |
| 65 | 17 | "of" should be "and" |
| 66 | 4 | "—" should be "surveys" |
| 66 | 12 | "out" should be "on" |
| 68 | 23 | "PPO" should be "PPO plans" |
| 77 | 3 | "Either" should be "we had a" |
| 77 | 21 | "so they" should be "But they have" |
| 77 | 25 | "education" should be "continuing education" |
| 82 | 9 | "Don Pooley" should be "Tom Coogan" |
| 82 | 14 | "in the" should be "and" |
| 89 | 13-14 | "to provide" should be "provided to" |
| 89 | 15 | "are" should be "is" |
| 89 | 19 | "sometimes" should be "as it's sometimes" |
| 92 | 13 | "of" should be "on" |
| 92 | 22 | "planned" should be "plan" |
| 96 | 7 | "path" should be "data" |
| 98 | 3 | "plans" should be "plan" |
| 98 | 4 | "documented" should be "documents" |
| 110 | 2 | "is" should be "are" |


**TOWERS WATSON**

Ms. Melissa Farah
February 21, 2014

| Page | Line | Correction |
|------|------|------------|
| 121 | 23 | "provided" should be "been provided" |
| 145 | 19 | "specialized" should be "specializes" |
| 146 | 2 | "referred to" should be "reviewed" |
| 167 | 16 | "typical, I'm not" should be "typically, it's not" |
| 168 | 2 | "of" should be "for" |
| 169 | 3 | "is" should be "are" |
| 169 | 22 | "won't" should be "will" |
| 182 | 5 | "it's not" should be "they've got" |
| 183 | 15 | "to the group" should be "to, is the group" |
| 185 | 16 | "combatted" should be "valued" |
| 189 | 15 | "that" should be "any" |
| 190 | 17 | "simple" should be "simplified" |
| 191 | 14 | "been" should be "not" |
| 205 | 15 | "Medical" should be "Well" |
| 205 | 17 | "or" should be "for" |
| 212 | 8 | "not" should be "got" |
| 216 | 12 | "company" should be "cap" |
| 216 | 13 | "121" should be "161" |
| 222 | 21 | "part" should be ""Part B" |
| 223 | 16 | "bargain" should be "bargained" |
| 227 | 17 | "filed it and" should be "file with" |
| 228 | 19 | "particularly" should be "specifically" |
| 232 | 1 | "was" should be "was an" |
| 241 | 5 | "what" should be "that" |