UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, JAMES
CICHANOFSKY, ROGER MILLER,
and GEORGE NOWLIN on                                Hon. Patrick J. Duggan
behalf of themselves and
a similarly situated class,                         Case No. 04-70592
    Plaintiffs,
v.                                                  **Class Action**

CNH INDUSTRIAL N.V. and
CNH INDUSTRIAL AMERICA LLC,

    Defendants.
_____/

# PLAINTIFFS' REPLY TO CNH'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

CNH's response to Plaintiffs' Motion for Summary Judgment is filled with straw men,[1] double-talk[2] and fallacy.[3]

---

[1] A straw man argument is an informal fallacy based upon a misrepresentation of an opponent's position. An example of a "straw man" is CNH's contention that Plaintiffs seek re-entry of the order holding their benefits forever inalterable. That is not, in fact, Plaintiffs' position in their Motion for Summary Judgment. Plaintiffs assert that summary judgment must be granted in favor of Plaintiffs because CNH has proposed changes that are not reasonable under the standards set forth in *Reese I* and *Reese II*.

[2] For example, CNH contends that Plaintiffs "approach ... rests on misleading and *erroneous depiction of the undisputed facts*." Pg ID 15511 (emphasis added). This is simply legalese acknowledging that the facts *are* disputed. *Cf.*, R. 419, Pg ID 14061-14063 to R. 426, ID 15521-15524 (dispute regarding the impact of the proposed changes on the quality of care), *cf.* R. 425, Pg ID 14991 to R. 426, Pg ID 15525-15527 (dispute regarding reasonableness in light of changes to healthcare), *cf.* R. 425, Pg ID 14993-15001 to R. 426 Pg ID 15527-15530 (dispute regarding the relevant similarities between comparator groups and what their benefits are). CNH's "undisputed facts" are not facts at all. They are merely a compilation of conclusions based on the inadmissible hearsay, opinion and conjecture from the declarations of Mr. Macey and Mr. Stahl. Moreover, CNH fails to answer the question posed in *Reese II*: How does the new plan compare to plans available to retirees and workers at **companies similar to CNH** and with **demographically similar employees**? At 686. CNH ignores or entirely misrepresents the group plans that are clearly comparable: the Deere plan, the settlement plan in *Yolton v. El Paso*, 2:02-cv-75164 and the pre-1992 (pre-unilaterally imposed cap) Caterpillar retirees. CNH focuses instead on companies that are dissimilar and participants that do not resemble the Class.

[3] CNH's contends the Sixth Circuit "knew" in 2012 the terms of the Proposed Plan –which was not actually proposed until 2013. CNH builds on that false premise to deduce that *if* its Proposed Plan were unreasonable, *then* the Sixth Circuit would have ruled as a matter of law rather than remand the question of reasonableness. See R. 426, Pg ID 15516. This argument is based upon a false cause fallacy and could be stated with equal force in the opposite direction: That if the Proposed Plan were reasonable, the Sixth Circuit would have ruled as a matter of law rather than remand the question of reasonableness. Neither is convincing where the true cause for remand is evident: The question of reasonableness is, in the words of *Reese II*,

**I.  Plaintiffs proposed a standard that accounts for the law, the contract and the intent of the parties.**

Reasonably commensurate unilaterally imposed modifications of vested lifetime retiree healthcare benefits: 1) are consistent with the legal meaning of vesting (*Steel Workers v. Kelsey-Hayes Co.*, 2014 U.S. App. LEXIS 7501 (6th Cir. 2014)); 2) do not breach the contract (*Tackett v. M&G Polymers USA LLC,* 733 F 3d 589 (6th Cir. 2013), *reh'g en banc denied, cert pending)*;[4] and 3) account for the context of collective bargaining by keeping intact the balance of benefits to each party (*Reese I* and *Reese II*).

