UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE
PIDDE, JAMES CICHANOFSKY,
ROGER MILLER, and GEORGE
NOWLIN,

          Plaintiffs,

     v.

CNH INDUSTRIAL N.V. and CNH
INDUSTRIAL AMERICA LLC,

          Defendants.

Case 2:04-cv-70592-PJD-PJK

Hon. Patrick J. Duggan, U.S.D.J.

Hon. Paul J. Komives, U.S. Mag. J.

## CNH'S OPPOSITION TO PLAINTIFFS'
## MOTION TO STRIKE CNH'S EXPERT DECLARATIONS

Norman C. Ankers (P30533)
(nankers@honigman.com)
Honigman Miller Schwartz and Cohn
LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
313.465.7306
313.465.7307 fax

Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
Laura J. Capotosto
(lcapotosto@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8000
202.756.8087 fax

*Attorneys for CNH Industrial N.V. and CNH Industrial America LLC*

# TABLE OF CONTENTS

CONCISE STATEMENT OF THE ISSUE PRESENTED.........................................v

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE
    RELIEF SOUGHT............................................................................ vi

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................2

I.    CNH'S EXPERT WITNESSES ARE QUALIFIED TO TESTIFY
    UNDER FEDERAL RULE OF EVIDENCE 702............................................2

    A.    Scott Macey Is Qualified To Provide Expert Opinion Testimony
        in this Case. ..........................................................................4

    B.    John Stahl Is Qualified To Provide Expert Opinion Testimony
        in this Case. ..........................................................................8

II.    CNH'S USE OF EXPERTS IN SUMMARY JUDGMENT
    BRIEFING IS APPROPRIATE UNDER FEDERAL RULE OF
    EVIDENCE 703. ...............................................................................11

III.    CNH'S EXPERTS PROVIDED SWORN TESTIMONY THAT IS
    CONSISTENT WITH THEIR EXPERT REPORTS AND
    DEPOSITION TESTIMONY. .................................................................18

CONCLUSION ...................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Alexander v. CareSource*,
  576 F.3d 551 (6th Cir. 2009) ...............................................................12

*Best v. Lowe's Home Ctrs., Inc.*,
  563 F.3d 171 (6th Cir. 2009) ..............................................................7, 9

*Block v. City of Los Angeles*,
  253 F.3d 410 (9th Cir. 2001) ...............................................................12

*Broaddus v. Shields*,
  665 F.3d 846 (7th Cir. 2011) ...............................................................12

*Cornell Research Found., Inc. v. Hewlett-Packard Co.*,
  No. 5:01-CV-1974, 2007 WL 4349135 (N.D.N.Y. Jan. 31, 2007) ...................19

*Curtis v. Alcoa, Inc.*,
  No. 3:06-CV-448, 2009 WL 3334929 (E.D. Tenn. Sept. 1, 2009) .....................3

*DG&G, Inc. v. FlexSol Packaging Corp.*,
  576 F.3d 820 (8th Cir. 2009) ...............................................................14

*Dresser v. Cradle of Hope Adoption Ctr., Inc.*,
  421 F. Supp. 2d 1024 (E.D. Mich. 2006) ...............................................5

*Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins. Co.*,
  2011 WL 4507417 (E.D. Mich. Sept. 29, 2011) .....................................4, 5

*Hot Wax, Inc. v. Warsaw Chem. Co., Inc.*,
  45 F. Supp. 2d 635 (N.D. Ill. 1999) .....................................................13

*In re Iron Workers Local 25 Pens. Fund*,
  No. 04-CV-40243, 2011 WL 1256657 (E.D. Mich. Mar. 31, 2011)..............7, 14

*Mannino v. Int'l Mfg. Co.*,
  650 F.2d 846 (6th Cir. 1981) ............................................................3, 5

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996)............................................................................8

*O'Brien v. Ed Donnelly Enters., Inc.*,
    575 F.3d 567 (6th Cir. 2009) ................................................................18

*Penny v. United Parcel Serv.*,
    128 F.3d 408 (6th Cir. 1997) ................................................................18

*Reese v. CNH Am. LLC*,
    574 F.3d 315 (6th Cir. 2009) ............................................1, 7, 11, 17

*Reese v. CNH Am. LLC*,
    694 F.3d 681 (6th Cir. 2012) .......................................................1, 17

*Reid v. Sears, Roebuck & Co.*,
    790 F.2d 453 (6th Cir. 1986) ................................................................18

*Robinson v. Mills*,
    592 F.3d 730 (6th Cir. 2010) ..................................................................4

*Sam's Riverside, Inc. v. Intercon Solutions, Inc.*,
    790 F. Supp. 2d 965 (S.D. Iowa 2011) ..............................................13

*Schultz v. Butcher*,
    24 F.3d 626 (4th Cir. 1994) ..................................................................8

*Sigler v. Am. Honda Motor Co.*,
    532 F.3d 469 (6th Cir. 2008) ..............................................................14

*Thompson v. Doane Pet Care Co.*,
    470 F.3d 1201 (6th Cir. 2006) ............................................................18

*Zuzula v. ABB Power T & D Co.*,
    267 F. Supp. 2d 703 (E.D. Mich. 2003) ..............................................3

## Statutes and Rules

Fed. R. Civ. P. 56 ...............................................................................14

Fed. R. Evid. 401 ..................................................................................8

