UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JACK REESE, FRANCES ELAINE PIDDE, JAMES CICHANOFSKY, ROGER MILLER, and GEORGE NOWLIN, <br><br> Plaintiffs, <br><br> v. <br><br> CNH INDUSTRIAL N.V. and CNH INDUSTRIAL AMERICA LLC, <br><br> Defendants. | Case 2:04-cv-70592-PJD-PJK <br><br> Hon. Patrick J. Duggan, U.S.D.J. <br><br> Hon. Paul J. Komives, U.S. Mag. J. |

**CNH'S BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Norman C. Ankers (P30533)
(nankers@honigman.com)
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
313.465.7306
313.465.7307 fax

Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
Laura J. Capotosto
(lcapotosto@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8000
202.756.8087 fax

*Attorneys for CNH Industrial N.V. and CNH Industrial America LLC*

# CONCISE STATEMENT OF THE ISSUE PRESENTED

Under the holding and rules of contract construction set forth in the unanimous decision of the Supreme Court of the United States in *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015), are the Plaintiffs entitled to retiree health benefits only for the duration of the 1998 Collective Bargaining Agreement, rather than to vested lifetime health benefits as this Court and the Sixth Circuit ruled before the Supreme Court's decision?

# CONTROLLING OR MOST
# APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Federal Rule of Civil Procedure 56

*M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015)

# INTRODUCTION

Over seven years ago, this Court granted Plaintiffs' motion for summary judgment on liability, ruling that their health benefits are vested for life. (R. 214, Op. & Order 24.) The Sixth Circuit affirmed that vesting ruling. *Reese v. CNH Am. LLC*, 574 F.3d 315, 321−24 (6th Cir. 2009) ("*Reese I*"), but the case has remained alive and active due to the Sixth Circuit's ruling that CNH may make reasonable changes to Plaintiffs' benefits. Both this Court and the Sixth Circuit grounded their vesting decisions in *UAW v. Yard-Man, Inc.,* 716 F.2d 1476 (6th Cir. 1983), and decisions following it. On January 26, 2015, however, the Supreme Court of the United States swept away *Yard-Man* as well as all the precedents and rules of construction that have grown out of it. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015). Equally if not more important, the Supreme Court set forth new rules of construction that now govern, in all circuits, the determination of whether retiree health benefits are vested. Because the Supreme Court has overruled the basis for the decision that Plaintiffs' benefits are vested, and because application of the new rules of construction to the terms of the 1998 Collective Bargaining Agreement ("CBA") show that the benefits are not vested as a matter of law, summary judgment for Defendants is now appropriate.[1]

---

[1] The law of the case doctrine does not apply when an intervening decision of a superior court undercuts the basis of a prior ruling. *See Agostini v. Felton*, 117

(continued . . .)

Set forth below are the undisputed facts—terms of the 1998 CBA—that are now material under the new legal regime. Following the undisputed facts is a discussion of *Tackett*, and why it requires entry of summary judgment for Defendants on the vesting decision.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

1. The plaintiff class comprises individuals who retired from CNH or its predecessor after July 1, 1994, but on or before April 1, 2005, as well as spouses and dependents of those retirees. (R. 223, Stip. Order ¶ 5.)

2. Plaintiffs currently receive their health benefits pursuant to the 1998 Group Benefit Plan ("GBP"), even if they retired while earlier CBAs were in

---

S. Ct. 1997, 2017 (1997) (because the case "would be decided differently under our current [] law, we think adherence to [its prior decision] would undoubtedly work a 'manifest injustice,' such that the law of the case doctrine does not apply"); *see also United States v. Anglin*, 601 F.3d 523, 527 (6th Cir. 2010) (explaining that the law of the case doctrine is "not absolute;" two intervening Supreme Court decisions undermined the district court's conclusion, and the court must reconsider it in light of these decisions). Defendants also respectfully submit that the prior deadline of April 14, 2014, for filing summary judgment motions should not be binding, and urge that the deadline be waived for the filing of this important motion. At a minimum, the intervening decision of the Supreme Court in *Tackett* constitutes good cause for allowing CNH to file its motion now. *See* Fed. R. Civ. P. 16(b)(4).

[2] The parties conducted substantial discovery in this case on the issue of vesting. All of the relevant materials have been produced and depositions taken. As demonstrated below, under *Tackett* the terms of the CBA control the decision in this case, and silence on the duration of benefits defeats vesting. *Tackett*, 135 S. Ct. at 937.

effect. *See Reese I*, 574 F.3d at 324; (1998 GBP § 6(I)(1)(a), (b)(c) (Ex. A).)

