UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, JAMES CICHANOFSKY,
ROGER MILLER, and GEORGE NOWLIN           Hon. Patrick J. Duggan
on behalf of themselves and
a similarly situated class,               Case No. 04-70592

      Plaintiffs,
v.                                        **Class Action**

CNH INDUSTRIAL N.V. and
CNH INDUSTRIAL AMERICA, LLC,

      Defendants.
_____/

## **PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO**
## **CNH'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................... iii

CONCISE STATEMENT OF ISSUES PRESENTED ............................................v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................vi

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS ..........................................................................2

STANDARD OF REVIEW .........................................................................8

ARGUMENT .........................................................................................9

I.    THE LAW OF THE CASE DOCTRINE PRECLUDES THIS COURT FROM
      REVISITING ITS PRIOR RULING BECAUSE THAT RULING CONTINUES
      TO BE APPLICABLE. .......................................................................9

II.   THIS COURT'S HOLDING IS IN ACCORD WITH *TACKETT* BECAUSE IT USED
      ORDINARY PRINCIPLES OF CONTRACT LAW WITH NO RELIANCE ON THE
      *YARD-MAN* INFERENCE. ...............................................................10

      A.    This Court Applied Ordinary Principles of Contract Law
            Because It Relied on Express Contractual Language. ........................11

      B.    This Court Applied Ordinary Principles of Contract Law
            Because It Examined Extrinsic Record Evidence after Relying
            on Express Contractual Language......................................................14

      C.    This Court Applied Ordinary Principles of Contract Law
            Because It Did Not Rely on the *Yard-Man* Inference Rejected
            by *Tackett*. ...............................................................................17

      D.    Contrary to CNH's Assertion, *Tackett* Did Not Reset the
            Law Regarding Vesting of Retiree Healthcare Benefits.....................19

i

     1.     CNH incorrectly asserts that general durational clauses end all benefits on termination of the CBA even when extrinsic evidence evinces a contrary intent...................20

     2.     CNH incorrectly asserts that explicit lifetime language is the only way a party can show an intent to vest....................21

III.    CNH's Motion Is Untimely Because This Court Should Wait for Guidance from the Sixth Circuit's Review of *Tackett* on Remand. ....................................................................23

CONCLUSION    ..................................................................24

CERTIFICATE OF SERVICE ..............................................................25

# INDEX OF AUTHORITIES

## CASES

*Bowling v. Pfizer, Inc.*, 132 F.3d 1147 (6th Cir. 1998) .........................................v, 9

*Del Valle v. BellSouth Telcomms., Inc.*, 200 Fed. Appx. 528 (6th Cir. 2006).........15

*Gascho v. Global Fitness Holdings*, 918 F. Supp. 2d 708 (S.D. Ohio 2013)...........8

*Gen. Am. Life Ins. Co. v. Anderson*, 156 F.2d 615 (6th Cir. 1946) ........................10

*Gillig v. Advanced Cardiovascular Sys., Inc.*, 67 F.3d 586 (6th Cir. 1995)..............9

*Griffin v. Mich. Dep't of Corr.*, 5 F.3d 186 (6th Cir. 1993) .....................................9

*Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306 (6th Cir. 1997) ..........................9

*In re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403 (S.D. Ind. 1994) ........8

*In re U.S. Steel Corp.*, 479 F.2d 489 (6th Cir. 1973).............................................v, 9

*Ins. Co. v. Dutcher*, 95 U.S. 269 (1877) .................................................................14

*Kellogg Co. v. NLRB*, 457 F.2d 519 (6th Cir. 1972) ...............................................12

*Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991)...................................20, 21

*M&G Polymers USA, LLC v. Tackett*,
135 S. Ct. 926 (2015) ............................... v, 1, 10, 11, 14, 17, 19, 20, 21, 22, 23, 24

*MacArthur v. Gidley*, No. 13-CV-11307, 2014 U.S. Dist. LEXIS 155901,
(E.D. Mich. Nov. 4, 2014) ........................................................................................8

*Price v. Bd. of Trustees of Ind. Laborer's Pension Fund*, 632 F.3d 288
(6th Cir. 2011).........................................................................................................22

*Reese v. CNH Am. LLC*, 574 F.3d 315 (6th Cir. 2009) ....................1, 10, 13, 19, 23

*Reese v. CNH Global N.V.*, No. 04-70592, 2007 U.S. Dist. LEXIS 63670,
(E.D. Mich. Aug. 29, 2007) ..................................................................................1, 6

*Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580 (1st Cir. 1993) ...........15

*Smith v. Mount Pleasant Pub. Schs.*, 298 F. Supp. 2d 636 (E.D. Mich. 2003) .........8

*Sprague v. Gen. Motors Co.*, 133 F.3d 388 (6th Cir. 1988) ..............................22, 23

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662 (2010) .....................11

*UAW v. Yard-Man, Inc.*,
716 F.2d 1476 (1983)......................................... v, 1, 6, 10, 11, 17, 18, 19, 20, 22, 24

*USW v. Kelsey-Hayes Co.*, 750 F.3d 546 (6th Cir. 2014)........................................23

*Yolton v. El Paso Tenn. Pipeline Co.*,
318 F. Supp. 2d 455 (E.D. Mich. 2003)..........................................4, 5, 7, 13, 15, 16

