# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JACK REESE, FRANCES ELAINE PIDDE, JAMES CICHANOFSKY, ROGER MILLER, and GEORGE NOWLIN,

          Plaintiffs,

v.

CNH INDUSTRIAL N.V. and CNH INDUSTRIAL AMERICA, LLC,

          Defendants.

Case 2:04-cv-70592-PJD-PJK

Hon. Patrick J. Duggan, U.S.D.J.

Hon. Paul J. Komives, U.S. Mag. J.

## CNH'S REPLY IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Bobby R. Burchfield
 *Counsel of Record*
Nikesh Jindal
David M. Barnes
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
bburchfield@kslaw.com
njindal@kslaw.com
dbarnes@kslaw.com

*Counsel for CNH Industrial N.V. and CNH Industrial America LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT ..........................................................................................................1

I. THE LANGUAGE OF THE 1998 GROUP BENEFIT PLAN DEFEATS VESTING...................................................................................3

    A. Clear and Explicit Language Is Necessary To Overcome the Express Durational Limit in the 1998 CBA. .........................................4

    B. The Language Cited by Plaintiffs Does Not Vest Benefits. .................7

    C. The Supreme Court Rejected Each of the Purported "Ordinary Principles of Contract Law" Relied Upon by Plaintiffs and This Court in *Reese I*. .......................................................................................8

II. THE LAW OF THE CASE DOCTRINE DOES NOT APPLY. ...................11

III. *TACKETT* IS CLEAR ON ITS FACE AND REQUIRES NO "INTERPRETATION" FROM THE SIXTH CIRCUIT...............................12

CONCLUSION .....................................................................................................13

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
    117 S. Ct. 1997 (1997) ........................................................................................12

*Ayers v. Hudson*,
    623 F.3d 301 (6th Cir. 2010) ..................................................................................6

*B.G. ex rel. Hawk v. Easton Area Sch. Dist.*,
    725 F.3d 293 (3d Cir. 2013) ...................................................................................5

*EEOC v. K-Mart Corp.*,
    796 F.2d 139 (6th Cir. 1986) ................................................................................11

*Hegler v. Borg*,
    50 F.3d 1472 (9th Cir. 1995) ................................................................................11

*International Union, UAW v. Winters*,
    385 F.3d 1003 (6th Cir. 2004) ................................................................................6

*International Union, UAW v. Yard-Man, Inc.*,
    716 F.2d 1476 (6th Cir. 1983) ............................................................................1, 2

*Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v NLRB*,
    501 U.S. 190 (1991) ................................................................................... 4, 7, 13

*M&G Polymers USA, LLC v. Tackett*,
    135 S. Ct. 926 (2015) ................................................................................. passim

*Noe v. PolyOne Corp.*,
    520 F.3d 548 (6th 2008) ........................................................................................7

*Reese v. CNH America LLC*,
    574 F.3d 315 (6th Cir. 2009) ....................................................................... passim

*Reese v. CNH America LLC*,
    694 F.3d 681 (6th Cir. 2012) ..............................................................................1, 8

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ..................................................................................4

*United States v. Anglin*,
    601 F.3d 523 (6th Cir. 2010) ................................................................................12

*USW v. Kelsey-Hayes Co.*,
    750 F.3d 546 (6th Cir. 2014) ................................................................................12

*Yolton v. El Paso Tennessee Pipeline Co.*,
    435 F.3d 571 (6th Cir. 2006)..............................................................................1

# ARGUMENT

Once before, Plaintiffs led this Court into error by misinterpreting controlling precedent.[1] Now, they assert no less than **eight times** that neither this Court nor the Sixth Circuit relied on "the Yard-Man inference" [singular].[2] Giving Plaintiffs the benefit of the doubt, they appear to be arguing that this Court did not rely on the *Yard-Man* "status inference." Even a quick reading of the Supreme Court's decision in *Tackett* makes plain, however, that the Court rejected all "inference*s* [plural] applied in *Yard-Man* **and its progeny**" as well as all rules of "contract interpretation" in that line of Sixth Circuit decisions. *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 935–37 (2015). As demonstrated in CNH's opening brief, Plaintiffs cannot deny that this Court and the Sixth Circuit based their vesting decisions in this very case on rules of contract interpretation found in

---

[1] *Reese v. CNH America LLC*, 694 F.3d 681, 685 (6th Cir. 2012) ("*Reese II*") ("The plaintiffs and the district court misread the panel opinion.").

