UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK REESE, et al.,

        Plaintiffs,

vs.

CNH INDUSTRIAL N.V., et al.,

        Defendants.

_____/

Civil Action No.
04-CV-70592

Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANTS' LATER-FILED MOTION FOR SUMMARY JUDGMENT (ECF NO. 439) AND DENYING ALL OTHER PENDING MOTIONS AS MOOT (ECF NOS. 419, 423 & 428)

## I.  INTRODUCTION

This matter is before the Court on remand, for a second time, from the United States Court of Appeals for the Sixth Circuit.  In August 2007, the Court granted summary judgment to Plaintiffs on their claim that they are entitled to irreducible retiree healthcare benefits from Defendants that survive the expiration of the pertinent collective bargaining agreement ("CBA"), which expired in 2004. *See Reese v. CNH Global N.V.*, No. 04-CV-70592, 2007 WL 2484989 (E.D. Mich. Aug. 29, 2007).  The Sixth Circuit affirmed the Court's holding that Plaintiffs are entitled to *some* healthcare benefits that survive the expiration of the CBA, holding that Defendants may not terminate *all* healthcare benefits for retirees, but

determined that the scope of the benefits can be reasonably altered. The *Reese I* panel remanded the action to this Court to determine how and in what circumstances benefits may be altered. *See Reese v. CNH Am. LLC*, 574 F.3d 315 (6th Cir. 2009) ("*Reese I*").

On remand, this Court again granted summary judgment to Plaintiffs, concluding that Defendants could not *unilaterally* change the level of retiree benefits. *See Reese v. CNH Global N.V.*, No. 04-CV-70592, 2011 WL 824585 (E.D. Mich. Mar. 3, 2011). Defendants once again appealed and the Sixth Circuit reversed, holding that Defendants can unilaterally reduce retiree benefits as long as the changes are reasonable. *See Reese v. CNH Am. LLC*, 694 F.3d 681 (6th Cir. 2012) ("*Reese II*"). The Sixth Circuit remanded for a determination whether the changes proposed by Defendants satisfy the reasonableness criteria that the panel articulated in *Reese II*.

Back in this Court for the third time, the parties filed cross-motions for summary judgment addressing the reasonableness of Defendants' proposed changes (ECF Nos. 419 & 423). Plaintiffs argue that the proposed changes are unreasonable; Defendants argue the opposite. In addition, Plaintiffs filed a motion to strike the declarations of two defense experts (ECF No. 428), which were submitted in support of Defendants' motion for summary judgment. The Court held oral argument on these motions on February 3, 2015.

Three weeks after oral argument, Defendants filed a second motion for summary judgment, arguing that Plaintiffs are not entitled to *any* healthcare benefits lasting beyond the expiration of the CBA in light of the United States Supreme Court's decision in *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015), which was issued earlier this year during the pendency of these second remand proceedings. Defendants contend that the conclusion of this Court and the Sixth Circuit that Defendants may not terminate retiree healthcare benefits is no longer viable in light of *Tackett*.

Defendants' second summary judgment motion is fully briefed and the Court will dispense with oral argument. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court agrees with Defendants that the previous determination that Plaintiffs are entitled to healthcare benefits lasting beyond the expiration of the CBA is no longer correct in light of *Tackett*. Constrained by the Supreme Court's decision, the Court has no choice but to grant Defendants' second summary judgment motion. Because Plaintiffs' retiree healthcare benefits do not survive the expiration of the CBA in light of *Tackett*, the Court does not consider whether Defendants' proposed changes to those benefits are reasonable, as that issue is now moot. Accordingly, the Court will deny as moot the parties' cross-motions for summary judgment and Plaintiffs' motion to strike.

## II. BACKGROUND

3

## A.  Factual

The  factual  background  of  this  case  is  well-known  to  the  parties  and  the
Court  and  is  not  repeated  here.   The  reader  is  directed  to  the  citations  contained  in
the  opening  two  paragraphs  of  this  Opinion  and  Order  for  a  detailed  recitation  of
the  facts.