Nothing in this proposed standard contradicts *Reese v. CNH America LLC*, 574 F.3d 315, 318 (6th Cir. 2009) (*Reese I*) or *Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012) (*Reese II*). *See* 583 F.3d at 956 ("CNH should be allowed to make reasonable modifications to the health-care benefits of retirees, consistent with the way the parties have interpreted and implemented prior CBAs containing similar language"), *Reese I* at 326 (discussion of tradeoffs), etc. See R. 419, Pg ID 14036-14047.

CNH, on the other hand, invites just the kind of amorphous "reasonableness"

---

a "vexing" one, to be decided on the basis of all of the facts applying a series of non-exclusive factors. In other words, the determination is quintessentially a question of fact that cannot be decided in the first instance by the Court of Appeals, but rather by this Court.

[4] In *Tackett*, the CBA promised a "full contribution" for retiree healthcare benefits, at 600. The Court found that this language was sufficient to preclude unilateral modification by M & G under *Reese I* quoted by CNH at page 5 of their Brief ("unless it says otherwise"). The "full contribution" language is virtually indistinguishable from the language promising the retirees "no contributions" will be required of them. CNH fails to address this aspect of *Tackett* and simply reverts to its reliance upon the Sixth Circuit's discussion of the "Cost of Healthcare Coverage" letter and its self-serving Summary Plan Description. See R. 425, Pg ID 14966-14969.

2

determination eschewed by the Sixth Circuit in *Steel Workers*. Extraordinarily, **CNH does not cite to the *Steel Workers* decision or make any attempt to square its position with the Sixth Circuit's holding** (which is remarkably consistent with the standard proposed by Plaintiffs):

> [T]he Reese decisions are not a "significant change" in Sixth Circuit case law, but are entirely consistent with other Sixth Circuit retiree benefits cases insofar as the *Reese* courts simply examined the language of the CBA and the parties' conduct in reaching their conclusions. See *Yard-Man*, 716 F.2d at 1479 (the **plain language of the contract is the first place to look** when discerning the parties' intent); id. at 1479-80 (courts can look to extrinsic evidence to **discern the parties' intent**); see also *Moore*, 690 F.3d at 451 (same); *Cole*, 549 F.3d at 1069-70 (same) (emphasis added).

At 16-17 (emphasis added). See also R. 425, Pg ID 14988-14990.

It is this Court's task to harmonize the Sixth Circuit decisions and to square the result with the valid and binding contract the parties have mutually undertaken to provide for the vested lifetime healthcare benefits to the Class. This task is complicated by several flaws in *Reese I* and *Reese II*. Rather than admit or at least ignore these flaws, CNH unabashedly treats them as truth and attempts to capitalize on the Sixth Circuit's factual errors.[5]

---

[5] For example, In *Reese II* the Sixth Circuit erred in finding that "No one batted an eye when the healthcare plans for which retirees were eligible were modified to account for the creation of Medicare Part D." at 684. CNH is well aware that Medicare Part D had no impact whatsoever on the prescription drug benefits provided to Class Members and that the Current Plan was *never modified* to account for Medicare Part D. The Court got it wrong and then compounded the error to imply that the retirees' failure to object to the nonexistent modifications indicated acquiescence to changes to their vested lifetime benefits. To be clear, the majority in *Reese II* made a factual error in support of its mistaken legal premise

3

The "law of the case" doctrine does not support CNH's position. CNH cites to the musings of Judge Sutton in which he asks *questions* about the meaning of the record, particularly the Cost of Healthcare letter. These ponderings do not "directly address the issue of premiums" and did not make any fact "clear." The questions posed in *Reese II* are not a "mandate," but non-exclusive questions about what modifications might be reasonable. Those musings formed the basis of the decision to remand the matter to this Court to "decide how and in what circumstances CNH may alter such benefits." 574 F.3d at 327. The Sixth Circuit concluded that remand was necessary because of an absent record, 694 F.3d at 685. That record could only be developed on remand and at the trial court. *Zenith Radio Corp., v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562 (1969), *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781 (1982).