Fed. R. Evid. 403 ..................................................................................8

Fed. R. Evid. 702 ............................................................................1, 2

Fed. R. Evid. 703 ................................................................................13

Fed. R. Evid. 704 ...........................................................................................7

**Other Authorities**

David H. Kaye et al., *The New Wigmore: A Treatise on Evidence—Expert Evidence* § 4.6 (2d ed. 2011).................................................13

David H. Kaye et al., *The New Wigmore: A Treatise on Evidence—Expert Evidence* § 12.2 (2d ed. 2011)..................................................3

11 James Wm. Moore, *Moore's Federal Practice* § 56.94 (3d ed. Dec. 2013) .........................................................................................12, 14

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Are the declarations of CNH's expert witnesses, each of whom meets the requirements of Federal Rule of Evidence 702, admissible at the summary judgment phase of the litigation?

## CONTROLLING OR MOST
## APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Federal Rule of Evidence 702

Federal Rule of Evidence 703

# INTRODUCTION

Just two days before completion of summary judgment briefing, Plaintiffs have moved to exclude both of CNH's experts. In addition to filing the motion at a time that further delays an already delayed case, Plaintiffs ignore basic rules of evidence governing expert testimony, materially mischaracterize the testimony of both experts, and neglect to mention that their three experts also rely on hearsay and even rely on the very expert reports of Scott Macey and John Stahl that Plaintiffs are challenging.

Plaintiffs' motion to strike the written testimony of CNH's expert witnesses represents Plaintiffs' latest tactic to avoid a determination by this Court (or the Sixth Circuit) that it is reasonable to ask them to pay more for their health benefits than they do currently.[1] Under Federal Rule of Evidence 702, the "specialized knowledge" Messrs. Macey and Stahl have gained from their combined *six decades* of experience in employee benefits will certainly enable them "to help the trier of fact to understand" the value of Plaintiffs' health benefits, CNH's proposed health plan, and the health care marketplace generally. Plaintiffs ignore the experts' qualifications and the standard set by Rule 702. They complain that CNH's experts

---

[1] *Reese v. CNH Am. LLC*, 574 F.3d 315, 323–27 (6th Cir. 2009) (*Reese I*) (holding Plaintiffs' benefits subject to reasonable changes by CNH); *see also Reese v. CNH Am. LLC*, 694 F.3d 681, 685–86 (6th Cir. 2012) (*Reese II*) (confirming *Reese I*).

relied on hearsay and opined on the "ultimate issues" on remand, but they neglect that Rules 703 and 704 *authorize* expert testimony like that offered by CNH. Finally, Plaintiffs assert that CNH's experts provided testimony of which Plaintiffs did not receive adequate notice, but, to the contrary, CNH's experts testified about matters included in their expert disclosures or deposition testimony.

## ARGUMENT

### I.   CNH'S EXPERT WITNESSES ARE QUALIFIED TO TESTIFY UNDER FEDERAL RULE OF EVIDENCE 702.

Contrary to Plaintiffs' misunderstanding of the Federal Rules of Evidence (R. 428, Pls.' Mot. 12–23), Scott Macey and John Stahl qualify easily as expert witnesses pursuant to Federal Rule of Evidence 702. Their testimony is based on their application of reliable principles and methods to the evidence in this case, and their testimony will assist the Court in deciding the parties' motions for summary judgment. Rule 702 provides:

> [A] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, *or other specialized knowledge* will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). To "qualify" as an expert in a certain field, the witness must possess sufficient knowledge of the subject matter to assist the trier

of fact. *See Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981) ("[T]he only thing a court should be concerned with in determining the qualifications of an expert is whether the experts' knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth."). Rule 702 does not erect a high hurdle for admissibility, demanding "minimal qualifications to express [an] expert opinion." *See id.* at 651. Expert qualification may be attained based on a witness's education, training, or professional experience. *See Zuzula v. ABB Power T & D Co.*, 267 F. Supp. 2d 703, 713 (E.D. Mich. 2003) ("[T]he experts' education must be relevant to the opinion, and qualification may be based on knowledge, skill, experience or training as well.").

The area of expertise that may assist the trier of fact is defined by the issues before the Court. For example, in an employee benefits dispute like this one, a witness may offer expert testimony pertaining to the valuation of a postretirement benefit plan because "[v]aluing a postretirement benefit plan obviously entails both specialized actuarial skills and accounting and audit procedures." *Curtis v. Alcoa, Inc.*, No. 3:06-CV-448, 2009 WL 3334929, at *4 (E.D. Tenn. Sept. 1, 2009). Expert statistical and actuarial testimony is often a valuable tool for the court, and, like other specialties, "[s]tatistical expertise is not confined to those with degrees in statistics." *See* David H. Kaye et al., *The New Wigmore: A Treatise on Evidence—*

3

*Expert Evidence* § 12.2, at 506 (2d ed. 2011). Against this standard, Messrs. Macey

and Stahl qualify as experts under Rule 702.[2]

> **A.    Scott Macey Is Qualified To Provide Expert Opinion Testimony in this Case.**

Plaintiffs argue that Mr. Macey "does not qualify as an expert" in the area of

employee benefits. (R. 428, Pls.' Mot. 15.) Mr. Macey has been an employee

benefits attorney, negotiator, and consultant for more than 35 years, and he

currently presides over the ERISA Industry Committee, the preeminent trade

association that advises companies on retirement and health benefit issues. (*See*