Specifically, the 1998 GBP provides that:

> Employees who retire under the Case Corporation Pension Plan for Hourly Paid Employees *after 7/1/94*, or their surviving spouses eligible to receive a spouse's pension under the provisions of that Plan, shall be eligible for the Group Benefits as described in the following paragraphs.

(1998 GBP § 6(I)(1)(a) (Ex. A) (emphasis added)); *see also Reese I*, 574 F.3d at 322 (quoting provision).

3. The 1998 GBP "r[a]n concurrently with" and was a part of the 1998 Central Agreement. (1998 Cent. Agmt. art. 14 § 4 (Ex. B).) The Central Agreement expired on May 2, 2004. (*Id.* art. 15); *see also Reese I*, 574 F.3d at 318.

4. During negotiations in 2004 and 2005, the UAW deviated from its previous bargaining practice, under which it moved existing retirees from each expiring GBP to the next effective GBP. *See Reese I*, 574 F.3d at 324. Rather, the UAW refused to negotiate benefits for existing retirees, so upon expiration of the 1998 GBP, Plaintiffs were not included in the 2005 GBP. (*See* R. 125 Ex. X, UAW 2004 Mins. 34–39.)

5. No contributions were required of eligible retirees during the term of the 1998 Central Agreement. (1998 GBP § 6(I)(3)(b)(1) (Ex. A)); *see also Reese I*, 574 F.3d at 318. The parties, however, entered a letter of understanding that states:

> "[O]ver the term of the 1998 labor agreement . . . retirees who are enrolled in a Company offered HMO, PPO or other plan will not have

3

to pay any additional employee contributions above those which may be required for enrollment in the Case Network Plan (if any)."

*Reese I*, 574 F.3d at 319 (emphasis added) (quoting "Cost of Healthcare Coverage" Letter, 1998 GBP 79 (Ex. A)).

## ARGUMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the movant demonstrates that there are no genuine disputes of material fact, "the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial." *Golden v. Kelsey-Hayes Co.*, 954 F. Supp. 1173, 1182 (E.D. Mich. 1997); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (same).

**I.     *TACKETT* SETS FORTH NEW RULES FOR VESTING DECISIONS.**

   **A.     *Tackett* Repudiated *Yard-Man* and All Rules of Construction Derived From It.**

In *Tackett*, the Supreme Court of the United States unanimously[3] vacated and remanded the Sixth Circuit's decision that the retirees' benefits in that case

---

[3] All nine justices joined the Opinion of the Court in *Tackett*. Justice Ginsburg expressly joined that Opinion and concurred; she did not merely "concur in the result." A concurrence that joins the Opinion of the Court carries no formal precedential weight and, to the extent it departs from the majority opinion, the majority opinion governs. *See, e.g.*, *Int'l Union, UAW v. Winters*, 385 F.3d 1003, 1011–12 (6th Cir. 2004) (refusing to apply principles in concurring opinion, the

(continued . . .)

were vested. It did much more than merely vacate and remand that case, however. The Court expressly rejected the *Yard-Man* inference and all the rules of contract construction that have grown up around it. First, the Court carefully reviewed the reasoning of the *Yard-Man* decision itself, noting its determinations that the "will provide" language "was ambiguous," that inclusion of provisions for terminating active employees' coverage contrasted with the absence of provisions for terminating coverage for the retirees, that a promise deemed applicable to some but not all retirees was "illusory," and that the "context" of retiree health benefits made them "status benefits" which were unlikely to be left to future negotiations. 135 S. Ct. at 934.

Then, the Court discussed decisions following *Yard-Man* and the additional rules of construction that have evolved, including holdings that the phrase "will continue to provide" benefits unambiguously vests benefits, that a general durational clause "'says nothing'" about the duration of retiree benefits, and—of

---

author of which concurred in the majority opinion); *accord, e.g., United States v. Angel-Guzman*, 506 F.3d 1007, 1012 n.7 (10th Cir. 2007) (explaining that majority opinion governs over concurring opinion that joins in the majority). When "an individual justice's vote is not needed to form a majority, the meaning of a majority opinion is to be found within the opinion itself because the gloss that an individual [j]ustice chooses to place upon it is not authoritative." *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 310 (3d Cir. 2013) (internal quotation marks omitted). Justice Ginsburg's suggestion that certain rules of construction might survive is inconsistent with the Opinion of the Court, and consequently is owed no deference.

particular importance here—that provisions tying eligibility for retiree health benefits to receipt of pension benefits indicate that retiree health benefits are vested. *Id.* at 934–35 (quoting *Noe v. PolyOne Corp.*, 520 F.3d 548, 555 (6th Cir. 2008)).