*Yolton v. El Paso Tenn. Pipeline Co.*,
435 F.3d 571 (6th Cir. 2006) ...............................................................4, 6, 7 10, 19

*Zanghi v. Freightcar Am., Inc.*, No. 3:13-cv-146
(W.D. Pa. Mar. 30, 2015)..................................................................................14, 22

## COURT RULES

E. D. Mich. LR 7.1(h) ..............................................................................................8

Fed. R. Civ. P. 59(e)................................................................................................8

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Under the law of the case doctrine, a court is generally precluded from reexamining an issue previously decided by that court in the same case. *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998). Thus, to reverse an earlier ruling, a court must find that the ruling is no longer applicable. *In re U.S. Steel Corp.*, 479 F.2d 489, 493-94 (6th Cir. 1973). Here, this Court's ruling that CNH agreed to provide lifetime retiree healthcare benefits to Plaintiffs continues to be applicable. Should this Court nonetheless reverse this ruling?

      Defendant CNH answers "Yes."
      Plaintiffs answer "No."

2.    This Court previously held that CNH agreed to provide lifetime retiree healthcare benefits to Plaintiffs. This ruling was made, affirmed, made again, and affirmed again. In 2015, the Supreme Court rejected an inference set forth in *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (1983) that parties to collective bargaining would intend retiree benefits to vest for life. *See M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015). When this Court determined that CNH agreed to provide lifetime retiree healthcare benefits, it did not rely on the so-called *Yard-Man* inference. Rather, this Court used ordinary contract principles by examining the express terms of the parties' CBA. Does *Tackett* require this Court to reverse its vesting decision?

      Defendant CNH answers "Yes."
      Plaintiffs answer "No."

3.    The issues raised in CNH's motion will be largely clarified by the Sixth Circuit's review of *Tackett* on remand. Is CNH's motion timely?

      Defendant CNH answers "Yes."
      Plaintiffs answer "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Reese v. CNH Am. LLC*, 574 F.3d 315 (6th Cir. 2009).

*Reese v. CNH Global N.V.*, No. 04-70592, 2007 U.S. Dist. LEXIS 63670 (E.D. Mich. Aug. 29, 2007).

*Yolton v. El Paso Tenn. Pipeline Co*., 435 F.3d 571 (6th Cir. 2006).

*Yolton v. El Paso Tenn. Pipeline Co.*, 318 F. Supp. 2d 455 (E.D. Mich. 2003).

## INTRODUCTION

This Court should deny CNH's Motion for Summary Judgment because the U.S. Supreme Court's recent decision in *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015) has no impact on the earlier holdings of this Court and the Sixth Circuit that CNH agreed to provide vested lifetime retiree benefits to Plaintiffs.[1] In *Tackett*, the Supreme Court rejected an inference set forth in *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (1983) that parties to collective bargaining would intend retiree benefits to vest for life. 135 S. Ct. at 935-37. CNH claims that this Court relied on the so-called *Yard-Man* inference and that its decision must therefore be reversed. CNH's claim is wrong; this Court did not rely on the *Yard-Man* inference. Rather, this Court applied ordinary principles of contract law to find that the benefits vested, which is precisely what the Supreme Court directed the Sixth Circuit to do on remand in *Tackett*. Because this Court did not depend on the *Yard-Man* inference, the inference's invalidity has no bearing on this case. For this reason, CNH's Motion for Summary Judgment should be denied.

---

[1] This Court held as such in *Reese v. CNH Global N.V.*, No. 04-70592, 2007 U.S. Dist. LEXIS 63670 (E.D. Mich. Aug. 29, 2007). (Op. & Order, at 22-23, Aug. 29, 2007, Dkt. 214.) The Sixth Circuit affirmed this holding in *Reese v. CNH Am. LLC*, 574 F.3d 315 (6th Cir. 2009). Hereinafter, unless Plaintiffs state otherwise, a reference to this Court's earlier holding is meant to be read as "this Court's and the Sixth Circuit's earlier holdings."

## STATEMENT OF FACTS

### CNH's Statement of Undisputed Material Facts.

CNH includes in its brief a "Statement of Undisputed Material Facts," which is neither a statement of "fact" nor "undisputed." (CNH's Br. Supp. Mot. Summ J., Feb. 24, 2015, Dkt. 439.) CNH misrepresents the history of bargaining,[2] repeats its misrepresentations about the "Cost of Health Coverage" Letter,[3] and references promises that CNH claims only lasted "during the term" of the CBA.[4] (*Id.*)

Ordinarily, this Court must be vigilant in protecting the record against erroneous facts. In deciding this motion, however, the Court need not look beyond its own decisions and the facts found in those decisions to reach the conclusion that nothing in the *Tackett* holding changes those facts or the analysis of them.

---

[2] For example, CNH claims that the 2004-2005 negotiations deviated from past practice. (CNH's Br. Supp. Mot. Summ J., at 3, Feb. 24, 2015, Dkt. 439.) Contrary to CNH's claim, it was never the parties' practice to "move[] existing retirees from each expiring GBP to the next . . . ." (*Id.*) Also, the UAW did not refuse to negotiate benefits in 2005. (*Id.*) Rather, UAW agreed to talk about improvements of the benefits, which were the only modifications UAW could bargain about on behalf of existing retirees. (Pls.' Resp. to CNH's Mot. Summ. J., at 8-9, May 14, 2014, Dkt. 425.)