[2] *See* Pls.' Br. at 1 (twice), 6, 9, 11, 18, 19, 24. Twice, Plaintiffs quote *Yolton* to the effect that "the court's analysis does not in any sense *rely* on an inference." *Id.* at 6, 19 (quoting *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 580 (6th Cir. 2006)). From the page preceding this quotation, it is clear that the *Yolton* Court was discussing the *Yard-Man* status inference. "Thus, 'retiree benefits are in a sense " 'status' " benefits which, as such, carry with them an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree.' " *Id.* at 579 (quoting *International Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir. 1983)). The Sixth Circuit was not saying, by any means, that this Court had not relied on any of the other "inferences" or "rules of contract interpretation" pronounced in *Yard-Man* and its progeny. In any event, in *Reese I*, the Sixth Circuit relied on several "rules of construction" explicitly rejected by the Supreme Court. *See* CNH Open. Br. at 5–7.

*Yard-Man* and its progeny. Nor can they deny that the Supreme Court explicitly rejected those rules and set forth in their stead "the correct legal principles" to govern vesting determinations. *Id.* at 937.

Plaintiffs also repeatedly assert that the vesting decision in this case rests on nothing more than "ordinary contract law principles." *See, e.g.*, Pls.' Opp. Br. at 11. But they ignore the fundamental impact of *Tackett:* Rules the Sixth Circuit denominated as nothing more than ordinary principles of contract law were emphatically rejected by the Supreme Court, which substituted in their stead very different "correct legal principles." As the Supreme Court wrote: "The Court of Appeals has long insisted that its *Yard-Man* inferences [again plural] are drawn from ordinary contract law. In *Yard-Man* itself, the court purported to apply 'traditional rules for contractual interpretation.' " 135 S. Ct. 933–34 (quoting 716 F.2d at 1479). Yet, after reviewing a multitude of these purported rules and inferences, the Supreme Court made clear at least four times that these rules are not consistent with ordinary rules of contract law. "We disagree with the Court of Appeals' assessment that the inferences applied in *Yard-Man* and its progeny represent ordinary principles of contract law." *Id.* at 935. *See also id.* at 933 (the *Yard-Man* "inferences conflict with ordinary principles of contract law"); *id.* at 936 ("[T]he Court of Appeals misapplied other traditional principles of contract law . . ."); *id.* at 937 (rejecting "Yard-Man inferences as inconsistent with ordinary

2

principles of contract law"). Plaintiffs' desperate attempt to rewrite the Supreme Court's decision cannot disguise the frailty of their position. Under the "correct legal principles," summary judgment for CNH is appropriate.

### I.  THE LANGUAGE OF THE 1998 GROUP BENEFIT PLAN DEFEATS VESTING.

Plaintiffs argue that, even when the contract contains an express durational limitation governing its term, as the 1998 CBA does here,[3] "contractual obligations (such as lifetime vesting) may arise due to the express *or implied* terms of the agreement." Pls.' Br. at 21 (emphasis in original). They then contend that various provisions in the 1998 CBA support an inference "that the parties intended to vest retiree healthcare benefits." *Id.* at 13. In other words, even though Plaintiffs purport to rely on "express contractual language" in support of their claim to vesting, *see id.* at 5–6, 11, 14, 16, Plaintiffs are really asking this Court to *infer* an intent to provide lifetime health benefits from various "implied provisions" of the parties agreement. Not only does Plaintiffs' argument conflict with the rule announced by the Supreme Court in *Tackett*, requiring "clear" and "explicit" language of an intent to create a lifetime obligation, but each of the so-called "implied terms" relied upon by Plaintiffs are no more than the very "inferences

---

[3] *See* 1998 Cent. Agmt. Art. 15 (Ex. B) ("This Agreement . . . shall continue in full force and effect *through May 2, 2004*." (emphasis added)); *see also id.* Art. 14 § 4 ("the group insurance plan agreed to between the parties will run concurrently with this Agreement and is hereby made a part of this Agreement").

announced in *Yard-Man* and its progeny" that the Supreme Court rejected in *Tackett*.

### A. Clear and Explicit Language Is Necessary To Overcome the Express Durational Limit in the 1998 CBA.

As shown in CNH's opening brief (at 7–8), the Supreme Court instructed courts to look for "clear and express language" indicating an intent to vest retiree benefits. It did so in two ways. First, it contrasted *Yard-Man's* failure to require a "clear manifestation of intent" to vest collectively-bargained retiree health benefits with adherence to this ordinary principal of contract interpretation in *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) ("the intent to vest must be found in the plan documents and must be stated in clear and express language"). *See* 135 S. Ct. at 937. Second, just three sentences later, it reemphasized the need for such clear and express language to vest benefits *in a collective bargaining agreement* by acknowledging that benefits can continue beyond the stated term of the contract but "a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration." 135 S. Ct. at 937 (quoting with alteration *Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v NLRB*, 501 U.S. 190, 207 (1991)).