## B.  Procedural

This  case  was  filed  in  February  2004,  almost  twelve  years  ago.   In  August
2007,  this  Court  granted  summary  judgment  in  favor  of  Plaintiffs,  holding  that  they
are  entitled  to  irreducible  lifetime  healthcare  benefits  under  the  terms  of  the  CBA
in  effect  at  the  time  of  their  retirement  ("1998  CBA").[1]

---

[1] The  Court  avoids  the  use  of  the  word  "vested"  in  this  Opinion  and  Order  because
the  precise  meaning  of  that  word  is  unclear  in  light  of  the  Sixth  Circuit's  decisions
in  *Reese*.   Prior  to  those  decisions,  "vested"  benefits  referred  to  benefits  that  last
forever  *at  a  fixed  level*.   *See,  e.g.*,  *Allied  Chem.  &  Alkali  Workers  of  Am.  v.
Pittsburgh  Plate  Glass  Co.*,  404  U.S.  157,  181  n.20,  92  S.  Ct.  383,  398  n.20  (1971)
("Under  established  contract  principles,  vested  retirement  rights  may  not  be  altered
without  the  pensioner's  consent.   The  retiree,  moreover,  would  have  a  federal
remedy  under  §  301  of  the  Labor  Management  Relations  Act  for  breach  of  contract
if  his  benefits  were  unilaterally  changed.");  *Moore  v.  Menasha  Corp.*,  690  F.3d
444,  450  (6th  Cir.  2012)  ("An  employer  that  contractually  obligates  itself  to
provide  vested  healthcare  benefits  renders  that  promise  'forever  unalterable.'");
*Yolton  v.  El  Paso  Tenn.  Pipeline  Co.*,  435  F.3d  571,  578  (6th  Cir.  2006)  ("If  a
welfare  benefit  has  vested,  the  employer's  unilateral  modification  or  reduction  of
those  benefits  constitutes  a  LMRA  violation.");  *Int'l  Union  v.  Loral  Corp.*,  107
F.3d  11  (Table),  1997  WL  49077,  at  *2  (6th  Cir.  Feb.  3,  1997)  (unpublished)  ("The
primary  question  .  .  .  is  whether  the  parties  to  the  relevant  agreements  intended  the
benefits  to  'vest,'  i.e.,  to  remain  at  the  same  level  for  the  lifetime  of  the
beneficiary.").   However,  the  *Reese*  panels  appear  to  have  changed  the  definition  of
"vested"  inasmuch  as  they  use  that  word  to  describe  benefits  that,  while  lasting  for

On appeal, a panel of the Sixth Circuit consisting of Judges Sutton, Gibbons, and Ryan affirmed this Court's holding that Plaintiffs are entitled to lifetime healthcare benefits under the 1998 CBA. However, the panel raised an issue that was not addressed by the parties, that being: "What does vesting mean" in the context of this case? *Reese I*, 574 F.3d at 321. The panel determined that, while the CBA is properly interpreted to prohibit the altogether elimination of retiree healthcare benefits, there is nothing in the CBA evincing a promise to forever maintain lifetime benefits at the same level. Because the panel found nothing in the CBA preventing Defendants from altering benefits, so long as they did not entirely eliminate them, it looked to other evidence to determine whether the parties intended the level of benefits to remain the same forever.[2]

---

life, are subject to unilateral reduction. *See Reese I*, 574 F.3d at 321-22, 324; *Reese II*, 694 F.3d at 683-84. Rather than use a word with an uncertain or imprecise meaning, the Court uses other words (e.g., "lifetime," "forever," "for life," "irreducible," "at the same level," etc.) to describe the duration and scope of retiree benefits.

[2] A panel of the Sixth Circuit previously rejected the notion that an employer may unilaterally reduce lifetime healthcare benefits unless there is an agreement allowing such unilateral action. *See Loral Corp.*, 1997 WL 49077, at *3 ("[I]f the employer retained discretion to cut [healthcare] benefits somewhat, there is nothing to give us a standard by which to distinguish a 1% cut from a 99% cut that would be virtually equivalent to a complete revocation. It might well be sensible for parties to agree to allow the employer to retain some flexibility to deal with future vicissitudes, but such an arrangement must be agreed to in the contract. It cannot be imposed unilaterally by the employer or the courts.").

Examining other evidence, the panel concluded that the parties did not view the promised benefits as forever unalterable.  To reach that conclusion, the panel relied principally on one special fact or "historical feature" of this case. Specifically, the panel found that the 1998 CBA modified the healthcare benefits available to prior retirees who retired under earlier CBAs, without the consent of the prior retirees and in a manner that disadvantaged the prior retirees.  In light of this factual finding, the panel concluded that it must have been the understanding of the parties that the 1998 CBA, which included the same language as the earlier CBAs, created lifetime healthcare benefits that could be unilaterally reduced without the consent of the retirees.  Crucial to the panel's conclusion that the parties viewed the benefits as subject to possible future unilateral reduction was the panel's determination that the benefits of prior retirees had been unilaterally *reduced* in the past; the panel acknowledged that, had the benefits been *improved* in the past without the consent of the prior retirees, "[t]hat sort of change would not break any promises to provide irreducible benefits for life."  *Reese I*, 574 F.3d at 325.  Critically, however, this Court never made the crucial factual finding that benefits had been reduced in the past.  Rather, that factual determination was made in the first instance by the *Reese I* panel – a clear encroachment on the factfinding function of this Court.  *See Pullman-Standard v. Swint*, 456 U.S. 273, 291-92, 102 S. Ct. 1781, 1791-92 (1982) ("[F]actfinding is the basic responsibility of district

6

courts, rather than appellate courts, and . . . the Court of Appeals should not have resolved in the first instance [a] factual dispute which had not been considered by the District Court." (internal quotation marks and citation omitted)).