Despite CNH's attempts to re-characterize[6] its own actions notwithstanding,

---

that benefits had been unilaterally modified. See Judge Donald's dissent, 694 F.3d at 689-690. The majority did not "voice approval" of a change that "integrated Medicare Part D" as argued by CNH.

[6] Plaintiffs agree that the 1998 Group Benefit Plan does not preclude CNH from "asking" Medicare-eligible participants to utilize government benefits instead of company-provided benefits. But that is not what the Proposed Plan does. First, CNH is not asking, it is seeking to do so unilaterally. Second, CNH proposes to *eliminate* prescription drug benefits for all Medicare-eligible class members. In its "stead" CNH proposes that the retirees go out and purchase coverage from a private insurance carrier offering a Part D prescription drug plan (rather than receiving a government benefit). CNH does not propose to cover retirees' premiums for that insurance or their increasing out of pocket costs and does not propose to fill in any gaps in the coverage differential. CNH is not proposing to

4

the Proposed Plan and the litigation history speak for themselves. The Proposed Plan is entirely unreasonable under the standards of *Reese I* and *Reese II* and must be rejected in its entirely.

## II. Plaintiffs do not overstate their "Costs under the Proposed Plan."

Plaintiffs relied exclusively on the projections of *CNH's actuarial consultant* to demonstrate the massive cost shifting that would occur under the Proposed Plan. CNH does not argue with Plaintiffs' estimates of the costs that would by shifted to retirees under the Proposed Plan. Rather, CNH is essentially impeaching[7] its own evidence, without record[8] support. This is all a smokescreen for the reality – that

---

duplicate the coverage or integrate Part D coverage. None of the conditions stated in the oft-referenced National and State Initiatives Letter of Understanding are met. R. 419-3, Pg ID 14145. **The fact that those conditions are *not met* is evidence that the Proposed Plan's elimination of prescription drug benefits is *not a modification contemplated by the parties*.**

[7] CNH ignores a more obvious source of impeachment of their projections: The Proposed Plan premiums. CNH ***never states how the premiums will be calculated*** and certainly ***does not guarantee*** that the premiums will not increase more dramatically year over year compared to its projections -- as they have recently done for post-2005 retirees. And, Class Members here will not have RMSA accounts to use to initially pay premiums as the post-2005 retirees have had – which undoubtedly accounts for the low level of plan drop outs prior to the massive 2014 premium increase.

[8] Defendant does not provide record support for its projected 40% cost shift to the United States government. The cited Exhibit is not illuminating in any manner. CNH did not include data regarding government costs inherent in either the Proposed or Current Plan in their discovery responses. Notably, while CNH impeaches its own data for failing to account for the government's share of costs under the Proposed Plan, CNH fails to reference the government subsidy it receives under the Current Plan (Medicare Retiree Drug Subsidy).

5

**its Proposed Plan dramatically shifts costs from CNH to the class**. R. 419, Pg ID 14048-14061. The difference, on average,[9] is breathtaking:[10] A retiree on a fixed income bears $417 of the annual costs under the Current Plan in 2032 and *$7,017* of the annual costs for the same year under the Proposed Plan. **The total cost shift, according to CNH's own numbers, is estimated to save CNH $192,872,559** *just in the first ten years*. The estimated total cost in that same ten years to the retiree under the Proposed Plan is $112,875,637, meaning that just

---

[9] These figures deal solely with the averages, not those who will be most impacted by the change to the Proposed Plan. CNH takes issue with Plaintiffs' explication of a "worst case scenario" in assessing reasonableness of the proposed changes. The worst case scenario simply demonstrates what will actually happen to the most vulnerable retirees under the Proposed Plan.