R. 423 Ex. C, Macey Decl. ¶ 1.)[3] Mr. Macey's scholarship includes 39 articles

---

[2] Plaintiffs' arguments against Mr. Macey and Mr. Stahl make little sense, because they apply equally to Suzanne Daniels and Mark Lynne, Plaintiffs' experts. Indeed, there is nothing fundamentally different about Mr. Macey's and Mr. Stahl's qualifications and those of Dr. Daniels and Mr. Lynne. And Messrs. Macey and Stahl employed methods similar to those applied by Dr. Daniels and Mr. Lynne. The principal difference between the two sides' experts, other than that they reached different conclusions, is that CNH's are more experienced.

[3] Plaintiffs call Mr. Macey "biased" and repeat arguments made before the magistrate in an earlier discovery dispute. (R. 428, Pls.' Mot. 15 & n.2.) But Plaintiffs concede that "bias" is "the relationship between a party and a witness which might lead the witness to slant . . . his testimony in favor or against a party." *Robinson v. Mills*, 592 F.3d 730, 737 (6th Cir. 2010) (internal quotation marks omitted). In other words, the relevant question for bias is Mr. Macey's relationship with CNH, not Mr. Macey's relationship with ERIC. The decision cited by Plaintiffs does not suggest otherwise. *Great Lakes Anesthesia, PLLC v. State Farm Mutual Automobile Ins. Co.* required the expert to disclose information related to his work for the defendant insurance company and attorneys representing it. Nos. 11-10658, 11-11003, 11-11855, 2011 WL 4507417, at *1–3, 4–6 (E.D. Mich.

(continued . . .)

relating to retiree benefits and employee health reform. (*See* R. 428 Ex. A Ex. 1, Macey Exp. Rep. 50–53.) And although Mr. Macey has not had a chance to offer his expert opinion in court,[4] he *has* testified as an expert on employee pension and health benefits before the U.S. Senate, the U.S. House of Representatives, the U.S. Treasury, and the U.S. Department of Labor. (*See* R. 428 Ex. A Ex. 1, Macey Exp. Rep. 54.) This array of professional experience more than exceeds the "minimal qualifications" necessary for Mr. Macey to express his opinions to the Court. *See Mannino*, 650 F.2d at 651.

---

Sept. 29, 2011). The *Great Lakes* court limited its discussion to "expert witnesses in the business of furnishing litigation support, including medical-legal consultations." 2011 WL 4507417, at *5. Mr. Macey is not a professional expert witness; he has been an expert exactly *twice*, including this case.

[4] Plaintiffs assert incorrectly that CNH submitted a declaration from Mr. Macey in connection with summary-judgment briefing in 2006. (R. 428, Pls.' Mot. 16 n.3.) Mr. Macey was first disclosed by CNH as an expert in 2006, and Plaintiffs took his deposition in 2006, but CNH did not submit a declaration from Mr. Macey until its 2010 motion for approval of the proposed plan. Plaintiffs never moved to strike Mr. Macey's testimony. In fact, the only reason the Court did not consider Mr. Macey's testimony in 2010 is because Plaintiffs misread *Reese I* and misled the Court into believing it could ignore the Sixth Circuit's mandate.

In any event, "lack of . . . previous expert witness experience does not render expert testimony inadmissible." *Dresser v. Cradle of Hope Adoption Ctr., Inc.*, 421 F. Supp. 2d 1024, 1033 (E.D. Mich. 2006). Indeed, none of Plaintiffs' experts have been "qualified" at trial as an expert witness. (R. 419 Ex. F, Lynne Exp. Rep. 1–24 (identifying no prior experience as expert witness); R. 420 Ex. U, Francis Exp. Rep. 1–16 (same); R. 425 Ex. P, McClain Exp. Rep. 1–10 (same); R. 419 Ex. J, Daniels Exp. Rep. 24 (identifying only deposition testimony as expert).)

Further, Mr. Macey's process and methods are not improper or unreliable. (R. 428, Pls.' Mot. 18–20 (making *Daubert* argument).) Mr. Macey developed his opinions by conducting an extensive review of reliable, publicly available information and applying the specialized knowledge he refined throughout his career to analyze the health care marketplace and draw meaningful comparisons to other plans. (*See* R. 423 Ex. C, Macey Decl. ¶¶ 2–66; R. 428 Ex. A Ex. 1, Macey Exp. Rep. 1−69.) Plaintiffs assert that "there are no facts or data that Mr. Macey relied upon." (R. 428, Pls.' Mot. 18.) But Plaintiffs are simply wrong; Mr. Macey's declaration is filled with citations to various sources (*see* R. 423 Ex. C, Macey Decl. ¶¶ 2–66), and his expert report contains 47 pages explaining the bases for his opinions as well as another 14 pages listing the various materials he reviewed in forming them (*see* R. 428 Ex. A Ex. 1, Macey Exp. Rep. 3–49, 55–68). Indeed, although he came to different conclusions than they did, Mr. Macey's opinion was formed in the same way that Dr. Daniels's and Mr. Lynne's opinions were formed, albeit with far more information considered. (*Compare* R. 428 Ex. A Ex. 1, Macey Exp. Rep. 55–68, *with* R. 419 Ex. F, Lynne Exp. Rep. 16–17; R. 419 Ex. 420 Ex. M, Lynne Rebuttal Exp. Rep. 15–16; R. 419 Ex. J, Daniels Exp. Rep. 22–23; R. 425 Ex. O, Daniels Exp. Rep. Add. 1–2.)