Following this review, the Court repeatedly made clear that it rejected "the inferences applied in *Yard-Man* and its progeny." *Id.* at 935; *see also id.* at 933 (the *Yard-Man* "inferences conflict with ordinary principles of contract law"); *id.* at 936 ("[T]he Court of Appeals [in *Tackett*] misapplied other traditional principles of contract law . . . ."). Because the Sixth Circuit in *Tackett* had relied upon the "context" of negotiations and on "the tying of eligibility for health care benefits to receipt of pension benefits" as indicating vesting, the Supreme Court "rejected [those] *Yard-Man* inferences as inconsistent with ordinary principles of contract law," and vacated the decision. 135 S. Ct. at 937. In short, *none* of the rules of construction in *Yard-Man* or its progeny survive.

### B.     *Tackett* Sets Forth Ordinary Rules of Contract Construction That Govern This Case.

The Court also set forth rules of construction that must now govern construction of CBAs, including:

- "Parties . . . can and do voluntarily agree to make retiree benefits a subject of mandatory collective bargaining," *id.* at 936;

- Congress determined in ERISA that "retiree health care benefits are not a form of deferred compensation," *id.*;

6

- The rule that general durational clauses do not govern retiree health benefits "distort[s] the text of the agreement and conflict[s] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties," *id.*;

- The illusory contract doctrine does not apply if some but not all retirees obtain a promised benefit, *id.*;

- It is a "traditional principle that courts should not construe ambiguous writings to create lifetime promises," *id.*;

- It is also a "traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement,' " *id.* at 937 (quoting *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207 (1991)); and

- "[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life," *id.* at 937.

At least as significant as these rules of construction is the contrast drawn by the Supreme Court between its *disapproval* of the *Yard-Man* inference favoring vesting for collective bargaining agreements and its *approval* of the Sixth Circuit's decision disfavoring vesting for non-collectively bargained contracts. It quoted with approval *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998): "'Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; *the intent to vest must be found in the plan documents and must be stated in clear and express language*.'" 135 S. Ct. at 937 (emphasis added). The Court reiterated later that "'a collective-bargaining agreement [may] provid[e] *in explicit terms* that certain

7

benefits continue after the agreement's expiration.'" *Id.* (quoting with alteration *Litton*, 501 U.S. at 207) (emphasis added).[4]

Thus, the rules of construction that govern this case are no longer to be found in *Yard-Man* and the decisions that followed it. Rather, the governing rules are set forth in *Tackett*. The new rules of construction dictate a result in this case opposite from the one founded on *Yard-Man* and its progeny.

## II. THE CORRECT CONSTRUCTION OF THE 1998 GBP UNDER *TACKETT* IS THAT CNH DID NOT AGREE TO PROVIDE PLAINTIFFS WITH VESTED BENEFITS.

### A. The Vesting Decision in This Case Relied on the Repudiated *Yard-Man* Rules.

This Court's decision granting summary judgment to Plaintiffs on vesting (R. 214) expressly relied on *Yard-Man* and decisions following it, including *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571 (6th Cir. 2006). Of particular importance was the precept that language tying eligibility for health care benefits to receipt of pension benefits "speaks directly to duration: as long as the employee or surviving spouse is eligible to receive a pension (which is presumed to be a lifetime benefit)." (R. 214, Op. & Order 14 n.9.) This Court rejected a number of

---

[4] Again, to the degree that Justice Ginsburg's concurring opinion attempted to put a gloss on the unanimous Opinion of the Court by stating that "no rule requires 'clear and express' language in order to show that the parties intended health-care benefits to vest," 135 S. Ct. 938 (Ginsburg, J., concurring), her comments carry no weight. (*See* note 3 above.)

8

arguments advanced by CNH (*id.* at 14−23), but its basis for holding the benefits vested was the *Yard-Man* inference and the tying of health benefits to pension benefits.

The Sixth Circuit affirmed the vesting decision. *Reese I*, 574 F.3d at 321–24. It observed that the *Yard-Man* inference provides a least "a nudge in favor of vesting in close cases," *id.* at 321, and also considered the prior *Yolton* decision conclusive, *id.* at 322. The Sixth Circuit concluded:

> Like *Yolton*: this case involves a CBA; it involved a health-care benefits plan with identical language [to *Yolton*] concerning entitlement to benefits upon retirement; it ties eligibility for health benefits to eligibility for a pension; it does not contain a specific durational clause while other benefit provisions in the CBA contain such clauses . . . ; and above all it concerns employees who worked in virtually identical circumstances . . . as the *Yolton* employees before each group retired.