[3] This Court has rejected this argument. (Op. & Order, at 17, Dkt. 214) ("[T]he 1998 Letter of Understanding simply provides that . . . the cost for health insurance coverage for retirees electing a non-Network option . . . will not be greater than the cost (if any) for the Network option. . . . It does not provide that contributions can be sought . . . for Network coverage once the 1998 Central Agreement expires.") (*See also* Pls.' Resp., at 5-7, Dkt. 425.)

[4] There is no such limiting language. *Reese*, 574 F.3d at 322-26.

**1967 – 1998: UAW and CNH Negotiate Several Group Insurance Plans.**

Plaintiffs are retirees (or their surviving spouses) of a company formerly known as Case Corporation. (Op. & Order, at 2, Aug. 29, 2007, Dkt. 214.) The UAW represented Case employees in collective bargaining over several decades. (*Id.* at 3.) Specifically, since at least 1967, UAW and Case have negotiated a number of collective bargaining agreements (CBAs). (*Id.*) These include CBAs in 1971, 1974, 1980, 1983, 1987, 1990, 1995, 1998, and 2005. (*Id.*) Beginning with the 1971 CBA, collectively bargained group insurance benefits were contained in a separate document called the Group Insurance Plan. (*Id.*)

When the Group Insurance Plan was being negotiated in 1971, CNH's Benefits Manager wrote to the retirees and explicitly stated: "Retirees and Surviving Spouses . . . are not required to pay a premium . . . . Instead, the coverage shall be fully paid by the Company." (Pls.' Mot. Summ. J., at 15-16, Jan. 5, 2007, Dkt. 129.) This letter went on to state: "If you have elected the Spouse's Optional Form of Pension . . . , your spouse will be able to keep this coverage for the remainder of her lifetime." (*Id.*)

The language of the Group Insurance Plans remained substantially unchanged from 1971 through the 1998 CBAs. (Op. & Order, at 4, Dkt. 214.) With respect to eligibility, the Plans provide that "[e]mployees who retire under the Case Corporation Pension Plan . . . , or their surviving spouses eligible to receive a

spouse's pension . . . , shall be eligible for the Group benefits . . . ." (*Id.*; Group Ins. Plan Eff. 1998, at 65-67, Feb. 24, 2015, Dkt. 439-3.)

Starting in 1974, Case agreed to pay the full cost of healthcare benefits for retirees and eligible surviving spouses, regardless of age. (*Id.*) Thus, from that year onward, under a section entitled "Contribution for Coverage," the Plans state that Case must pay "the full premium cost of the above coverages." (*Id.*) In 1998, this provision was changed to read: "No contributions are required for the Health Care Plans, Dental Plan, Vision Plan and Hearing Plan." (*Id.* at 4-5.)

## 1998 – 2006: The *Yolton* Litigation.

This Court and the Sixth Circuit first construed language in the parties' Group Insurance Plans during the *Yolton* litigation. *See Yolton v. El Paso Tenn. Pipeline Co.*, 318 F. Supp. 2d 455 (E.D. Mich. 2003), *aff'd*, 435 F.3d 571 (6th Cir. 2006).

In these Group Insurance Plans, UAW and Case expressly conditioned eligibility for fully paid, post-retirement medical insurance benefits on eligibility for a lifetime pension benefit. 318 F. Supp. 2d at 466 ("The Group Insurance Plans provide that employees retiring under Case's pension plan and surviving spouses eligible to receive a spouse's pension . . . are eligible for group health insurance benefits"). This Court rejected CNH's claim that the CBA's durational clause prevented vesting and held that the *express* language in the agreements evinced an intent to vest retiree healthcare benefits. *Id.* at 468.

4

In holding that CNH intended the retiree benefits to vest, this Court also found persuasive the fact that the Group Insurance Plans contained no express durational limitations for retirees and their spouses while containing express durational limitations of these benefits for other categories of employees. *Id.* For example, active employees on layoffs or on leave were only entitled to continued group insurance benefits according to a specific schedule. *Id.* at 466-67. Similarly, employees on maternity leave were only entitled to benefits for up to 12 months following the start of their leave of absence. *Id.* at 467. This Court found that the inclusion of specific durational limitations in other provisions of the CBA shows that retiree benefits, which were not so specifically limited, were intended to survive. *Id*.

Although this Court concluded that the express language in the contract was sufficient for it to reach its holding, this Court also determined that substantial and unequivocal extrinsic evidence lent further support for the Court's conclusion. *Id.* at 468. In the Court's words, "Even if the parties' intent were not clear based on the express language of the . . . agreements, Plaintiffs present substantial extrinsic evidence to demonstrate that the UAW and [CNH] intended to provide retirees and surviving spouses fully funded, lifetime health insurance benefits." *Id.* This extrinsic evidence included statements made by CNH's Labor Relations Manager to class members that "in retirement, they would have company paid health care coverage

5

for the rest of their lives[,] and . . . the [surviving] spouse would also have fully paid health care coverage for his or her life or until their remarriage." *Id.* at 469.