Plaintiffs respond to this critical passage by obfuscating it. First, although admitting that "*Litton* . . . was cited to and approved by the *Tackett* decision," they quote other irrelevant passages of *Litton*, not the passages the Supreme Court

4

deemed relevant to the vesting decision. *Compare* Pls.' Br. at 20–21 *with Tackett*, 135 S. Ct. at 937. They dismiss the Supreme Court's citation to *Sprague* as "merely not[ing] the [*Sprague*] standard's inconsistency with the *Yard-Man* inference." Pls.' Br. at 22. They do not even try to explain why the Supreme Court drew that contrast, especially when the Court was roundly rejecting the *Yard-Man* inferences. Next, Plaintiffs quote the Sixth Circuit in *Reese I* as limiting *Sprague* " 'to cases in which an employer unilaterally instituted a retiree benefit program.' " *Id.* at 23 (quoting *Reese v. CNH America LLC*, 574 F.3d 315, 329 (6th Cir. 2009)). But again, *Tackett* rejected the underpinning of that quotation.

As their final gambit, Plaintiffs point to Justice Ginsburg's concurrence, which states her view that "no rule requires clear and express language in order to show that the parties intended health-care benefits to vest." Pls.' Br. at 21 (quoting 135 S. Ct. at 938).[4] Courts in this Circuit and elsewhere have repeatedly made plain, however, that "when an individual justice's vote is not needed to form a majority, the meaning of the majority opinion is to be determined *from the opinion itself*"; "the gloss that an individual justice chooses to place upon [that opinion] is not authoritative." *B.G. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 310 (3d Cir. 2013) (emphasis added); *see also Ayers v. Hudson*, 623 F.3d 301, 308 (6th

---

[4] Plaintiffs' earlier reliance on a concurring opinion in *Reese I* led this Court into error and reversal in *Reese II*.

5

Cir. 2010) (similar); *International Union, UAW v. Winters*, 385 F.3d 1003, 1011–12 (6th Cir. 2004) (similar).

Ultimately, Plaintiffs can neither reason away *Tackett*'s requirement of "clear and express language" to vest benefits, nor point to any such language in the 1998 CBA or GBP. For this reason, summary judgment for CNH is appropriate.

But the 1998 GBP and CBA go even further to defeat vesting. The 1998 GBP ran concurrently with, and was part of, the 1998 CBA, and thus terminated with the 1998 CBA on May 2, 2004. *See* SUMF ¶ 3; 1998 Cent. Agmt. Art 14 § 4 (Ex. B) ("the group insurance plan agreed to between the parties will run concurrently with this Agreement and is hereby made a part of this Agreement"); *id.* § 15 ("This Agreement . . . shall continue in full force and effect through May 2, 2004"). Any right to contribution-free health benefits was, therefore, explicitly limited to the term of the 1998 CBA. As the side letter executed by the parties made plain: "*Over the term of the 1998 labor agreement* . . . retirees . . . will not have to pay any additional employee contributions" other than those explicitly required to enroll in the plan. *See* SUMF ¶ 5 (emphasis added).[5]

Under *Yard-Man*, neither this Court nor the Sixth Court could even consider the general durational provision in its analysis. *See Noe v. PolyOne Corp.*, 520

---

[5] Plaintiffs argue — yet again — that CNH is misrepresenting the meaning of the "Cost of Health Coverage Letter." Pls.' Br. at 2. To the contrary, six years ago the Sixth Circuit rejected Plaintiffs' interpretation of that letter and adopted CNH's interpretation in *Reese I.* 574 F.3d at 325.

6

F.3d 548, 555 (6th 2008). " 'Absent specific durational language referring to retiree benefits themselves,' a general durational clause *says nothing* about the vesting of retiree benefits." *Id.* (emphasis added). *Tackett* rejected that dubious rule. 136 S. Ct. at 936 (rejecting the rule announced in *Noe*). In light of the "traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement,' " courts must, after *Tackett*, enforce general durational clauses unless "clear and explicit" terms indicate an intent for those rights to survive after the contract ends. *Id.* at 937 (quoting *Litton*, 501 U.S. at 207). As the High Court explained, failing to enforce such clauses "distort[s] the text of the agreement and conflict[s] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." *Id.* at 936.