Based in large part on the "historical feature" discussed above, the *Reese I* panel concluded that "CNH . . . cannot terminate all health-care benefits for retirees, but it may reasonably alter them."  574 F.3d at 327.  In particular, the panel held that the 1998 CBA "permit[s] modifications . . . that are 'reasonably commensurate' with the benefits provided in the 1998 CBA, 'reasonable in light of changes in health care' and roughly consistent with the kinds of benefits provided to current employees."  *Id.* at 326 (quoting *Zielinski v. Pabst Brewing Co.*, 463 F.3d 615, 619, 620 (7th Cir. 2006)).  The panel then remanded the matter "to decide how and in what circumstances CNH may alter such benefits – and to decide whether it is a matter amenable to judgment as a matter of law or not."  *Id.* at 327.

In this Court's view, the panel sent conflicting messages regarding one aspect of its decision.  Relying on its own factfinding – principally, the finding that prior retiree benefits had been downgraded in the past without the consent of the prior retirees – the panel seemingly concluded that the 1998 CBA permitted unilateral reductions to retiree healthcare benefits.  However, Judge Sutton's concurrence to the panel's order denying Plaintiffs' motion for rehearing

7

significantly confused matters.[3]  Using language suggesting an intent to speak on

behalf of the panel and offering insight into what the panel envisioned during the

remand proceedings, Judge Sutton wrote:

> Plaintiffs also protest our assessment of the factual record arguing that
> the prior retirees approved the changes to their benefits or at the least
> that they helped them overall.  But this argument overlooks the
> posture of this case – summary judgment – in which the inferences
> run in favor of the party that lost below: CNH.  On remand, the parties
> are free to develop evidence on this point.  That evidence may show
> that plaintiffs should win as a matter of law because the prior retirees
> either approved the changes or they did not diminish the nature of the
> benefits package that existed upon retirement.  Or it may show that
> CNH should be allowed to make reasonable modifications to the
> health-care benefits of retirees, consistent with the way the parties
> have interpreted and implemented prior CBAs containing similar
> language.

*Reese v. CNH Am. LLC*, 583 F.3d 955, 956 (6th Cir. 2009) (Sutton, J.,

concurring).[4]  The parties and this Court were, therefore, given permission to

"develop the evidence" on whether "the prior retirees . . . approved the changes"

and on whether the previous modifications "diminished the nature of the [prior

---

[3] Following *Reese I*, Plaintiffs filed a motion for rehearing, arguing that the panel
decided an issue that was not raised by the parties (i.e., "What does vesting mean"
in the context of this case?) and misconstrued the record, reaching factual
conclusions that were crucial to the panel's holding but that were unsupported by
the record.

[4] On remand, this Court addressed whether it could consider Judge Sutton's
concurrence to clarify the panel's decision, even though the other two judges on
the panel did not formally join it.  Ultimately, the Court concluded that it could and
should consider the concurrence in light of the fact that Judge Sutton authored the
opinion for the unanimous panel in *Reese I*.  *See* 2011 WL 824585, at *7.

retirees'] benefits package" – the special fact on which the panel relied to reach the conclusion that this case is not subject to the usual rule that lifetime healthcare benefits are unalterable.   In other words, the parties were given express authorization to submit evidence on remand negating the reasoning underlying the panel's conclusion that lifetime healthcare benefits could be unilaterally reduced, a conclusion that Judge Sutton indicated the panel reached as a result of an inference applied in favor of Defendants – an inference that he said could be overcome through the submission of evidence on remand.   In sum, the concurrence demonstrates unequivocally that this Court was free on remand to conclude that Defendants could not unilaterally modify the benefits, provided that the evidence offered during the remand proceedings supported the conclusion that the special inferred fact on which the panel relied to reach a contrary conclusion was not, in fact, true.

On remand, this Court considered the evidence contemplated in the concurrence and reached the conclusion that Defendants could not unilaterally reduce the healthcare benefits conferred to Plaintiffs under the 1998 CBA.  In so holding, the Court concluded that the previous modifications, which were reached through the bargaining process, were not disadvantageous to the prior retirees. *See Reese*, 2011 WL 824585, at *8-9.  Again, the concurrence authorized the parties to submit evidence on this issue, noting that "[the] evidence may show that plaintiffs

9

should win as a matter of law" if it is proven on remand that "the changes . . . did not diminish the nature of the benefits package that existed upon retirement." *Reese*, 583 F.3d at 956 (Sutton, J., concurring).  Having concluded that the changes did not diminish the nature of the benefits package that existed upon retirement, this Court – following the path paved by the guiding words of the concurrence – held that Plaintiffs should prevail as a matter of law.