[10] It is axiomatic that changes to benefits that are "reasonably commensurate" with those presently provided cannot also threaten plan participants with "irreparable harm."  But, CNH's Proposed Plan would do just that under Sixth Circuit law. Courts in this Circuit have concluded that far less dramatic cost shifting to retirees threatened them with *irreparable harm. See e.g., Wood v. Detroit Diesel Corp.*, 213 Fed. Appx. 463, 472 (6th Cir. 2006) ("hardship financial and emotional, that a monthly expense of $260 to $834 would pose for most working class retirees hardly requires substantiation"); *Schalk v. Teledyne, In*c., 751 F. Supp. 262, 267 (W.D. Mich. 1990), *aff'd*, 948 F.2d 1290 (6th Cir. 1991) ("additional yearly expense of possibly $1,900 or even as low as $592...would pose a financial hardship"); *Cole v. ArvinMeritor, Inc.*, 516 F.Supp.2d 850, 876-878 (E.D. Mich. 2005), *aff'd* 549 F.3d 1064 (6th Cir. 2008) (collecting cases); *Golden v. Kelsey-Hayes, Inc.*, 73 F.3d 648, 657 (6th Cir. 1996) (emphasis added), *cert. denied* 519 U.S. 807 (1996) (affirming a preliminary injunction, noting that the district court relied on decisions holding that "retirees, primarily because of their fixed income, are unable to absorb *even relatively small increases in their expenses* without *extreme hardship*"); and *Fox. v. Varity Corp.*, 91 F.3d 143 (6th Cir. 1996) (table), 1996 WL 382272 (recognizing the "unique position of retirees," citing *Golden* and *Textron* as finding that "retired union workers are particularly sensitive to *even small increases in the cost of insurance coverage*.")

under $80,000,000 will be picked up by the federal government. **Exhibit A**.[11]

This dramatic cost shift is completely unmoored from the contract and the parties' intent[12] and not tied to any proportional improvement in the benefits under the plan.

                                        Respectfully submitted,
                                        McKNIGHT, McCLOW, CANZANO,
                                        SMITH & RADTKE, P.C.

                                        By:   */s/Darcie R. Brault*
                                        Darcie R. Brault (P43864)
                                        Attorneys for Plaintiffs
                                        400 Galleria Officentre, Suite 117
                                        Southfield, MI  48034
                                        (248) 354-9650
Dated: May 23, 2014                 dbrault@michworklaw.com

---

[11] **Exhibit A** was generated using CNH's projections. The company costs are the first four lines (Items 14, 15, 16 and 17 for the Proposed Plan and Items 24, 25, 26 and 27) for the Current Plan. The Premium and out of pocket costs are the retiree costs under both plans. In the column to the right of the year 2022, the costs are totaled and then compared.

[12] CNH's cost projection for its costs under the Proposed Plan in 2032 per Medicare-eligible retiree ($2,352 annually) is *$500 less* than what CNH would have been obligated to pay under the 1993 FAS 106 cap letter.  But, *the parties agreed to eliminate the FAS 106 Letter during the 1998 negotiations* – thereby shifting the risk of *all* future health care inflation to CNH and away from retirees. In other words, Medicare-eligible retirees would be better off if the FAS 106 Letter had not been eliminated than they would be under the Proposed Plan. **Exhibit B**. To conclude that the Proposed Plan is "reasonable," this Court would have to ignore the actual, uncontroverted facts of the 1998 negotiations, which, ironically, was the ostensible "contextual" premise of *Reese I* and *Reese II*.  But, as the recent *Steel Workers* decision reminds courts, the *purpose* of contract interpretation is to determine the intent of the parties.  The elimination of the FAS 106 cap letter unequivocally demonstrates what the parties intended as to medical cost inflation and by itself defeats any argument that CNH's Proposed Plan is "reasonable."

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2014 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will serve it on all parties.

        Respectfully submitted,

        McKNIGHT, McCLOW, CANZANO,
        SMITH & RADTKE, P.C.

        By:  */s/Darcie R. Brault*
        Darcie R. Brault (P43864)
        Attorneys for Plaintiffs
        400 Galleria Officentre, Suite 117
        Southfield, MI  48034
        (248) 354-9650
        dbrault@michworklaw.com