Plaintiffs have additional complaints about Mr. Macey's testimony, but none of them provide grounds for striking the testimony. Plaintiffs take issue with the

6

breadth of Mr. Macey's conclusions (*see* R. 428, Pls.' Mot. 19), his reliance on studies that support his opinions (*id.* at 18–19), and the now well-settled interpretation of the "Cost of Healthcare Coverage" letter in the 1998 Group Benefit Plan (*id.* at 17); *see also Reese I*, 574 F.3d at 325–26. To the extent any of these complaints have validity—and CNH submits they do not—they go to the weight of Mr. Macey's testimony, not its admissibility. *See Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 182 (6th Cir. 2009) (explaining that alleged weaknesses in expert's methodology go to the weight of the expert's opinion and not its admissibility).[5]

Finally, Plaintiffs criticize Mr. Macey's testimony as reaching the "ultimate question" in this case, namely, the reasonableness of the proposed plan. (*See* R. 428, Pls.' Mot. 16.) Of course, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). The objective "reasonableness" of a benefit plan is well within the competency of an expert with over 35 years of experience in the field, and Mr. Macey's testimony on this subject will assist the Court in its resolution of the issues in this case. *E.g.*, *In re Iron Workers Local 25*

---

[5] Plaintiffs also complain continuously about Mr. Macey's reliance on hearsay. (*See, e.g.*, R. 429, Pls.' Mot. 19–20 (complaining that Mr. Macey relied on Towers Watson's data to support his opinion testimony).) As explained below (*see* Part II below), Mr. Macey's reliance on hearsay is perfectly acceptable and Plaintiffs' contentions to the contrary lack merit.

*Pens. Fund*, No. 04-CV-40243, 2011 WL 1256657, at *5 (E.D. Mich. Mar. 31, 2011) (permitting expert to testify as to whether an ERISA "legal arrangement was reasonable . . . [b]ecause testimony on th[is] issue[] will assist the trier of fact in reaching ultimate conclusions in this case"). Indeed, Mr. Macey's testimony is well within the bounds of expert testimony in civil litigation. *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384–86 (1996) (describing the role of expert testimony on ultimate issue of infringement in patent litigation).[6]

### B.   John Stahl Is Qualified To Provide Expert Opinion Testimony in this Case.

Like Mr. Macey, Mr. Stahl is well qualified to offer his expert opinion to the Court on the projected costs of Plaintiffs' benefits and how those costs compare to

---

[6] Plaintiffs' complaint that Mr. Macey's testimony embraces the ultimate issue on remand is in obvious tension with their complaint that his testimony is irrelevant. (R. 428, Pls.' Mot. 20, 23 (citing Fed. R. Evid. 401).) Mr. Macey's testimony, which responds directly to the three-factor analysis in *Reese I*, is clearly relevant to the matter before the Court.

Plaintiffs argue also that Mr. Macey's testimony will cause Plaintiffs unfair prejudice that substantially outweighs the testimony's probative value. (R. 428, Pls.' Mot. 15 (citing Fed. R. Evid. 403).) As a practical matter, Rule 403 does not apply to nonjury cases. *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences."). In any event, Plaintiffs offer no analysis of how Mr. Macey's testimony would *unfairly* prejudice Plaintiffs, let alone how this prejudice would outweigh the probative value of his testimony.

the costs in other plans.[7] Mr. Stahl is a senior consulting actuary with the health and group benefits practice of a global professional services company. (*See* R. 423 Ex. B, Stahl Decl. ¶ 1.) Mr. Stahl received a degree in mathematics from the University of Michigan, and currently serves as a Fellow of the Society of Actuaries and as a member of the American Academy of Actuaries. (*Id.*) During his nearly quarter-century career, Mr. Stahl has consulted for numerous companies on the valuation of postretirement costs and benefits (*See id.*) These professional and academic experiences place Mr. Stahl's actuarial work and analytical work beyond reproach. Indeed, Mr. Lynne used Mr. Stahl's "analysis and assumptions" to make his cost projections (*see* R. 419 Ex. F, Lynne Exp. Rep. 6), and Plaintiffs use Mr. Stahl's numbers in their own motion for summary judgment (*e.g.*, R. 419, Pls.' Summ. J. Mot. 35–36).[8]

The issues Plaintiffs claim to have with Mr. Stahl's testimony go to weight, not admissibility, *see Best*, 563 F.3d at 182, and they are not substantial complaints (*see* R. 428, Pls.' Mot. 20–23). *First*, it makes sense that Mr. Stahl's comparison of CNH's proposed health benefits to the 2005 Group Benefit Plan did not include

---

[7] As explained above (*see supra* note 4), the fact that Mr. Stahl has not previously been qualified as an expert does not limit his capacity to offer his expert opinion in this matter.

[8] The fact that Plaintiffs use Mr. Stahl's numbers in their summary judgment briefing undercuts Plaintiffs' claim that Mr. Stahl is biased because of his relationship with CNH. (R. 428, Pls.' Mot. 20.)