574 F.3d at 323. It emphasized "the centrality of the tying rationale in *Yolton*'s merits determination and in cases before and since." *Id.*

The Supreme Court directly and emphatically rejected each of these rationales. As shown, it rejected the notion that collectively-bargained contracts should be construed differently than non-collectively bargained contracts. 135 S. Ct. at 937. Decisions requiring that a CBA "include a specific durational clause for retiree health care benefits to prevent vesting" "distort the text of the agreement and conflict with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." *Id.* at 936. Whereas

9

the Sixth Circuit in *Tackett* had, following the *Yard-Man* precedents, relied on the " 'context of . . . labor-management negotiations,' " and "the tying of eligibility for health care benefits to receipt of pension benefits," the Court "reject[ed] the[se] *Yard-Man* inferences as inconsistent with ordinary principles of contract law." *Id.* at 937; *see also id.* at 935 (reviewing rulings holding that general durational clauses do not control retiree health benefits and that tying of eligibility for health benefits to pension benefits requires vesting, but then stating: "We disagree with the Court of Appeals' assessment that the inferences applied in *Yard-Man* and its progeny represent ordinary principles of contract law.").

### B. *Tackett* Requires Summary Judgment for Defendants on the Vesting Issue.

After removing the *Yard-Man* inferences that underlay the earlier vesting decisions, the new rules governing contract interpretation defeat vesting as a matter of law. First and foremost, the 1998 GBP contains "no clear and express" language agreeing to vest Plaintiffs' benefits, as required by the Supreme Court's decision. *Tackett*, 135 S. Ct. at 936−37; (*see* pages 7–8 above; SUMF ¶¶ 2–3, 5). Moreover, the the1998 GBP—when viewed in its entirety—was not silent. It ran concurrently with, and was part of, the 1998 Central Agreement, which had a specific termination date. (SUMF ¶ 3.) Under *Tackett*, this Court can no longer ignore this general durational clause. *See* 135 S. Ct. at 936. To do so would conflict with "the traditional principle that 'contractual obligations will cease, in the ordinary course,

10

upon termination of the bargaining agreement.'" *Id.* at 937 (quoting *Litton*, 501 U.S. at 207). But even if the GBP were deemed silent on the duration of Plaintiffs' benefits, "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." 135 S. Ct. at 937. Courts must not ignore the "traditional principle that courts should not construe ambiguous writings to create lifetime promises." *Id.* at 936 (citing 3A Corbin, *Corbin on Contracts* § 553, at 216 (1960)).

As for the "tying rationale," the Supreme Court twice rejected the notion that the tying of eligibility for health benefits to receipt of pension benefits indicated vesting. It did so first in its review of general rules of contact construction that have grown out of *Yard-Man*. *See* 135 S. Ct. at 935. It did so again in the final section of the Opinion when it specifically rejected the Sixth Circuit's reliance on the tying analysis in *Tackett. Id.* at 937. In view of the "centrality of the tying rationale" to the vesting decision in this case, *Reese I*, 574 F.3d at 323, the vesting decision cannot stand.

In summary, under the ordinary principles of contract interpretation set forth in *Tackett*, and contrary to the previous rulings of this Court and the Sixth Circuit, the undisputed material facts as evidenced by the 1998 GBP demonstrate that Plaintiffs' health benefits were not vested as a matter of law. Accordingly, because of the intervening and controlling decision of the Supreme Court of the United

11

States in *Tackett*, CNH respectfully requests this Court to enter summary judgment that Plaintiffs' benefits expired upon expiration of the 1998 CBA, on May 2, 2004, and are not vested.

## CONCLUSION

For the reasons set forth above, CNH urges the Court to grant its motion for summary judgment.

Dated: February 24, 2015

Norman C. Ankers (P30533)
(nankers@honigman.com)
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
313.465.7306
313.465.7307 fax

Respectfully submitted,

s/Bobby R. Burchfield
Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
Laura J. Capotosto
(lcapotosto@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8000
202.756.8087 fax

*Attorneys for CNH Industrial N.V. and CNH Industrial America LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2015, I electronically filed the foregoing **CNH's Brief in Support of Its Motion for Summary Judgment** with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

                                                    s/Bobby R. Burchfield
                                                    Bobby R. Burchfield
                                                    (bburchfield@mwe.com)
                                                    McDermott Will & Emery LLP
                                                    The McDermott Building
                                                    500 North Capitol Street, Northwest
                                                    Washington, D.C. 20001
                                                    202.756.8003
                                                    202.756.8076 fax