The Sixth Circuit affirmed, noting that this Court did "not in any sense *rely* on [the *Yard-Man*] inference." 435 F.3d at 580. According to the Sixth Circuit, this Court instead "interpreted the language of the agreement and found evidence that the defendants intended to confer lifetime benefits upon the plaintiffs." *Id.* The Sixth Circuit then approved this Court's interpretation of that language. *Id.* at 584 ("[T]he district court correctly interpreted *the plain language of the CBAs and Group Insurance Plans* as well as the agreement as a whole") (emphasis added). While the Sixth Circuit concluded that extrinsic evidence lent additional support of vesting, it also concluded that the extrinsic evidence was not necessary to its ruling. *Id.* Thus, like this Court, the Sixth Circuit found the "plain language of the CBAs and Group Insurance Plans" sufficient to show that CNH intended to agree to provide vested lifetime retiree healthcare benefits to Plaintiffs. *Id.*

**2004 – 2009: The *Reese* Litigation.**

In *Reese*, this Court once again was called upon to construe language in the parties' Group Insurance Plans to determine whether CNH agreed to provide vested lifetime retiree healthcare benefits to Plaintiffs. (Op. & Order, at 11, Dkt. 214.)

In granting summary judgment to Plaintiffs and holding that CNH had agreed to provide vested lifetime retiree healthcare benefits, this Court noted that the

"relevant provisions in [the CBA] . . . at issue in this case are substantially identical to the provisions this Court and the Sixth Circuit evaluated in *Yolton*." (*Id.* at 13.)

By analyzing the same contractual language analyzed in *Yolton*, this Court concluded that CNH intended to agree to provide vested lifetime retiree healthcare benefits:

> The Group Benefit Plans in this case state that retired employees or their surviving spouses . . . 'shall be eligible for the Group benefits . . .' and that 'no contributions' for coverage are required—meaning that the employer is responsible for the full premium or subscription charge. . . . Contrary to Defendants' assertion, this language speaks directly to duration: as long as the employee or surviving spouse is eligible to receive a pension (which is presumed to be a lifetime benefit).

(*Id.* at 14.)

CNH appealed, and the Sixth Circuit "g[a]ve fresh review to the district court's summary judgment ruling" and "dr[e]w all factual inferences in favor of . . . CNH." 574 F.3d at 321. On this fresh review, the Sixth Circuit affirmed this Court's ruling that "the plain language of the contract conveyed an intent to grant lifetime retiree health insurance coverage to retirees." *Id.* (internal quotation marks omitted).

7

## STANDARD OF REVIEW

Defendant labels its motion a "Motion for Summary Judgment," but in reality, Defendant has filed a motion for reconsideration pursuant to Local Rule 7.1(h). *See* E. D. Mich. LR 7.1(h).

Courts reject motions for reconsideration that simply attempt to re-hash old arguments. *See* E. D. Mich. LR 7.1(h)(3) ("[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication"); *Smith v. Mount Pleasant Pub. Schs.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) ("[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments . . ."). *See also* Fed. R. Civ. P. 59(e).

Because motions for reconsideration conflict with notions of finality and repose, courts are particularly reluctant to grant them. *See MacArthur v. Gidley*, No. 13-CV-11307, 2014 U.S. Dist. LEXIS 155901, at *4 (E.D. Mich. Nov. 4, 2014) ("A motion to alter or reconsider a judgment is an extraordinary remedy and should be granted sparingly"); *Gascho v. Global Fitness Holdings*, 918 F. Supp. 2d 708, 714 (S.D. Ohio 2013) ("[A motion for reconsideration] is extraordinary and is seldom granted because it contradicts notions of finality and repose"); *In re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1406 (S.D. Ind. 1994) ("[M]otions to

reconsider are extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged").

## ARGUMENT

### I. THE LAW OF THE CASE DOCTRINE PRECLUDES THIS COURT FROM REVISITING ITS PRIOR RULING BECAUSE THAT RULING CONTINUES TO BE APPLICABLE.

The law of the case doctrine precludes this Court from revisiting its earlier ruling that CNH agreed to provide vested lifetime retiree healthcare benefits to Plaintiffs. Under the law of the case doctrine, a court is generally precluded from reexamining an issue previously decided by that court in the same case. *See Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998) ("Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court in the same case"); *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 311 (6th Cir. 1997) ("The 'law of the case' doctrine precludes a court from reconsideration of identical issues") (internal quotation marks omitted); *Griffin v. Mich. Dep't of Corr.*, 5 F.3d 186, 190 (6th Cir. 1993).

Pursuant to this doctrine, a court's power to reach a result that is inconsistent with a prior decision in the same case should be exercised sparingly and only under extraordinary conditions. *See Gillig v. Advanced Cardiovascular Sys., Inc.*, 67 F.3d 586, 589-90 (6th Cir. 1995); *In re U.S. Steel Corp.*, 479 F.2d 489, 493-94 (6th Cir. 1973) (To reverse an earlier ruling, courts "must find some cogent reason to show

9

the prior ruling is no longer applicable . . . [such as] a clearly erroneous decision which would work a manifest injustice"); *Gen. Am. Life Ins. Co. v. Anderson*, 156 F.2d 615, 619 (6th Cir. 1946).