### B. The Language Cited by Plaintiffs Does Not Vest Benefits.

Plaintiffs are unable to specify any contractual language that can, in the post-*Tackett* world, support vesting. *See* Pls.' Br. at 13 (listing the various terms from which an intention to vest may be inferred or implied). They point out that the GBP specified that eligible retirees or their surviving spouses "shall be *eligible* for the Group benefits." (*See* 1998 GBP § 6(i)(1)(a) (Ex. A) (emphasis added)); *see also Reese I*, 574 F.3d at 322 (quoting provision). And it stated that for certain eligible retirees or their surviving spouses, "no contributions" would be required.

7

(*See* 1988 GBP § 6(I)(3)(b)(1) (Ex. A)); *see also Reese I*, 574 F.3d at 322 (citing provision). But this language refers to the amount of the employer's contribution *during the term* of the 1998 GBP. (1998 Cent. Agmt. Art 14 § 4 (Ex. B); *id.* § 15). It says nothing about extending the duration of the benefits beyond that term. As the *Tackett* Court explained, "[w]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." 135 S. Ct. at 937.[6]

### C. The Supreme Court Rejected Each of the Purported "Ordinary Principles of Contract Law" Relied Upon by Plaintiffs and This Court in *Reese I*.

Lacking any express language to support their argument that their health benefits are vested — much less the "clear" and "explicit" language required by *Tackett* — Plaintiffs ask this Court to infer an intention to vest from various provisions in the 1998 GBP and/or the 1998 CBA. *See* Pls.' Br. at 17–18. Each of the inferences Plaintiffs ask this Court to make, however, are "inferences" the Supreme Court rejected as "incompatible with ordinary principles of contract law" in *Tackett.* 135 S. Ct. at 930.

For example, plaintiffs argue that this Court should infer an intention to vest health benefits from the "express language tying the [health] benefits to receipt of a

---

[6] Plaintiffs also reiterate their argument that the East Moline Shutdown Agreement created vested benefits. Pls.' Br. at 16–17. The Sixth Circuit rejected this argument in *Reese II*. 694 F.3d at 686 ("Nothing in the agreement speaks to healthcare.").

8

pension." Pls.' Br. at 13. In other words, Plaintiffs argue that because pension benefits are lifetime benefits and because the 1998 CBA states that "employees who retire under the Case Corporation Pension Plan . . . or their surviving spouses eligible to receive a spouse's pension" are also "entitled" to health benefits, the Court should infer that health benefits (like pension benefits) are vested. *See id.* This Court and the Sixth Circuit followed that exact rational in finding Plaintiffs' benefits vested in *Reese I*. R.214, Op & Order 14 n.9; *see id.* at 16–18; *see also Reese I*, 574 F.3d at 319 (noting the "centrality of the tying rational" to its analysis under a "materially identical" CBA in *Yolton*).

Plaintiffs' "tying" argument flies in the face of *Tackett*. The Supreme Court twice addressed, and twice rejected, the notion that contractual language somehow "tying" of eligibility for health benefits to eligibility for pension benefits provided a basis for vesting. 135 S. Ct. at 935, 937. It did so first in its review of general rules of contact construction that have grown out of *Yard-Man*. *See id.* at 935. It did so again in the final section of the Opinion when it specifically rejected the Sixth Circuit's reliance on the tying analysis in *Tackett* as a reason to disregard the general durational limit in the CBA in that case. *Id.* at 937.

Next, Plaintiffs contend that while "other contractual provisions" are "specifically limited" in time — retiree health benefits have no such limitation; accordingly, they say, the Court should infer those benefits were intended to run

9

for life. *See* Pls.' Br. at 13. This Court and the Sixth Circuit in *Reese I* followed *Yard-Man* and accepted this rationale as an important basis for inferring an intent to create vested, lifetime benefits. R.214, Op & Order 16–18. *See, e.g.*, *Reese I*, 574 F.3d at 323 (noting that the health benefit provisions "do not contain a specific durational clause while other benefit provisions in the CBA contain such clauses").

But once again, the Supreme Court in *Tackett* expressly rejected that inference. The plaintiffs in *Tackett* — exactly like the Plaintiffs here — argued that various limitations governing retiree benefits suggested an intent to vest that the retirees' health benefits for life. 135 S. Ct. at 936. Again, the Supreme Court disagreed, explaining that such an inference fails to give effect to the durational clause in the CBA. *Id.*

In a final effort to support their position, Plaintiffs reach to extrinsic evidence in an effort to show the benefits vested. Pls.' Br. at 15–16. To begin, extrinsic evidence has no bearing on this case in which the contract contains an express durational limitation and contains no other indication that the health benefits were intended to be vested. It is also noteworthy that the CBA contains an integration clause. *See* 1998 Cent. Agmt. Art. 14 § 9 (Ex. B) ("This Agreement disposes of any and all bargaining issues, whether or not presented during negotiations, except with respect to the processing of grievances as provided in Article VII"). Finally, the Sixth Circuit in *Reese I* found this evidence

10

unpersuasive. *Reese I*, 574 F.3d at 326 ("Nor do the statements of company representatives to retirees show that these benefits were unalterable as a matter of law."). Plaintiffs' claim fails as a matter of law and this Court should grant summary judgment to CNH accordingly.