Defendants appealed again, resulting in another Sixth Circuit decision – *Reese II*.  Writing on behalf of himself and Judge Gibbons, Judge Sutton faulted this Court by stating that it "misread" *Reese I* and "disregarded [its] holding that the company may make reasonable modifications to the plaintiffs' healthcare benefits," *Reese II*, 694 F.3d at 685, without mentioning his opinion concurring in the decision to deny a panel rehearing.  The panel also adhered to its previous factual finding, made in the first instance by a panel of appellate judges in *Reese I*, that the healthcare benefits of the prior retirees had been reduced in the past.  Shockingly, the panel did not address this Court's conclusion on remand – a conclusion that Judge Sutton contemplated in his concurrence – that the past changes were not a reduction of the prior retirees' benefit package.

Judge Donald dissented.  In her dissent, Judge Donald pointed out the errors made by the majority and expressed her belief that *Reese I* should be overruled and judgment entered in favor of Plaintiffs because "CNH may [not] unilaterally

modify the scope of Plaintiffs' retirement health benefits under the 1998 CBA."
*Reese II*, 694 F.3d at 691 (Donald, J., dissenting).

The *Reese II* panel instructed this Court as follows regarding its task on remand – a task that the panel described as a "vexing one," *Reese II*, 694 F.3d at 686:

> To gauge whether CNH has proposed reasonable modifications to its healthcare benefits for retirees, the district court should consider whether the new plan provides benefits "reasonably commensurate" with the old plan, whether the changes are "reasonable in light of changes in health care" (including access to new medical procedures and prescriptions) and whether the benefits are "roughly consistent with the kinds of benefits provided to current employees." *Reese I*, 574 F.3d at 326. In doing so, the district court should take evidence on the following questions (and others it considers relevant to the reasonableness question):
>
> - [1] What is the average annual total out-of-pocket cost to retirees for their healthcare under the old plan (the 1998 Group Benefit Plan)? What is the equivalent figure for the new plan (the 2005 Group Benefit Plan)?
>
> - [2] What is the average per-beneficiary cost to CNH under the old plan? What is the equivalent figure for the new plan?
>
> - [3] What premiums, deductibles and copayments must retirees pay under the old plan? What about under the new plan?
>
> - [4] How fast are the retirees' out-of-pocket costs likely to grow under the old plan? What about under the new plan? How fast are CNH's per-beneficiary costs likely to grow under each?
>
> - [5] What difference (if any) is there between the quality of care available under the old and new plans?

11

- [6] What difference (if any) is there between the new plan and the plans CNH makes available to current employees and people retiring today?

- [7] How does the new plan compare to plans available to retirees and workers at companies similar to CNH and with demographically similar employees?

*Id.* at 685-86.

Following the second remand, Defendants submitted a proposed new plan and the parties engaged in discovery relating to the seven considerations listed above. In April 2014, after the conclusion of discovery, the parties filed cross-motions for summary judgment. In addition, Plaintiffs filed a motion to strike the declarations of two defense experts.

Shortly before the Court heard oral argument on the parties' cross-motions for summary judgment, the Supreme Court issued its decision in *Tackett*, a case that was on appeal from the Sixth Circuit. In that case, the Court held "that courts must apply ordinary contract principles, shorn of presumptions, to determine whether retiree health-care benefits survive the expiration of a collective-bargaining agreement." 135 S. Ct. at 937 (Ginsburg, J., concurring). In so holding, the Court abrogated the line of cases in the Sixth Circuit, beginning with *International Union v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), that applied presumptions or inferences in favor of the conclusion that retiree benefits were

12

intended to survive the expiration of the CBA in situations where the duration of retiree benefits was not explicitly specified in the CBA.

Following the Supreme Court's decision in *Tackett*, Defendants filed a second motion for summary judgment. In their motion, Defendants argue that the reasons underlying the conclusion of this Court and the Sixth Circuit that Plaintiffs are entitled to lifetime healthcare benefits are no longer viable after *Tackett*. According to Defendants, *Tackett* mandates a conclusion that the healthcare benefits promised to Plaintiff do not survive the expiration of the CBA. Plaintiffs disagree, arguing that the reasoning employed by this Court and the Sixth Circuit to conclude that retiree healthcare benefits were intended to last forever is consistent with the rules of contract interpretation set forth in *Tackett*.