9

any of the non-health benefits the more recent retirees receive, such as Retiree Medical Savings Accounts ("RMSAs"), higher pension rates, and supplemental payments. Mr. Stahl was comparing Plaintiffs' current health benefits with the proposed health benefits, and even Mr. Lynne—Plaintiffs' expert—concedes that the RMSAs, pensions, and supplemental payments are *not* health benefits. (Ex. 2, Lynne Dep. 151:6–17.) Indeed, neither the pension benefits nor the RMSA benefits are provided in the 2005 Group Benefit Plan. (*See* Ex. 1, 2005 GBP 1–87.) Plaintiffs' complaints on this point are further undermined by Mr. Lynne's concession that to compare the values of two health plans (which is what *Reese* requires), one needs *only* the terms of both health plans *and* that the value of the health and drug benefits under the proposed plan and the 2005 CNH–UAW plan are *the same*. (Ex. 2, Lynne Dep. 144:5–149:10.)

*Second*, Plaintiffs' complaints about the Towers Watson survey are not persuasive. Mr. Stahl explained that he used a 900-employer database of plans for active and salaried employees because it was a larger dataset and the variation in retiree coverage would have made comparisons difficult. (Ex. 5, Stahl Dep. 148:4– 22, 211:6–212:25.) The survey compared deductibles, coinsurance rates, out-of-pocket maximums, and prescription-drug copayments, which are the cornerstones of usage-based costs. The survey did not include premiums, which are variable

10

values and not a plan design element. But again, this quibble goes to weight, not admissibility.

*Finally*, CNH used the costs for medical codes and prescription drugs introduced since 1998 to buttress the Sixth Circuit's observation that health benefits are constantly improving and increasing in cost. *Reese I*, 574 F.3d at 326; (R. 423, CNH's Mot. SUMF ¶ 11(C)). In their brief, Plaintiffs ask a series of questions about patent protection for drugs (R. 428, Pls.' Mot. 22), but they do explain how these questions are relevant (if at all) to Mr. Stahl's analysis, and they provide no *evidence* to dispute CNH's evidence about the class's use of prescription drugs. Indeed, Plaintiffs' questions *are* irrelevant, because the vast majority of the prescription drugs that Plaintiffs use most are branded—as opposed to generic—drugs. (Ex. 3, Prescription Drug Usage Data 3–6.) Their effort to rebut CNH's reliance on medical codes (R. 428, Pls.' Mot. 22–23) does not refute the substantial literature showing that medical developments drive medical costs upward. (R. 423 Ex. C, Macey Decl. ¶¶ 30–33.)

## II. CNH'S USE OF EXPERTS IN SUMMARY JUDGMENT BRIEFING IS APPROPRIATE UNDER FEDERAL RULE OF EVIDENCE 703.

Expert declarations are an invaluable tool for courts to utilize in summary judgment proceedings. As a leading commentator states, "expert testimony may be introduced in summary judgment proceedings through an affidavit or declaration."

11

11 James Wm. Moore, *Moore's Federal Practice* § 56.94[4][a], at 56-227 (3d ed. Dec. 2013). Unsurprisingly, therefore, CNH *and* Plaintiffs have offered expert testimony to support their motions for summary judgment. Equally unsurprisingly, and in accordance with Federal Rule Evidence 703, CNH *and* Plaintiffs' experts rely on hearsay to develop their testimony for the Court. It is puzzling, therefore, that Plaintiffs repeatedly complain that CNH's experts relied on hearsay.

Plaintiffs' argument on this point is best understood as a blurring of the plain distinction between fact and expert testimony. As Plaintiffs' authorities demonstrate, *nonexpert* (i.e., *fact*) witnesses must have personal knowledge of the facts to which they testify, and they may not rely on hearsay to present facts to the Court.[9] None of Plaintiffs' authorities, however, stand for the proposition that an *expert* cannot rely on hearsay. *See Broaddus v. Shields*, 665 F.3d 846, 855–56 (7th Cir. 2011) (prohibiting LLC member from speculating in testimony against the LLC's manager); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001)

---

[9] Plaintiffs cite *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009), to support the proposition that "hearsay cannot form the basis for an admissible declaration." (*See* R. 428, Pls.' Mot. 8.) *Alexander* is yet another case that does not address expert testimony; rather, the issue before the *Alexander* court was whether a nonexpert witness could testify about the plaintiff's professional qualifications in a race-discrimination case. *See* 576 F.3d at 560–561. Flouting the prohibition against nonexpert declarants relying on hearsay, however, Plaintiffs' nonexpert declarations wholeheartedly rely on such statements. (R. 425 Ex. A, Atwood Decl. ¶¶ 14, 21, 23, 32–33, 38, 41; R. 425 Ex. H, Hecker Decl. ¶¶ 12, 16–17; R. 425 Ex. U, Hogsett Decl. ¶ 8.)

(prohibiting city administrator from opining as to why certain police officers were suspended); *Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, 790 F. Supp. 2d 965, 978–79 (S.D. Iowa 2011) (prohibiting employee from testifying about the content of a website that employee had not seen in action against competitor); *Hot Wax, Inc. v. Warsaw Chem. Co., Inc.*, 45 F. Supp. 2d 635, 639 (N.D. Ill. 1999) (holding that expert cannot repeat lay opinion where expert did not perform expert analysis of chemical at issue in the case).