Here, CNH relies on the Supreme Court's holding in *Tackett* to argue that its motion should be granted despite the law of the case doctrine. (CNH's Br., at 1, Dkt. 439.) However, what the Supreme Court in *Tackett* directed the Sixth Circuit to do on remand is precisely what this Court already did several years ago: Apply ordinary principles of contract law to determine whether the parties' CBA created a vested right to retiree benefits without reliance on an inference in favor of either side. (Op. & Order, at 19-22, Dkt. 214.) *See also Reese*, 574 F.3d at 321; *Yolton*, 435 F.3d at 580. Because this Court has already ruled, it should apply the law of the case doctrine and deny CNH's motion.

## II.   THIS COURT'S HOLDING IS IN ACCORD WITH *TACKETT* BECAUSE IT USED ORDINARY PRINCIPLES OF CONTRACT LAW WITH NO RELIANCE ON THE *YARD-MAN* INFERENCE.

This Court's holding is in accord with *Tackett* because its holding was based on ordinary principles of contract law without reliance on the *Yard-Man* inference. Courts must use ordinary contract law principles when interpreting CBAs. *See Tackett*, 135 S. Ct. at 933 ("We interpret [CBAs] . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy").

10

Under ordinary contract law principles, the parties' intentions are controlling. *See Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682 (2010). To discern the parties' intentions, courts must look first at unambiguous contractual language and second to extrinsic record evidence; courts must stick to this two-step approach and cannot rely on an inference that places a thumb on the scale for either side. *Tackett*, 135 S. Ct. at 933-35.

In our case, this Court followed ordinary contract law principles by (1) relying on express contractual language, (2) examining extrinsic evidence and noting that it conformed with the intent evinced by the express language, and (3) not relying on the *Yard-Man* inference. (Op. & Order, at 19-22, Dkt. 214.) Thus, this Court's holding is consistent with *Tackett* and should not be reversed.

### A.   This Court Applied Ordinary Principles of Contract Law Because It Relied on Express Contractual Language.

This Court applied ordinary principles of contract law because it relied on express contractual language to conclude that CNH agreed to provide vested lifetime retiree healthcare benefits to Plaintiffs. Under ordinary principles of contract law, courts must interpret CBAs by looking first and foremost to the written terms of the CBA itself. *See Tackett*, 135 S. Ct. at 933.

If the written terms of a contract are unambiguous, then courts must interpret the meaning of the contract in accordance with those express terms. *Id.* ("Where the

11

words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent").

The concept that courts should first look to the express written terms of the parties' agreement is not a novel one; contrary to CNH's assertion, the concept has been a well-established principle of contract law for decades. *See* 11 Williston on Contracts § 30:6 (4th Ed.) ("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent"); *Kellogg Co. v. NLRB*, 457 F.2d 519, 524 (6th Cir. 1972) ("The intent is to be determined by the words of the contract when they are clear and explicit . . .").

Here, this Court understood and conformed to this principle. (Op. & Order, at 13, Dkt. 214) ("[T]he court should first look to the explicit language of the [CBA] for clear manifestations of intent.") After articulating the concept, this Court then followed it by relying on express contractual language to conclude that CNH agreed to provide vested lifetime retiree healthcare benefits to Plaintiffs. (*Id.* at 22-23) ("The Court concludes that the plain language of the relevant agreements . . . demonstrates [CNH's] and the UAW's intent to grant lifetime retiree health insurance coverage to retirees and surviving spouses of retirees who are eligible for or are receiving a pension.")

12

Specifically, this Court relied on the fact that the CBA at issue explicitly states that "[e]mployees who retire under the Case Corporation Pension Plan . . . , or their surviving spouses eligible to receive a spouse's pension . . . , shall be eligible for the Group benefits . . . ." (Op. & Order, at 4, Dkt. 214; Group Ins. Plan, at 65, Dkt. 439-3.) As this Court explained, the CBA then states that, with regard to these group benefits, "[n]o contributions are required for the Health Care Plans, Dental Plan, Vision Plan and Hearing Plan." (Op. & Order, at 4-5, Dkt. 214; Group Ins. Plan, at 67, Dkt. 439-3.) Thus, as long as these surviving spouses continue to receive a company pension, then CNH must continue paying the full premium cost of their medical insurance coverage. (Op. & Order, at 22, Dkt. 214; Group Ins. Plan, at 65-67, Dkt. 439-3.) This Court also relied on express language tying the benefits to receipt of a pension such that the CBA's expiration did not trigger an expiration of benefits. (Op. & Order, at 18, Dkt. 214). Finally, other contractual provisions support a conclusion that the parties intended to vest retiree healthcare benefits—e.g., the fact that other benefits were specifically limited. (*Id.* at 17.) *See also Yolton*, 318 F. Supp. 2d at 466-67.

The Sixth Circuit confirmed that this Court looked to the written terms of the CBA to hold that CNH agreed to provide vested lifetime retiree healthcare benefits to Plaintiffs. *Reese*, 574 F.3d at 321 ("[W]e give fresh review to the district court's

13

summary judgment ruling—that the 'plain language' of the contract conveyed an 'intent to grant lifetime retiree health insurance coverage to retirees,' . . . ").