## II. THE LAW OF THE CASE DOCTRINE DOES NOT APPLY.

In an effort to prevent this Court from considering the import of *Tackett* on this case, Plaintiffs also argue that the "law of the case doctrine precludes this Court from revisiting" its vesting decision. Pls.' Br. at 9. But that doctrine does not apply when an intervening decision of a superior court undercuts the basis of the court's prior ruling. *EEOC v. K-Mart Corp.*, 796 F.2d 139, 146 (6th Cir. 1986) (rejecting argument that prior decision was law of the case and explaining that "[w]hatever weight" prior decision was entitled "it clearly cannot control as opposed to an opposite view expressed in final language by the United States Supreme Court in a similar case"). *See Hegler v. Borg*, 50 F.3d 1472, 1478 (9th Cir. 1995) ("We *must* apply intervening Supreme Court authority to a subsequent appeal . . .") (emphasis added).

As the Supreme Court has explained, the law of the case doctrine is "not absolute" and when intervening decisions suggest the case would be decided differently under current law, adhering to the prior ruling "would undoubtedly work a 'manifest injustice' such that the law of the case doctrine does not apply."

11

*Agostini v. Felton*, 117 S. Ct. 1997, 2017 (1997); *see also United States v. Anglin*, 601 F.3d 523, 527 (6th Cir. 2010) (similar).

There is no doubt that *Tackett* undercuts the basis of this court's prior ruling. As explained above, both this Court and the Sixth Circuit in *Reese I* relied on several of the *Yard-Man* inferences and rules of construction in finding Plaintiffs' benefits vested. As in *Tackett* itself, both this Court and the Sixth Circuit "framed [their] vesting analysis from beginning to end in light of the principles . . . announced in *Yard-Man* and its progeny." 135 S. Ct. at 937. The Supreme Court in *Tackett* has now directly and emphatically rejected those then-binding rationales. And, as in *Tackett*, this Court must reconsider the vesting decision in light of the "correct legal principles" announced in *Tackett*.

### III. *TACKETT* IS CLEAR ON ITS FACE AND REQUIRES NO "INTERPRETATION" FROM THE SIXTH CIRCUIT.

In a final effort to delay the inevitable, Plaintiffs argue that this Court should wait to rule on this motion until the Sixth Circuit has a chance to consider the *Tackett* ruling in either *Tackett* itself (which is on remand) or in another case involving a claim to lifetime health benefits currently before the Sixth Circuit, namely *USW v. Kelsey-Hayes Co.*, 750 F.3d 546 (6th Cir. 2014). Pls.' Br. at 19–20.

The rule in *Tackett* is clear; it requires no additional "interpretation" from the Sixth Circuit. In light of the "traditional principle that 'contractual obligations

12

will cease, in the ordinary course, upon termination of the bargaining agreement,' " any intent to set aside this "traditional principle" must be clear and express from the contract itself. 135 S. Ct. at 937 (quoting *Litton*, 501 U.S. at 207). The absence of any "clear or express" language indicating an intent to vest Plaintiffs' benefits is fatal to Plaintiffs' claim. CNH has been defending this case for more than eleven years; it is time for this litigation to end and for this Court to grant summary judgment in favor of CNH.[7]

## CONCLUSION

For the reasons set forth above and those in Defendants' opening brief, Defendants urge the Court to set aside the earlier decision on vesting and to grant summary judgment for Defendants in the vesting issue.

Respectfully Submitted,

/s Bobby R. Burchfield
Bobby R. Burchfield
 *Counsel of Record*
Nikesh Jindal
David M. Barnes
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
bburchfield@kslaw.com
njindal@kslaw.com
dbarnes@kslaw.com

---

[7] In the event this Court adheres to the earlier vesting decision, CNH seeks consideration of its other pending motion seeking a ruling that its proposed changes are reasonable.

13

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2015, I electronically filed the foregoing CNH's Reply in Support of Its Motion for Summary Judgment with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

/s Bobby R. Burchfield
Bobby R. Burchfield