The question at issue in Defendants' second summary judgment motion – whether the conclusion that retirees are entitled to lifetime healthcare benefits remains correct after *Tackett* – is a threshold one. If Defendants are correct that benefits do not survive the expiration of the CBA, then the Court need not decide the issue that is the subject of the parties' earlier-filed cross-motions for summary judgment – whether the changes proposed by Defendants to Plaintiffs' healthcare benefits are reasonable under the standard articulated by the Sixth Circuit in *Reese II*. The Court now addresses *Tackett*'s impact on this Court's earlier determination that Plaintiffs are entitled to healthcare benefits for life.

13

### III.  DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT: *TACKETT*'S IMPACT ON THIS CASE

#### A.  The Parties' Arguments

As discussed, the issue raised in Defendants' second motion for summary judgment is whether the Supreme Court's recent decision in *Tackett* impacts this Court's earlier conclusion that Plaintiffs are entitled to healthcare benefits for life. On the one hand, Defendants argue that *Tackett* mandates the conclusion that retiree healthcare benefits do not survive the expiration of the CBA because the Court's contrary conclusion rested on the legal principles grounded in *Yard-Man* that were abrogated by *Tackett*.  On the other hand, Plaintiffs contend that *Tackett* does not impact the Court's conclusion that Plaintiffs are entitled to lifetime benefits because, in reaching that conclusion, this Court relied on only the aspects of the *Yard-Man* framework that remain viable after *Tackett*.  For the reasons that follow, the Court believes that Defendants' argument is the more persuasive one.

#### B.  The *Tackett* Decision

*Tackett* addressed how courts should determine how long retirees are entitled to healthcare benefits when the applicable CBA confers such benefits but does not explicitly specify their duration.  The CBA in *Tackett* provided that retirees of a certain age and with a certain level of seniority "will receive" contribution-free benefits, but did not explicitly specify the duration of those benefits.  After the expiration of the CBA, the employer began requiring retirees to

14

contribute toward the cost of their health insurance.  The retirees sued, alleging that they had a right to free benefits that continued beyond the expiration of the CBA – forever.  The employer argued that it was only obligated to provide free benefits during the life of the CBA, but not after its expiration.

Applying the *Yard-Man* framework, discussed below, the Sixth Circuit ruled in favor of the retirees, concluding that they had a right to lifetime benefits.  The Supreme Court, however, vacated the Sixth Circuit's judgment, holding that certain aspects of the legal framework used by the Sixth Circuit to interpret the CBA, derived from *Yard-Man* and its progeny, are inconsistent with ordinary principles of contract interpretation.

The aspect of the *Yard-Man* framework that was most heavily criticized in *Tackett* is the application of inferences or presumptions in favor of the conclusion that parties intended to create lifetime benefits.  Under the *Yard-Man* framework, if a CBA is silent regarding the duration of benefits, courts could infer that the parties intended them to last for life based on the "context" of labor-management negotiations, *see Yard-Man*, 716 F.2d at 1482 ("[E]xamination of the context in which these [retiree] benefits arose demonstrates the likelihood that continuing insurance benefits for retirees were intended."), and the general "nature" of retiree benefits, *see id.* ("[R]etiree benefits are in a sense 'status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is

maintained."). The Supreme Court concluded that these inferences conflict with ordinary principles of contract interpretation by "placing a thumb on the scale in favor of vesting retiree benefits in all collective-bargaining agreements." *Tackett*, 135 S. Ct. at 935.

In addition to these inferences, *Tackett* faulted the Sixth Circuit's unwillingness to apply general durational clauses, CBA provisions specifying the expiration date of the CBA, to retiree benefits. In *Yard-Man*, the Sixth Circuit concluded that the inferences discussed in the preceding paragraph "outweigh any contrary implications derived from a routine duration clause terminating the agreement generally," *Yard-Man*, 716 F.2d at 1482-83, and, in a subsequent case, held that "a general durational clause says nothing about the vesting of retiree benefits." *Noe v. PolyOne Corp.*, 520 F.3d 548, 555 (6th Cir. 2008). *Tackett* held that the Sixth Circuit's approach – refusing to apply general durational clauses to retiree benefits conferred in the contract, instead requiring a contract to include a specific durational clause mentioning retiree benefits to prevent vesting – "distort[s] the text of the agreement and conflict[s] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." 135 S. Ct. at 936.