That is because experts may (and often do) consider material that is outside their personal knowledge. Indeed, Rule 703, which Plaintiffs ignore, expressly permits experts to form their opinions on the basis of otherwise inadmissible facts and data. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." (emphasis added)). Among other sources, experts may rely on evidence that would otherwise be considered inadmissible hearsay. *See* Kaye et al., *supra*, § 4.6, at 157 ("The main effect of Rule 703 is to permit experts to rely on evidence that would otherwise be excluded as inadmissible hearsay."). Accordingly, Plaintiffs' arguments that CNH's experts are inappropriately relying on hearsay lack merit. (*See, e.g.*, R. 428, Pls.' Mot. 9–12, 19–20.)

13

The fact that this case at the summary judgment stage is of no moment. *See, e.g.*, *Iron Workers Local 25 Pension Fund*, 2011 WL 1256657, at *4–7 (permitting expert testimony in summary judgment proceeding where sworn affidavit validates the content of the expert report); *accord DG&G, Inc. v. FlexSol Packaging Corp.*, 576 F.3d 820, 826–27 (8th Cir. 2009) (affirming trial court's consideration of expert report as part of summary judgment record). Although declarations used to support a motion for summary judgment must be made on personal knowledge, *see* Fed. R. Civ. P. 56(c)(4),[10] "personal knowledge" for an *expert* witness is different than it is for a fact witness:

> "[P]ersonal knowledge" for experts does not mean that the expert must have the type of proximity, familiarity, or involvement with the facts that would ordinarily be expected of a percipient witness. Rather, the expert must have actually engaged in an examination of the case and its issues but may, unlike a fact witness, rely on posited facts or on inadmissible material (such as scholarly work or empirical data that is technically hearsay) . . . .

11 Moore, *supra*, § 56.94[4][a], at 56-227. CNH's experts have engaged in a thorough examination of the case and possess sufficient knowledge thereof to assist the Court in its summary judgment proceedings.

---

[10] Rule 56 also requires that declarations be sworn to be considered for summary judgment. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 481 (6th Cir. 2008) ("[T]he district court improperly considered Honda's unsworn, hearsay evidence in deciding to grant Honda's motion for summary judgment."). Plaintiffs' expert declarations are unsworn, and therefore constitute inadmissible evidence for summary judgment as a matter of law. *See id.*

14

Plaintiffs attempt to undermine Mr. Macey's credibility by claiming his use of hearsay is compounded by "intentional grotesque mistakes in fact." (R. 428, Pls.' Mot. 9.) They neglect that their own expert admitted several times that Mr. Macey *got no facts wrong*:

> Q      And as with AT&T and Lucent, you're not saying Mr. Macey is factually wrong about what happened with Goodyear; correct?
>
> A      I—I don't believe that I saw anything [is] factually wrong.
>
> . . .
>
> Q      Now, again, you're not identifying anything factually incorrect in Mr. Macey's report about Ford; right?
>
> A      No, just leaving out.

(Ex. 2, Lynne Dep. 156:21–157:3, 165:20–166:1; *see also id.* at 152:14–153:1 (AT&T and Lucent), 158:21–159:10 (U.S. Steel), 176:5–177:13 (generally).) And, tellingly, Plaintiffs cite to no particular facts that Mr. Macey actually got wrong, let alone a misstatement so grievous that would warrant striking his sworn testimony.

Plaintiffs submitted evidence—some of which is inadmissible (*see supra* note 9)—that Mr. Macey did not consider, but these extraneous facts do not make Mr. Macey's factual assertions inaccurate. Mr. Macey relied on reputable publicly available sources, such as litigation filings, court orders, and news articles. Seeking to support different conclusions than Mr. Macey's, Plaintiffs provided Mr. Lynne with hand-picked information to add more color to some of the situations Mr.

15

Macey discusses in his report. (Ex. 2, Lynne Dep. 152:3–13 (AT&T and Lucent), 154:16–20 (Goodyear), 158:8–13 (U.S. Steel), 164:2–10 (Ford), 176:5–16 (GM).) In their motion to strike, Plaintiffs ask the Court to compare Mr. Macey's testimony with their additional information as an attack on weight, not admissibility. (*See* R. 428, Pls.' Mot. 9–10.) If the Court does so, however, it will realize quickly that the additional context does not undermine the accuracy of the facts Mr. Macey deemed material to his conclusions. Accordingly, the additional information creates no dispute of fact. (*See* Ex. 4, Chart of Pls.' Macey Comparisons 1–5.)

For all their rhetoric, Plaintiffs point to no mistakes of fact by Mr. Macey. They claim: "Macey gets his facts wrong when he states, 'CNH has always asked retirees to participate in Medicare programs' at paragraph[] 28. This is not true and Macey cites no facts in support of it." (R. 428, Pls.' Mot. 10.) Plaintiffs cite nothing to show why Mr. Macey's statement is incorrect, because Mr. Macey is *correct*. Medicare-eligible participants have always been required to participate in Medicare Part B, as indicated in the 1998 Group Benefit Plan, which is listed in the pages of materials Mr. Macey reviewed in forming his opinions in this matter. (R. 428 Ex. A Ex. 1, Macey Exp. Rep. 65.)