**B.** **This Court Applied Ordinary Principles of Contract Law Because It Examined Extrinsic Record Evidence after Relying on Express Contractual Language.**

This Court applied ordinary principles of contract law because, after concluding that the contract expression was sufficient to vest the benefits, the Court went on to find that extrinsic evidence supported vesting even if the contract was ambiguous. When contractual language does not show an express intent, traditional principles of contract law require courts to examine extrinsic evidence as the means for determining the parties' intent. *See Tackett*, 135 S. Ct. at 935 (explaining that a court may derive its assessment of likely behavior from record evidence); 135 S. Ct. at 938 (Ginsburg, J., concurring) ("[W]hen the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties"); *Zanghi v. Freightcar Am., Inc.*, No. 3:13-cv-146, at 46 (W.D. Pa. Mar. 30, 2015) ("The parties' [CBAs] are ambiguous . . . . Thus, . . . the Court may look to extrinsic evidence to determine the intentions of the parties").

The concept that courts should use extrinsic record evidence as a means of discerning the parties' intent when the contract terms are ambiguous is not new; this concept has been a well-established principle of contract law for over 100 years. *See Ins. Co. v. Dutcher*, 95 U.S. 269, 273 (1877) ("There is no surer way to find out what

14

the parties meant, than to see what they have done"); *Del Valle v. BellSouth Telcomms., Inc.*, 200 Fed. Appx. 528, 534-35 (6th Cir. 2006) (holding that the district court properly considered extrinsic record evidence to verify the parties' intent); *Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 586 (1st Cir. 1993) ("If the language of the contract is ambiguous, we turn to surrounding circumstances, undisputed extrinsic evidence, to divine the parties' intent"); 11 Williston on Contracts § 30:7 (4th ed.) (explaining that, when a written contract is ambiguous, "relevant extrinsic evidence of the parties' intent" should be considered).

In our case, while this Court relied on express contractual language, the Court also found that extrinsic evidence confirmed that CNH agreed to provide vested lifetime retiree benefits. (Op. & Order, at 22, Dkt. 214). First, CNH and UAW repeatedly referred to the disputed benefits as being vested for life. *Yolton*, 318 F. Supp. 2d at 468-70. From 1971 through 2002, CNH benefit representatives consistently and unequivocally informed retiring employees, retirees, and surviving spouses that they were entitled to "continued," "free," and "unchanged" healthcare benefits "at no cost" for their "lifetime." *Id.* at 469. (*See also* Pls.' Mot., at 14-27, Dkt. 129.)

Second, the 1995 CBA contained a side letter (a/k/a, a "Cap Letter") that had specific dollar caps on CNH's future obligation for retiree health benefits. (Op. &

Order, at 18-19, Dkt. 214.) Importantly, after El Paso notified *Yolton* retirees that it intended to impose the caps and require premium contributions, UAW insisted and CNH agreed to eliminate the Cap Letter during the 1998 CBA negotiations. (*Id.* at 6.) By doing so, CNH acknowledged an unlimited liability for future healthcare costs. (*Id.* at 4-7; Pls.' Mot., at 12-15, Dkt. 129.)

Third, when the retiree benefits were negotiated in 1971 with the operative contract language—language that remained unchanged through the 1998 CBAs—the company's Benefits Manager wrote to the retirees and told them what the company had agreed to do for them. (Pls.' Mot., at 15-16, Dkt. 129.) In this letter, he explicitly stated: "Retirees and Surviving Spouses . . . are not required to pay a premium, either for themselves or any dependent. Instead, the coverage shall be fully paid by the Company." (*Id.* at 16.) Furthermore, this letter went on to state: "If you have elected the Spouse's Optional Form of Pension . . . , your spouse will be able to keep this coverage for the remainder of her lifetime." (*Id.*)

Fourth, before the East Moline plant closed in 2004, CNH and UAW entered into a plant closing agreement. (Op. & Order, at 7, Dkt. 214.) The parties negotiated four types of closing benefits options, one of which was the "Special Early Retirement Option." (East Moline Shutdown Agmt., at 14, Sept. 7, 2010, Dkt. 290-2.) The Special Early Retirement Option stated that "[t]he economic closedown benefits and the eligibility rules . . . set forth in this Shutdown Agreement shall not

16

be altered by any subsequent agreements in any future negotiations." (*Id.* at 19.) This Court held that retiree healthcare was one of the economic closedown benefits, citing to specific provisions of the Shutdown Agreement where retiree insurance benefits were expressly included as economic closedown benefits. (Op. & Order, at 7-8, Dkt. 214.) The fact that the parties intended the healthcare benefits to continue without modification despite the plant closing is evidence of the parties' intent to vest benefits for life as part of the ordinary course of conduct. (Pls.' Mot., at 27-30, Dkt. 129.)

Finally, there is a wealth of additional extrinsic evidence in the form of CNH's own actions and words for over twenty-five years showing exactly what CNH intended. (*Id.* at 12-30.)

### C.   This Court Applied Ordinary Principles of Contract Law Because It Did Not Rely on the *Yard-Man* Inference Rejected by *Tackett*.