*Tackett* further criticized *Yard-Man* and its progeny for ignoring "the traditional principle that courts should not construe ambiguous writings to create

lifetime promises" and for "fail[ing] to consider the traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.'"  135 S. Ct. at 936-37 (quoting *Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 207, 111 S. Ct. 2215, 2226 (1991)).   The Court approved the Sixth Circuit's holding that "'traditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation,'" but faulted the Sixth Circuit for concluding that "'the duration of the benefit once clearly conferred is [not] subject to this stricture.'"  *Id.* (quoting *Yard-Man*, 716 F.2d at 1481 n.2).   According to the Supreme Court, the rule that contract obligations normally cease upon expiration of the contract "does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees," but "a court may not infer that the parties intended benefits to vest for life" "when a contract is silent as to the duration of [those] benefits."  *Id.* at 937.   In other words, for a court to conclude that the parties intended to confer lifetime benefits for retirees, it must find both that the parties intended to confer retiree benefits, as well as a clear manifestation of intent from the contract language that they intended to confer them for life; courts may not infer that the parties intended to confer lifetime benefits based simply on the fact that retiree benefits were conferred.

17

*Tackett* concluded that the impermissible aspects of the *Yard-Man* framework, discussed above, affected the outcome of the case because the Sixth Circuit relied on the context of labor-management negotiations and the nature of retiree benefits to reach the conclusion that the parties intended to create lifetime benefits. *See id.* Because the Sixth Circuit "framed its analysis from beginning to end in light of the principles it announced in *Yard-Man* and its progeny," the Court remanded the matter to the Sixth Circuit "to apply ordinary principles of contract law in the first instance." *Id.*

In sum, *Tackett* changed the rules governing the analysis of whether parties intended to create lifetime retiree benefits in the following ways:

- Courts may no longer infer that the parties intended to confer lifetime benefits based on the context of labor-management negotiations.

- Courts may no longer infer that the parties intended to confer lifetime benefits based on the nature of retiree benefits.

- Courts may no longer categorically refuse to apply general durational clauses to retiree benefits.

- Courts should give effect to the traditional contract principle that contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.

- Courts should give effect to the traditional contract principle that ambiguous writings should not be construed to create lifetime benefits.

- To conclude that the parties intended to confer lifetime benefits, there must be a clear manifestation of intent, grounded in the contractual language, to confer lifetime benefits.

18

## C.  Application of *Tackett*

The rationale underlying this Court's prior determination that Plaintiffs are entitled to lifetime healthcare benefits is consistent with the rules of interpretation pronounced in *Tackett* in some respects, but inconsistent with those rules in other respects.  The Court addressed whether Plaintiffs are entitled to lifetime benefits in its decision dated August 29, 2007.  *See Reese*, 2007 WL 2484989, at *5-9.  In determining that the parties intended to confer lifetime benefits, the Court relied in large part on its decision in *Yolton v. El Paso Tennessee Pipeline Co.*, 318 F. Supp. 2d 455 (E.D. Mich. 2003), *aff'd*, 435 F.3d 571 (6th Cir. 2006), a companion case over which this Court presided involving similar claims and a CBA that is nearly identical to the one at issue in the present case.  *See Reese*, 2007 WL 2484989, at *6 ("The defendants in *Yolton* raised the same arguments to support their claim that the [parties] did not intend retiree health insurance benefits to vest that CNH presents now.  For the same reason this Court rejected those arguments in *Yolton*, it rejects them in this case.").[5]  In both *Yolton* and the present case, the Court did not infer that the parties intended to create lifetime benefits based on the context of labor-management negotiations or the nature of retiree benefits.  In fact, on review

---

[5] Because the Court was tasked in *Yolton* with resolving a motion for preliminary injunction, the relevant legal question there involved the retirees' likelihood of success on the merits as opposed to their actual success on the merits.

of this Court's decision in *Yolton*, the Sixth Circuit explicitly noted that this Court did not apply those inferences:

> [T]here is no indication that the district court applied either a presumption or relied unnecessarily on the *Yard-Man* inference. Citing *Yard-Man*, the district court correctly stated that "courts must apply basic rules of contract interpretation to discern the intent of the parties." *Yolton*, 318 F. Supp. 2d at 465. The district court did mention the inference and noted that Sixth Circuit case law has not repudiated the *Yard-Man* language, but the court's analysis does not in any sense *rely* on an inference. *Id.* at 465-68. Instead, the district court interpreted the language of the agreement and found evidence that the defendants intended to confer lifetime benefits upon the plaintiffs. *Id.* at 466.

*Yolton*, 435 F.3d at 580 (emphasis in original). Inasmuch as the Court did not apply the impermissible inferences, the Court's analysis is consistent with *Tackett*. However, as explained, the repudiated aspects of the *Yard-Man* framework include more than just the inferences related to the context of labor management relations and nature of retiree benefits.