Other so-called inaccuracies committed by Mr. Macey are actually nothing more than Plaintiffs' ongoing disagreements with the Sixth Circuit in this case. For

16

example, Plaintiffs point to Mr. Macey's agreement with the Sixth Circuit's

determination that the switch to managed care in 1998 was a negative change to

Plaintiffs' benefits. (R. 428, Pls.' Mot. 10, 11); *see also Reese I*, 574 F.3d at 325).

Plaintiffs likewise criticize the Sixth Circuit's description of CNH's right to

integrate Medicare Part D into the 1998 plan. (R. 428, Pls.' Mot. 11); *see also*

*Reese II*, 694 F.3d at 684).

Plaintiffs' attempt to undermine Mr. Stahl also falls flat. Mr. Stahl relied—as

experts often do—on staff and third parties *that he supervised* to assist with the

compilation and analysis of the data that formed the basis of his opinions. Mr.

Lynne did the same, explaining that he relied on documents provided by Plaintiffs

(and presumably the UAW) and that his own staff put the numbers together. (Ex. 2,

Lynne Dep. 38:10–14, 112:6–113:6.)[11] Both Mr. Stahl and Mr. Lynne were

responsible for overseeing the work and being sufficiently comfortable to give

sworn testimony about it as an expert witness.

---

[11] The numbers Mr. Lynne's staff worked with came from Plaintiffs' counsel, and Mr. Lynne did not audit the information (*id.* at 118:9–120:1), which included material errors (*e.g.*, *id.* at 122:1–125:14).

17

## III.   CNH'S EXPERTS PROVIDED SWORN TESTIMONY THAT IS CONSISTENT WITH THEIR EXPERT REPORTS AND DEPOSITION TESTIMONY.

Plaintiffs' final complaint is feigned surprise over some of the testimony offered by Mr. Macey and Mr. Stahl, which Plaintiffs claim was "new." Everything in CNH's experts' declarations, however, was disclosed in their expert reports and often elaborated upon in response to Plaintiffs' deposition questions. Accordingly, their declarations are proper for the Court's summary judgment determinations. *See Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006) (explaining experts can testify to what is in their reports as well as to what they say in their depositions).

Plaintiffs correctly note that a declarant may not—at the summary judgment stage—directly contradict her prior testimony.[12] From this principle, Plaintiffs

---

[12] Plaintiffs cite several authorities for this proposition, all of which involve a direct contradiction to prior testimony (and none of which involve the development of expert testimony). (*See* R. 428, Pls.' Mot. 7 n.1 (citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (striking testimony plaintiff used to support his disability claim because "a reasonable jury would know that it is impossible to hunt rabbits, squirrels, pheasants and deer without walking," as to which plaintiff testified in his deposition); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459–60 (6th Cir. 1986) (denying summary judgment where witness changed from affirmative to negative answer in response to the same question).) In their last authority, *O'Brien v. Ed Donnelly Enterprises, Inc.*, Plaintiffs cite a portion of the district court's opinion that the Sixth Circuit quoted, before holding that the district court abused its discretion when striking portions of the affidavit at issue. *See* 575 F.3d 567, 589 (6th Cir. 2009).

attempt to create a blanket rule that prohibits experts from developing and elaborating upon their prior testimony, *even when responding to Plaintiffs' inquiries at deposition*. In addition to having no foundation in law, Plaintiffs' position misunderstands the role of expert declarations and the process of developing and challenging expert testimony for use in summary judgment proceedings.

Expert reports are intended to provide notice of an expert's opinions and their bases. They are not intended to serve as the expert's intended testimony. An expert declaration must be consistent with the expert's report and deposition testimony, but it need not be a verbatim recitation of the report. *See Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974 (NAM/DEP), 2007 WL 4349135, at *20 (N.D.N.Y. Jan. 31, 2007) ("[T]he submission of a declaration from an expert that is consistent with his or her timely-disclosed expert report is perfectly proper when offered in support of or opposition to a summary judgment motion.").

In accordance with this principle, the testimony presented in the declarations of Mr. Macey and Mr. Stahl is consistent with the opinions previously stated in their expert reports and depositions. Plaintiffs' assertions to the contrary range from unsupported to brazenly inaccurate. For Mr. Macey, Plaintiffs claim that his declaration "includes a new opinion about the reasonableness of the cost-sharing

and new facts offered in support of new arguments in CNH's Brief," but Plaintiffs do not identify the purportedly new opinion or facts. (R. 428, Pls.' Mot. 7.)

Although Plaintiffs are more specific in delineating the purportedly "new" opinions provided by Mr. Stahl (*see id.* at 7 n.1), a close examination reveals that Plaintiffs had ample notice of each of these statements from either Mr. Stahl's deposition testimony or his expert report:

| Purportedly "New" Statement | Existing Notice of Statement |
|---|---|
| "reasons why CNH's proposed plan is reasonable in light of continuing changes in the cost and delivery of healthcare" | "As a result, the proposed changes are reasonable in light of continuing changes in the cost and delivery of health care."<br><br>(R. 428 Ex. A Ex. 2, Stahl Exp. Rep. 1 (Opinion No. 3). *Compare id.* at 6–7 (providing bases for opinion) *with* R. 423 Ex. B, Stahl Decl. ¶ 6 (same).) |
| "[i]ncreased cost-sharing leads to more cost-effective plan usage" | "Increased participants' cost sharing leads to more cost-effective plan usage."<br><br>(R. 428 Ex. A Ex. 2, Stahl Exp. Rep. 1 (Opinion No. 4); Ex. 5, Stahl Dep. 137:12–20 (asking about the opinion).) |