This Court applied ordinary principles of contract law because it completed the two-step approach discussed above without relying on the *Yard-Man* inference. The Supreme Court held in *Tackett* that courts cannot, when confronted with ambiguous contractual language and a dearth of extrinsic record evidence, rely on the inference approved of in *Yard-Man*. *See* 135 S. Ct. at 935 (vacating the Sixth Circuit's ruling because it was based on the *Yard-Man* inference that placed a thumb on the scale in favor of vesting). Specifically, the Supreme Court stated: "[T]he Sixth Circuit sided with the retirees, relying on its conclusion in [*Yard-Man*] that retiree

health care benefits are unlikely to be left up to future negotiations. We . . . conclude that such reasoning is incompatible with ordinary principles of contract law." *Id.*

The *Yard-Man* court created and applied an inference in favor of vesting because the contractual language at issue was ambiguous and there was no extrinsic evidence of intent on which to rely. In scenarios where the contractual language is unambiguous or where extrinsic record evidence sufficiently demonstrates intent, the *Yard-Man* inference is not implicated. Thus, in *Yard-Man*, the parties chose to rely exclusively on the contractual terms without presenting any extrinsic evidence of intent. *Id.* at 1480 n.1. The problem was that the Sixth Circuit determined that the contract terms were ambiguous. *Id.* at 1480. Faced with an ambiguous CBA and no extrinsic evidence, the Sixth Circuit relied on the inference as a tie-breaker. *Id.* at 1482 ("[I]t is unlikely that such benefits, which are typically understood as a form of delayed compensation . . . , would be left to the contingencies of future negotiations").

In our case, this Court did not rely on the *Yard-Man* inference to determine that CNH agreed to provide vested lifetime retiree healthcare benefits to Plaintiffs. (Op. & Order, at 22-23, Dkt. 214.) Rather, this Court relied on the plain language of CNH's agreement, which was supported by extrinsic evidence. (*Id.*) ("The Court concludes that the plain language of the relevant agreements, as further supported by extrinsic evidence, demonstrates [CNH's] and the UAW's intent to grant lifetime

18

retiree health insurance coverage to retirees and surviving spouses of retirees who are eligible for or are receiving a pension.")

The Sixth Circuit in this case verified that this Court relied not on the *Yard-Man* inference but on the CBA's written terms. *See Reese*, 574 F.3d at 321 ("[W]e give fresh review to the district court's summary judgment ruling—that the 'plain language' of the contract conveyed an 'intent to grant lifetime retiree health insurance coverage to retirees,' . . . "). Indeed, the Sixth Circuit explained that this Court specifically chose not to rely on the *Yard-Man* inference. *See Yolton*, 435 F.3d at 580 ("[T]he court's analysis does not in any sense *rely* on an inference").

### D.   Contrary to CNH's Assertion, *Tackett* Did Not Reset the Law Regarding Vesting of Retiree Healthcare Benefits.

CNH mischaracterizes *Tackett* as resetting the law on vesting of retiree healthcare benefits. (CNH's Br., at 4, Dkt. 439.) As part of this mischaracterization, CNH sets forth a number of purported "rules of construction that must now govern construction of CBAs." (*Id.* at 6.) These alleged rules are not rules at all, and most of them do not even bear any relation to this case.[5] Two of these "rules," however, require further discussion.

---

[5] First, CNH points out that the Supreme Court stated that "[p]arties . . . can and do voluntarily agree to make retiree benefits a subject of mandatory collective bargaining." (CNH's Br., at 6, Dkt. 439.) This statement is irrelevant because, in our case, no one claims that retiree benefits were a mandatory bargaining subject. (*Id.*) Second, CNH points out that the Supreme Court stated that "retiree health care benefits are not a form of deferred compensation" under ERISA. (*Id.*) The problem

    1.    **<u>CNH incorrectly asserts that general durational clauses end all benefits on termination of the CBA even when extrinsic evidence evinces a contrary intent.</u>**

First, CNH incorrectly asserts that a general durational clause will end all benefits on termination of the CBA even when extrinsic evidence demonstrates an intent to continue those benefits. (*Id.* at 9-10.) In reality, because the parties' intent is dispositive for contract interpretation, if evidence shows an intent to continue the retiree benefits beyond the life of the agreement, then courts are obligated to adhere to that intent. *See Tackett*, 135 S. Ct. at 937 (explaining that, while contractual obligations might usually cease upon termination of a CBA, such a principle "does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees").

Indeed, as a general rule, the expiration of a CBA will not end obligations accrued under the contract that have not yet been satisfied. *Id.* (holding that a CBA may provide that certain benefits continue after the agreement's expiration) (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991)); *Litton,* 501 U.S. at 206-07 (holding that post-expiration rights may arise from the terms of the CBA and that

---

is that the Supreme Court did not hold that this is now a rule of construction. *Tackett*, 135 S. Ct. at 936. Rather, the Supreme Court discussed deferred compensation simply as a means of explaining the shortcomings of the *Yard-Man* inference. *Id.* In our case, this Court never suggested that it viewed retiree benefits as a form of deferred compensation. (Op. & Order, Dkt. 214.) Furthermore, ERISA cannot govern the intent of parties who negotiated the original contract language under review in 1971—five years before ERISA even existed (in 1976). (*Id.* at 4.)

whether obligations survive a contract's expiration is determined by contract interpretation). Thus, in *Litton,* which was cited to and approved by the *Tackett* decision, the Supreme Court explained that a CBA's expiration does not end "obligations already fixed under the contract but as yet unsatisfied." 501 U.S. at 206. In the Supreme Court's words: "Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement." *Id.* at 207.