In concluding that the parties intended to confer lifetime benefits to the retirees in *Yolton* and the present case, the Court relied heavily on contract language tying eligibility for contribution-free healthcare benefits to eligibility for pension benefits. Because pension benefits are presumed to last for life, and because eligibility for healthcare benefits is linked to eligibility for pension benefits, the Court concluded that healthcare benefits, like pension benefits, were intended to last for life. *See Yolton*, 318 F. Supp. 2d at 466; *Reese*, 2007 WL

20

2484989, at *6.  However, for the reasons that follow, *Tackett* forecloses reliance on this rationale.

*Tackett* referenced the tying rationale in the section of the decision addressing how the impermissible aspects of the *Yard-Man* framework affected the outcome of the case, observing that the Sixth Circuit below relied on contract language "tying . . . eligibility for health care benefits to receipt of pension benefits":

> There is no doubt that *Yard-Man* and its progeny affected the outcome here.  As in its previous decisions, the Court of Appeals here cited the "context of . . . labor-management negotiations" and reasoned that the Union likely would not have agreed to language ensuring its members a "full Company contribution" if the company could change the level of that contribution.  It similarly concluded that the tying of eligibility for health care benefits to receipt of pension benefits suggested an intent to vest health care benefits.  And it framed its analysis from beginning to end in light of the principles it announced in *Yard-Man* and its progeny.

135 S. Ct. at 937 (citations omitted).  This reference to the tying rationale in the Supreme Court's discussion of how the impermissible aspects of the *Yard-Man* framework affected the outcome of the case suggests, as Defendants argue, that the Supreme Court deems the tying rationale to be one of the impermissible aspects of the *Yard-Man* framework.  Because the tying rationale was, in the words of the Sixth Circuit, "[of] particular significance" to this Court in concluding that the parties intended to confer lifetime healthcare benefits for retirees, *Yolton*, 435 F.3d at 580, and because, according to Defendants, the tying rationale is no longer

21

sound after *Tackett*, Defendants argue that this Court's decision that Plaintiffs are entitled to lifetime benefits cannot stand.

Before proceeding further, the Court clarifies the precise nature of the tying rationale that was criticized in *Tackett*. *Tackett* suggests that courts should not rely on language "tying . . . *eligibility* for health care benefits to receipt of pension benefits." 135 S. Ct. at 937 (emphasis added). It does not suggest that courts cannot rely on language tying the *duration* of retiree healthcare benefits to the receipt of benefits. There is a difference. An example of the latter is contract language providing that a retiree is entitled to contribution-free healthcare benefits for *as long as* he or she is entitled to pension benefits. If it is settled that retirees are entitled to pension benefits forever, then it would defy logic – and presumably violate ordinary principles of contract interpretation – to hold that the parties did not intend to confer healthcare benefits for life. Language like this speaks directly to the duration of retiree benefits and there is nothing in *Tackett* suggesting that courts cannot rely on such language.

The view that *Tackett* does not foreclose reliance on language tying the *duration* of contribution-free healthcare benefits to the receipt of pension benefits is shared by the four concurring Justices in *Tackett*. Joined by Justices Breyer, Sotomayor, and Kagan, Justice Ginsburg observed in her concurrence: "Because the retirees have a vested, lifetime right to a monthly pension, a provision stating

22

that retirees 'will receive' health-care benefits if they are 'receiving a monthly pension' is relevant to [the vesting] examination," and that she "understand[s] the Court's opinion to be consistent with" that approach. *Id.* at 938 (Ginsburg, J., concurring) (citations to the record omitted).

However, *Tackett* does suggest that courts should not rely on language tying *eligibility* for contribution-free healthcare benefits to the receipt of pension benefits. An example of such language is a provision providing that a retiree is *eligible* for contribution-free healthcare benefits if he or she is receiving pension benefits. This language arguably speaks to how retirees become eligible to *start receiving* free healthcare benefits, not the *amount of time* they *remain entitled* to those benefits. Because *Tackett* admonishes courts not to "construe ambiguous writings to create lifetime promises," 135 S. Ct. at 936, language tying mere eligibility for contribution-free benefits to receipt of pension benefits, as opposed to language tying the duration of contribution-free benefits to receipt of pension benefits, no longer supports the conclusion that parties intended to create lifetime benefits.

The pertinent contract language here ties *eligibility* for contribution-free healthcare benefits to the receipt of pension benefits: "Employees who retire under the Case Corporation Pension Plan for Hourly Paid Employees, or their surviving spouses eligible to receive a spouse's pension under the provisions of that Plan,

23

shall be eligible for" healthcare benefits, and "no contributions are required."  In light of *Tackett*, this Court now interprets this provision as addressing how retirees and their spouses become eligible to start receiving free healthcare benefits – i.e., retirees are "eligible" for free healthcare benefits if they "retire under" the company's pension plan, and surviving spouses are "eligible" for free healthcare benefits if they are "eligible" to receive the deceased spouse's pension – not the amount of time retirees and their spouses remain entitled to those benefits.  Therefore, the tying language used here no longer supports the Court's determination that the parties intended to confer lifetime benefits.