20

| Purportedly "New" Statement | Existing Notice of Statement |
|---|---|
| "his entire paragraph 8," which reads<br><br>"Under the proposed plan, Medicare-eligible participants will look to Medicare Part D for their prescription drug benefits. There is currently a coverage gap in Medicare Part D known commonly as the 'doughnut hole.' The Affordable Care Act will result in a substantial closure of the doughnut hole. By 2020, the government or pharmaceutical companies will cover 75% of the cost of drugs in the gap." | "Q. Okay. I am going to ask you—I am going to go back to that, but I want to ask you, did the Affordable Care Act factor into your comparisons in any way?<br><br>A. Only to the extent it exacted an excise tax. There was some consideration of the excise tax. There was no that's where it came into and, I guess, also to the extent that affected the benefits offered under the Part D plan itself. For example, they are closing the donut hole by 2020. So that was an effect of the Affordable Care Act that was reflected in the projections."<br><br>(Ex. 5, Stahl Dep. 142:7–18.) |
| "Participants' and the company's costs increase annually at approximately the same rate under the current and proposed plans." | This testimony is the product of comparing the rate of increase of medical and prescription-drug costs under the current and proposed plans.<br><br>(*See* R. 428 Ex. A Ex. 2, Stahl Exp. Rep. Exs. 5, 6.) |

21

| Purportedly "New" Statement | Existing Notice of Statement |
|---|---|
| "In developing the projections, we assumed no premiums in 2013 and projected 2014 premiums of $57.25 per month for preMedicare eligible participants and $5 per month for Medicare-eligible participants." | This testimony is the product of taking annual figures for premiums and dividing them by twelve (i.e., the number of months in a year). In this case, diving $687 and $60 by twelve yields monthly premiums of $57.25 and $5.<br><br>(R. 428 Ex. A Ex. 2, Stahl Exp. Rep. Ex. 6.) |
| "Although such projections are actuarially sound, it is difficult to predict the cost of health benefits beyond the next several years given the volatile nature of health benefits generally and all of the variables and upcoming changes that will be caused by the implementation of the Affordable Care Act." | "There is no way to tell. It would require this type of projecting what's available on the market 10 and 20 years out, and that market is just not—is more volatile."<br><br>(Ex. 5, Stahl Dep. 198:19–22.) |

| Purportedly "New" Statement | Existing Notice of Statement |
|---|---|
| "We did not compare the proposed plan for Medicare-eligible participants because many employers in the BDS database do not provide retiree medical coverage, much less coverage for Medicare-eligible retirees." | "Q. Okay. Did you try to do any kind of comparison to retiree plans?<br><br>A. It would have been, A, difficult to do because of the way the data is, but also the comparison, the database would show a significant portion of employers don't provide any retirees medical benefits. So that would, right off the bat, make the plan, any comparison of any plan that provides benefits look better right off the bat. So it didn't seem to be necessarily the best comparison to use."<br><br>(Ex. 5, Stahl Dep. 148:12–22.) |
| "We did not attempt to ascertain whether a code that did not exist in 1998 reflected a new procedure." | Mr. Stahl was questioned extensively on this subject at his deposition.<br><br>(*See* Ex. 5, Stahl Dep. 225:3–227:10.) |

No basis exists to strike the purportedly "new" statements in Mr. Stahl's

declaration, because each statement about which Plaintiffs complain was either in

Mr. Stahl's expert report or was delivered in his deposition, in response to a question that Plaintiffs asked.[13]

## CONCLUSION

For the reasons set forth above, CNH urges the Court to deny Plaintiffs' motion to strike CNH's expert declarations.

Dated: June 9, 2014

Norman C. Ankers (P30533)
(nankers@honigman.com)
Honigman Miller Schwartz and Cohn
LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
313.465.7306
313.465.7307 fax

Respectfully submitted,

s/Joshua David Rogaczewski
Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
Laura J. Capotosto
(lcapotosto@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8000
202.756.8087 fax

*Attorneys for CNH Industrial N.V. and CNH Industrial America LLC*

---

[13] Ironically, it is Plaintiffs who rely on declaration testimony of which CNH had no notice. At summary judgment, Plaintiffs submitted testimony from three declarants—James Hecker, Wes Hogsett, and Daniel Sherrick—none of whom were identified in Plaintiffs' response to CNH's interrogatory on testifying witnesses. (R. 429 Ex. H, Pls.' Resp. 3d Set Interrs. 2; *see also* R. 426, CNH's Opp'n 15.) Plaintiffs had two opportunities to depose Mr. Macey and an entire day to depose Mr. Stahl about their opinions, but CNH had *no* notice and *no* ability to depose these unannounced declarants about their testimony. The testimony of Messrs. Hecker, Hogsett, and Sherrick should be excluded.

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2014, I electronically filed the foregoing

**CNH's Opposition to Plaintiffs' Motion to Strike CNH's Expert Declarations**

with the Clerk of the Court using the ECF system which will send notification of

such filing to all ECF participants.

<u>s/Joshua David Rogaczewski</u>
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8195
202.591.2757 fax