### 2.   <u>CNH incorrectly asserts that explicit lifetime language is the only way a party can show an intent to vest.</u>

CNH incorrectly asserts that, if a contract is silent as to the duration of retiree benefits, then courts are not allowed to find that the parties intended those benefits to vest for life. (CNH's Br., at 2, Dkt. 439.) First, as a factual matter, CNH's assertion is beside the point because the CBA at issue in our case *does* contain express language demonstrating an intent to vest. (Op. & Order, at 4-5, 22, Dkt. 214.)

Second, as a legal matter, contractual obligations (such as lifetime vesting) may arise due to the express *or implied* terms of the agreement. *Tackett*, 135 S. Ct. at 937-38 (Ginsburg, J., concurring) ("[N]o rule requires clear and express language in order to show that parties intended health-care benefits to vest. Constraints upon the employer after the expiration date of a [CBA] . . . may . . . arise from implied terms of the expired [CBA]") (internal quotation marks and citation omitted); *Litton*, 501 U.S. at 206-07 (holding that post-expiration rights may "arise from the express *or implied* terms of the agreement itself") (emphasis added).

21

Said differently, *Tackett* teaches that contractual ambiguity cannot be resolved by a judicially mandated inference and that courts must instead look to actual evidence to determine the parties' intent to vest. *See Tackett*, 135 S. Ct. at 937. Thus, in *Tackett*, the contract at issue lacked a specific durational clause for retiree benefits, and the Supreme Court nevertheless remanded the case to allow the Sixth Circuit to apply ordinary rules of contract law. *Id.* If the Supreme Court believed that an express term granting lifetime benefits was necessary, then the absence of one in *Tackett* would have been dispositive and there would have been no reason to remand the case. *Id. See also Zanghi*, No. 3:13-cv-146, at 46 ("The parties' [CBAs] are ambiguous . . . . Thus, . . . the Court may look to extrinsic evidence to determine the intentions of the parties").

CNH supports its misreading of *Tackett* by relying on *Sprague v. Gen. Motors Co.*, 133 F.3d 388 (6th Cir. 1988). The problem is that *Tackett* does not hold that the standard enunciated in *Sprague* applies to the interpretation of CBAs. 135 S. Ct. at 937. Rather, *Tackett* merely notes the standard's inconsistency with the *Yard-Man* inference. *Id. See also Price v. Bd. of Trustees of Ind. Laborer's Pension Fund*, 632 F.3d 288, 294 (6th Cir. 2011) (finding the *Yard-Man* inference inapplicable to disability pension benefits *and* that *Sprague* does not apply to collectively bargained benefits).

22

Finally, CNH made this argument before, and it was squarely rejected by the Sixth Circuit. *Reese*, 574 F.3d at 329 ("CNH insists that, if the retirees had [sued] . . . under ERISA, the *Sprague* standard would have applied, and the retirees would have lost because they would not have been able to point to 'clear and express language' . . . . This argument begins from a false premise . . . [because] *Sprague* is limited to cases in which an employer unilaterally instituted a retiree benefit program") (internal citation and quotation marks omitted).

## III.   CNH'S MOTION IS UNTIMELY BECAUSE THIS COURT SHOULD WAIT FOR GUIDANCE FROM THE SIXTH CIRCUIT'S REVIEW OF *TACKETT* ON REMAND.

To the extent that this Court has concerns over the impact of *Tackett* on the issue of vesting, this Court should wait for guidance from the Sixth Circuit's review of *Tackett* on remand.

Here, the Sixth Circuit will (and should) have the first opportunity to determine the impact of the *Tackett* decision, in *Tackett*. 135 S. Ct. at 930. The Sixth Circuit will also be examining this issue in another matter that is currently stayed pending the outcome in *Tackett*. *See USW v. Kelsey-Hayes Co.*, 750 F.3d 546 (6th Cir. 2014). The first round of briefing in *Tackett* on remand is due on April 17, 2015. Given that the Sixth Circuit will be reviewing the legal issues raised in CNH's motion relatively soon, it would be inefficient for this Court to spend judicial resources to preemptively determine what the Sixth Circuit will do.

23

## CONCLUSION

What the Supreme Court in *Tackett* directed the Sixth Circuit to do on remand is precisely what this Court already did several years ago: Apply ordinary principles of contract law to determine whether the parties' CBA created a vested right to retiree benefits without reliance on an inference in favor of either side. Because the language in CNH's CBA with UAW expressly vested the benefits, this Court had no need to venture beyond the contract terms and tread into the now-extinct territory of the *Yard-Man* inference. And since this Court did not rely on the *Yard-Man* inference rejected in *Tackett*, there is no basis for reaching back through two Sixth Circuit decisions and two opinions of this Court to upset the established law of this case. For this reason, Plaintiffs request that this Court deny CNH's Motion for Summary Judgment.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C.

By:*/s/Darcie R. Brault*
David R. Radtke (P47016)
Darcie R. Brault (P43864)
Attorneys for Class Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
(248) 354-9650
dbrault@michworklaw.com

April 3, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2015 I electronically filed the foregoing paper

with the Clerk of the Court using the ECF system which will serve it on all parties.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: */s/Darcie R. Brault*
Darcie R. Brault (P43864)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
(248) 354-9650
dbrault@michworklaw.com

P:\RHC Cases\Case Corp\Case - Reese litigation\Pleadings\Pl's Resp to CNH's MSJ 2015.docx