The remainder of the reasons underlying the Court's prior conclusion that Plaintiffs are entitled to lifetime healthcare benefits are either not sufficient on their own to support that conclusion or are no longer viable reasons under *Tackett*.  For example, the Court relied on the fact that the contract contained express durational clauses for other categories of benefits but not for retiree healthcare benefits.  Relying on *Yard-Man* for the proposition that "the inclusion of specific durational limitations in other provisions . . . suggests that retiree benefits, not so specifically limited, were intended to survive," 716 F.2d at 1481, this Court in *Yolton* and the present case ascribed no weight to the general durational clauses contained in the contracts and concluded that the absence of a durational clause specifically governing retiree healthcare benefits suggested an intent to confer

24

lifetime benefits.  *Yolton*, 318 F. Supp. 2d at 466-67; *Reese*, 2007 WL 2484989, at

*6.  This reasoning, however, is not compatible with *Tackett*, which: (1) requires a

clear manifestation of intent showing that the parties intended to confer lifetime

benefits, *see* 135 S. Ct. at 936-37, (2) admonishes courts not to ignore general

durational clauses, *see id.* at 936, and (3) requires courts to "consider the

traditional contract principle that 'contractual obligations will cease, in the

ordinary course, upon termination of the bargaining agreement.'"  *Id.* at 937

(quoting *Litton*, 501 U.S. at 207, 111 S. Ct. at 2226).

There is a disagreement among the parties whether "clear and express"

contract language is necessary under *Tackett* to show an intent to confer lifetime

benefits.  On the one hand, Defendants contend that *Tackett* quoted with approval

language from a Sixth Circuit case stating that "'the intent to vest must be found in

the plan documents and must be stated in clear and express language.'"  *Tackett*,

135 S. Ct. at 937 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th

Cir. 1998)).  Defendants also point to *Tackett*'s statement that "'a collective-

bargaining agreement [may] provid[e] in explicit terms that certain benefits

continue after the agreement's expiration.'"  *Id.* (quoting *Litton*, 501 U.S. at 207;

111 S. Ct. at 2226).  On the other hand, Plaintiffs emphasize the observation of the

concurring Justices that they "understand the Court's opinion to be consistent"

with the principle that "no rule requires 'clear and express' language in order to

show that parties intended health-care benefits to vest." *Id.* at 938 (Ginsburg, J., concurring).

Regardless of whether *Tackett* requires "clear and express" language to show an intent to confer lifetime benefits, the Court believes, at a minimum, that a court must find a clear manifestation of intent, evinced in the language of the contract, before concluding that the parties intended to confer lifetime benefits. *See* 135 S. Ct. at 936-37 (criticizing the *Yard-Man* principle that "a clear manifestation of intent" is required to "confer[] a benefit or obligation" but not required to discern "the duration of the benefit once clearly conferred"). Applying the rules of interpretation articulated in *Tackett*, the Court does not find a clear manifestation of intent to confer lifetime benefits in this case.

Finally, the Court rejects Plaintiffs' argument that the "law of the case" doctrine prevents the Court from revisiting its prior decision that the parties intended to confer upon Plaintiffs lifetime healthcare. "Under this doctrine, a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236, 117 S. Ct. 1997, 2017 (1997). As Defendants correctly point out, an exception to doctrine applies here. *See id.* ("Court of Appeals erred in adhering to law of the case doctrine despite intervening Supreme Court precedent"); *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir.

1997) (doctrine does not apply "where a subsequent contrary view of the law is decided by the controlling authority").[6]

For all these reasons, the Court concludes that its prior determination that the parties intended to confer lifetime healthcare benefits is no longer viable in light of the Supreme Court's intervening decision in *Tackett*.

## IV.  CONCLUSION

For the reasons stated, Defendants' later-filed motion for summary judgment is **GRANTED**; all other pending motions are **DENIED AS MOOT**.

**SO ORDERED**.


Dated: September 28, 2015          s/PATRICK J. DUGGAN
                                   UNITED STATES DISTRICT JUDGE



Copies to:

Counsel of Record

---

[6] Plaintiffs also argue that the Court should defer ruling on *Tackett*'s impact on this case pending the Sixth Circuit's decision on remand in *Tackett*: "To the extent that this Court has concerns over the impact of *Tackett* on the issue of vesting, this Court should wait for guidance from the Sixth Circuit's review of *Tackett* on remand."  Pls.' Resp. at 23 (ECF No. 441).  However, Plaintiffs cite no authority supporting this approach and the Court is aware of none.